# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **OLEG DERIPASKA** | ) |
|     2 Khutor Sokolsky, | ) |
|     Ust-Labinsky District, | ) |
|     Krasnodarsky Krai, Russian Federation | ) |
| | ) |
|         *Plaintiff,* | ) |
| | ) **COMPLAINT FOR DECLARATORY** |
| | ) **AND INJUNCTIVE RELIEF** |
|   v. | ) |
| | ) |
| **STEVEN T. MNUCHIN** | ) CIV. NO. _____ |
| **in his official capacity as** | ) |
|     **Secretary of the United States** | ) |
|     **Department of the Treasury** | ) |
|     1500 Pennsylvania Ave., NW | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT OF** | ) |
| **THE TREASURY** | ) |
|     1500 Pennsylvania Ave., NW | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **ANDREA M. GACKI** | ) |
| **in her official capacity as** | ) |
|     **Director of the** | ) |
|     **United States Department of the Treasury** | ) |
|     **Office of Foreign Assets Control** | ) |
|     1500 Pennsylvania Avenue, NW | ) |
|     Freedman's Bank Building | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
|     1500 Pennsylvania Avenue, NW | ) |
|     Freedman's Bank Building | ) |
|     Washington, D.C. 20220 | ) |

)
*Defendants.*                                )
_____)

Plaintiff Oleg Deripaska (herein referred to as "Deripaska") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury, its Secretary, Steven T. Mnuchin, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Andrea M. Gacki, and in support of his complaint alleges:

## INTRODUCTION

1.     This case seeks the Court's intervention to enjoin OFAC from using the devastating power of U.S. economic sanctions without adhering to the bounds of its legal authority and in a manner that is inconsistent with the U.S. Constitution.

2.     On April 6, 2018, Deripaska, a private citizen of Russia, became the latest victim of this country's political infighting and ongoing reaction to Russia's purported interference in the 2016 U.S. presidential elections when Defendants targeted him for sanctions under two Executive Orders ("E.O."), E.O. 13661 and E.O. 13662.  As a result of those sanctions, he was identified on the Specially Designated Nationals and Blocked Persons List ("SDN List") administered by OFAC.

3.     In support of these designations, however, Defendants have made a series of allegations completely untethered from the legal criteria of those executive orders.  The reliance on those allegations—which consist of nothing more than false rumor and innuendo and originate from decades old defamatory attacks originated by his business competitors—evidence the lawlessness of Defendants' actions.

4.     As official representatives of our nation—a nation that prides itself on adherence to the rule of law—Defendants must act within the bounds of and consistent with our law.  That obligation requires Defendants to ensure that their actions are in accordance with law; that they

are not contrary to constitutional right; and that they establish a connection between their findings and the evidence in their possession.  In addition, Defendants must provide for due process to ensure that persons affected by their actions have a meaningful opportunity to respond to them. However, by sanctioning Deripaska and including him in an arbitrarily contrived list of "oligarchs," Defendants have acted without regard to these obligations and beyond the bounds of their authority.

5.     The effect of these unlawful actions has been the wholesale devastation of Deripaska's wealth, reputation, and economic livelihood.  As a direct result of Defendants' actions, Deripaska has been ousted from the international business community, as banks and businesses refuse to transact or deal with him or his businesses out of fear of their own potential exposure to U.S. sanctions for doing so.  Further, Deripaska—whose net worth has fallen more than $7.5 billion, or approximately 81%, since the time of the designations—has been irrevocably forced out of his controlling interests in his largest businesses some of which—including En+—he founded and developed over 30 years.  He has also witnessed his remaining businesses—which together employ more than 200,000 people and 1.5 million contractors—edge to the brink of collapse, as banks refuse to extend them loans, and counterparties terminate their relationships with them.  Indeed, even the Russian Government—which the designations of Deripaska were intended to pressure— has threatened to expropriate and nationalize Deripaska's businesses for the benefit of the Russian state if he fails to terminate his interest in his designated companies.  These harms continue to compound daily and will continue to do so as long as Defendants maintain sanctions on Deripaska.

6.     The current political climate makes it unlikely that Deripaska can receive a fair hearing through Defendant OFAC's administrative reconsideration process.  Defendants have shown overt bias against Deripaska by providing misleading guidance on the ability of his companies to be removed from U.S. sanctions lists and by promising to aggressively pursue sanctions against him.  Members of Congress—potential stakeholders in any future delisting—

have also exhibited their own animus towards Deripaska by expressly referring to him as an "enemy" and a "criminal," absent any evidence and without consequence to their political standing. Indeed, the general hysteria surrounding Deripaska prevents him from having a meaningful opportunity to challenge his designations through the normal channels for doing so.

7.    This hysteria has further been compounded by a storm of public reporting that misapprehends both the reasons for Deripaska's designations and the legal standards under which Defendants must act.  Neither members of the U.S. Government—in either the Executive or Legislative Branch—nor the media have explained that Defendants' actions are an administrative action (not a criminal one) based on a reasonable cause to believe standard—one of the lowest burdens of proof in the U.S. legal system.  Nowhere have they noted to the public that designations can be supported by any source of information, including newspapers, blog posts, and even anonymous tips, and that Defendants have no affirmative duty to investigate or corroborate those sources.  Finally, the government has not publicly acknowledged to the world—which Defendants expect to follow their sanctions, lest they suffer consequences—that U.S. sanctions actions are usually defended and justified based on classified or other privileged information that is never shown to the sanctioned parties nor their attorneys.

8.    Instead, the purported legitimacy of Deripaska's designations is being propped up only by the deference afforded to representations made by the U.S. Government and the spinning of old and irrelevant allegations against Deripaska into a narrative to attack the Russian Government as a whole.  Simply put, even if OFAC were to find that an insufficient basis exists to maintain the designations, Congress would never allow delisting as the public's perception of Deripaska has been so distorted by this spin.  This concern is not hypothetical; indeed, it was shown to be valid in Congress' and the public's reaction to the recent delisting of certain companies

formerly owned or controlled by Deripaska.  It is also why the courts are the last refuge for Deripaska to seek a fair opportunity to challenge his designations.

9.      Through this lawsuit, Deripaska does not suggest that the U.S. Government is unable to defend itself from threats to its national security or foreign policy.  Instead, this lawsuit is intended to ensure that when the U.S. Government does so, it follows the rule of law and does not target a private individual simply because it is politically expedient or publicly popular to do so.  For these reasons, and those set forth below, the Court should find that Defendants have not acted in accordance with the law and thus should compel Defendants to rescind Deripaska's designations and remove him from the SDN List and from the U.S. Department of the Treasury's "Oligarch" Report.

## JURISDICTION AND VENUE

10.      This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., the Countering America's Adversaries Through Sanctions Act, P.L. 115-44, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11.      This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

12.      Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside.  *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

13.    Oleg Deripaska is, and was at all times relevant to this complaint, a citizen of Russia. Deripaska currently resides at 2 Khutor Sokolsky, Ust-Labinsky District, Krasnodarsky Krai, Russian Federation.

14.    On April 6, 2018, Deripaska was designated under E.O. 13661 and E.O. 13662, and his name was added to the SDN List maintained and administered by OFAC.  Exhibit A is a true and accurate copy of the page of the SDN List containing Deripaska's name.

15.    OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220.  The Department of the Treasury is responsible for maintaining the financial and economic security of the United States.  The Department of the Treasury is also responsible for overseeing various offices, including OFAC.  Deripaska understands that OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13661 and E.O. 13662 and regulating dealings with them under those authorities via 31 C.F.R. Parts 501 and 589, the "Reporting, Procedures and Penalties Regulations" and the "Ukraine Related Sanctions Regulations," respectively.  OFAC was responsible for designating Deripaska under E.O. 13661 and E.O 13662.

16.    Defendant Steven T. Mnuchin is the Secretary of the Treasury of the United States. Mr. Mnuchin is sued in his official capacity.

17.    Defendant Andrea M. Gacki is the Director of OFAC.  Ms. Gacki is sued in her official capacity.

## FACTUAL ALLEGATIONS

**A.**     **Countering America's Adversaries Through Sanctions Act of 2017 Section 241 Report**

18.     On January 29, 2018, prior to Deripaska being designated under E.O. 13661 and E.O. 13662 and identified on OFAC's SDN List, he was named in the "Report to Congress Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities" ("Section 241 Report").

19.     The Section 241 Report is an unclassified report submitted by the U.S. Department of the Treasury to Congress pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 ("CAATSA").  CAATSA required that the Section 241 Report identify senior foreign political figures and oligarchs in the Russian Federation, as determined by their closeness to the Russian regime and their net worth.

20.     Section 241 of CAATSA also permitted the Secretary of the Treasury to submit a classified annex alongside the unclassified report.  The language of Section 241 of CAATSA indicates that the classified annex was to supplement—not supplant—the contents of the unclassified report mandated by Section 241, as the statute states that the report "shall be submitted in unclassified form, but may contain a classified annex."

21.     The Section 241 Report as submitted to Congress, however, stated that, for purposes of the unclassified portions of the report, determinations as to whether a person constituted an oligarch were judged solely on whether the person had a net worth of $1 billion or more.  Neither Secretary Mnuchin nor the Section 241 Report provided any reason as to why net worth was the sole determinative factor for being identified as an oligarch in that report nor why closeness to the Russian regime was not included as a criterion for identifying an individual as an oligarch.

22.     No definition of the English term "oligarch" solely relies on a person's wealth or net worth to characterize them as such.  Courts in this district have previously defined oligarchs as groups of individuals with close political connections to a particular government who amassed enormous wealth and power through the wholesale transfer of prized state assets and shady deals with government officials.  Members of Congress have also previously noted that "[we] can't just say because someone has a lot of money, that they are an oligarch, which then says they are evil in some way." *Corruption: Danger to Democracy in Europe and Eurasia: Hearing Before the H.R. Subcomm. on Eur., Eurasia, and Emerging Threats of the H. Comm. on Foreign Affairs*, 114th Cong. 37 (2016) (statement of Rep. Dana Rohrabacher, Chairman, H.R. Subcomm. on Eur., Eurasia, and Emerging Threats of the H. Comm. on Foreign Affairs).

23.     Comparisons of public reporting suggest that the U.S. Department of the Treasury sourced the list of Russian oligarchs found in the Section 241 Report from the *Forbes* 2017 list of the World's Billionaires ("Forbes List"), as the report even carries over a typo that was contained in the Forbes List. Leonid Bershidsky, *The U.S. List of Russian Oligarchs Is a Disgrace*, BLOOMBERG, Jan. 30, 2018, *available at* https://www.bloomberg.com/opinion/articles/2018-01-30/the-u-s-list-of-russian-oligarchs-is-a-disgrace.

24.     Certain Members of Congress have also called the report "an embarrassment, given that the list . . . was clearly copied from Forbes Magazine." Letter from Robert Menendez, Ranking Member of the Senate Foreign Relations Comm., to Rex Tillerson, Sec'y of State, and Steven T. Mnuchin, Sec'y of the Treasury (Feb. 28, 2018).

25.     The Forbes List did not make reference to any allegations concerning Deripaska's closeness to the Russian Government, nor suggest that he wields any political influence.  Exhibit B—Forbes List of World's Billionaires-Russia.

26.     There was no notice or process by which Deripaska could have responded to any proposed inclusion of his name in the Section 241 Report.  Likewise, there is no administrative process available to him now to challenge his inclusion in the report.  Indeed, litigants in other cases have alleged that officials from the U.S. Department of the Treasury confirmed to them that there is no process to be removed from the Section 241 Report.  *See* Memorandum in Support of Motion for Preliminary Injunction, *Gapontsev v. U.S. Department of the Treasury*, No. 18-2826-RC (D.D.C. Feb. 15, 2019), ECF No. 12 at 12, 20.

27.     Deripaska also has not been provided access to a copy of the classified annex submitted alongside the Section 241 Report, nor have Defendants made any attempt to apprise him of the contents of that annex.

28.     Within months of Deripaska's inclusion on the Section 241 Report, several of the banks at which his companies maintained accounts began to close those accounts even though he had not at that time been formally sanctioned.  For example, Hellenic Bank, a Cypriot financial institution, began to close accounts of Deripaska's companies at Hellenic Bank immediately following his inclusion in the Section 241 Report.  These closures occurred prior to Deripaska's designations under E.O. 13661 and E.O. 13662.

**B.     April 6, 2018 Designations of Deripaska**

29.     On April 6, 2018, OFAC designated Deripaska under E.O. 13661 and E.O. 13662 for allegedly having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation and for allegedly operating in the energy sector of the Russian Federation economy.  As explained in the U.S. Department of the Treasury press release announcing the designations, OFAC's action "follow[ed] the Department of the Treasury's issuance of the CAATSA Section 241 report in late January 2018." Press Release, U.S.

Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).

30.     As a result, Deripaska's property and interests in property located within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in any transactions or dealings with him.  Further, Deripaska is barred from travel to the United States and from accessing property that he may hold here.  In addition, foreign persons and foreign banks are subject to U.S. secondary sanctions under CAATSA for knowingly facilitating any significant transaction for or on behalf of Deripaska and/or his family members.

31.     Alongside Deripaska's designations, OFAC also designated a number of entities alleged to be under his ownership and control, including B-Finance LTD, En+ Group Plc, Russian Machines, and GAZ Group.  Each of these entities was blocked, and U.S. persons were prohibited from engaging in any transactions or dealings with them, unless authorized.  In addition, foreign persons and foreign banks were subject to U.S. sanctions consequences, including being targeted and blocked themselves, for knowingly facilitating any significant transaction with these entities.

32.     While the Federal Register Notice publishing Deripaska's designations mirrors the language identified in Paragraph 27 above concerning the bases of his designations, it offered no further detail concerning OFAC's allegations, evidence, or conclusions supporting those bases.

33.     OFAC's representations detailing the reasons for Deripaska's designations are published, however, in a U.S. Department of the Treasury press release announcing the designations.  That press release offers three categories of statements concerning Deripaska's designations: 1) allegations of his connections to the Russian Government; 2) baseless allegations by OFAC of ostensibly criminal behavior; and 3) baseless allegations attributable to others of ostensibly criminal behavior.  Press Release, U.S. Dep't of Treasury, Office of Foreign Assets

Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).

34.     With respect to the first category of statements, OFAC alleges that Deripaska has stated that he does not separate himself from Russia.  OFAC further alleges that Deripaska has previously acknowledged possessing a Russian diplomatic passport and has claimed that he represented the Russian Government abroad.  With respect to this set of allegations, OFAC solely relies on Deripaska's own alleged statements and has not provided any facts or reasoning to corroborate that he indeed made those statements nor to show how they would relate to a lawful basis for his designations.  For example, OFAC does not identify when the statements were made or when the alleged underlying conduct occurred.  OFAC also does not identify—either specifically or in general—any senior Russian Government official that was in any way connected to the alleged conduct reflected in those statements he is accused of making.  Moreover, OFAC makes no connection between these alleged statements by Deripaska and any purported operations he has in the energy sector of the Russian Federation.

35.     The second category of statements relied upon to support Deripaska's designations offer a series of allegations that could, were they true, demonstrate involvement in illicit, and potentially criminal, activity.   Specifically, these allegations are that Deripaska has been investigated for money laundering and has been accused of threatening the lives of business rivals, illegally wiretapping a government official, and taking part in extortion and racketeering.  These allegations, however, contain no explanation of or reference to any connection to a senior Russian Government official nor to the energy sector of the Russian Federation.  These allegations also fail to state when or where this purported conduct occurred, or whether there were any findings as to the merits of those allegations.

36.     The final category of statements underlying Deripaska's bases for designations are not allegations by OFAC at all, but rather consist of OFAC suggesting that there are allegations—presumably made by others—that Deripaska had bribed a government official, ordered the murder of an unidentified businessman, and had links to a Russian organized crime group.  Again, OFAC makes unsubstantiated allegations without connecting these allegations—which OFAC expressly references but does not itself allege—to any senior Russian Government official nor to the Russian energy sector.  OFAC also failed to provide any fact-finding or reasoning to corroborate or substantiate these statements.  Further, OFAC does not state when or where this conduct occurred, or whether there were any findings as to the merits of those allegations.

37.     The allegations contained in the U.S. Department of the Treasury press release originate from business rivals and competitors who have long promulgated false rumors and innuendo in attempt to gain advantages in lawsuits against Deripaska.  Most of the allegations have been rumored about for more than two decades but remain as unfounded today as they were when first raised.  These allegations are also independently and in totality irrelevant to the legal criteria for designation under E.O. 13661 and E.O. 13662.

38.     The allegations in the U.S. Department of the Treasury press release have also all been raised before fact-finding tribunals elsewhere in the world.  Any serious inquiry into their reliability and why they are to be believed should be reflected in OFAC's record, as well as the reasons why OFAC discounted the findings of the other tribunals with respect to these allegations.  If OFAC has failed to develop that information and provide its reasoning for discounting any exculpatory evidence in relation to those allegations, it would demonstrate inadequacies in their fact-finding processes.

39.     The press release also states that the Russian businessmen designated on April 6, 2018, benefit from the Russian Government and play a key role in advancing Russia's malign

activities.  Defendants, however, make no attempt to describe the nature of Deripaska's role in those malign activities—which are specifically outlined by Secretary Mnuchin in that press release—nor how the criteria under which Deripaska was designated would indicate any involvement by him in those activities.  Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).

40.     At no point since the time of Deripaska's designations has OFAC disclosed to him or made public a copy of the administrative record created in support of its designation actions.  Nor has OFAC publicly disclosed any other evidence, allegations, conclusions, or bases of designations describing why it designated Deripaska under E.O. 13661 and E.O. 13662.

41.     There is substantial reason to doubt OFAC's compliance with the law here.  As Senator Robert Menendez, Ranking Member of the Senate Committee on Foreign Relations, recently noted, "[w]e simply do not know enough about [Deripaska's] potential involvement in the . . . malign influence campaigns carried out by the Kremlin on the American people."  165 CONG. REC. 198 (2019) (statement of Sen. Menendez).

42.     Senator Menendez has further suggested that the public should wait to see what Special Counsel Robert Mueller's investigation returns on Deripaska's activities before easing any sanctions on him—in reference to the delisting of companies Deripaska formerly owned or controlled.  These statements were made in January 2019—some nine months after Deripaska's designations, numerous subsequent Congressional inquiries into Russia's purported malign activities, and the return of dozens of indictments and convictions arising from Special Counsel Robert Mueller's investigation.  After all of that time spent investigating Russia's alleged activities, it is not surprising that OFAC had to rely on rumor and innuendo to designate Deripaska.  It appears

to be the case that there is simply no evidence Deripaska is involved in the Russian Government's activities nor in any activity satisfying the criteria of E.O. 13661 and E.O. 13662.

### C. Harm Done to Deripaska

43.     The consequence of Defendants' unlawful action has been the utter devastation of Deripaska's wealth, reputation, and economic livelihood.   As a result of his designations and the sanctions risk to foreign parties dealing with him or his businesses, Deripaska has been effectively shut out from the international business community and the global financial system.  Indeed, banks and businesses have terminated existing contracts and agreements with him, and businesses refuse to enter into any further dealings with him out of fear of exposure to U.S. sanctions.

44.     Defendants have exacerbated these consequences by traveling abroad to threaten foreign businesses and banks not to engage in transactions with Deripaska or his companies, lest they be sanctioned themselves.  Those trips included visits to Cyprus and Belgium, where financial institutions thereafter began closing the accounts of Deripaska-owned businesses following meetings with officials from the U.S. Department of the Treasury.  *See* U.S. DEP'T OF THE TREASURY, REPORT TO CONGRESS PURSUANT TO SECTION 243 OF THE COUNTERING AMERICA'S ADVERSARIES THROUGH SANCTIONS ACT OF 2017 REGARDING INTERAGENCY EFFORTS IN THE UNITED STATES TO COMBAT ILLICIT FINANCE RELATING TO THE RUSSIAN FEDERATION (2018).

45.     As a direct result of Defendants' actions, Deripaska's net worth has dramatically fallen since April 6, 2018 by approximately 81%, or $7.5 billion.  His investments have become toxic, and Defendants have caused his former companies to separate from him through the irrevocable divesture of his interests and severance of his control.  Even those companies for which he retains ownership and control have been severely damaged, as banks refuse to extend loans to them, suppliers have terminated contracts with them, and counterparties have ceased dealing with them.  The most recent example of this was Volkswagen's decision to suspend discussions relating

to the purchase of a stake in Deripaska's company, GAZ Group, which itself is currently seeking delisting. *U.S. Sanctions Prevent Volkswagen from Buying Stake in Russia's GAZ: RIA*, REUTERS (March 6, 2019, 10:18 AM) https://uk.reuters.com/article/us-usa-russia-sanctions-gaz/u-s-sanctions-prevent-volkswagen-from-buying-stake-in-russias-gaz-ria-idUKKCN1QN1WP.

46.     Deripaska has not just been severed from his global financial and business networks, but also from basic and necessary services.  For example, in a recent action before an English court, Deripaska was unable to retain legal counsel in time to prevent the imposition of a Worldwide Freezing Order ("WFO") against him.  This was because he was represented in that matter by lawyers working for a U.S. law firm.  Following his designations, those lawyers—due to their firm's status as a U.S. person—were prohibited from continuing to represent Deripaska in a foreign legal matter without authorization from OFAC due to prohibitions arising from Deripaska's designations.  The U.S. law firm applied for authorization from OFAC to maintain its representation but was denied.  Following the denial, most foreign lawyers contacted by Deripaska refused to represent him out of fear of exposure to U.S. sanctions.  Once legal counsel was found, foreign financial institutions refused to remit payments from him to foreign counsel out of fear of being sanctioned themselves.  As a result of these complications, Deripaska was left without representation, and the WFO was imposed upon him.

47.     Deripaska's troubles finding counsel have not been limited to that litigation in the UK, however.  He has also had a number of foreign law firms that previously provided corporate legal services to his companies terminate their representations.  This lack of access to corporate counsel, coupled with the resignation of numerous directors and officers of Deripaska-linked companies and the refusal of financial institutions to extend banking services to those companies, has made it nearly impossible for Deripaska to maintain the operations of his businesses.

48.     Members of Congress have acknowledged the devastation being wrought upon Deripaska.  During a vote on a resolution of disapproval regarding the delisting of the companies formerly owned or controlled by Deripaska, Senator Michael Crapo, Chairman of the Senate Banking Committee, stated that the primary and secondary sanctions imposed against Deripaska dash any hope of future deals or income.  Further, Sen. Crapo noted that those sanctions make transactions with Deripaska radioactive to just about anyone, which is what forced those companies to disentangle themselves from him.  165 CONG. REC. 198 (2019) (statement of Sen. Crapo).

49.     Senator Crapo is correct.  Defendants have used the consequences of the sanctions designations as leverage to compel companies which Deripaska formerly owned or controlled to require him to divest from them and relinquish control over them.  Specifically, Deripaska's former companies—including En+ Group Plc, and JSC EuroSibEnergo—recently entered into a Terms of Removal Agreement ("TOR") with Defendants that required the companies to show that Deripaska had divested his majority ownership of, and relinquished controlling interests in, those companies.  Any future dividend payments from interests retained by Deripaska in those companies will be placed into a blocked account to which Deripaska will have no access so long as he remains sanctioned.  Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Majority Leader (Dec. 19, 2018).

50.     The designations have also benefited Russia's Communist Party, which holds the second highest number of seats in the Russian Parliament and whose leader has publicly attacked Deripaska and organized rallies against him because of his divestment and relinquishment of control in the companies that were recently delisted by OFAC.  Specifically, Gennady Zyuganov, has called for a criminal investigation of Deripaska for allegedly giving the companies "to the Anglo Saxons to control" and for acting against the strategic policy and national security of Russia.

*Billionaire Deripaska Sues Communist Leader Zyuganov for Calling His Business 'Biggest Scam'*,
RUSSIA TODAY (Jan. 17, 2019), https://www.rt.com/russia/449033-deripaska-zyuganov-slander-lawsuit/.

51. In short, Defendants' actions against Deripaska have effectively barred him from accessing his own funds, prevented him from securing basic and necessary services, made him radioactive to any person dealing with him anywhere in the world, and have exposed him to the risk of criminal investigation in his home country and confiscation of his businesses there. These consequences will be extremely difficult to recover from in the event the Deripaska is ever delisted, and it is unclear whether Deripaska will have any ability to recover damages from the Defendants in the future. Indeed, it appears that the damages Deripaska has suffered in wealth and reputation may be unrecoverable, and that there is no corrective relief that will ever make him completely whole for the consequences he has suffered as a result of the Defendants' unlawful actions.

### D.    Animus and Bias Against Deripaska

52.    Deripaska has been the subject of persistent vitriolic attacks and scrutiny by the U.S. Government, including by Defendants. This animus towards Deripaska was first revealed in the U.S. Department of the Treasury press release announcing his designations. That press release, as noted above, included a variety of rumors concerning seemingly criminal behavior that are 1) false; 2) unconnected to any senior Russian Government official or the Russian energy sector; and 3) irrelevant to the legal criteria cited for Deripaska's designations.

53.    This bias was also revealed when OFAC began discussing the path forward if any company owned or controlled by Deripaska sought to have sanctions against it removed. For example, official guidance published by OFAC states that those entities under Deripaska's ownership or control will continue to be sanctioned unless and until he separates himself from them. U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 576

(May 22, 2018); U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 587 (May 22, 2018).

54.     Secretary Mnuchin echoed this position shortly thereafter, stating that before any sanctions against could be removed, Deripaska must first sell his ownership interest in a company below 50 percent. Saleha Mohsin & Stephanie Flanders, *Mnuchin Says U.S. Isn't Looking to Put Rusal Out of Business,* BLOOMBERG (May 1, 2018, 2:49 AM).

55.     Congress, whose acquiescence may be sought in any potential future delisting of Deripaska, has similarly demonstrated an overt bias against him.  For example, Rep. Maxine Waters during a debate on a resolution of disapproval regarding the delisting of companies formerly owned or controlled by Deripaska expressly stated that dealing with Deripaska is "dealing with the enemy" and that he is a "criminal."  165 CONG. REC. H694 (2019) (statement of Rep. Waters).  Notably, Deripaska has never been charged with any crimes in the United States or elsewhere.

56.     During that same debate, Rep. Gerry Connolly, after reciting a litany of public allegations against Deripaska—none of which were connected to the designation criteria under which Deripaska was sanctioned—asked the question: "Does this really sound like someone deserving of exemption from U.S. sanctions?"

57.     Recently, on February 18, 2019, Sen. Charles Schumer, the Senate Minority Leader, issued the following statement via Twitter: "How can Oleg Deripaska—a Russian oligarch who interferes in democracies in Europe & America—have the gall to show at Munich Security Conference? The conference talks about holding back Russian interference! EU friends: We urge imposing additional sanctions on Putin's cronies."  Chuck Schumer (@SenSchumer), Twitter, (Feb. 18, 2019, 2:20 PM), *https://twitter.com/SenSchumer/status/1097576721996488712.*

58.     Defendants have not designated Deripaska for engaging in, nor made any allegations that he is engaged in, the interference of democratic processes, nor has Deripaska been charged anywhere in the world for doing so.  Yet the Senate Minority Leader—who may play a pivotal role in any future delisting of Deripaska—believes that Deripaska has been involved in alleged Russian interference in democratic processes and should not—as a private citizen and not on behalf of any government—be able to attend a conference that promotes peace through dialogue, much less have sanctions against him removed.

59.     All of these statements are incorrect and without precedent.  Any entity that is or has been designated due to Deripaska's alleged ownership or control can be removed from the SDN List if sanctions against Deripaska are removed.  By refusing to acknowledge this possibility, by deeming Deripaska a criminal absent any criminal charges, and by relying on allegations unconnected to the legal criteria necessary for the designations, Defendants and Congress are demonstrating that they do not contemplate a scenario by which sanctions against Deripaska would ever be removed.  Thus, these statements by U.S. officials and elected representatives reveal profound animus towards Deripaska that requires him to seek recourse with regard to his designations through this Court.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13661 CONSTITUTES ARBITRARY AND CAPRICIOUS ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

60.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

61.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

62.     Defendants' designation of Deripaska under E.O. 13661 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, because OFAC lacked any factual basis to conclude that Deripaska has acted or purported to act for or on behalf of, directly or indirectly, a senior Russian Government official.

## COUNT II

### DEFENDANTS' ACTION DESIGNATING DERIPASKA UNDER E.O. 13662 CONSTITUTES ARBITRARY AND CAPRICIOUS ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

63.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

64.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

65.     Defendants' designation of Deripaska under E.O. 13662 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, because OFAC lacks any factual basis to conclude that Deripaska operates in the energy sector of the Russian Federation economy.

## COUNT III

DEFENDANTS' ACTION DESIGNATING DERIPASKA UNDER E.O. 13661 VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS AND CONSTITUTES ARBITRARY AND CAPRICIOUS ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

66.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

67.     Under the Fifth Amendment of the U.S. Constitution, Deripaska has a due process right to adequate post-deprivation notice.  Sufficient notice requires Defendants to provide Deripaska with the bases of his designation, including access to the administrative record underlying his designation, so as to permit him a meaningful opportunity to respond to the designation.

68.     Defendants have not provided sufficient notice for their determination that Deripaska meets the criteria for designation under E.O. 13661—i.e., that Deripaska has acted or has purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation.  Defendants have not identified a sufficient factual basis for their conclusion, nor have they alleged any conduct that would provide Deripaska an opportunity to respond to Defendant's determination.  Instead, Defendants' press release announcing Deripaska's E.O. 13661 designation alleges a series of facts untethered from their legal conclusion that he acted or purported to act for or on behalf of a senior official of the Government of the Russian Federation.

69.     Defendants have failed to provide Deripaska with adequate and fair notice of the basis underlying his designation.  Thus, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution.

**COUNT IV**

DEFENDANTS' ACTION DESIGNATING DERIPASKA UNDER E.O. 13662 VIOLATES
HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS AND CONSTITUTES ARBITRARY
AND CAPRICIOUS ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

70.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

71.    Under the Fifth Amendment of the U.S. Constitution, Deripaska has a due process right to adequate post-deprivation notice.  Sufficient notice requires Defendants to provide Deripaska with the bases of his designation, including access to the administrative record underlying his designation, so as to permit him a meaningful opportunity to respond to the designation.

72.    Defendants have not provided sufficient notice for their determination that Deripaska meets the legal criteria for designation under E.O. 13662—i.e., that he operates in the energy sector of the Russian Federation economy.  Defendants have not identified the factual basis for this conclusion, nor have they identified how Deripaska operates in the energy sector.  Instead, Defendants' press release announcing Deripaska's E.O. 13662 designation alleges a series of facts that are completely untethered from any possible legal conclusion that Deripaska operates in the energy sector of the Russian Federation economy.

73.    Defendants have failed to provide Deripaska with adequate and fair notice of the basis of his E.O. 13662 designation.  Thus, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution.

**COUNT V**

DEFENDANTS' FAILURE TO PROVIDE DERIPASKA NOTICE OF THE BASIS FOR HIS
DESIGNATION UNDER E.O. 13661 VIOLATES THE ADMINISTRATIVE PROCEDURE
ACT

74.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the

allegations in all preceding paragraphs.

75.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law or without observance of procedure required

by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

76.     Defendants' designation of Deripaska under E.O. 13661 is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law, and/or without observance of

procedure required by law, because Defendants failed to provide Deripaska with notice of the basis

of his designation in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.

Specifically, Defendants did not identify the senior Russian Government official Deripaska

allegedly acted for or on behalf of or purported to act for or on behalf of; did not describe how

their allegations connect him to any senior Russian Government official; and have not provided

him with access to the administrative record underlying his designation.

**COUNT VI**

DEFENDANTS' FAILURE TO PROVIDE DERIPASKA NOTICE OF THE BASIS FOR HIS
DESIGNATION UNDER E.O. 13662 VIOLATES THE ADMINISTRATIVE PROCEDURE
ACT

77.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the

allegations in all preceding paragraphs.

78.      Agency action, findings, and conclusions found to be arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law or without observance of procedure

required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

79.     Defendants' designation of Deripaska under E.O. 13662 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and/or without observance of procedure required by law, because Defendants failed to provide Deripaska with notice of the basis of his designation in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Specifically, Defendants have not identified how or through what means Deripaska operates in the energy sector of the Russian Federation.

## COUNT VII

### DEFENDANTS' FAILURE TO PROVIDE DERIPASKA SUFFICIENT NOTICE AS TO THE REASONS FOR HIS INCLUSION ON THE SECTION 241 REPORT VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

80.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

81.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

82.     Defendants' criteria for determining whether an individual is an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law, as Defendants expressly failed to consider criteria demanded by CAATSA in defining an "oligarch"—i.e., that the individual be identified according to their closeness to the Russian regime and their net worth. Defendants' consideration of solely the individual's net worth was contrary to the law under which they operated and constituted arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

83.     Defendants' criteria for determining whether an individual is an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law, as Defendants' definition of an "oligarch"—i.e., their net worth—betrays a proper definition of an "oligarch"— i.e., an individuals' net worth and political influence.

84.     Defendants' determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA and their inclusion of Deripaska in the Section 241 Report is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and/or without observance of procedure required by law, because Defendants lack any factual basis to conclude that Deripaska is an "oligarch" for purposes of Section 241 of CAATSA.

## COUNT VIII

### DEFENDANTS' ACTION IDENTIFYING DERIPASKA IN THE SECTION 241 REPORT VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS AND CONSTITUTES ARBITRARY AND CAPRICIOUS ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

85.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

86.     Under the Fifth Amendment of the U.S. Constitution, Deripaska has a due process right to adequate post-deprivation notice.  Due to the negative harms arising from his inclusion in the Section 241 Report, Defendants are required to provide Deripaska with sufficient notice as to the basis for their action.  This requires Defendants to provide Deripaska with access to the agency's findings regarding his inclusion in the Section 241 Report so as to permit him a meaningful opportunity to respond to his inclusion.

87.     Defendants have not provided sufficient notice for their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA.

Defendants have not disclosed the factual basis for their conclusion, but have instead publicly rendered a conclusory finding that Deripaska is an "oligarch" in their Section 241 Report.

88.     Due to the harm caused by Defendants' inclusion of Deripaska in the Section 241 Report, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution as they have failed to provide adequate notice as to the basis for their determination that Deripaska meets the criteria of an "oligarch" under Section 241 of CAATSA, and because there is no opportunity to challenge his inclusion in the Section 241 Report.

## COUNT IX

### DEFENDANTS' FAILURE TO PROVIDE DERIPASKA SUFFICIENT NOTICE OF THE BASIS FOR THEIR DETERMINATION PURSUANT TO SECTION 241 OF CAATSA VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

89.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

90.      Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

91.     Defendants' determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA and their inclusion of Deripaska in the Section 241 Report is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and/or without observance of procedure required by law because Defendants failed to provide Deripaska with notice of the basis of their determination in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.

## RELIEF REQUESTED

Wherefore, Deripaska respectfully requests that this Court:

A. Issue an order vacating Deripaska's designations under E.O. 13661 and E.O. 13662 and removing his name from OFAC's SDN List;

B. Issue an order directing Defendants to rescind Deripaska's designations under E.O. 13661 and E.O. 13662 and remove his name from OFAC's SDN List;

C. Declare or order Defendants to disclose the evidentiary memorandum and supporting administrative record underlying Deripaska's designations under E.O. 13661 and E.O. 13662;

D. Order Defendants to retract any public statements attributing conduct to Deripaska that is unrelated to the bases for his designations under E.O. 13661 and E.O. 13662, and enjoin Defendants from making such statements in the future;

E. Declare or order Defendants to rescind their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA and remove his name from the Section 241 Report;

F. Declare or order Defendants to release any and all records underlying their inclusion of Deripaska's name in the Section 241 Report;

G. Grant an award to Deripaska of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

H. Any other and further relief as the Court may deem proper.

Dated:  March 15, 2019

Respectfully submitted,

/s/ Erich C. Ferrari, Esq.____
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., NW

Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
DC Bar No. 978253