## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **OLEG DERIPASKA** | ) |
|     2 Khutor Sokolsky, | ) |
|     Ust-Labinsky District, | ) |
|     Krasnodarsky Krai, Russian Federation | ) |
| | ) CIV. NO. 19-0727 (APM) |
|            *Plaintiff,* | ) |
| | ) **AMENDED COMPLAINT** |
|     v. | ) |
| | ) |
| **STEVEN T. MNUCHIN** | ) **ECF** |
| **in his official capacity as** | ) |
|     **Secretary of the United States** | ) |
|     **Department of the Treasury** | ) |
|     1500 Pennsylvania Ave., NW | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT OF** | ) |
| **THE TREASURY** | ) |
|     1500 Pennsylvania Ave., NW | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **ANDREA M. GACKI** | ) |
| **in her official capacity as** | ) |
|     **Director of the** | ) |
|     **United States Department of the Treasury** | ) |
|     **Office of Foreign Assets Control** | ) |
|     1500 Pennsylvania Avenue, NW | ) |
|     Freedman's Bank Building | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
|     1500 Pennsylvania Avenue, NW | ) |
|     Freedman's Bank Building | ) |

Washington, D.C. 20220       )
                                    )
                 *Defendants.*       )
                                    )

Plaintiff Oleg Deripaska (hereinafter referred to as "Deripaska") brings this Amended Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury and its Secretary, Steven T. Mnuchin; and the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director, Andrea M. Gacki, and in support of his complaint alleges:

## INTRODUCTION

1.      This case seeks the Court's intervention to enjoin OFAC from using the devastating power of U.S. economic sanctions without adhering to the bounds of its legal authority and in a manner inconsistent with its due process obligations to provide notice and a meaningful opportunity to be heard.

2.      On April 6, 2018, Deripaska, a private citizen of Russia, became the latest victim of this country's political infighting and ongoing reaction to Russia's purported interference in the 2016 U.S. presidential election when Defendants targeted him for sanctions under two Executive Orders ("E.O."), E.O. 13661 and E.O. 13662, respectively.  As a result of those sanctions, he was identified on the Specially Designated Nationals and Blocked Persons List ("SDN List") administered by OFAC.

3.      In support of these designations, Defendants publicly made a series of allegations against Deripaska which were completely unrelated to the legal criteria for designation under E.O. 13661 or E.O. 13662.  OFAC's reliance on those allegations—which are based on false rumors and innuendo and originate from decades-old defamatory attacks by Deripaska's business

competitors—evidences the irrationality of Defendants decision-making and demonstrates that they have overstepped their legal authority in order to achieve a politically expedient outcome.

4.    Following Deripaska's filing of this lawsuit, Defendants voluntarily provided him with a redacted copy of the administrative record underlying OFAC's decision to designate him. That administrative record included the evidentiary memorandum identifying the factual and legal bases for OFAC's actions under E.O. 13661 and E.O. 13662 and outlined the agency's reasoning and conclusions in support of those designations.

5.    Far from demonstrating the legality of their decision, however, the administrative record serves as a prime example of the inadequacy of OFAC's designation actions targeting Deripaska.  Indeed, the disclosed record lacks substantial evidence supporting the agency's action; contains irrational conclusions drawn from what scant evidence is found in the record; and proves the accuracy of Deripaska's prior allegation that OFAC's decision-making with respect to his designations is untethered from the legal criteria for designation.  In sum, the administrative record does more to justify Deripaska's cause than it does to uphold Defendants' actions.

6.    For all the reasons detailed in Deripaska's initial complaint, he remains skeptical as to whether the current political climate and the evident bias demonstrated by OFAC allows him the opportunity for a fair hearing before OFAC through its administrative reconsideration process. He does not, however, include in this complaint his claims regarding the unlawfulness of his designation under E.O. 13662.  As OFAC's administrative record made clear, a substantial justification for that designation was the fact that Deripaska owned EuroSibEnergo ("ESE") through his prior ownership and control of En+ Group.  OFAC, however, has now acknowledged that Deripaska does not own or control ESE, and thus Deripaska will petition OFAC through the

administrative reconsideration process for the rescission of that designation and to develop a new record that supports that rescission.

7.      Deripaska, however, is unable to entertain an administrative challenge to his E.O. 13661 designation as Defendants both fail to abide by the legal bounds of their authority under that Order and continue to refuse to provide Deripaska with sufficient notice as to the conclusions and reasons for his designation under it.  That refusal defies Defendants' obligation to provide Deripaska due process under the law.

8.      For similar reasons, Deripaska is unable to challenge his identification as an "oligarch" and his inclusion in the Section 241 Report because Defendants have failed to provide a process by which its action can be reconsidered.  Further, Defendants have provided no notice as to the reasons for Defendants' action in identifying him in that report.

9.      For these reasons, and for those set forth below, the Court should find that Defendants have not acted in accordance with law and should compel Defendants to rescind Deripaska's designation under E.O. 13661 and his identification as an "oligarch" in Defendants' Section 241 Report.

## JURISDICTION AND VENUE

10.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., the Countering America's Adversaries Through Sanctions Act, P.L. 115-44, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

12.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

13.     Oleg Deripaska is and was at all times relevant to this complaint a citizen of Russia. Deripaska currently resides at 2 Khutor Sokolsky, Ust-Labinsky District, Krasnodarsky Krai, Russian Federation.

14.     On April 6, 2018, Deripaska was designated under E.O. 13661 and E.O. 13662, and his name was added to the SDN List maintained and administered by OFAC.  Exhibit A is a true and accurate copy of the page of the SDN List containing Deripaska's name.

15.     OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220.  The Department of the Treasury is responsible for maintaining the financial and economic security of the United States.  The Department of the Treasury is also responsible for overseeing various offices, including OFAC.  OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13661 and E.O. 13662 and regulating dealings with them under those authorities via 31 C.F.R. Parts 501 and 589, the "Reporting, Procedures, and Penalties Regulations" and the "Ukraine Related Sanctions Regulations," respectively.  OFAC was responsible for designating Deripaska both under E.O. 13661 and E.O. 13662.

5

16.     Defendant Steven T. Mnuchin is the Secretary of the Treasury of the United States. Mr. Mnuchin is sued in his official capacity.

17.     Defendant Andrea M. Gacki is the Director of OFAC.  Ms. Gacki is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A.     CAATSA Section 241 Report

18.     On January 29, 2018, prior to his designations by OFAC and his identification on the SDN List, Deripaska was named in the "Report to Congress Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities" ("Section 241 Report").

19.     The Section 241 Report is an unclassified report submitted by the U.S. Department of the Treasury to Congress pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 ("CAATSA") Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities" ("Section 241 Report").

20.     Section 241 of CAATSA also permitted the Secretary of the Treasury to submit a classified annex alongside the unclassified report.  The language of Section 241 indicates that the classified annex was to supplement—not to supplant—the contents of the unclassified report mandated by Section 241, as the statute states that the report "shall be submitted in unclassified form, but may contain an unclassified annex."

21.     The Section 241 Report submitted to Congress, however, stated that, for purposes of the unclassified portions of the report, determinations as to whether a person constituted an "oligarch" were judged solely on whether the person had a net worth of $1 billion or more.  Neither

Secretary Mnuchin nor the Section 241 Report provided any reason as to why net worth was the sole determinative factor for being identified as an oligarch in that report nor why "closeness to the Russian regime" was not included as a criterion for determining whether an individual was an "oligarch" for purposes of the Section 241 Report.

22.     No definition of the English term "oligarch" solely relies on a person's wealth or net worth to characterize them as such.  Traditionally, an "oligarch" has been defined, including by courts in this district, as an individual with close political connections to a particular government or regime who has amassed enormous wealth and power through the wholesale transfer of prized state assets and shady dealings with government officials.  Members of Congress have also noted that "[we] can't just say because someone has a lot of money, that they are an oligarch, which then says they are evil in some way." *Corruption: Danger to Democracy in Europe and Eurasia: Hearing Before the H.R. Subcomm. on Eur., Eurasia, and Emerging Threats of the H.Comm. on Foreign Affairs*, 144th Cong. 37 (2016) (statement of Rep. Dana Rohrabacher, Chairman, H.R. Subcomm. on Eur., Eurasia, and Emerging Threats of the H. Comm. on Foreign Affairs).

23.     Public reporting indicates that the U.S. Department of the Treasury sourced the list of Russian oligarchs found in the Section 241 Report from the *Forbes* 2017 list of the World's Billionaires ("Forbes List"), as the report even carries over a typo that was initially contained in the Forbes List.  Leonid Bershidsky, *The U.S. List of Russian Oligarchs Is a Disgrace*, Bloomberg, Jan. 30, 2018, *available at* https://www.bloomberg.com/opinion/articles/2018-01-30/the-u-s-list-of-russian-oligarchs-is-a-disgrace (last visited June 19, 2019).

24.     Certain Members of Congress have also called the report "an embarrassment, given that the list . . . was clearly copied from Forbes Magazine."  Letter from Robert Menendez, Ranking

Member of the Senate Foreign Relations Comm., to Rex Tillerson, Sec.'y of State, and Steven T. Mnuchin, Sec.'y of the Treasury (Feb. 28, 2018).

25.     The Forbes List did not make reference to any allegations concerning Deripaska's closeness to the Russian government nor suggest that he wields any political influence.  Exhibit B—Forbes List of World's Billionaires-Russia.

26.     Deripaska was provided no advance notice of his inclusion in the Section 241 Report, and Defendants did not provide him with any process by which he could have responded to the proposed inclusion of his name in the Report.  Defendants have also not provided Deripaska with any administrative process to challenge his inclusion in the Report.  Indeed, U.S. Treasury Department officials have told parties identified in the Section 241 Report that there is no process to petition for removal from the Section 241 Report. *See* Memorandum in Support of Motion for Preliminary Injunction, *Gapontsev v. U.S. Dep't of Treasury*, No. 18-2826-RC (D.D.C. Feb. 15, 2019), ECF No. 12 at 12, 20.

27.     Deripaska has also not been provided access to a copy of the classified annex submitted alongside the Section 241 Report nor have Defendants made any attempt to apprise him of the contents of the classified annex.

28.     Immediately following his inclusion in the Section 241 Report and Defendants' public identification of Deripaska as an "oligarch," several of the banks at which his companies maintained accounts began to close those accounts even though he was not subject to sanctions at that time.  For example, Hellenic Bank, a Cypriot financial institution, began to close accounts of Deripaska's companies immediately after his inclusion in the Section 241 Report.  These closures occurred prior to Deripaska's designations under E.O. 13661 and E.O. 13662, evidencing the actual harm caused by his inclusion in the Section 241 Report.

**B.      April 6, 2018 Designations of Deripaska**

29.      On March 16, 2014, President Obama issued E.O. 13661 in response to "the actions

and policies of the Government of the Russian Federation with respect to Ukraine—including the

recent deployment of Russian Federation military forces in the Crimea region of Ukraine."  The

Preamble to E.O. 13661 states that these "actions and policies," which "undermine democratic

processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and

territorial integrity; and contribute to the misappropriation of its assets," "constitute an unusual

and extraordinary threat to the national security and foreign policy."  The Preamble further noted

that the President was invoking his authorities under IEEPA to impose sanctions and other

restrictive measures in response to that threat.

30.      Section 1 of E.O. 13661 contains the different criteria or reasons for which persons

can be designated and blocked under the Order's authorities and in response to the threat described

in the Preamble.  Section 1(a)(ii)(C)(1) of E.O. 13661 permits the Secretary of the Treasury to

designate and block persons determined to have acted or purported to act for or on behalf of,

directly or indirectly, a senior official of the Government of the Russian Federation.  Section

1(a)(ii)(D)(1) of E.O. 13661 permits the Secretary of the Treasury to designate and block persons

determined to have materially assisted, sponsored, or provided financial, material, or technological

support for, or goods or services to or in support of a senior official of the Government of the

Russian Federation.

31.      On April 6, 2018, OFAC designated Deripaska under E.O. 13661 and E.O. 13662

for allegedly having acted or purported to act for or on behalf of, directly or indirectly, a senior

official of the Government of the Russian Federation and for allegedly operating in the energy

sector of the Russian Federation economy, respectively.  Deripaska's E.O. 13661 designation was

made solely pursuant to section 1(a)(ii)(C)(1) of that Order for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation. Office of Foreign Assets Control; Notice of OFAC Actions, 83 Fed. Reg. 19,138 (May 1, 2018).

32.     As explained in the press release announcing the designations, OFAC's actions "follow[ed] the Department of the Treasury's issuance of the CAATSA Section 241 report in late January 2018." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, *Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity* (April 6, 2018).

33.     As a result of his designation, Deripaska's property and interests in property located within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with him. Further, Deripaska is barred from travel to the United States and from accessing property that he may hold there. In addition, foreign persons and banks are subject to U.S. secondary sanctions for knowingly facilitating any significant transaction for or on behalf of Deripaska and/or his family members.

34.     Alongside Deripaska's designations, OFAC also designated a number of entities alleged to be under his ownership or control, including B-Finance Ltd., Russian Machines, and GAZ Group. Each of these entities is blocked, and U.S. persons are prohibited from engaging in transactions or dealings with them unless authorized. In addition, foreign persons and banks are subject to U.S. sanctions—including by being targeted with blocking sanctions or cut off from the U.S. financial system—for knowingly facilitating any significant transaction with these companies.

35.     OFAC published a press release announcing Deripaska's designations under E.O. 13661 and E.O. 13662. This press release offered baseless allegations by OFAC or other persons of ostensibly criminal behavior unrelated to the legal criteria for designation under E.O. 13661 and

E.O. 13662, respectively, and the national emergencies invoked by those Orders.  Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, *Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity* (April 6, 2018).  Most, if not all, of these allegations originate from Deripaska's business rivals and competitors who have long promulgated false rumor and innuendo in an attempt to gain an advantage in lawsuits against Deripaska.  Further, the majority of these allegations have been raised before fact-finding tribunals elsewhere in the world and deemed to be without merit.  OFAC's failed to account for that information and provide its reasoning for discounting such exculpatory evidence.

36.     Prior to Defendants disclosure of the administrative record, OFAC's press release was the sole notice provided to Deripaska and the public regarding the reasons for OFAC's decision to designate Deripaska under E.O. 13661 and E.O. 13662, respectively.

### C.     OFAC's Disclosure of the Administrative Record

37.     On April 29, 2019, Defendants provided Deripaska with a redacted version of the administrative record relied upon in designating him under E.O. 13661 and E.O. 13662, respectively.  This record contained the evidentiary memorandum which outlined the factual and legal bases for the agency's designation actions, as well as exhibits attached to that memorandum. Significant portions of the administrative record were redacted in the version sent to Deripaska and later submitted on the public docket in this case.  ECF No. 6.  The most significant redactions were made in respect to the factual bases for Deripaska's designation under E.O. 13661.  Those bases are identified under the evidentiary memorandum's "Basis for Determination" section.

38.     In support of its determination that Deripaska has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, OFAC concluded that Deripaska "has acted in support of Russian President Vladimir Putin's

[p]rojects." ECF No. 6 at 0011.  This conclusion, however, does not state that OFAC has evidence to show that Deripaska has acted or purported to act "for or on behalf of" Russian President Putin or at his direction.

39.     The sole unredacted portion of the administrative record outlining the basis for Deripaska's designation under E.O. 13661 cites a decade-old news article from *The Nation* to support OFAC's conclusion that Deripaska "has acted in support of Russian President Vladimir Putin's projects." *Id*. at 0011.

40.     *The Nation* article states "…that Deripaska told one of his close associates that he bought an aluminum plant in Montenegro in 2005 because 'Russian President Vladimir Putin encouraged him to do it…the Kremlin wanted an area of influence in the Mediterranean." *Id*.

41.     Neither the article nor OFAC's findings with respect to it explain how the purchase of the aluminum plant was considered to be a project of Russian President Putin.  While the article alleges that Deripaska told someone that Russian President Putin encouraged him to do it, neither the article nor OFAC's finding mention that the plant was in any way connected to President Putin, much less a project of his.  Further, neither the article nor OFAC's finding allege that Deripaska was purporting to act for or on behalf of Russian President Putin in purchasing the aluminum plant, it merely alleges that Deripaska was encouraged to do it.  Finally, OFAC's conclusion and its finding stated that Deripaska has acted in support of Russian President Putin's projects, not that he has acted as Russian President Putin's agent, under his employment, or at his direction.

42.     OFAC's administrative record also does not identify how Deripaska's purported involvement in the purchase of an aluminum plant in Montenegro in 2005 is connected or relevant to the national emergency for which E.O. 13661 was issued nor how it was connected or relevant to Russia's "actions and policies" with respect to Ukraine.  The administrative record also does

not contain any conclusions, findings, or reasoning that discuss or identify how Deripaska's designation under E.O. 13661 is consistent with, or serves the underlying purposes of, the Executive Order as described in the Order's Preamble.

43.    All other factual bases for Deripaska's designation under E.O. 13661, including a separate and independent factual finding, were redacted from the disclosed record. *Id*. at 0011-0012.

44.    Defendants have not provided Deripaska any alternative means by which he can learn and understand the reasons for his designation under E.O. 13661, nor have they provided him with an unclassified summary of the classified or otherwise privileged information contained in the administrative record.

**D.    Harm Done to Deripaska**

45.    The consequence of Defendants' unlawful actions has been the utter devastation of Deripaska's wealth, reputation, and economic livelihood.  As a result of his designations and the resulting sanctions risk to foreign parties dealing with him or his businesses, Deripaska has been effectively shut out from the international business community and the global financial system. Banks and businesses have terminated existing contracts and agreements with him, and businesses refuse to enter into further dealings with him out of fear of exposure to U.S. sanctions.

46.    OFAC intended Deripaska's designation to result in his blacklisting by financial institutions all over the world.  As Defendants have previously touted, U.S. sanctions act as a "force multiplier" insofar as "international financial institutions frequently implement [U.S.] sanctions voluntarily, even when they are under no legal obligation from their host countries to do so." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, *Testimony of OFAC Director Adam J. Szubin Before the Senate Comm. on Banking, Housing, and Urban Affairs* (Sept.

12, 2006).  Defendants have also acknowledged that "[U.S.] 'unilateral' actions are anything but," having devastating consequences worldwide to the target of its sanctions. *Id*.

47.     Defendants have exacerbated these consequences by traveling abroad to threaten foreign banks and businesses not to engage in transactions with Deripaska or his companies, lest they be sanctioned themselves.  Those trips included visits to Cyprus and Belgium, where financial institutions began closing the accounts of Deripaska-owned businesses following meetings with officials from the U.S. Department of the Treasury. *See* U.S. Dep't of the Treasury, Report to Congress Pursuant to Section 243 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Interagency Efforts in the United States to Combat Illicit Finance Relating to the Russian Federation (2018).

48.     As a direct result of Defendants' action, Deripaska's net worth has dramatically fallen since April 6, 2018 by approximately 81% (or $7.5 billion).  His investments have become toxic, and Defendants have caused his former companies to separate from him through the irrevocable divestiture of his interests and severance of his control.  Even those companies for which Deripaska retains ownership and control have been severely damaged, as banks refuse to extend loans to them, suppliers terminate contracts, and counterparties cease continued dealings. The most recent example of this was Volkswagen's decision to suspend discussions relating to the purchase of a stake in Deripaska's company, GAZ Group, which itself is currently seeking delisting. *U.S. Sanctions Prevent Volkswagen from Buying Stake in Russia's GAZ: RIA*, REUTERS (March 6, 2019) https://uk.reuters.com/article/us-usa-russia-sanctions-gaz/u-s-sanctions-prevent-volkswagen-from-buying-stake-in-russias-gaz-ria-idUKKCN1QN1WP  (last  visited  June  19, 2019).

49.     Deripaska has not just been severed from his global financial and business networks, but also from basic and necessary services.  For example, in a recent action brought before an English court, Deripaska was unable to retain legal counsel in time to prevent the imposition of a Worldwide Freezing Order ("WFO") against him.  Following his designation by OFAC, his lawyers in the matter—due to their firm's status as a U.S. person—were prohibited from continuing the legal representation of Deripaska without authorization from OFAC.  The U.S. law firm applied for authorization from OFAC to maintain its representation in the foreign legal matter but were denied.  Following OFAC's license denial, Deripaska contacted non-U.S. lawyers working at foreign law firms—most of whom refused to represent him out of fear of their exposure to U.S. sanctions.  Once legal counsel was retained, then, foreign financial institutions refused to remit payments from Deripaska to his legal counsel out of fear of being sanctioned.  Deripaska's designation under E.O. 13661 thus prevented him from retaining legal counsel for representation before the English court and led directly to the WFO's imposition.

50.     Deripaska's troubles finding legal counsel have not been limited to litigation in the United Kingdom, however.  Foreign law firms that had previously provided corporate legal services to his companies terminated their representations.  This lack of access to corporate counsel, coupled with the resignation of numerous directors and officers of Deripaska-linked companies and the refusal of financial institutions to extend banking services to those companies, has made it nearly impossible for Deripaska to maintain the operation of his businesses.

51.     Members of Congress have acknowledged the devastation being wrought upon Deripaska.  During a vote on a resolution of disapproval regarding the delisting of companies formerly owned or controlled by Deripaska, Senator Michael Crapo, Chairman of the Senate Banking Committee, stated that the primary and secondary sanctions imposed on Deripaska dash

any hope of future deals or income for him.  Further, Senator Crapo noted that those sanctions make transactions with Deripaska radioactive to just about anyone, which is what forced those companies to disentangle themselves from him. 165 CONG. REC. 198 (2019) (statement of Sen. Crapo).

52.     Senator Crapo is correct.  Defendants have used the consequences of Deripaska's designation under E.O. 13661 and E.O. 13662 as leverage to compel companies over which Deripaska formerly exercised ownership or control to require his divestment from, and the relinquishment of his controlling interests in, those companies.  Specifically, Deripaska's former companies—including En+ Group Plc, UC RUSAL plc, and JSC EuroSibEnergo—recently entered into a Terms of Removal Agreement ("TOR") with Defendants, which required the companies to show that Deripaska had divested his majority ownership of, and relinquished his controlling interests in, those companies.  Any future dividend payments from interests retained by Deripaska in those companies will be placed into a blocked account to which Deripaska will have no access so long as he remains subject to U.S. sanctions.  Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Majority Leader (Dec. 19, 2018).

53.     Deripaska's designations have also placed him at significant risk in his home country of Russia.  Gennady Zyuganov of Russia's Communist Party—which holds the second highest number of seats in the Russian Parliament and whose leader has publicly attacked Deripaska and organized rallies against him because of his divestment and relinquishment of control of the companies subject to the TOR—has called for a criminal investigation into Deripaska for acting against the strategic policy and national security of Russia.  *Billionaire Deripaska Sues Communist Leader Zyuganov for Calling His Business 'Biggest Scam'*, RUSSIA

TODAY (Jan. 17, 2019), https://www.rt.com/russia/449033-deripaska-zyuganov-slander-lawsuit (last visited June 19, 2019).

54.     In sum, Defendants' actions against Deripaska have effectively barred him from accessing his own funds, prevented him from securing basic and necessary services to protect his interests, made him radioactive to any person dealing with him anywhere in the world, and exposed him to the threat of criminal investigation in his home country and the confiscation of his businesses there. These consequences will compound so long as Defendants' unlawful actions are maintained.

### E.     Animus and Bias Towards Deripaska

55.     Deripaska has been the subject of persistent vitriolic attacks and scrutiny by the U.S. Government, including by Defendants. This animus towards Deripaska was first made evident in the U.S. Department of the Treasury press release that announced his designations. The press release, as noted above, included a variety of false rumors and malicious innuendo concerning seemingly criminal behavior that are: 1) false; 2) unrelated to the legal criteria for his designation; and 3) irrelevant to the policy objectives underlying the broader U.S. sanctions program.

56.     This bias was also revealed when OFAC began discussing the path forward for companies owned or controlled by Deripaska that may seek delisting from the SDN List. Official guidance from OFAC states that those entities under Deripaska's ownership or control will continue to be sanctioned unless and until he separates himself from them. U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 576 (May 22, 2018); U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 587 (May 22, 2018). Secretary Mnuchin thereafter echoed this position, stating that before any sanctions against the

entities could be removed, Deripaska must first sell his ownership interest in the entities so that his interest falls below the 50 percent threshold.  Saleha Mohsin & Stephanie Flanders, *Mnuchin Says U.S. Isn't Looking to Put Rusal Out of Business*, BLOOMBERG (May 1, 2018).

57.    Defendants' animus towards Deripaska is evident by the section of the administrative record titled "Additional Information," wherein OFAC relates a series of allegations that contain nothing more than false rumor and innuendo and that originate from business rivals and criminal elements with which Deripaska has been at odds.  This section of the administrative record has no relevance to OFAC's determination as to the bases of Deripaska's designations nor to E.O. 13661's designation criteria.  The "Additional Information" section appears to be included for the sole purpose of permitting OFAC to make defamatory accusations against Deripaska in its statements regarding the designation actions.

58.    Congress, whose acquiescence may be sought in any potential future delisting of Deripaska from the SDN List, has similarly demonstrated overt bias against him.  Rep. Maxine Waters, during a debate on a resolution of disapproval regarding the delisting of those companies formerly owned or controlled by Deripaska, expressly stated that Deripaska is a "criminal" and that dealing with Deripaska is "dealing with the enemy." 165 CONG. REC. H694 (2019) (statement of Rep. Waters).  This is despite the fact that Deripaska has never been charged with a crime in the United States or elsewhere.

59.    During this same debate, Rep. Gerry Connolly, after reciting a litany of public allegations against Deripaska—none of which were connected to the legal criteria for designation under E.O. 13661—asked the question: "Does this really sound like someone deserving of exemption from U.S. sanctions?"

60.     On February 18, 2019, Sen. Charles Schumer, the Senate Minority Leader, issued the following statement via Twitter: "How can Oleg Deripaska—a Russian oligarch who interferes in democracies in Europe & America—have the gall to show at Munich Security Conference?  The conference talks about holding back Russian interference! EU friends: We urge imposing additional sanctions on Putin's cronies." Chuck Schumer (@ChuckSchumer), Twitter (Feb. 18, 2019, 2:20 PM), https://twitter.com/SenSchumer/status/1097576721996488712 (last visited June 19, 2019).  Deripaska is not designated by the United States for interfering in European or American elections, election interference is not noted anywhere in the administrative record underlying Deripaska's designations, and Deripaska has not been charged anywhere in the world for interference in democratic processes.  Yet, the Senate Minority Leader—who may play a pivotal role in Deripaska's future delisting—believes that Deripaska should be barred from attending a European conference that promotes peace through dialogue and have EU sanctions imposed upon him because of his purported interference "in democracies in Europe & America."

61.     All of these statements are incorrect and without precedent.  By citing false allegations that are decades old; by deeming Deripaska a criminal absent any charges; and by engaging in a campaign of misinformation regarding Deripaska, Defendants and members of the U.S. Congress reveal a profound animus towards Deripaska that requires him to seek immediate recourse through this Court.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13661 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

62.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

63.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

64.     Defendants' designation of Deripaska under E.O. 13661 and its findings and conclusions in support of this designation are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.

## COUNT II

### DEFENDANTS' ACTION DESIGNATING DERIPASKA UNDER E.O. 13661 VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

65.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

66.     Under the Fifth Amendment to the U.S. Constitution, Deripaska has a right to adequate post-deprivation notice.  Sufficient notice requires Defendants to provide Deripaska with the reasons for his designation so as to permit him a meaningful opportunity to respond.

67.     Defendants have not provided sufficient notice for their decision to designate Deripaska under E.O. 13661 and their concomitant determination that Deripaska meets the criteria for designation under E.O. 13661—i.e., that Deripaska has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation. Defendants have withheld a full statement of reasons for their determination that Deripaska meets the criteria for designation under E.O. 13661 and have denied Deripaska a meaningful opportunity to respond to their decision.  Defendants have thus failed to provide Deripaska with adequate and

fair notice as to the reasons for his designation and have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution.

## COUNT III

### DEFENDANTS' FAILURE TO PROVIDE DERIPASKA NOTICE OF THE BASIS FOR HIS DESIGNATION UNDER E.O. 13661 VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

68.      Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

69.      Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

70.      Defendants' designation of Deripaska under E.O. 13661 and their determination that he meets the criteria for designation under E.O. 13661 is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and/or is without observance of procedure required by law, because Defendants failed to provide Deripaska with notice of the reasons for his designation in violation of the Administrative Procedure Act, 5 U.S.C. 551 *et seq*.

## COUNT IV

### DEFENDANTS' INCLUSION OF DERIPASKA IN THE SECTION 241 REPORT VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

71.      Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

72.      Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

73.     Defendants' criteria for determining whether an individual is an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law because Defendants expressly failed to consider criteria required by CAATSA in identifying persons as "oligarchs"—i.e., that the individuals be identified according to their closeness to the Russian regime and their net worth.

74.     Defendants' criteria for determining whether an individual is an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law because Defendants adopted and applied a definition of the term "oligarch"—i.e., net worth—that betrays the common understanding of the term "oligarch"—i.e., an individual's net worth and political influence.

75.     Defendants' decision to include Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law because Defendants lacked a factual basis to conclude that Deripaska is an "oligarch" for purposes of Section 241 of CAATSA.

## COUNT V

### DEFENDANTS' ACTION IDENTIFYING DERIPASKA IN THE SECTION 241 REPORT VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

76.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

77.     Under the Fifth Amendment of the U.S. Constitution, Deripaska has a due process right to adequate post-deprivation notice.  Due to the harms arising from his inclusion in the

Section 241 Report, Defendants are required to provide Deripaska with sufficient notice as to the reasons for their action against him.  This requires Defendants to provide Deripaska with access to the agency's findings and conclusions regarding his inclusion in the Section 241 Report so as to permit him a meaningful opportunity to respond to that inclusion.

78.     Defendants have not provided sufficient notice for their decision to identify Deripaska in the Section 241 Report and their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA.  Defendants have not disclosed the reasons for their action and their findings and conclusions thereto, but have instead publicly rendered a conclusory finding that Deripaska is an "oligarch" in their Section 241 Report.

79.     Considering the significant harm caused by Defendants' identification of Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him with a full statement of reasons as to the basis for their action and their findings and conclusions in support of that action.

80.     Considering the significant harm caused by Defendants' identification of Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him with an opportunity to challenge his inclusion in the Section 241 Report.

## COUNT VI

### DEFENDANTS' FAILURE TO PROVIDE DERIPASKA WITH SUFFICIENT NOTICE OF THE BASIS FOR THEIR INCLUSION OF DERIPASKA IN THE SECTION 241 REPORT VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

81.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

82.      Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

83.     Defendants' decision to include Deripaska in the Section 241 Report and their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA is not in accordance with law and without observance of procedure required by law because Defendants failed to provide Deripaska with sufficient notice of the reasons, findings, and conclusions in support of that action in violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

## RELIEF REQUESTED

Wherefore, Deripaska respectfully requests that this Court:

A.     Issue an order vacating Deripaska's designation under E.O. 13661;

B.     Order Defendants to rescind Deripaska's designation under E.O. 13661;

C.     Order Defendants to disclose the redacted portions of the evidentiary memorandum and supporting administrative record underlying Deripaska's designation under E.O. 13661 or otherwise provide alternative means by which Deripaska can be provided sufficient notice as to the reasons for his designation under E.O. 13661;

D.     Order Defendants to retract any public statements attributing conduct to Deripaska that is unrelated to the bases for his designation under E.O. 13661, and enjoin Defendants from making such statements in the future;

E.      Order Defendants to rescind their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA and remove his name from the Section 241 Report;

F.      Order Defendants to release any and all records underlying their decision to include Deripaska's name in the Section 241 Report;

G.      Grant an award to Deripaska of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

H.      Any other and further relief as the Court may deem proper.


Dated: June 20, 2019                                 Respectfully submitted,


                                                     /s/ Erich C. Ferrari
                                                     Erich C. Ferrari, Esq.
                                                     FERRARI & ASSOCIATES, P.C.
                                                     1455 Pennsylvania Avenue, NW
                                                     Suite 400
                                                     Washington, D.C. 20004
                                                     Telephone: (202) 280-6370
                                                     Fax: (877) 448-4885
                                                     Email: ferrari@falawpc.com
                                                     D.C. Bar No. 978253

                                                     ATTORNEY FOR PLAINTIFF
                                                     OLEG DERIPASKA