# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLEG DERIPASKA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN T. MNUCHIN, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 19-0727 (APM)

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a) and Local Rule 7(h), Plaintiff Oleg Deripaska hereby moves for summary judgment on the ground that Defendants' actions are arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to procedure required by law, and/or in violation of Plaintiff's Fifth Amendment and administrative right to due process. Plaintiff also respectfully request that this Honorable Court deny Defendants' motion to dismiss and for summary judgment.

In support of this motion and opposition, Plaintiff relies upon the attached memorandum of points and authorities. A proposed order is also attached.

September 2, 2019

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW

Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OLEG DERIPASKA | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 19-0727 (APM) |
| v. | ) |
| | ) |
| STEVEN T. MNUCHIN, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          A.     Deripaska's Identification on the Section 241 List . . . . . . . . . . . . . . . . . 6

          B.     Deripaska's Designation by OFAC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          C.     OFAC's Disclosure of the Administrative Record . . . . . . . . . . . . . . . . . 8

          D.     Deripaska's Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.     Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    Motion to Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.     Deripaska is Entitled to Summary Judgment on Count I Because Defendants Acted Arbitrarily and Capriciously in Determining that He Met the Criteria for Designation Under E.O. 13661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.     Defendants' Designation of Deripaska Constitutes Agency Action that is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law Because Defendants Impermissibly Exercised Their Authority Under IEEPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          B.     The Administrative Record Does Not Provide a Reason to Believe that Deripaska Has Acted or Purported to Act for or on Behalf of a Senior Official of the Government of the Russian Federation. . . . . . . . . . . . . . 15

    II.    Deripaska is Entitled to Summary Judgment on Count II Because Defendants Failed to Provide Him with Adequate Notice as to the Reasons for His Designation Under E.O. 13661 and Acted in Violation of His Due Process Rights Under the Fifth Amendment to the U.S. Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          A.     Defendants Violated Deripaska's Due Process Rights to Notice and a Hearing by Failing to Provide Adequate Notice as to Their Decision to Designate Him Under E.O. 13661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.       Deripaska Has Sufficiently Alleged Minimum Contacts to the United States to Assert a Fifth Amendment Due Process Right . . . . . . . . . . . . . . . . . . 25

III.     Deripaska is Entitled to Summary Judgment on Count III Because Defendants Failed to Provide Him with Adequate Notice as to the Reasons for His Designation Under E.O. 13661 In Violation of the Administrative Procedure Act. . . . . . . . . 28

IV.     Deripaska is Entitled to Summary Judgment on Count IV Because Defendants' Decision to Identify Him on the Section 241 List Constitutes Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act . . . 29

A.       Defendants' Section 241 List Constitutes Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act . . . . . . . . . . . . 30

B.       Defendants' Designation of Deripaska as an "Oligarch" for Purposes of the Section 241 List Constitutes Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act . . . . . . . . . . . . . . . . . . . . . 33

C.       Deripaska's Challenge to the Section 241 List is Subject to Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

D.       Deripaska Has Standing to Challenge His Identification on the Section 241 List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E.       Defendants' Publication of the Section 241 List Constitutes Final Agency Action Reviewable by This Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

V.      Deripaska is Entitled to Summary Judgment on Count V Because Defendants Failed to Provide Him with Any Process to Challenge His Inclusion on the Section 241 List in Violation of His Constitutional Due Process Rights . . . . . . . . . . . 39

A.       Defendants Violated Deripaska's Due Process Right to Notice by Failing to Provide Him Adequate Notice as to the Reasons for His Inclusion on the Section 241 List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

B.       Defendants Violated Deripaska's Due Process Right to a Hearing by Failing to Provide Him Any Opportunity to Challenge His Inclusion on the Section 241 List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

C.       Deripaska Has Sufficiently Alleged Minimum Contacts to the United States to Assert a Fifth Amendment Due Process Right . . . . . . . . . . . . . . . . . . 43

VI.     Deripaska is Entitled to Summary Judgment on Count VI Because Defendants Failed to Provide Him with Adequate Notice as to the Reasons for His Inclusion on the Section 241 List in Violation of the Administrative Procedure Act. . . . . . . . . 44

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Aktieselskabet v. Fame Jeans*, 525 F.3d 8 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,

    686 F.3d 965 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Barnhart v. Thomas*, 540 U.S. 20 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bowman Transp., Inc. v. Arkansas Best Freight System, Inc.*, 419 U.S. 281 (1974) . . . . 15, 30, 34

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) . . . . . . . . . . . . . . . . . . . . . 15

*Carter v. George Washington Univ.*, 387 F.3d 872 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 10

*Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . 36

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . 15

*Empresa Cubana Exportadora v. U.S. Dep't of Treasury*,

    516 F. Supp. 2d 43 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 30, 34

*Fares v. Smith*, 249 F. Supp. 3d 115 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) . . . . . . . . . .12, 16

*Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Joumaa v. Mnuchin*, 1:17-cv-02780 (D.D.C. April 10, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 26, 27

*Kiareldeen v. Ashcroft*, 273 F.3d 542 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kindhearts for Charitable Humanitarian Dev. v. Geithner*,

    647 F. Supp. 2d 857 (N.D. Ohio 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*,

    330 F. Supp. 3d 477, 487 (D.D.C. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Lockhart v. United States*, 136 S. Ct. 958 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,

    826 F.3d 492 (D.C. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Mathews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 40, 42

*Morrissey v. Brewer*, 408 U.S. 471 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Mosrie v. Barry*, 718 F.2d 1151 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,

    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*,

    417 F.3d 1272 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001) . . *passim*

*Nat'l Resources Def. Council v. Hodel*, 865 F.2d 288 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . 34, 35

*OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20 (D.D.C. 2005) . . . . . . . . . . . 32

*Roelofs v. Sec. of the Air Force*, 628 F.2d 594 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . 28, 44

*SEC v. Chenery* Corp., 332 U.S. 194 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Sierra Club v. Jewell*, 764 F.3d 1 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tourus Records v. DEA*, 259 F.3d 731 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 44

*United States v. Tajideen*, 319 F. Supp. 3d 445 (D.D.C. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams-Jones v. LaHood*, 656 F. Supp. 2d 63 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zevallos v. Obama*, 10 F. Supp. 3d 111 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

**STATUTES**

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

22 U.S.C. § 8909 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22 U.S.C. § 8924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

50 U.S.C. § 1701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

50 U.S.C. § 1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Countering America's Adversaries Through Sanctions Act,

    Pub. L. No. 115-44, 131 Stat. 886 (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**EXECUTIVE ORDERS**

Executive Order 13661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Executive Order 13662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 8

**REGULATIONS**

31 C.F.R. § 501.807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

31 C.F.R. § 589.101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

31 C.F.R. § 589.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

31 C.F.R. § 589.406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**RULES**

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INTRODUCTION

In April 2018, Defendants targeted a number of Russian businessmen pursuant to U.S. economic sanctions authorities. The administrative record underlying the designation of one of these targets—Oleg Deripaska, himself a high-profile international businessman—shows that his designation was nothing other than one of political convenience and expediency, which allowed the Defendants to purport to be taking strong action to counter the Russian government's "worldwide malign activities."

Deripaska, however, does not meet the legal criteria for sanctioning, nor was he appropriately sanctioned by the Defendants. The first indication that the Defendants misapplied sanctions to Deripaska was found in the press release issued by the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") at the time of his designation. With respect to Deripaska, that press release contained baseless allegations of conduct that was irrelevant to the legal criteria for designation under Executive Order ("E.O.") 13661 or E.O. 13662. In publishing these allegations, Defendants slandered Deripaska and sullied his reputation, despite knowing that they had not relied on those allegations in support of their decision to designate him. In doing so, Defendants generated an animus towards Deripaska that has rendered any future relaxation of economic sanctions against him exceedingly difficult.

Defendants have a motive for generating this animus. It is clear from reviewing OFAC's press release and the administrative record provided to Deripaska that the legal grounds invoked for his designation under E.O. 13661 are dubious. First, the press release states that Deripaska's designation responds to Russia's "worldwide malign activities." However, there is no declared national emergency with respect to Russia's "worldwide malign activities," which means that OFAC impermissibly used E.O. 13661 to address a threat that has not been declared a national

emergency.   Second, the conclusions made in support of OFAC's designation action are inconsistent with the legal criteria under which Deripaska was designated.   Defendants conflate support for "projects" of a senior official of the Russian Federation Government with the existence of an agency relationship between Deripaska and that senior official.   Third, assuming *arguendo* that OFAC's conclusions were appropriate—they are not—Defendants relied on decade-old news articles identifying allegations that are contradicted elsewhere in the record; are immaterial; and do not evidence that Deripaska meets the basis for designation.   Finally, for an agency that has repeatedly noted that its sanctions are for the express purpose of inducing "a positive change in behavior," it is unclear what Deripaska can possibly do to remediate conduct that is alleged to have occurred more than a decade ago.   U.S. Dep't of Treasury, Office of Foreign Assets Control, Filing a Petition for Removal from an OFAC List (last updated May 2, 2017).

Further, Defendants have obscured much of the record, leaving Deripaska unable to understand the reasons underlying his unlawful designation and thus preventing him from meaningfully challenging it.   Specifically, OFAC entirely redacted eight of the nine paragraphs in the evidentiary memorandum describing the factual basis for its designation of Deripaska, and— contrary to both legal standards and the agency's established practice—OFAC has not provided Deripaska any alternative means to learn of the reasons for his designation.

Defendants' designation of Deripaska as a Russian "oligarch" and identification of him on the list compiled pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act ("CAATSA") stands on no better legal grounds.   The Section 241 List adopts a definition of "oligarch" that defies clear statutory command and is simply unsupportable.   Indeed, on its face, Defendants' "methodology" for designating a person as an "oligarch"—i.e., persons with "an estimated net worth of $1 billion or more"—is unreasonable and unlawful, given its

violation of canons of statutory construction, and the potential rendering of every billionaire in the world an "oligarch." Press Release, U.S. Dep't of Treasury, Treasury Releases CAATSA Reports, Including on Senior Foreign Political Figures and Oligarchs in the Russian Federation (Jan. 29, 2018).

Remarkably, Defendants seek to argue that this is of little consequence because their "oligarch" designation is not subject to judicial review and purportedly had no legal effect. In making this argument, Defendants ignore the purpose of the statute mandating the Section 241 List in the first place—i.e., to identify parties for sanctioning. Further, Defendants ignore their own repeated public statements warning of the impending imposition of sanctions against those on the list and their later public admission that the sanctions designation of Deripaska flowed from his inclusion on that list.

The result of Defendants' unlawful actions has been the evisceration of Deripaska's fortune, his forced separation from companies he spent decades building, and his vilification before the world such that he has been rendered "toxic" to the international business community. The fact that Defendants wield such enormous power without regard for the legal limits of their authorities is the ultimate subject of this lawsuit and is the reason that Deripaska seeks this Court's intervention.

## BACKGROUND

### I.   STATUTORY AND REGULATORY BACKGROUND

#### A.   International Emergency Economic Powers Act

The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, is the statutory basis for most U.S. economic sanctions implemented and administered by Defendants, including those imposed under E.O. 13661 and the Ukraine-Related Sanctions

Regulations, 31 C.F.R. Part 589.  IEEPA permits the President "to deal with any unusual or extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a).  IEEPA provides the President power to "regulate, . . . prevent or prohibit, . . . any importation or exportation of, or dealing in, . . . transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).  IEEPA specifies, however, that these powers "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared . . ." 50 U.S.C. § 1701(b).

### B.    *Executive Order 13661*

On March 16, 2014, President Obama promulgated E.O. 13661 in response to "the actions and policies of the Government of the Russian Federation with respect to Ukraine." Exec. Order No. 13661, Preamble, 3 C.F.R 13661 (2015).  E.O. 13661 specifically identifies such actions and policies as those which: a) undermine democratic processes and institutions in Ukraine; b) threaten its peace, security, stability, sovereignty, and territorial integrity; and c) contribute to the misappropriation of its assets. *Id.*

In order to address the national emergency declared with respect to Russia's actions and policies, E.O. 13661 authorizes the Secretary of the Treasury to impose sanctions on, *inter alia*, persons determined "to have acted or purported to act for or on behalf of . . . a senior official of the Government of the Russian Federation." Exec. Order No. 13661, § 1(a)(C)(1).  In addition, E.O. 13661 authorizes sanctions on persons determined to have materially assisted or sponsored a

senior official of the Government of the Russian Federation, as well as persons who have provided financial, material, or technological support for, or goods or services to or in support of, any such senior official. Exec. Order. 13661, § 1(a)(D)(1).  All assets subject to U.S. jurisdiction in which persons designated under E.O. 13661 have an interest are blocked (or "frozen"), and U.S. persons are generally prohibited from engaging in any transactions with them. Exec. Order No. 13661, §§ 1(a), 4, and 5.

### C.    Ukraine-Related Sanctions Regulations

On May 2, 2014, OFAC issued the Ukraine-Related Sanctions Regulations ("URSR"), 31 C.F.R. Part 589, to implement E.O. 13660, 13661, and 13662.  The URSR prohibits, *inter alia*, all transactions that are prohibited by E.O. 13661. 31 C.F.R. § 589.201.  The names of persons designated under E.O. 13661 are incorporated into OFAC's SDN List with the identifying program tag "[UKRAINE-EO13661]." 31 C.F.R. § 589.201 Note 1.  The URSR also incorporate the recordkeeping and reporting requirements and license application and other procedures identified in the Reporting, Procedures, and Penalties Regulations, 31 C.F.R. Part 501.  31 C.F.R. § 589.101.

### D.    Countering America's Adversaries Through Sanctions Act

On August 2, 2017, Congress enacted the Countering America's Adversaries Through Sanctions Act ("CAATSA"), which, *inter alia*, imposed additional sanctions on, and established reporting requirements with respect to, Russia.

CAATSA codified U.S. sanctions relating to the Russian Federation, including E.O. 13661. 22 U.S.C. § 9522.  In addition, the statute amended certain U.S. secondary sanctions authorities relating to the Russian Federation.  For instance, CAATSA amended the Ukraine Freedom Support Act of 2014 to require the President to sanction foreign financial institutions determined to have

knowingly facilitated a significant financial transaction on behalf of any Russian person included on OFAC's SDN List pursuant to E.O. 13661. 22 U.S.C. § 8924(b).  CAATSA also amended the Support for the Sovereignty, Integrity, Democracy, and Economic Stability of Ukraine Act of 2014 to require the President to sanction foreign persons determined to knowingly facilitate significant transactions for or on behalf of any person sanctioned under legal authorities targeting the Russian Federation. 22 U.S.C. § 8909(a)(2).

For purposes relevant herein, Section 241 of CAATSA also required the Secretary of the Treasury to submit a report to Congress that, *inter alia*, identifies the most significant senior foreign political figures and oligarchs in Russia, "as determined by their closeness to the Russian regime and their net worth . . ." Countering America's Adversaries Through Sanctions Act § 241, Pub. L. No. 115-44, 131 Stat. 886 (2017).  This report was to be submitted in unclassified form, although it could "contain a classified annex." *Id*.  Congress sought this report to help it assess "[t]he potential impacts of imposing secondary sanctions with respect to Russian oligarchs . . ." Countering America's Adversaries Through Sanctions Act § 241(a)(5).

## II.   STATEMENT OF FACTS

### A.   *Deripaska's Identification on the Section 241 List*

On January 29, 2018, the United States Department of the Treasury issued the Section 241 List of senior political figures and oligarchs in the Russian Federation consistent with its statutory obligations under CAATSA. U.S. DEP'T OF THE TREASURY, REPORT TO CONGRESS PURSUANT TO SECTION 241 OF THE COUNTERING AMERICA'S ADVERSARIES THROUGH SANCTIONS ACT OF 2017 REGARDING SENIOR FOREIGN POLITICAL FIGURES AND OLIGARCHS IN THE RUSSIAN FEDERATION AND RUSSIAN PARASTATAL ENTITIES (2018).  In the unclassified version, the Section 241 List

included Deripaska's name in Appendix B as an "oligarch." *Id*.  According to this report, the U.S. Department of the Treasury determined the list of oligarchs based on whether an individual "ha[d] an estimated net worth of $1 billion or more." *Id*.  Individuals determined by the Secretary of the Treasury to meet this criterion were identified in Appendix B of the report. *Id*.

      B.     *Deripaska's Designation by OFAC*

On April 6, 2018, OFAC designated Deripaska—a high-profile international businessman—pursuant to E.O. 13661 for allegedly "having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation . . ." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).  In support of this action, Defendants' press release stated that Deripaska "has said that he does not separate himself from the Russian state" and "has also acknowledged possessing a Russian diplomatic passport." *Id*.  According to OFAC, Deripaska has also "claim[ed] to have represented the Russian government in other countries." *Id*.  OFAC also presented numerous allegations of seemingly illicit conduct irrelevant to any legal criteria for designation under E.O. 13661. *Id*.

As the result of his designation, all of Deripaska's property and interests in property under U.S. jurisdiction are blocked. 31 C.F.R. § 589.201.  All entities in which he owns a 50 percent or greater interest are also similarly blocked. 31 C.F.R. § 589.406.  In addition, U.S. persons are generally prohibited from transacting or dealing with Deripaska or entities in which he owns a 50 percent or greater interest. 31 C.F.R. § 589.201.  Furthermore, as OFAC's press release notes, non-U.S. persons could be sanctioned for knowingly facilitating significant transactions for or on behalf

of Deripaska or companies blocked for operating under his ownership or control. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).

### C.   OFAC's Disclosure of the Administrative Record

On March 15, 2019, Deripaska filed a lawsuit challenging his designation under E.O. 13661 and E.O. 13662. Complaint, ¶ 1, ECF No. 1.  In response to that filing, Defendants provided Deripaska with a redacted version of the administrative record relied upon to designate him under those authorities.  That record included a redacted evidentiary memorandum that purported to provide the factual and legal bases underlying OFAC's decision to designate him. Admin. R. 00009-000017 ("AR").  The redacted version of the administrative record has since been filed on the public docket. ECF No. 6-1.

Section III of the evidentiary memorandum is titled "Basis for Determination."  AR 000011. It identifies the legal criteria for Deripaska's designation under E.O. 13661 through OFAC's determination that Deripaska "has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation." *Id*.  In support of this legal determination, OFAC's evidentiary memorandum identifies the agency's factual conclusion that "DERIPASKA has acted in support of Russian President Vladimir Putin's projects." *Id*.  The rest of the section provides factual support (or "findings") for OFAC's conclusion and its legal determination that Deripaska meets the criteria for designation under E.O. 13661.  In the version provided to Deripaska, eight of the nine paragraphs identifying OFAC's findings are entirely redacted. AR 00011-000012.

The sole unredacted paragraph cites an article in *The Nation* titled "McCain's Kremlin ties" that is more than a decade old, which discusses events alleged to have occurred 15 years ago. This paragraph is the sole notice afforded to Deripaska as to the reasons for OFAC's determination that he meets the criteria for designation under E.O. 13661 and its decision to designate him under that Order.

### D.     *Deripaska's Amended Complaint*

Following Defendants' provision of the administrative record, Deripaska amended his complaint. Amended Complaint, ¶1, ECF No. 7. The Amended Complaint challenges OFAC's decision to designate Deripaska under E.O. 13661, as well as OFAC's failure to provide adequate notice as to the reasons for the designation. *Id.* at ¶¶ 62-70. Specifically, the Amended Complaint argues that Defendants' decision to designate Deripaska under E.O. 13661 constitutes arbitrary or capricious agency action under 5 U.S.C. § 706(A)(2). *Id.* at ¶¶ 62-64. It further argues that Defendants' failure to provide Deripaska with adequate notice as to the reasons for his designation violates his Fifth Amendment right to due process and the APA's notice requirement. *Id*. at ¶¶ 65-70.

The Amended Complaint also challenges Defendants' decision to include Deripaska on the Section 241 List, their failure to provide him notice as to the reasons for his inclusion on that list, and a process by which to challenge his inclusion on it. *Id*. at ¶¶ 71-83. Specifically, the Amended Complaint argues that Defendants' decision to include Deripaska on the Section 241 List is arbitrary and capricious, an abuse of discretion, not in accordance with law, or otherwise without observance of procedure required by law for three discernible reasons. *Id*. at ¶¶ 71-75. First, Defendants failed to consider the criteria mandated by CAATSA for making a determination as to

whether Deripaska qualifies as an "oligarch." *Id*.  Second, Defendants applied the term "oligarch" in a way that defies plain meaning and common understanding. *Id*.  And third, Defendants lacked a factual basis to conclude that Deripaska is an "oligarch," even as that term was erroneously interpreted by Defendants. *Id*.

The Amended Complaint seeks declaratory and injunctive relief from this Court. Requested relief includes, *inter alia*, an order requiring Defendants to vacate Deripaska's designation under E.O. 13661 and his identification on the Section 241 List, as well as an order mandating that Defendants disclose all of the reasons for Deripaska's designation under E.O. 13661 and his inclusion on the Section 241 List. Am. Compl., Relief Requested, ECF No. 7.

## LEGAL STANDARDS

### I.    LEGAL STANDARDS

####     A.    *Summary Judgment Standard*

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A dispute is 'genuine' only if a reasonable fact-finder could find for the nonmoving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Granting summary judgment is appropriate if "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

### B.       Motion to Dismiss Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).  In resolving a Rule 12(b)(6) motion, "the court must treat the complaint's factual allegations – including mixed questions of law and facts—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Williams-Jones v. LaHood*, 656 F. Supp. 2d 63, 67 (D.D.C. 2009).  To survive a motion to dismiss, the facts alleged must state a facially plausible claim for relief and the court must accept as true all material factual allegations in the complaint. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007).  A court "must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is remote and unlikely." *Aktieselskabet v. Fame Jeans*, 525 F.3d 8, 17 (D.C. Cir. 2008); *See generally Twombly*, 550 U.S. at 554 (2007).

**DISCUSSION**

11

I.    **DERIPASKA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE DEFENDANTS ACTED ARBITRARILY AND CAPRICIOUSLY IN DETERMINING THAT HE MET THE CRITERIA FOR DESIGNATION UNDER E.O. 13661**

Defendants' determination that Deripaska has acted or purported to act for or on behalf, directly or indirectly, a senior official of the Government of the Russian Federation constitutes arbitrary and capricious agency action.  This is, in part, because Deripaska's designation was made in response to an undeclared national emergency in violation of IEEPA and the APA.  In addition, Defendants' conclusion that Deripaska "has acted in support of Russian President Vladimir Putin's projects" does not evidence or otherwise provide reason to believe that Deripaska has acted as an agent of Russian President Vladimir Putin, as required for purposes of E.O. 13661 § 1(a)(C)(1). For these reasons, this Court should award summary judgment for Deripaska with respect to Count I of the Amended Complaint.

A.    *Defendants' Designation of Deripaska Constitutes Agency Action that is Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Not In Accordance with Law Because Defendants Impermissibly Exercised Their Authority Under IEEPA*

A court reviewing agency action shall set aside and hold unlawful agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).  While courts have traditionally shown deference towards OFAC's decision-making processes, that deference does not render OFAC immune from the court's scrutiny. *See Holy Land Found.*, 333 F.3d 156, 162 (D.C. Cir. 2003) (finding that a court must still "review the agency record to determine whether the agency's decision was supported by a rational basis.").  At the very least, a court must ensure that the President's exercise of his broad authorities under IEEPA with respect to a new threat is "based on a new declaration of a national emergency which must be with respect to such threat." 50 U.S.C. § 1701(b).  Courts

have held OFAC to this statutory requirement, noting that the President's exercise of IEEPA's powers "is not all-encompassing and without limitation, as IEEPA directs '[a]ny exercise of [] authorities to deal with any new threat [to] be based on a new declaration of national emergency with respect to that threat.*United States v. Tajideen*, 319 F. Supp. 3d 445, 455 (D.D.C. 2018).

The title and content of Defendants' press release announcing Deripaska's designation clearly demonstrates that OFAC designated him in response to Russia's "worldwide malign activity." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). Indeed, the press release quotes Treasury Secretary Mnuchin's rationale for the designation. According to Secretary Mnuchin, the designation was made in response to "[t]he Russian government engag[ing] in a range of malign activity around the globe, including continuing to occupy Crimea and instigate violence in eastern Ukraine, supplying the Assad regime with material and weaponry as they bomb their own civilians, attempting to subvert Western democracies, and malicious cyber activities." *Id*. Secretary Mnuchin stated further that the designation action would send a signal that "Russian oligarchs and elites who profit from this corrupt system will no longer be insulated from the consequences of their government's destabilizing activities." *Id*.

Yet, no President has declared a national emergency with respect to Russia's "worldwide malign activities." Further, Russia's "worldwide malign activities" are not a threat identified in E.O. 13661 nor are most of the identified elements of those activities, including, for instance, Russia's "supplying the Assad regime with material and weaponry," Russia's "attempt[] to subvert Western democracies," and Russia's "malicious cyber activities." See Exec. Order No. 13661, Preamble, 79 Fed. Reg. 15535 (March 19, 2014).

Instead, E.O. 13661 was issued in response to "the actions and policies of the Government of the Russian Federation with respect to Ukraine," which "undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets." *Id.*, Preamble.  That is a far cry from a declaration of a national emergency with respect to Russia's "worldwide malign activities."

Defendants' unlawful action undermines the very purposes for which IEEPA was enacted. The purpose of IEEPA was to limit the President's authority to regulate international economic transactions during wars or national emergencies. 7 S. Rep. No. 466, 95th Cong., 1st Sess. 2, *reprinted in* 1977 U.S. CODE CONG. & AD. NEWS 4540, 4541.  By enacting IEEPA, Congress sought to constrain the Executive in response to its extensive use of the Trading With the Enemy Act of 1917 ("TWEA"), and the TWEA's carve-outs to the National Emergencies Act of 1977 ("NEA"), which had established safeguards for the role of Congress in declaring and terminating national emergencies. *Id.*  IEEPA provided that the President may only use its emergency economic powers pursuant to a declared emergency and only specifically for that purpose. 123 CONG. REC. 22,475 (1977) (statement of Rep. Bingham).

In order to be legally sufficient, then, Deripaska's designation under E.O. 13661 must be tailored to the scope of the national emergency that the E.O. 13661 is intended to address—i.e., Russia's "actions and policies . . . with respect to Ukraine."  Because Deripaska's designation was expressly undertaken in response to Russia's "worldwide malign activities" and not specifically tailored as a response to Russia's actions and policies with respect to Ukraine, the designation was made to address a threat for which IEEPA-based sanctions are inapplicable.  In other words, Defendants designated Deripaska in response to a threat for which no national emergency exists, rendering OFAC's action an unlawful exercise of its delegated authorities under IEEPA.  For this

reason, Defendants' designation of Deripaska is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA.   Summary judgment should therefore be granted to Deripaska with respect to Count I.

> B.      *The Administrative Record Does Not Provide a Reason to Believe that Deripaska Has Acted or Purported to Act for or on Behalf of a Senior Official of the Government of the Russian Federation*

In conducting its arbitrary and capricious review of agency action, a court must determine, as a matter of law, whether "the evidence in the administrative record permitted the agency to make the decision it did."   *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006).   This includes determining whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"   *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). While an agency's decision is entitled to a "presumption of regularity," a court must nevertheless conduct a "thorough, probing, in-depth review."   *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).

When applying the "arbitrary and capricious" standard of review, a reviewing court must determine whether, *inter alia*, the agency relied on factors not intended for its consideration or explained its ultimate decision in a way that contradicts the evidence before it. *Empresa Cubana Exportadora v. U.S. Dep't of Treasury*, 516 F. Supp. 2d 43, 53 (D.D.C. 2007) (citing *Bowman Transp., Inc. v. Arkansas Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).   In conducting this review, a court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Bowman Transp., Inc.*, 419 U.S. at 285-86.   Rather, a court is limited to judging the permissibility of the agency's action solely on the basis of the explanation offered by the agency.

*SEC v. Chenery* Corp., 332 U.S. 194, 196 (1947) (stating further that the court "is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). A court's review is no different in cases involving U.S. national security or foreign policy. *See Holy Land Found. v. Ashcroft*, 333 F.3d 156, 162 (D.C. Cir. 2003) (finding that a court must still "review the agency record to determine whether the agency's decision was supported by a rational basis.").

Here, Defendants provided Deripaska with the redacted administrative record—including a evidentiary memorandum—underlying its decision to designate him under E.O. 13661. AR at 000001-000186. This record includes a section titled "Basis for Determination," in which OFAC identifies the legal and factual basis for its determination that Deripaska meets the legal criteria for designation under E.O. 13661. AR at 000011. First, this section identifies its legal determination—tracking the language of E.O. 13661—that Deripaska "has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation." *Id.* Second, it identifies the sole factual conclusion supporting that determination— i.e., that Deripaska "has acted in support of Russian President Vladimir Putin's projects." *Id.* Finally, it provides the findings supporting that conclusion—eight of which are entirely redacted in the version of the record provided to Deripaska. The sole unredacted paragraph cites to an October 2008 article in *The Nation* titled "McCain's Kremlin Ties," which reports that Deripaska is alleged to have told a "close associate[] that he bought an aluminum plant in Montenegro in 2005 'because Putin encouraged him to do it . . .'" *Id.*

As an initial matter, the evidentiary memorandum contains a footnote identifying OFAC's assessment that Deripaska "has acted on behalf of senior Russian officials, such as President Vladimir Putin, as demonstrated by the information in this evidentiary memorandum." AR at

16

000011, n. 2.   The substantive portions of the evidentiary memorandum do not clarify the ambiguity raised by the reference to "senior Russian officials *such as* President Vladimir Putin." *Id.* (emphasis added).   The evidentiary memorandum also does not reflect whether OFAC concluded that (1) Deripaska has acted on behalf of senior Russian officials exclusively through alleged "support of [Putin's] projects," or (2) Deripaska has acted on behalf of other unidentified senior Russian officials.   Further, the evidentiary memorandum, as revealed to Deripaska, is not clear as to whether Deripaska's designation is, in fact, solely for allegedly acting for on behalf of Russian President Putin or if it is predicated on acting for or on behalf of unidentified senior Russian officials as well.

E.O. 13661 permits the Secretary of the Treasury to designate persons determined "to have acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation." Exec. Order No. 13661, 79 Fed. Reg. 15535 (March 19, 2014).   To act for or on behalf of a person is to act as that person's agent; it is this agency relationship that is at issue when the Secretary of the Treasury makes the kind of designation it imposed on Deripaska.   This understanding is reflected in OFAC's own regulations promulgated with respect to other sanctions programs. *See e.g.*, 31 C.F.R. § 597.301(a)(2) (defining "agent" to mean any person that is, or has been, acting or purporting to act, directly or indirectly, on behalf of a foreign terrorist organization.)

OFAC, however, did not conclude that Deripaska acted or purported to act as Putin's agent—i.e., for or on behalf of Putin.   Instead, it merely concluded that he acted in "support of Russian President Vladimir Putin's projects." AR 000011.   This conclusion, on its face, fails to demonstrate that Deripaska has acted or purported to act as an agent of Russian President Vladimir Putin.   This insufficiency is brought into stark relief when reviewing the bases for designation

under E.O. 13661, which includes distinct authority to designate persons who act for or on behalf of a senior Russian government official, as well as those who provide material support for a senior Russian government official.

As these criteria are separate and distinct from each other, they must not be co-extensive. Section 1(a)(C)(1) of E.O. 13661—the subsection under which Deripaska is designated—targets a purported agency relationship between the sanctions target and a senior official of the Government of the Russian Federation, while § 1(a)(D)(1) of E.O. 13661 targets the provision of material support to a senior official of the Government of the Russian Federation.  Mere support to a senior official of the Government of the Russian Federation, viewed in isolation from any other evidence, would not serve as the basis for a designation made with respect to "acting for or on behalf of" a senior official.

Despite this clear legal distinction, OFAC has merely concluded that Deripaska has acted in support of Russian President Vladimir Putin's projects, not that he acted on President Putin's behalf with regard to any purported projects. AR at 000011.  Thus, OFAC's conclusion does not provide a legal basis to determine that Deripaska acted for or on behalf of a senior official of the Government of the Russian Federation.  Accordingly, OFAC's reliance on that conclusion to support its determination that Deripaska's alleged conduct satisfies the legal criteria for designation under Section 1(a)(C)(1) of E.O. 13661 constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA. Moreover, it should be noted that Deripaska rejects that conclusion, as well as any conclusion that OFAC alleges to serve as support for a finding that he acts for or on behalf of President Putin or otherwise purports to do so.

Moreover, OFAC did not conclude that Deripaska has acted in support of Russian President Vladimir Putin, but only Putin's "projects." *Id*. OFAC ignores the obvious distinction between its legal determination that Deripaska "has acted or purported to act for or on behalf of" Russian President Putin and its factual conclusion that Deripaska has acted in support of Putin's "projects." *Id.* OFAC provides no explanation as to how it determined that support for a project associated with a specific individual is the equivalent of acting for or on their behalf. This failure defies the long-standing command that an agency must "articulate a satisfactory explanation for its action . . ." *Motor Vehicle Mfrs. Assn, Inc.*, 462 U.S. at 43. Because the Court "must judge the propriety of [the agency] action solely by the grounds invoked by the agency," *Chenery* Corp., 332 U.S. at 196, and because OFAC has failed to adequately explain its leap of logic, the Court should grant summary judgment to Deripaska on Count I.

II. **DERIPASKA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE DEFENDANTS FAILED TO PROVIDE HIM WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13661 AND ACTED IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION**

By failing to provide Deripaska with the full reasons for his designation under E.O. 13661, Defendants have violated his Fifth Amendment due process rights. Deripaska respectfully requests that the Court grant summary judgment in his favor as to Count II and issue an order directing Defendants either to disclose the redacted portions of the administrative record or to provide alternative means by which Deripaska can understand the reasons for his designation so that he has a meaningful opportunity to respond to the designation.

A. *Defendants Violated Deripaska's Due Process Rights to Notice and a Hearing by Failing to Provide Adequate Notice as to Their Decision to Designate Him Under E.O. 13661*

A person must be provided notice and a hearing before the government can constitutionally deprive them of a protected interest. *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). While due process is a "flexible" concept, requiring only "such procedural protections as the particular situation demands," *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) (quoting *Mathews*, 424 U.S. at 334-35), it ensures that persons are afforded a meaningful opportunity to be heard. *Mathews*, 424 U.S. at 333 (1976). Such procedural protections are applicable in cases where foreign nationals have challenged their designations by OFAC. *See Fares v. Smith*, 901 F.3d 315, 323 (D.C. Cir. 2018) (noting that "[t]o determine whether OFAC's designation of a plaintiff provides constitutionally adequate notice—enabling him meaningfully to avail himself of his opportunity to be heard—courts weigh [the] three factors under the familiar *Mathews v. Eldridge* balancing test . . .").

While the D.C. Circuit has held that—with respect to foreign terrorist organizations—it has tolerated an approach by which due process merely requires the disclosure of only the unclassified portions of the administrative record, that approach has only been "countenanced . . . in very limited, statutorily recognized circumstances…" *Fares*, 901 F.3d at 319. It has further clarified that even "in [this] narrow category of cases," other procedural safeguards provide meaningful protections of due process, including adequate notice. *Id.* For instance, the D.C. Circuit has ensured a designated person is provided adequate notice as to the reasons for their designation by authorizing "strictly necessary adaptations of ordinary administrative and judicial process." *Id.* at 324. This includes requiring the government to provide designated persons "with sufficiently specific 'unclassified summaries . . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations'" that have been otherwise withheld from disclosure. *Id.* at

324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)); *see also Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. Cir. 2014) (stating that where the classified record is essential to supporting OFAC's determination, the government may be required to make disclosures that provide the designee with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence.").

Considering the alternative means by which OFAC may disclose the reasons for a person's designation, courts have warned against partial disclosure of the factual bases for a designation. *See Fares*, 901 F.3d at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . ."). Indeed, where OFAC disclosed "only one of three reasons for its investigation and designation," the Ninth Circuit held that such "incomplete notice does not meet the requirements of due process." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012). Instead, due process requires that designated parties have an opportunity to present evidence to rebut the administrative record or otherwise negate the claim that they meet the legal criteria for designation. *Nat'l Council of Resistance of Iran*, 251 F.3d at 209.

Defendants distort this jurisprudence and instead selectively choose portions of the relevant case law to support its limited disclosures all the while ignoring the most recent developments in the D.C. Circuit. As an initial matter, Deripaska first learned of his designation when Defendants published a press release announcing it. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). That press release rehearsed the legal criteria for designation under E.O. 13661—stating that Deripaska had been designated pursuant to E.O. 13661 "for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of

21

the Government of the Russian Federation." *Id*.   It then made a series of allegations about Deripaska that were untethered from and irrelevant to the legal criteria for his designation. *Id*.

The administrative record confirms the irrelevance of those allegations.   None of the allegations contained in the press release were included in the section of the record titled "Basis for Determination."   Instead, they were contained within a section titled "Additional Information."   Other than providing notice as to the legal authority under which Deripaska was designated, Defendants' press release trafficked in misinformation, which would have led him to rebut allegations of no particular relevance to his designation if not for disclosure of the administrative record made in response to this instant lawsuit.   Indeed, OFAC appears to have incorporated these spurious, uncorroborated, and irrelevant allegations into the administrative record solely to provide derogatory information for the press release.   This is particularly troubling, considering that Defendants have previously cited their press releases as constituting effective notice to sanctioned parties as to the reasons for a designation. *See, e.g.*, *Al Haramain Islamic Found. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012); *Olenga v. Gacki*, 1:19-cv-01135 (RDM), ECF No. 6, Defs. Motion to Dismiss or, in the Alternative, for Summary Judgment (D.D.C. June 28, 2019).

The reasons for Deripaska's designation—to the extent they are revealed—are found in the "Basis for Determination" section of the evidentiary memorandum. AR at 000011.   That section identifies Section (a)(1)(C) of E.O. 13661 as the legal authority pursuant to which OFAC designated Deripaska. *Id*.   Further, it identifies the conclusion that led to this legal determination— i.e., that Deripaska "has acted in support of Russian President Vladimir Putin's projects." *Id*.   In ostensible support of this conclusion are the nine paragraphs comprising the remainder of the "Basis for Determination" section related to Deripaska's E.O. 13661 designation—eight of which are entirely redacted in the version provided to Deripaska. *Id*. at 000011-000012.   OFAC did not

include alongside its disclosure of the record an unclassified summary of classified or otherwise privileged information contained in the administrative record and has not provided any alternative means by which Deripaska can understand the reasons for his designation under E.O. 13661.

The significant redactions in the disclosed administrative record and the lack of any alternative means permitting Deripaska to understand the reasons behind those redactions, deprive him of a meaningful opportunity to respond to his designation. Yet, Defendants attempt to defend OFAC's disclosure of the legal authority under which Deripaska is designated; the conclusion for which that authority is invoked; and one of nine paragraphs supporting that conclusion, as being sufficient for purposes of satisfying their constitutional due process obligations.

No court has ever found due process satisfied where so little information as to the reasons for a designation were provided to the designee, and Defendants' reliance on *Zevallos* is unavailing. First, Defendants' claims that the *Zevallos* court held that "disclosure of unclassified portions of the record . . . satisfied due process requirements of adequate notice," Defs. Mot. to Dismiss at 23, ECF. No. 9, are misleading. In that case, the D.C. Circuit determined that Zevallos was equipped to rebut Treasury's rationale following its disclosures to him in September 2005 as those disclosures has adequately apprised Zevallos as to the basis for his designation. *Zevallos*, 793 F.3d at 117. Further, OFAC's redacted evidentiary memorandum prepared in response to Zevallos' 2013 challenge—which is what was at issue in *Zevallos*—contained six separate conclusions in support of Zevallos' designation for which there were 114 unclassified paragraphs of findings out of a total 155 such paragraphs that were made available to Zevallos. Joint Appendix, at JA 392-425, *Zevallos v. Obama*, No. 14-5059 (D.C. Cir. Nov. 24, 2014).

The same cannot be said for Deripaska, who—even by Defendants' own admission—lacks any access whatsoever to eight of the nine paragraphs contained in the evidentiary memorandum that are relied upon by OFAC in determining that he meets the basis for designation under E.O. 13661. *See* Defs. Mot. to Dismiss at 10, ECF. No. 9 (noting that "[u]nder the heading 'Deripaska Has Acted in Support of Russian President Vladimir Putin's Projects,' the memorandum includes nine supporting paragraphs, eight of which were redacted because they are classified.").

Defendants contend that, even while much of the factual basis underlying Deripaska's designation is indeed classified, he can nonetheless challenge his designation by disputing the allegation contained in the sole unredacted paragraph contained in those portions of the evidentiary memorandum relating to his designation. Defs. Mot. to Dismiss at 22-23, ECF. No. 9.  Yet, as the D.C. Circuit has stated, the "disclosure of some but not all of the allegations" renders Deripaska unable to entirely clear his name and leaves him "'stumbl[ing] towards a moving target.'" *See Fares*, 901 F.3d at 322 (quoting *Zevallos*, 793 F.3d at 118).  Accordingly, even if Deripaska were to rebut the allegation disclosed in the sole unredacted paragraph from the evidentiary memorandum, he would still be unable to challenge the factual claims in the redacted paragraphs. This would leave Deripaska in a position where he had no opportunity to rebut agency findings that would continue to serve as a basis for his designation.  *See, e.g., Joumaa v. Mnuchin*, 1:17-cv-02780 (D.D.C. April 10, 2019) (where OFAC denied Joumaa's reconsideration petition because "the documents [provided by Joumaa] do not address the other aspects of [his] drug trafficking and money laundering network that served as the basis for designation.").  It is for that very reason that OFAC's incomplete notice to Deripaska fails "the requirements of due process." *Al Haramain*, 686 F.3d at 986.

The rule is clear: if OFAC uses classified information to support its decision to designate Deripaska, it must provide alternative means by which he has adequate notice as to the reasons for his designation and a meaningful opportunity to challenge the designation.  These alternative means could include, for instance, the disclosure of "sufficiently specific unclassified summaries" that identify the 'who,' 'what,' 'when,' and 'where' of OFAC's allegations. *Fares*, 901 F.3d at 324.  Defendants, however, have neither provided unclassified summaries nor offered alternative means by which Deripaska may learn of the reasons underlying his designation.  Defendants have thus precluded Deripaska from understanding the allegations against him and from meaningfully responding to the designation in violation of his due process rights under the Fifth Amendment.

> B.   *Deripaska Has Sufficiently Alleged Minimum Contacts to the United States to Assert a Fifth Amendment Due Process Right*

Defendants challenge Deripaska's standing to assert a constitutional right to due process, arguing that Deripaska is "a foreign person lacking presence in and substantial contacts with the United States."  Defs. Mot. to Dismiss at 9, ECF. No. 9.  Defendants, however, misinterpret the relevant case law and fail to properly understand the nature of Deripaska's claims.  Deripaska has set forth "colorable allegations" that OFAC's actions have blocked property of his within U.S. jurisdiction; have rendered him unable to travel to the United States, barring him from accessing his property there; and forced his U.S. legal counsel to withdraw from representing him in international legal matters. Am. Compl. ¶¶ 33, 45-54.  These claims—combined with OFAC's own admission that prior to the designation Deripaska held a U.S. visa and retained a U.S. lobbying group—are sufficient to permit him the protections afforded by the Fifth Amendment's due process clause.  AR at 000011, n.2.

While "non-resident aliens who have insufficient contacts with the United States are not entitled to Fifth Amendment protections," there are exceptions if those persons have come to and have established "substantial connections" in the U.S. or "accepted some societal obligations." *Jifry v. FAA*, 370 F.3d 1174, 1182-83 (D.C. Cir. 2004) (finding that the court "need not decide whether or not [plaintiffs] are entitled to constitutional protections because, even assuming that they are, they have received all the process that they are due under our precedent.").

The D.C. Circuit has not identified the precise criteria by which to determine whether a foreign national residing outside the United States can satisfy this "substantial connection" test when seeking to assert constitutional rights with respect to the blocking of their assets. *Kadi v. Geithner*, 42 F. Supp. 3d 1, 25 (D.D.C. 2012). This Court has analogized, however, to cases in which the D.C. Circuit has addressed the constitutional rights of foreign nationals in the context of FTO designations, including the *Nat'l Council of Resistance of Iran* decision relied upon by Defendants. *Id*. at 26. In doing so, the Court noted that those cases have considered the presence of property as "the benchmark for satisfying the 'substantial connections' test," and whether persons can assert constitutional rights with respect to such property. *Id*.

Deripaska's Amended Complaint asserted that OFAC's designation action blocked his property and interests in property that are subject to U.S. jurisdiction. Am. Compl. ¶ 33, ECF No. 7. Furthermore, the designation "barred [him] from travel to the United States and from accessing property that he may hold there." *Id*. In addition, Deripaska was barred from keeping his counsel from a U.S. law firm whose lawyers were representing him in an international legal matter. Am. Compl. ¶ 49-50, ECF No. 7. Moreover, OFAC's evidentiary memorandum supports Deripaska's claims, noting, for instance, that he held a U.S. visa and had hired a U.S. lobbying group. AR

000011, n.2.  Each of these, in addition to OFAC's record, highlight Deripaska's contact with, and connection to, the United States, placing him within the protection of the U.S. Constitution.

Defendants, however, simultaneously misconstrue the facts and the law.  Contrary to Defendants' claims, Deripaska did not acknowledge his lack of physical presence in the United States, a claim which—had it been asserted—would have contradicted OFAC's own finding that Deripaska held a U.S. visa.  Defs. Mot. to Dismiss at 20, ECF No. 9; AR 00011, n.2.  Instead, Deripaska asserted that he was barred from travel to the U.S. and from accessing property that he may hold in the United States as the result of his designation. Am. Compl. ¶ 33, ECF No. 7.

Further, Defendants' argument that property ownership, absent presence and a substantial connection to the United States, would be insufficient under *Verdugo* and *Jifry* ignores the ongoing debate as to whether constitutional rights turn on the presence of property in the U.S. or whether a foreign national can only raise certain constitutional claims. *Kadi*, 42 F. Supp. 3d at 25.  Indeed, following a broad review of the jurisprudential landscape, the court in *Kadi* concluded that cases addressing this issue have considered property in the United States as the standard for satisfying the substantial connections test.  *Id*.  That is why, for instance, the D.C. Circuit held that a "colorable allegation" that a plaintiff has an interest in a bank account in the United States would appear to support their due process claims. *Nat'l Council of Resistance of Iran*, 251 F.3d at 204.

Here, Deripaska has made colorable allegations that OFAC's action has blocked his property and interests in property; rendered him incapable of traveling to the United States and accessing his property there; and prevented him from continuing to retain U.S. legal counsel.  This is enough to support Deripaska's due process claims. *Id*.

III.    **DERIPASKA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE DEFENDANTS FAILED TO PROVIDE HIM WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13661 IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

It is a fundamental principle of administrative law that an agency's failure to set forth its reasons for a decision constitutes arbitrary and capricious agency action. *Tourus Records v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (quoting *Roelofs v. Sec. of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). Requiring agencies to set forth the reasons for their decision affords parties the chance to address any errors an agency may have made in making a decision, while also facilitating judicial review in the instance that the agency persists in its wrongful action. *Id*.

This requirement also gives substance to the APA's own administrative reconsideration procedures, which allow for interested persons to appear before an agency to seek a "determination of an issue, request, or controversy in a proceeding . . ." 5 U.S.C. § 555(b). OFAC implements these procedural requirements through its own delisting procedures, which allow for persons to pursue administrative reconsideration of their designation or assert that the circumstances giving rise to the designation are no longer applicable. 31 C.F.R. § 501.807. Under these procedures, designated persons are expressly permitted to provide evidence or arguments that they believe establish that there is an insufficient basis for the designation or to propose remedial steps which they believe would negate the basis for designation. 31 C.F.R. § 501.807(a). These procedures presume that designated persons have an understanding of the reasons for their designation and are thus in a position to offer evidence believed to rebut OFAC's allegations or propose remedial steps that would negate the factual basis for designation.

Defendants concede that the APA requires them to provide Deripaska with the administrative record underlying his designation but contend that OFAC only need disclose the

unclassified portions of that record. Defs. Mot. to Dismiss at 24, ECF No. 9.  This purported limitation, however, is without basis in law and—if adopted—would undermine the very purpose of the reconsideration procedures discussed above.

Indeed, as OFAC has redacted eight of the nine paragraphs describing the purported rationale for the designation, the mere provision of the unclassified portions of the administrative record clearly fails to inform Deripaska as to the reasons for OFAC's decision to designate him. This failure renders the agency's delisting procedures no more than an empty gesture, as Deripaska—absent a complete understanding of the reasons for his designation—cannot offer rebuttal evidence or propose remedial measures negating the basis for his designation, and thus cannot meaningfully avail himself of OFAC's those procedures.  For this reason, Defendants have violated the APA's notice requirement and acted arbitrarily and capriciously and without observance of procedure required by law. 5 U.S.C. §§ 706(2)(A) and 706(2)(D).

## IV.   DERIPASKA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT IV BECAUSE DEFENDANTS' DECISION TO IDENTIFY HIM ON THE SECTION 241 LIST CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

Defendants acted in violation of the APA when they publicly designated Deripaska—a high-profile international businessman—as an "oligarch" and included his name on the Section 241 List.  By ignoring the plain meaning of the term "oligarch" and the statutory criteria according to which they were to compile the Section 241 List, Defendants abused their discretion and failed to act in accordance with law or without observance of procedure required by law.  Defendants also acted unlawfully by designating Deripaska as an "oligarch" only after supplying an unprecedented meaning to that term.  For these reasons, and those described below, this Court should grant summary judgment in favor of Deripaska as to Count IV of the Amended Complaint.

A.      *Defendants' Section 241 List Constitutes Arbitrary and Capricious Agency
        Action in Violation of the Administrative Procedure Act*

Reviewing courts are required to hold unlawful and set aside agency actions, findings, and

conclusions that are determined to be arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law. 5 U.S.C. § 706(2)(A).   When applying the "arbitrary and capricious"

standard, courts should determine whether the agency has relied on factors not statutorily relevant

for its consideration, whether it entirely failed to consider an important aspect of the problem,

whether it provided an explanation for its decision that runs contrary to the evidence before it, or

whether the explanation provided by the agency is so implausible that it could not be attributed

either to agency expertise or to a difference in view. *Empresa Cubana Exportadora*, 516 F. Supp.

2d at 53 (quoting *Bowman Transp., Inc.*, 419 U.S. at 286 (1974)).

First, Defendants redefined the term "oligarch" in a manner contrary to its plain meaning

and common usage in the English language; the statutory text and criteria for determining whether

a person is an "oligarch;" and the manner in which the term has previously been interpreted by this

very Court.   Section 241 of the CAATSA sought identification of "the most significant senior

foreign political figures and oligarchs in the Russian Federation, as determined by their closeness

to the Russian regime and their net worth." CAATSA, § 241.   Yet, the Secretary of the Treasury

misinterpreted this statutory command for identifying "oligarchs" to solely mean "Russian

individuals with an estimated net worth of $1 billion or more." Press Release, U.S. Dep't of

Treasury, Treasury Releases CAATSA Reports, Including on Senior Foreign Political Figures and

Oligarchs in the Russian Federation (Jan. 29, 2018).   Defendants defend their misinterpretation by

arguing that the CAATSA requires the Secretary to solely consider a person's closeness to the

Russian regime when determining the most significant senior foreign political figures and to solely

consider a person's net worth when making its list of Russian oligarchs. Defs. Mot. to Dismiss at 30-31, ECF. No. 9.

This is neither how the statute reads nor is it a reasonable interpretation in light of the plain meaning and common usage of the term "oligarch."  Read properly, the language "closeness to the Russian regime" and "net worth" solely qualify the last antecedent—i.e., "oligarchs in the Russian Federation." *See Lockhart v. United States*, 136 S. Ct. 958, 962-63 (2016) ("When this Court has interpreted statutes that include a list of terms or phrases followed by a limiting clause, we have typically applied an interpretive strategy called the 'rule of the last antecedent.'") (citing *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).  This "timeworn textual canon" establishes that a limiting clause or phrase should be read to modify only the noun or the immediately subsequent phrase. *Id*. at 962 (*Barnhart*, 540 U.S. at 26).  In applying this canon, the proper reading of the statute required the Secretary of the Treasury to identify the most significant oligarchs in the Russian Federation by both their closeness to the Russian regime and their net worth.  Using only the latter qualifier to determine a list of oligarchs in the Russian Federation defied a "timeworn textual canon" repeatedly endorsed by the Supreme Court and rendered the Secretary's action arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

This argument is further supported by the plain meaning and common usage of the term "oligarch."  No English-language definition of the term "oligarch" solely relies on a person's wealth or net worth as the defining characteristic.  Indeed, as defined in Webster's dictionary, the term "oligarch" refers to a "member or supporter of an autocratic clique . . . a member of a political oligarchy," the latter term itself defined as a "despotic power exercised by a privileged clique." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1572 (Philip Grove eds., 3d ed. 2002). Similarly, Black's Law Dictionary defines an oligarchy—of which an oligarch would be a

member—as "[a] government in which a small group of persons exercises control; the persons who constitute such a government." BRYAN GARNER, BLACK'S LAW DICTIONARY 1260 (10th ed. 2014). Accordingly, a person's wealth or net worth does not factor as a relevant characteristic of an "oligarch" under either the term's common or its legal definition.

This plain meaning and common usage of the term was confirmed as well by this court, when Judge Bates described "Russian oligarchs"—the subject matter of the Section 241 List—as individuals with close political connections to the Russian government who had obtained wealth and power through the transfer of state assets and dubious deals with Russian government officials.[1] *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 23 (D.D.C. 2005).

Defendants seek to cast aside this legal precedent and widely accepted definition by relying on a single legislative proposal—unenacted by the Congress and without force of law—which utilized language that more clearly explained that the term "oligarch" should give consideration to "closeness to the [] government" and "estimated net worth." Defs. Mot. to Dismiss at 31-32, ECF No. 9. This, according to Defendants, shows that "Congress knows how to combine such requirements, and that CAATSA did not adopt such an approach . . ." *Id*. at 32.

Defendants' argument is not just unavailing, but also self-defeating. First, Congress did not "speak" in the draft legislation relied on by Defendants, as the bill was neither enacted into law nor sponsored by more than a single member of the House of Representatives. *See* H.R. 7182, 115th Cong. (2018). Second, to the extent that the bill has any persuasive value as to the meaning

---

[1] It is publicly known that Deripaska has undergone two initial public offerings with respect to his own companies and has been the subject of extensive due diligence from international banks and other firms. This intense scrutiny has not undermined Deripaska's reputation, as he did not come to his wealth through political connections to the Russian government but instead from his own hard-won efforts.

of the term "oligarch," it would appear to dictate in opposition to the position favored by Defendants, as the bill expressly required the Secretary of the Treasury to consider both "closeness to the [] Government" and "estimated net worth" when identifying "oligarchs." Those legislative criteria are consistent with the common meaning and precedential use of the term "oligarch," as discussed in detail above. Third, the Court should operate under the assumption that Congress was aware of the "rule of the last antecedent" and drafted the language of Section 241 of the CAATSA with knowledge of the meaning that this "timeworn textual canon" would give to its words. *See Finley v. United States*, 490 U.S. 545, 556 (1989) (stating its preference "that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts."). Indeed, Defendants make no attempt to marshal canons of statutory construction to justify their decision to adopt a definition of the term "oligarch" that is at odds with plain meaning, common usage, and legal precedent.

Considering the clear statutory command, the plain meaning and common usage of the term, and this Court's own prior consideration of it, the Secretary's decision to define the term "oligarch" only by reference to a person's net worth constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA. Summary judgment should thus be granted in favor of Deripaska as to Count IV.

> B.    *Defendants' Designation of Deripaska as an "Oligarch" for Purposes of the Section 241 List Constitutes Arbitrary and Capricious Agency Action in Violation of the Administrative Procedure Act*

For reasons similar to those outlined above, Defendants' designation of Deripaska—a high-profile international businessman—as a Russian "oligarch" for purposes of the Section 241 List constitutes arbitrary and capricious agency action in violation of the APA because Defendants failed to consider Deripaska's "closeness to the Russian regime" when assembling its list of

oligarchs.   Agencies act arbitrarily and capriciously when they "entirely fail[] to consider an important aspect of [a] problem." *Empresa Cubana Exportadora*, 516 F. Supp. 2d at 53 ((quoting *Bowman Transp., Inc.*, 419 U.S. at 286 (1974)).   For purposes of the Section 241 List, an important aspect of the Secretary's determination as to whether a person is an "oligarch" is a person's "closeness to the Russian regime."   By determining that Deripaska is an "oligarch" solely on the basis of his net worth, however, Defendants entirely failed to consider a necessary, statutorily-mandated factor as to whether a person is an "oligarch."   For that reason, the Court should grant summary judgment in favor of Deripaska as to Count IV.

### C.     Deripaska's Challenge to the Section 241 List is Subject to Judicial Review

Defendants argue that because "Treasury submitted the oligarch list . . . to Congress in response to Congress's demand for such information," Deripaska's challenge to the Section 241 List and his inclusion on that list are not subject to judicial review. Defs. Mot. to Dismiss at 26, ECF No. 9.   In doing so, Defendants entirely rely on the D.C. Circuit's holding in *Hodel. Nat'l Resources Def. Council v. Hodel*, 865 F.2d 288, 318 (D.C. Cir. 1988).

However, Defendants misread *Hodel*, as that case neither sets precedent for nor is applicable to the case at hand.   In *Hodel*, the D.C. Circuit considered a challenge to a statutory requirement mandating the Secretary of the Interior to consider offshore leasing proposals and to detail his rejection of those proposals in a report to be submitted to Congress. *Id*. at 316.   Plaintiffs challenged the Secretary's alleged failure to provide "adequate explanation[]" for the Secretary's rejection of certain leasing proposals. *Id*.   The D.C. Circuit held that Plaintiff's claim "[was] not susceptible of judicial review" for two reasons: (1) because Congress "[was] not powerless to vindicate its interests or ensure Executive fidelity to Legislative directives," and (2) due to a lack of "judicially manageable standards by which to gauge the fidelity of the Secretary's response" to

the constraints of the underlying legislation. *Id.* at 319.  The holding in *Hodel* was cabined to "the issue before [it]" and did not speak to the "broad, theoretical question whether an interbranch reporting requirement can ever be reviewable" where the express provision of judicial review is absent. *Hodel*, 865 F.2d at 319, n.33.

The reasoning in *Hodel* is therefore entirely inapplicable with respect to Defendants' action at issue here.  First, Deripaska is the primary victim of Defendants' unlawful action, not the Congress; and, as the D.C. Circuit observed in *Hodel*, Congress has "provided broadly for judicial review of those actions, affecting as they do the lives and liberties of the American people." *Id*. at 318.  Deripaska should not be entirely reliant on Congress to defend its own interests before the Executive in order to vindicate himself.  Nothing in *Hodel* nor any other case would require Deripaska to be so defenseless as to Defendants' unlawful action.  Second, this Court—unlike the court in *Hodel*—has clear "judicially manageable standards by which to gauge the fidelity of the Secretary's response" to the limitations of Section 241 of the CAATSA. *Id.* at 319.  Indeed, Congress provided instructions as to what factors Treasury was to consider when compiling its list of oligarchs—factors that are broadly consistent with the common understanding of the term "oligarch." Countering America's Adversaries Through Sanctions Act § 241.

Accordingly, far from being immune to judicial review, Defendants' Section 241 List is ripe for it, and this Court need only apply CAATSA's statutory criteria to determine "the fidelity of the Secretary's response." *Hodel*, 865 F.2d at 319.  For these reasons, Deripaska's challenge to his inclusion on the Section 241 List is subject to judicial review.

> D.      *Deripaska Has Standing to Challenge His Identification on the Section 241 List*

To establish standing, a plaintiff must have suffered an injury in fact fairly traceable to the the defendant's action being challenged that is likely to be rectified by a favorable outcome in that challenge. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That injury need be "actual or imminent," and a plaintiff "must show a 'substantial probability of injury' to establish imminent injury." *Sierra Club v. Jewell*, 764 F.3d 1, 7 (D.C. Cir. 2014) (quoting *Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)). Deripaska clearly satisfies this standard.

As alleged in the Amended Complaint, Deripaska's designation as an "oligarch" and his inclusion on the Section 241 List led directly to the closure of his bank accounts and those of his companies. Am. Compl. ¶ 28, ECF No. 7. This is because international financial institutions were concerned about the reputational risks of maintaining accounts on behalf of a U.S.-designated "Russian oligarch" and grew concerned that Deripaska's listing on the Section 241 List foreshadowed the imposition of sanctions against him. *Id*.

Defendants argue in response that Deripaska's alleged injuries stem from third parties "disregarding Treasury's clear statements in the CAATSA report." Defs. Mot. to Dismiss at 28, ECF No. 9. Secretary Mnuchin, however, made those "clear statements" irrelevant only days after publication of the Section 241 List when he publicly testified before Congress that sanctions would certainly arise from the report and should be imminently expected. *The Financial Stability Oversight Council Annual Report to Congress*, 115th Cong. 13 (2018) (statement of Secretary Mnuchin, Secretary of the Treasury). Second, sanctions were imposed on Deripaska merely two months after publication of the Section 241 List, as OFAC's own press release announcing the designation action noted, proving that the concerns of international banks with respect to Deripaska's inclusion on the Section 241 List were well-founded. Third, Defendants publicly admitted that the sanctions imposed on Deripaska "follow the Department of the Treasury's

issuance of the CAATSA Section 241 report" and "target[] a number of the individuals listed in the Section 241 List." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).  In short, Defendants' public statements plainly demonstrate the causal relationship between Deripaska's Section 241 List identification and his subsequent designation.

Clearly, third parties were correct in ignoring Defendants' "clear statements" as to the nature of the Section 241 List, and Defendants' *post hoc* attempts to characterize identification on the Section 241 List as inconsequential are unavailing.

E.     *Defendants' Publication of the Section 241 List Constitutes Final Agency Action Reviewable by This Court*

Final agency action is subject to judicial review. 5 U.S.C. § 704.  For agency action to be "final" for purposes of the APA, two conditions must be met: 1) the action must signal the "consummation" of a decision-making process undertaken by the agency; and 2) rights or obligations must have been determined by the action or legal consequences flow from it. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  Courts' inquiry into whether action is final is to be both "pragmatic" and "flexible." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1278 (D.C. Cir. 2005).  For instance, agency action is final if it is "'definitive' and 'has a direct and immediate . . . effect on the day-to-day business' of the party challenging it." *Id*. (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 239 (1980)).

There can be no doubt that the Treasury's designation of Deripaska as an "oligarch" for purposes of the Section 241 List constitutes "final agency action" within the meaning of the APA. It is clear that the publication of the Section 241 List signaled the consummation of Defendants' decision-making process insofar as Section 241 of the CAATSA required the Secretary to

assemble a list of oligarchs—a statutory commitment he fulfilled through the Section 241 List. *See* Press Release, U.S. Dep't of Treasury, Treasury Releases CAATSA Reports, Including on Senior Foreign Political Figures and Oligarchs in the Russian Federation (Jan. 29, 2018).  Further, there were "legal consequences," insofar as Deripaska was designated as an "oligarch" for purposes of the CAATSA, which followed the Secretary's fact-finding and his application of CAATSA's statutory criteria. *Id*.  In addition, the designation was communicated in a final report submitted to Congress. *Id*.  Moreover, Deripaska's designation under E.O. 13661 followed shortly after his inclusion on the Section 241 List. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).

For its part, Congress noted that the report was intended to allow for its consideration of "[t]he potential impacts of imposing secondary sanctions with respect to Russian oligarchs . . ." Countering America's Adversaries Through Sanctions Act § 241.  As noted above, this purpose was echoed by Secretary Mnuchin mere days after the report's publication, when he noted that sanctions would "come out of [the list]." *The Financial Stability Oversight Council Annual Report to Congress*, 115th Cong. 13 (2018) (statement of Secretary Mnuchin, Secretary of the Treasury). Finally, and tying his inclusion on the Section 241 List to its ultimate consequence, when Deripaska was sanctioned Defendants' press release stated that its action "follow[s] the Department of the Treasury's issuance of the CAATSA Section 241 report" and "targets a number of the individuals listed in the Section 241 List." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).  It is thus indisputable that legal consequences did and were intended to flow from Deripaska's designation as an "oligarch."

Nevertheless, Defendants argue that because Deripaska's identification as a Russian oligarch on the Section 241 List does not determine any rights or obligations and no legal consequences flow from it, the Section 241 List does not constitute final agency action that would be reviewable under the APA." Defs. Mot. to Dismiss at 29, ECF. No. 9.  Defendants are wrong for all the reasons described above.  There are clear legal consequences from the Secretary's action—ones that have "direct and immediate . . . effect" on Deripaska, including, the closure of bank accounts held by him and his companies, as well as significant reputational harm. Am. Compl. ¶ 28, ECF No. 7.  Further, the most significant consequence of Deripaska's identification as an "oligarch" was his targeting for the future imposition of sanctions, as relayed by the Defendants themselves in their testimony before Congress and their press releases.  For these reasons, Deripaska's designation constitutes final agency action reviewable under the APA.

V. **DERIPASKA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT V BECAUSE DEFENDANTS FAILED TO PROVIDE HIM WITH ANY PROCESS TO CHALLENGE HIS INCLUSION ON THE SECTION 241 LIST IN VIOLATION OF HIS CONSTITUTIONAL DUE PROCESS RIGHTS**

Defendants violated Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution for two distinct reasons.  First, Defendants failed to provide him adequate notice as to the reasons for his inclusion on the Section 241 List, including the administrative record underlying their determination that he meets the criteria for identification as an "oligarch."  Second, Defendants failed to provide him any opportunity to challenge his inclusion on the Section 241 List through an administrative process.  For these reasons, and those described in further detail below, the Court should grant Deripaska summary judgment as to Count V.

A. *Defendants Violated Deripaska's Due Process Right to Notice by Failing to Provide Him Adequate Notice as to the Reasons for His Inclusion on the Section 241 List*

39

Due process requires that "'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews*, 424 U.S. at 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring). In the context of an OFAC designation, due process requires OFAC to provide the designated person with information sufficient for the person to understand the agency's allegations and meaningfully respond to them. *KindHearts for Charitable Humanitarian Dev. v. Geithner*, 647 F. Supp. 2d 857, 901 (N.D. Ohio 2010). When information contained in the administrative record is classified and cannot be disclosed without compromising U.S. national security or foreign policy interests, due process requires OFAC to provide alternative vehicles by which parties can understand the reasons for the action taken against them. This includes, for instance, the provision of an unclassified summary of classified or privileged information contained in the administrative record. *See Fares*, 901 F.3d at 324. Here, in a case analogous to an OFAC designation, Defendants have failed to provide Deripaska with the administrative record, the unclassified portions of that record, or any other form of notice to apprise him as to the reasons for his inclusion on the Section 241 List.

Understanding that they have entirely failed to satisfy the notice requirement of the Due Process Clause to the Fifth Amendment, Defendants attack Deripaska's standing to bring his claim of insufficient notice, arguing that it is not justiciable and that he has failed to assert an injury protected by due process. Both arguments, however, fail.

As described above, Deripaska's challenge to his inclusion on the Section 241 List is justiciable, and Deripaska has standing to bring his claims. Moreover, Deripaska has alleged the impairment of interests protected by the Due Process Clause, including, for instance, his property interest. Am. Comp. ¶ 28, ECF No. 7. Defendants even acknowledge harm to Deripaska—noting his "purported financial injuries"—but contend that such harm does not "'qualify as a deprivation

of liberty because it does not amount to a change in legal status.'" Defs. Mot. to Dismiss at 34, ECF No. 9 (quoting *Mosrie v. Barry*, 718 F.2d 1151, 1162 (D.C. Cir. 1983)).

Defendants' argument, however, is in error: Deripaska's inclusion on the Section 241 List and his formal designation as an "oligarch" by the U.S. government is a legal classification from which consequences were understood to flow.  Indeed, Section 241 was included in the CAATSA, according to its own language, in order to assess "[t]he potential impacts of imposing secondary sanctions with respect to Russian oligarchs." Countering America's Adversaries Through Sanctions Act § 241(a)(5).   Further, Defendants' claim that the Section 241 List provided express notice that "[it] neither imposes any 'restrictions, prohibitions, or limitations on dealings with such persons'" is plainly contradicted by Secretary Mnuchin's warning that sanctions would come out of the Section 241 List. *The Financial Stability Oversight Council Annual Report to Congress*, 115th Cong. 13 (2018) (statement of Secretary Mnuchin, Secretary of the Treasury).  Specifically, Secretary Mnuchin stated that the Section 241 List "should in no way be interpreted" to mean that the administration would not be imposing sanctions on persons identified in the list of oligarchs. Pete Schroeder, *Treasury's Mnuchin Says Russian Oligarch Report to Lead to Sanctions*, REUTERS (Jan. 30, 2018 12:38PM), https://www.reuters.com/article/usa-senate-mnuchin-idUSL2N1PP1QX (last visited September 2, 2019).

Defendants' selective reading of the Section 241 List and the press release announcing it ignores the obvious fact that Defendants compiled the Section 241 List for the express purpose of imposing sanctions on identified parties and that the administration was communicating its intent to impose those sanctions in the near future.  Blaming the "reactions of third parties" for injuries sustained by Deripaska as the result of his inclusion on the Section 241 List disregards Defendants' direct role in creating the expectation that dealings with parties identified on the Section 241 List

would soon be sanctionable.  Those expectations were realized, too, when OFAC designated Deripaska and others under E.O. 13661, declaring that its action "target[ed] a number of individuals listed on the Section 241 report." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).  For this reason, Defendants' claim that the harm to Deripaska is not an interest protected by the Due Process Clause fails.

Because Defendants have failed to provide Deripaska with access to the administrative record compiled in support of his inclusion on the Section 241 List or otherwise reasonably apprised him as to the reasons for his inclusion, Defendants have violated their due process obligations to provide notice.  Accordingly, Defendants have violated Deripaska's Fifth Amendment right to due process, and this Court should grant summary judgment as to Count V.

> B.     *Defendants Violated Deripaska's Due Process Right to a Hearing by Failing to Provide Him Any Opportunity to Challenge His Inclusion on the Section 241 List*

Due process mandates that persons injured by the government's action be afforded "the opportunity to be heard . . . in a meaningful manner." *Mathews*, 424 U.S. at 333 (1976).  While due process "is flexible and calls [only] for such procedural protections as the particular situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), it also requires that injured persons have a "meaningful opportunity" to challenge the government's action. *Mathews*, 424 U.S. at 348.

Deripaska alleges that his inclusion on the Section 241 List led not just to serious reputational harm, but also to immediate harm to his economic interests, as banks began to shutter his or his companies' accounts in direct response to his identification as an "oligarch" by the U.S. government. Am. Compl. ¶ 28, ECF No. 7.  Deripaska, however, is unable to rectify this ongoing

harm through any administrative reconsideration procedures, as Defendants have failed to promulgate procedures or provide a hearing process through which he may contest his inclusion on the Section 241 List.  Indeed, far from arguing that they have adopted procedures to uphold their due process obligations, Defendants contend that they need not provide any procedures at all.

Specifically, Defendants argue that no procedural protections are required to address the harm caused to Deripaska because (1) Deripaska's challenge to the Section 241 List is not justiciable; and (2) any alleged harm caused by his identification does not impair interests that are protected by the Due Process Clause. Defs. Mot. at 32-34 (Dkt. 9).  However, for the reasons explained above, Deripaska's challenge to his inclusion on the Section 241 List is justiciable; Deripaska has standing to bring his claims; and Deripaska has suffered an injury that falls within the orbit of the Due Process Clause's protection.

Accordingly, in the absence of any procedure to challenge his identification as an "oligarch" on the Section 241 List, Defendants have violated Deripaska's constitutional due process rights by refusing to provide him a hearing in which to contest his designation.

> C.   *Deripaska Has Sufficiently Alleged Minimum Contacts to the United States to Assert a Fifth Amendment Due Process Right*

Defendants repeat their argument that Deripaska cannot bring a Due Process Clause claim because he has not sufficiently alleged presence in and substantial contacts with the United States. Defs. Mot. to Dismiss at 33, ECF. No. 9.  For the same reasons as those explained above, however, Defendants' argument fails.

Deripaska has set forth "colorable allegations" in his Amended Complaint of his "substantial connections" to the United States. Am. Compl. at ¶ 33, ECF No. 7.  This Court has held these allegations sufficient "to support [his] due process claims." *Nat'l Council of Resistance*

*of Iran*, 251 F.3d at 204.  For this reason, Deripaska has sufficiently alleged minimum contacts to the United States to assert a Fifth Amendment due process right.

VI.   **DERIPASKA IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VI BECAUSE DEFENDANTS FAILED TO PROVIDE HIM WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS INCLUSION ON THE SECTION 241 LIST IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

Defendants have also violated the APA by failing to provide Deripaska with adequate notice as to the reasons for his inclusion on the Section 241 List, including the record underlying the Secretary's decision that Deripaska met the criteria for identification on that list.  As explained above, an agency must "'set forth its reasons' for [a] decision," lest it engage in arbitrary and capricious action. *Tourus Records*, 259 F.3d at 736 (quoting *Roelofs*, 628 F.2d at 599).  This is intended to ensure both that those parties affected by an agency's decision are able to correct any factual mistakes made by the agency and that courts are well-positioned to review the action. *Id.*

Deripaska has not received any notice as to the reasons for his designation as an "oligarch" on the Section 241 List, including the findings and conclusions made by the Secretary in determining that he met the criteria for designation.  He has also not been given access to any portion of the administrative record underlying this determination.  Instead, the sole notice provided to Deripaska is the determination found in the Section 241 List that Deripaska is a Russian individual with a net worth of greater than $1 billion. *See* U.S. DEP'T OF THE TREASURY, REPORT TO CONGRESS PURSUANT TO SECTION 241 OF THE COUNTERING AMERICA'S ADVERSARIES THROUGH SANCTIONS ACT OF 2017 REGARDING SENIOR FOREIGN POLITICAL FIGURES AND OLIGARCHS IN THE RUSSIAN FEDERATION AND RUSSIAN PARASTATAL ENTITIES (2018).

Defendants argue that this is enough for due process purposes, despite having previously conceded that agencies are required to provide interested parties with the unclassified portions of

44

the administrative record underlying their action. *See* Defs. Mot. to Dismiss at 24, 32, ECF No. 9.

Defendants also contend that Deripaska's APA claim "is not justiciable" because the Section 241

List "does not constitute final agency action for purposes of the APA and its adequacy is not

subject to judicial review." Defs. Mot. to Dismiss at 32, ECF. No. 9.   But Defendants' argument

fails, as the Secretary's publication of the Section 241 List consummates the agency's decision-

making process and results in legal consequences, as described above.   For these reasons,

Defendants have failed to adhere to the APA's notice requirements and have not acted in

accordance with law in violation of the APA.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' motion to dismiss, or, in the

alternative, for summary judgment; grant Deripaska's motion for summary judgment; and enter

judgment in favor of Deripaska on all claims.

Dated: September 2, 2019

Respectfully submitted,

<u>/s/ Erich C. Ferrari</u>
Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
OLEG DERIPASKA                          )
                                        )
                    Plaintiff,          )
                                        )        Civil Action No. 19-0727 (APM)
        v.                              )
                                        )
STEVEN T. MNUCHIN, *et al.*             )
                                        )
                    Defendants.         )
_____)

**[PROPOSED] ORDER**

Upon consideration of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Plaintiff's Opposition and Cross-Motion for Summary Judgment, and any opposition and replies thereto, it is hereby ORDERED that Defendants' Motion is DENIED; and it is further:

ORDERED that Plaintiff's Cross-Motion is GRANTED; and it is further

ORDERED that Defendants vacate Plaintiff's designation under Executive Order 13661 and remove Plaintiff's name from OFAC's List of Specially Designated Nationals and Blocked Person; and it is further

ORDERED that Defendants disclose the redacted portions of the evidentiary memorandum and supporting administrative record underlying Plaintiff's designation under Executive Order 13661 or otherwise provide alternative means by which Plaintiff can understand the reasons for his designation; and it is further

ORDERED that Defendants vacate their determination that Plaintiff meets the definition of an "oligarch" for purposes of Section 241 of the CAATSA and remove his name from the Section 241 List; and it is further

ORDERED that Defendants release any and all records underlying their decision to include Plaintiff's name on the Section 241 List and provide an administrative process by which Plaintiff may challenge his inclusion on the Section 241 List; and it is further

ORDERED that Defendants retract any public statements attributing conduct to Deripaska that is unrelated to the bases for his designation under E.O. 13661 and are enjoined Defendants from making such statements in the future.

**SO ORDERED.**


_____
Date

_____
HONORABLE AMIT P. MEHTA
United States District Judge