## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————————— ) | |
| OLEG DERIPASKA ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 19-0727 (APM) |
| v. ) | |
| ) | |
| STEVEN T. MNUCHIN, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | |

## MOTION FOR LEAVE TO FILE SUPPLEMENT PLEADING AND MEMORANDUM IN SUPPORT THEREOF

Pursuant to Fed. R. Civ. P. 15(d), Plaintiff Oleg Deripaska respectfully requests leave to file a supplemental pleading—i.e., a Supplemental Complaint—in this action for the purpose of challenging Defendants' failure to issue a decision on Deripaska's pending reconsideration matter with respect to his Executive Order ("E.O.") 13662 designation. Although Deripaska sought reconsideration of that designation through Defendant United States Department of the Treasury's Office of Foreign Assets Control's ("OFAC") delisting procedures set forth in 31 C.F.R. § 501.807, Defendants have failed to substantively engage with Deripaska with respect to his request. As Deripaska had challenged Defendants' decision to designate him under E.O. 13662 as part of the initial complaint filed in this litigation, and because he will remain blocked so long as the E.O. 13662 designation remains, Deripaska seeks leave to file the attached Supplemental Complaint. Exhibit A-Deripaska Supplemental Complaint.

Consistent with LCvR 8(m), undersigned counsel has conferred with Defendants' counsel with respect to this motion. Defendants have stated that they will not take a position on this motion until the motion is filed and they have reviewed the Supplemental Complaint. Defendants have

further noted that they will inform the Court of their position with respect to this motion in short order following that review.

## BACKGROUND

Deripaska's initial complaint in this matter challenged, *inter alia*, his designation under E.O. 13661 and E.O. 13662, as well as Defendants' failure to provide Deripaska notice as to the bases for its determination that he met the criteria for designation under those authorities. ECF No. 1. In response to this lawsuit, Defendants provided a redacted version of the administrative record underlying Deripaska's designations under E.O. 13661 and E.O. 13662. Following review of the redacted administrative record, Deripaska decided to proceed with the litigation with respect to his designation under E.O. 13661 while simultaneously providing notice to the Court that he intended to pursue administrative reconsideration of his designation under E.O. 13662 through OFAC's delisting procedures. Accordingly, Deripaska filed an amended complaint in this matter. ECF No. 7.

On June 27, 2019, Deripaska filed a request for administrative reconsideration with OFAC seeking the rescission of his E.O. 13662 designation. That request included, *inter alia*, information and documents responsive to the specific bases for his designation under E.O. 13662 outlined in the redacted administrative record, as well as arguments as to why OFAC (1) lacked a lawful basis under which to determine that Deripaska met the criteria for designation under E.O. 13662; and (2) should rescind the designation due to a change of circumstances negating the basis for his designation under E.O. 13662.

On June 28, 2019, OFAC acknowledged receipt of this reconsideration request and assigned the request Case ID UKRAINE-EO13662-16174. Since that time, OFAC has not issued a questionnaire to, or engaged in any substantive correspondence with, Deripaska in connection

with this request. Deripaska believes that OFAC has no intention of seriously reconsidering the factual bases for his designation under E.O. 13662. Considering the devastating personal, reputational, and financial harm that daily accrues as the direct result of Derispaska's continued designations, Deripaska seeks to challenge OFAC's delay in processing his request for reconsideration and its continued maintenance of his E.O. 13662 designation.

## ARGUMENT

Fed. R. Civ. P. 15(d) provides that, "[o]n motion and reasonable notice, the court may . . . permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." This latter feature—i.e., that a supplemental pleading set forth events taking place after the date of the initial pleading or establish new causes of action on their basis—distinguishes a supplemental pleading from an amended pleading. *See U.S. v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002). Supplemental pleadings account for "new facts bearing on the relationship between the parties," which therefore either provide a basis for additional relief or invite new legal claims or defenses. *Id*. at 385.

Supplemental pleadings require a court's prior permission. Fed. R. Civ. P. 15(d); *Banks v. York*, 448 F. Supp. 2d 213, 213 (D.D.C. 2006) (noting that "[l]eave to file a supplemental complaint is left to the Court's discretion . . ."). Such motions should be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Hall v. C.I.A.*, 437 F.3d 94, 101 (D.C. Cir. 2006). Because leave to file a supplemental pleading is to be granted liberally, the non-moving party generally carries the burden of demonstrating why the proposed supplemental pleading will prejudice them. *See Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 88 (D.D.C. 2005).

A supplemental pleading may include not just new facts occurring after the date of the initial pleading but also new legal claims. *See, e.g.*, Powell v. I.R.S., 263 F. Supp. 3d 5, 7 (D.D.C. 2017) (noting that a pleading "'may include allegation[s] of recent incidents . . . [and] presentation of such legal contentions as may be indicated' by those events."); *Cause of Action Instit. v. U.S. Dep't of Justice*, 282 F. Supp 3d 66, 73 (D.D.C. 2017) (noting that "[a] supplemental pleading may include a new 'cause of action' when it would be convenient to litigate all the claims between the parties in the same action."). The operative consideration when reviewing a motion to file a supplemental pleading—including one asserting additional claims—is whether the presentation of such new legal claims would cause unnecessary delay or prejudice to any non-moving party. *See Cause of Action Inst.*, 282 F. Supp. 3d at 73 (stating that a supplemental complaint "may assert a 'cause [] of action not alleged in the original complaint so long as [its] introduction does not create surprise or prejudice the rights of the adverse party.'").

Here, Deripaska seeks the Court's leave to file a supplemental complaint setting out events taking place after the initial pleading in this matter—namely, OFAC's failure to issue a decision, or otherwise substantively engage, with respect to Deripaska's request for reconsideration of his E.O. 13662 designation. Following Defendants' provision of the redacted administrative record underlying his designation, Deripaska withdrew those portions of his initial pleading challenging OFAC's action designating him under E.O. 13662 as he believed that OFAC's administrative reconsideration process offered the best opportunity for him to contest his designation. Nearly four months after submitting his delisting petition, however, Deripaska has neither received a questionnaire from OFAC—which is typically issued with 90 days of the filing of a request for reconsideration—nor any substantive correspondence relating to his reconsideration request. *See* Resource Center, U.S. Dep't of Treasury, Office of Foreign Assets Control, Filing a Petition for

Removal from an OFAC List (last updated May 2, 2017), https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/petitions.aspx (stating that "OFAC typically endeavors to send the first questionnaire within 90 days from the date the petition is received"). Accordingly, Deripaska intends to introduce "new facts bearing on the relationship between the parties" as part of his supplemental complaint, consistent with the requirements of Fed. R. Civ. P. 15(d).

This Court should grant Deripaska's motion to file a supplemental pleading. Doing so will "promote the economic and speedy disposition of the entire controversy between the parties," as both of Deripaska's designations under E.O. 13661 and E.O. 13662 are the proximate cause of the reputational and financial ruin to which he has been subjected by Defendants. While Deripaska raises several distinct challenges in the current litigation, the fundamental "controversy" between the parties is that Defendants are unlawfully subjecting Deripaska to economic sanctions. That controversy can only be fully resolved through the disposition of Deripaska's designations under both E.O. 13661 and E.O. 13662. Because litigation is ongoing in this matter with respect to one of those designations, it would be consistent with the values of judicial economy to supplement the pleadings with a challenge to Deripaska's designation under E.O. 13662 rather than to institute an entirely new action raising Deripaska's claims with respect to that designation.

Further, Defendants are not prejudiced by the filing of a supplemental complaint. To the extent that delay is an issue, it is one that negatively affects Deripaska alone. Considering that the *status quo* is one beneficial to Defendants, any delay caused by a supplemental pleading is delay that incurs to Defendants' practical advantage. In addition, to the extent that additional briefing is necessary as to additional legal claims asserted in the supplemental complaint, that briefing would also be required if Deripaska were to institute a new legal action contesting Defendants' delay in processing his reconsideration request as to his E.O. 13662 designation. Again, any delay caused

by the additional briefing would likewise only prejudice Deripaska, as it would delay potential relief with respect to his E.O. 13661 designation. Deripaska is willing to accept that consequence for purposes of resolving the entire controversy between the parties.

Defendants are also not substantively prejudiced by the filing of a supplemental complaint, as Defendants have long been apprised of the fact that Deripaska may challenge his designation under E.O. 13662. Indeed, the original complaint in this action included legal claims with respect to both of Deripaska's designation, and Deripaska's request for administrative reconsideration noted that OFAC's failure to timely respond to the request and rescind Deripaska's designation under E.O. 13662 could lead to renewed litigation with respect to that designation. Accordingly, Defendants will not be surprised or otherwise prejudiced by a supplemental complaint.

## CONCLUSION

For the foregoing reasons, Deripaska respectfully requests that the Court grant this Motion for Leave to File Supplemental Pleading.


November 5, 2019

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*ATTORNEY FOR PLAINTIFF*
*OLEG DERIPASKA*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| OLEG DERIPASKA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 19-0727 (APM) |
| v. | ) | |
| | ) | |
| STEVEN T. MNUCHIN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

**[PROPOSED] ORDER**

Upon consideration of Plaintiff Oleg Deripaska's motion for leave to file a supplemental pleading to challenge his designation under Executive Order ("E.O.") 13662 and Defendants' failure to issue a decision with respect to the administrative reconsideration of that designation, it is hereby

ORDERED that Plaintiff's motion is granted, and it is further

ORDERED that Plaintiff shall be entitled to file the Supplemental Complaint attached as an exhibit to the motion.

Date:  _____          _____
                                                                          United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | ) |
| | ) |
| **OLEG DERIPASKA** | ) |
|     2 Khutor Sokolsky, | ) |
|     Ust-Labinsky District, | ) |
|     Krasnodarsky Krai, Russian Federation | ) |
| | ) |
|         *Plaintiff,* | ) |
| | ) **COMPLAINT FOR DECLARATORY** |
| | ) **AND INJUNCTIVE RELIEF** |
|     v. | ) |
| | ) |
| **STEVEN T. MNUCHIN** | ) CIV. NO. _____ |
| **in his official capacity as** | ) |
|         **Secretary of the United States** | ) |
|         **Department of the Treasury** | ) |
|         1500 Pennsylvania Ave., NW | ) |
|         Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT OF** | ) |
| **THE TREASURY** | ) |
|     1500 Pennsylvania Ave., NW | ) |
|     Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **ANDREA M. GACKI** | ) |
| **in her official capacity as** | ) |
|         **Director of the** | ) |
|         **United States Department of the Treasury** | ) |
|         **Office of Foreign Assets Control** | ) |
|         1500 Pennsylvania Avenue, NW | ) |
|         Freedman's Bank Building | ) |
|         Washington, D.C. 20220 | ) |
| | ) |
|     and | ) |
| | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF THE TREASURY, OFFICE OF FOREIGN** | ) |
| **ASSETS CONTROL** | ) |
|     1500 Pennsylvania Avenue, NW | ) |

Freedman's Bank Building                    )
Washington, D.C. 20220                      )
                                            )
                *Defendants.*               )
_____)

Plaintiff Oleg Deripaska ("Deripaska") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury, its Secretary, Steven T. Mnuchin, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and its Director, Andrea M. Gacki, and in support of his complaint alleges:

## INTRODUCTION

1.      Deripaska brings his second challenge to Defendants' actions weaponizing the U.S. financial system—through the imposition of sanctions—against him in a manner inconsistent with the law. This new challenge arises from Deripaska's good faith attempt to seek reconsideration of his sanctions designation under Executive Order ("E.O.") 13662 through Defendant OFAC's administrative reconsideration process. His attempt to seek reconsideration of the E.O. 13662 designation stalled in the face of OFAC's silence with respect to that request. Thus, Deripaska is left, once again, to turn to the courts for relief.

2.      On April 6, 2018, Deripaska—an internationally-renowned businessman—was targeted under E.O. 13661 and E.O. 13662. The effect of those designations—coupled with the triggering of extraterritorial sanctions under the Countering America's Adversaries Through Sanctions Act of 2017 ("CAATSA")—imposed an effective international boycott on Deripaska and caused him devastating personal, financial, and reputational harm.

3.      OFAC's determination that Deripaska met the legal criteria for designation under E.O. 13662—i.e., that he operates in Russia's energy sector—was mere pretext for Defendants' intent to make Deripaska an effective stand-in for the Russian government and to impose an

2

exacting cost on him. Indeed, OFAC's own press release announcing the designation noted as much, stating that "Russian oligarchs and elites who profit from [Russia's] corrupt system will no longer be insulated *from the consequences of their government's destabilizing activities*." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018) (emphasis added). OFAC further stated that the aim of Deripaska's designation "is to impose costs on Russia for its malign behavior." U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 574 (April 23, 2018). Accordingly, Deripaska was targeted for sanctions due to the conduct of his country's government, not his own.

4.      Earlier this year, Deripaska challenged his OFAC designations by filing a civil complaint. Compl., *Deripaska v. Mnuchin*, 1:19-cv-0727 (D.D.C. March 15, 2019). During the course of that litigation, Defendants disclosed the redacted administrative record identifying their reasons for designating Deripaska under E.O. 13661 and E.O. 13662. Following that disclosure, Deripaska amended his complaint in that matter. Am. Compl., *Deripaska v. Mnuchin*, 1:19-cv-0727 (D.D.C. June 20, 2019). In doing so, he modified his claims to attack the legal insufficiencies of his E.O. 13661 designation and informed this Court that he would seek administrative reconsideration of his E.O. 13662 designation pursuant to OFAC's delisting procedures. *Id*.

5.      More than four months ago, Deripaska submitted a request for reconsideration—also referred to as a "delisting petition"—to OFAC with respect to his E.O. 13662 designation. Deripaska argued, *inter alia*, that he no longer met the criteria for designation, as OFAC's determination that he operated in Russia's energy sector was based on his alleged ownership or control over JSC EuroSibEnergo plc ("EuroSibEnergo")—an independent Russian power company—and OFAC had made a recent determination, independent of Deripaska's delisting

matter, that EuroSibEnergo was no longer owned or controlled by Deripaska. Since that time, OFAC has failed to correspond with Deripaska or render a decision on his delisting petition.

6.      Were Deripaska to continue to wait for OFAC to adjudicate his delisting petition, his patience would be in vain, as OFAC has no intention of rescinding his E.O. 13662 designation nor seriously considering the merits of his delisting petition. This is evident by Defendants' silence in the face of Deripaska's delisting petition and by the bias Defendants have demonstrated in their numerous slanderous public statements about him. These statements freely recycle patently false allegations from disreputable sources in order to give the impression that the action's target—Deripaska—is a criminal involved in a variety of illicit activities. Those false allegations, however, not only lack any connection to the legal criteria for designation under the authorities for which Deripaska was sanctioned, but they were also not relied upon by OFAC to determine that he meets the criteria for designation under E.O. 13661 or E.O. 13662.

7.      For these reasons, Deripaska turns to this Court. Defendants have made a show trial of Deripaska's designation and have acted without any respect or concern for the law or their obligations under it. This Court is respectfully requested to compel Defendants to adhere to the bounds of their legal authority and provide relief that can lead to a rescission of Deripaska's designation under E.O. 13662.

## JURISDICTION AND VENUE

8.      This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

9.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

10.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

11.     Oleg Deripaska is and was at all times relevant to this complaint a citizen of Russia. Deripaska currently resides at 2 Khutor Sokolsky, Ust-Labinsky District, Krasnodarsky Krai, Russian Federation.

12.     Deripaska is a renowned international businessman who has founded some of the world's largest and most important companies, including UC RUSAL plc, EN+ Group, Russian Machines, EuroSibEnergo, and Basic Element.

13.     On April 6, 2018, Deripaska was designated under E.O. 13661 and E.O. 13662, and his name was added to the SDN List maintained and administered by OFAC.

14.     Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220. OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13662 and regulating dealings with them under that authority via 31 C.F.R. Parts 501 and 589, the "Reporting, Procedures, and Penalties Regulations" and the "Ukraine Related Sanctions Regulations," respectively. OFAC is responsible for designating Deripaska under E.O. 13662.

15.     The U.S. Department of the Treasury is responsible for maintaining the financial and economic security of the United States. The U.S. Department of the Treasury is also responsible for overseeing various offices, including OFAC, and is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

16.     Defendant Steven T. Mnuchin is the Secretary of the Treasury of the United States. Mr. Mnuchin is sued in his official capacity.

17.     Defendant Andrea M. Gacki is the Director of OFAC. The Director of OFAC has been delegated the authority to take any action for which the Secretary of the Treasury is authorized under E.O. 13661 and E.O. 13662. 31 C.F.R. § 589.802. Ms. Gacki is sued in her official capacity.

## FACTUAL CLAMS

### A.     Executive Order 13662

18.     On March 16, 2014, President Obama issued E.O. 13662, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine."

19.     E.O. 13662 was issued pursuant to the President's authorities under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. IEEPA authorizes the President to impose economic sanctions only upon a declaration of a national emergency in response to an identified unusual and extraordinary threat to the national security, foreign policy, or economy of the United States. *See* 50 U.S.C. §§ 1701, 1702.

20.     Acting consistent with this authority, the President found that "the actions and policies of the Government of the Russian Federation . . . continue to undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets." Exec. Order 13661, Preamble. These actions and policies of the Russian Federation "constitute[d] an unusual and

6

extraordinary threat to the national security and foreign policy of the United States." *Id*. Accordingly, the President expanded the scope of the national emergency declared in E.O. 13660 and E.O. 13661.

21.     E.O. 13662 authorizes the Secretary of the Treasury to designate, *inter alia*, any person determined to operate in any sector of the Russian Federation economy determined by the Secretary of the Treasury.

22.     The Secretary of the Treasury has determined that Russia's energy sector is a sector of the Russian Federation economy in which a person's operation therein exposes them to potential designation under E.O. 13662. *See* Press Release, U.S. Dep't of Treasury, Announcement of Treasury Sanctions on Entities Within the Financial Services and Energy Sectors of Russia, Against Arms or Related Materiel Entities, and Those Undermining Ukraine's Sovereignty (July 16, 2014).

**B.     April 6, 2018 Designation of Deripaska**

23.     On April 6, 2018, OFAC designated Deripaska under E.O. 13662 for allegedly "operating in the energy sector of the Russian Federation economy." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). As a consequence of his designation, all property and interests in property within the United States or within the possession or control of a U.S. person in which Deripaska maintains an interest are blocked, and U.S. persons are generally prohibited from engaging in any transactions with him.

24.     OFAC's press release announcing the designation provided no indication or explanation of the agency's reasoning in determining that Deripaska operates in Russia's energy

sector nor did the press release identify the evidence on which OFAC relied to make its legal determination. *Id*.

25. Instead, the press release announcing the designation contained a litany of defamatory allegations regarding Deripaska's purported conduct—none of which have any relevance to the criteria for designation under E.O. 13662. *Id*. For instance, OFAC's press release cites allegations that Deripaska has been investigated for money laundering; has been accused of threatening business rivals; has been alleged to illegally wiretap a foreign government official; and has participated in extortion and racketeering. *Id*. None of those false allegations have any connection to the designation criteria of E.O. 13662—i.e., that Deripaska operates in the energy sector of the Russian Federation.

26. OFAC's press release also indicated that the action was undertaken in response to the Russian government's "worldwide malign activity." *Id*. Indeed, the press release was titled: "Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity." *Id*. Further, in the press release, Secretary Mnuchin is quoted as saying that the designation action was intended to show that "Russian oligarchs and elites . . . will no longer be insulated from the consequences of their government's destabilizing activities," including its "range of malign activity *around the globe*." *Id*. (emphasis added).

27. OFAC has separately stated that its April 6, 2018 action "aggressively targeted Russian oligarchs and elites that further the Kremlin's *global malign activities*…" Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Maj. Leader (Dec. 19, 2018) (emphasis added). Defendants alleged that these activities include the subversion of Western democracy, support to the Assad regime in Syria, malicious cyber activities, the occupation of Crimea, and the instigation of violence in Ukraine. *Id*.

28.     The President has not declared a national emergency with respect to Russia's "worldwide malign activity" or its "global malign activities." E.O. 13662 was promulgated solely in response to Russia's actions and policies with respect to Ukraine.

### C.     OFAC's Disclosure of the Administrative Record

29.     On April 29, 2019, Defendants provided Deripaska with an unclassified version of the administrative record prepared in support of his designation under E.O. 13661 and E.O. 13662. This administrative record contained the evidentiary memorandum outlining the factual and legal bases for OFAC's designation action.

30.     Section III of the evidentiary memorandum is titled "Basis for Determination." *Id*. This section identifies the legal and factual bases for the agency's determination that Deripaska meets the criteria for designation under E.O. 13662. A sub-heading of Section III states that "DERIPASKA operates in the energy sector of the Russian Federation economy," which is the legal conclusion supporting OFAC's determination that Deripaska's meets the designation criteria of E.O. 13662.

31.     In support of its conclusion that Deripaska operates in the energy sector of the Russian Federation's economy, OFAC made the following findings:

- According to Deripaska's own website, Deripaska is involved in several World Economic Forum projects, including ones on "New Energy Architecture" and the "Interaction between the Power Industry and Society."

- As part of Deripaska's work on the APEC Business Advisory Council, Deripaska focuses on multiple issues of energy efficiency and energy security. For instance, at a February 2012 meeting of the APEC Business Advisory Council, Deripaska's representative presented the North East

Asian Region Electrical System Ties Initiative, whose goal is to improve ties between the power grids of Eastern Siberia, Northern China, Japan, and South Korea through the creation of a transnational power grid in Northeast Asia.

- According to Deripaska's own website, Deripaska's key companies operate in multiple sectors of the economy, including the energy sector. EuroSibEnergo is the largest private power company in Russia and produces around 9% of Russia's total electricity generation. EuroSibEnergo is a part of the EN+ Group over which Deripaska maintains a majority ownership interest.

Accordingly, OFAC's determination that Deripaska operates in Russia's energy sector is based on (1) Deripaska's involvement in World Economic Forum projects related to energy and power; (2) Deripaska's work on the APEC Business Advisory Council, some of which is related to power grids; and (3) Deripaska's exercise of ownership or control with respect to EuroSibEnergo.

32.     The false allegations of illicit activity recited in OFAC's press release regarding Deripaska are reiterated in the section of the evidentiary memorandum titled "Additional Information." Those claims have no legal relevance to Deripaska's designations, as they are not contained in that portion of the evidentiary memorandum specifically dedicated to outlining the legal conclusions or factual bases for the agency's determination.

D.     OFAC's Delisting of EN+ Group and EuroSibEnergo

33.     On April 6, 2018, OFAC designated a number of companies for being owned or controlled by Deripaska, including EN+ Group, EuroSibEnergo, and United Company RUSAL PLC. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury

10

Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). As a result of their designation, each of these companies was subject to U.S. blocking sanctions and were identified on OFAC's SDN List.

34.     Secretary Mnuchin stated that these companies were sanctioned "because of their ownership and control by a sanctioned Russian oligarch Oleg Deripaska, not for the conduct of the companies themselves." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist En+, Rusal, and EuroSibEnergo (Dec. 19, 2018).

35.     On December 19, 2018, OFAC entered into a Terms of Removal Agreement with EN+ Group, EuroSibEnergo, and United Company RUSAL PLC. Under this agreement, the companies agreed to take certain enumerated steps towards extinguishing Deripaska's ownership and control, including, for instance, by limiting his voting share in EN+ Group to no more than 35% and by reducing his ownership stake to 44.95%.

36.     By virtue of these measures, OFAC agreed to rescind EN+ Group, EuroSibEnergo, and United Company RUSAL PLC's designations under E.O. 13661 and E.O. 13662 and remove their names from its SDN List. According to OFAC's press release announcing the delisting of the companies, each of the entities "reduced [] Deripaska's direct and indirect shareholding stake in these companies and severed his control." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Delists En+, Rusal, and EuroSibEnergo (Jan. 27, 2019). For this reason, OFAC determined that the companies no longer met the criteria for designation under E.O. 13662, as Deripaska no longer exercised ownership or control over them. *See, e.g.*, Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist En+, Rusal, and EuroSibEnergo (Dec. 19, 2018).

37.     On January 27, 2019, OFAC rescinded EN+ Group, EuroSibEnergo, and United Company RUSAL PLC's designations and removed their names from the SDN List.

**E.     Deripaska's Delisting Petition**

38.     On June 27, 2019, Deripaska submitted a request for reconsideration to OFAC, which sought the rescission of his designation under E.O. 13662 and his delisting from OFAC's SDN List.

39.     Deripaska's delisting petition included a number of arguments as to why he did not meet—or, alternatively, no longer met—the criteria for designation under E.O. 13662, as well as evidentiary support for those arguments. Deripaska's delisting petition noted that there had been a change of circumstances that negated the basis for his initial designation, as OFAC had made a determination—when it entered into a Terms of Removal Agreement with EN+ Group and EuroSibEnergo—that Deripaska no longer exercised ownership or control over either company. As Deripaska's purported operation in Russia's energy sector was primarily through his ownership or control over EuroSibEnergo, the petition argued that the factual predicate for his designation had been extinguished. Moreover, the petition argued that the remaining bases for Deripaska's designation did not show Deripaska's operation in Russia's energy sector and could not suffice to sustain Deripaska's designation under E.O. 13662.

40.      Furthermore, Deripaska's delisting petition argued that OFAC's designation was in error, as its evidence did not show Deripaska's operation in Russia's energy sector but rather in its power sector. Citing to OFAC's own precedent as to what constitutes the "energy sector" of the Russian Federation economy, Deripaska argued that electricity producers and suppliers are not operating in the "energy sector." Thus, the request for reconsideration argued that OFAC's reliance on Deripaska's prior ownership or control over EuroSibEnergo—a private electricity producer—

and his purported involvement in activities related to the power sector to support its E.O. 13662 designation action constituted arbitrary and capricious agency action.

41.     Due to the strength of the arguments set forth by Deripaska, the clear evidence that he no longer met the criteria for designation under E.O. 13662, and the accelerating harm caused by Defendants' sanctions, Deripaska requested that OFAC provide a decision on his delisting petition within 90 days from the date of the request.

42.     As of the date of this instant lawsuit, OFAC has not made any decision with respect to Deripaska's delisting petition, has not otherwise indicated when such a decision may be forthcoming, and has not requested any additional, clarifying, or corroborating information from Deripaska. Indeed, aside from assigning a case number (UKRAINE-EO13662-16174) to the delisting petition, OFAC has remained completely silent as to that request, and Deripaska remains designated under E.O. 13662.

**F.     Harm to Deripaska**

43.     Defendants' unlawful action has been personally, professionally, and financially devastating to Deripaska. Personally, OFAC's false and defamatory allegations of illicit conduct, by design, have done immense damage to Deripaska's worldwide reputation. Professionally, his designation under E.O. 13662 has caused him to lose ownership and control over some of the world's largest companies, which he built up through arduous effort. Financially, Deripaska has lost billions of dollars and more than three-quarters of his wealth as the result of Defendants' unlawful action designating him.

i.     <u>Legal Harm to Deripaska</u>

44.     The legal consequence of OFAC's designation is that all of Deripaska's property and interests in property within the United States or within the possession or control of a U.S.

person, wherever located, are blocked, and U.S. persons are prohibited from engaging in any transactions with him. Deripaska is also barred from entry into the United States.

45.     In addition, Deripaska's designation under E.O. 13662 renders him subject to an effective international boycott, as Defendants administer legal authorities under which foreign persons engaging in certain dealings or transactions with Deripaska may themselves be subject to U.S. sanctions. For instance, Defendants retain the authority under E.O. 13662 to designate any person for providing, directly or indirectly, material support to Deripaska. Further, CAATSA requires the President to impose blocking sanctions on any person that facilitates a significant transaction with Deripaska or correspondent or payable-through account sanctions on any foreign bank that knowingly facilitates a significant financial transaction with him. These sanctions, taken together, impose a virtual worldwide ban on transactions or dealings with Deripaska, rendering him and his remaining companies toxic to the international business community.

ii.     Personal Harm to Deripaska

46.     Deripaska has been personally harmed and impaired due to the effects of his designation. For example, he has found it increasingly difficult to procure basic legal services. This was demonstrated in a recent action brought before an English court in which Deripaska was unable to retain legal counsel in time to prevent the imposition of a Worldwide Freezing Order against him. Following his designation, his lawyers in the matter were prohibited from continuing the representation absent authorization from OFAC due to their connection to a U.S. law firm. Subsequently, the U.S. law firm applied for license authorization from OFAC to maintain its representation in the foreign legal matter but were denied. Following OFAC's license denial, Deripaska contacted foreign lawyers without any nexus to the United States—most of whom refused to represent him out of fear of their exposure to U.S. sanctions under CAATSA. Once legal

14

counsel was finally retained, foreign banks refused to remit Deripaska's payments for legal services out of fear of themselves being subject to U.S. sanctions, again, under CAATSA. Accordingly, Deripaska's designation under E.O. 13662 prevented him from retaining legal counsel for representation before the English court, which led to the imposition of the Worldwide Freezing Order.

47.     Deripaska has also been unable to secure legal counsel for his companies, as foreign lawyers fear their potential exposure to U.S. sanctions arising from any legal representation. For instance, foreign law firms that had previously provided corporate legal services to companies in which Deripaska maintains ownership or control have terminated their legal representation. This lack of access to corporate counsel, coupled with the resignation of numerous directors and officers of Deripaska-linked companies and the refusal of financial institutions to extend banking services to those companies, has put the survival of these companies in peril.

iii.     Reputational Harm to Deripaska

48.     Deripaska is an internationally-renowned businessman who—through his own hard work, effort, and ingenuity—founded and built up some of the largest companies in the world. Yet, OFAC's press release announcing Deripaska's designation casually refers to him as a "Russian oligarch . . . profit[ing] from [a] corrupt system." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018).

49.     Defendants allegations are not only uncalled for due to their irrelevancy to Deripaska's designation, they are also false and maliciously intended to defame him. These false allegations are mostly recycled from disreputable sources to include allegations of violent threats against business rivals, illegal wiretapping, various criminal activities, and having links to Russian

organized crime. *Id*. These slanderous allegations have created widespread public misperception regarding Deripaska's character and the source of his wealth.

    iv. <u>Economic Harm to Deripaska</u>

  50. As a direct result of Defendants' action, Deripaska has lost approximately 81% of his net worth since April 6, 2018. His myriad of investments has collapsed, and Defendants have caused some of Deripaska's former companies to separate themselves from him through the irrevocable divestiture of his interests and the severance of his control. Even those companies for which Deripaska retains ownership or control have faced financial ruin, as banks refuse to extend loans to them; suppliers terminate contracts; and counterparties cease any further dealings.

  51. Most publicly, Deripaska's designation caused him to lose control over companies on which he has built his wealth and international reputation. Indeed, OFAC admitted that "the objectives of the sanctions were to reduce Deripaska's ownership in and sever his control of [EN+, UC RUSAL plc, and EuroSibEnergo]." Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Maj. Leader (Dec. 19, 2018). This objective was achieved when EN+, UC RUSAL plc, and EuroSibEnergo entered into a Terms of Removal Agreement that required Deripaska to forgo majority ownership over, and any control with respect to, his former companies. Even Deripaska's remaining interest in the companies is subject to sanctions, as Defendants retain the authority to target any person representing his interests with respect to those companies pursuant to E.O. 13662, as they well acknowledge. *Id*.

  52. This economic ruin continues unabated, as OFAC seeks Deripaska's divestiture from additional companies over which he maintains an ownership interest, including, for instance, GAZ Group. OFAC's extortion of Deripaska—requiring the sale of his interests in his companies at a fraction of their value and limiting his ability to receive the proceeds from those sales—when

the agency has no intention of removing his designation evidences the lawlessness of Defendants' action.

53.     In addition, Deripaska—at the time of his designation—maintained an interest in properties in the United States, including, for instance, an ownership interest in Basic Element, Inc., a company incorporated in Delaware, which acted as a representative office for Bazovy Element Ltd., a Russian limited liability company. Basic Element, Inc. maintained bank accounts and a property lease in the United States at the time of Deripaska's designation. This included company accounts at Wells Fargo. As a result of his designation, Basic Element, Inc.'s bank accounts at Wells Fargo were blocked, and the company's registered agent ceased any activities with respect to Basic Element, Inc. and stopped communications with Bazovy Element, Ltd. Currently, Basic Element, Inc. has no employees; no registered agent; and blocked bank accounts.

54.     Deripaska—at the time of his designation—also maintained a beneficial ownership interest in RUSAL America Corp., which has offices in 660 Madison Ave., New York, New York and was assigned the lease held by Basic Element, Inc. Following his designation, RUSAL America Corp.—which was constructively blocked pursuant to OFAC's 50 Percent Rule—had accounts at JPMorgan Chase. Moreover, OFAC promulgated General License No. 14, which authorized maintenance and wind-down activities related to RUSAL America Corp. and required RUSAL America Corp. to submit reports to OFAC regarding transactions undertaken pursuant to the license authorization. Deripaska understands that RUSAL America Corp. filed reports to OFAC pursuant to General License No. 14 or its successor license authorizations with respect to its wind-down transactions, including those involving the bank accounts at JPMorgan Chase. Thus, Defendants are well aware of the extensive property interests Deripaska held in the United States

at the time of Deripaska's designation, as well as of the impact that Deripaska's designation had on those property interests.

### G.    Animus and Bias Towards Deripaska

55.    Defendants have demonstrated clear animus and bias towards Deripaska, including by leveling false and defamatory allegations against him designed to generate public animus and indicating that it has no intention of removing Deripaska from the SDN List, regardless of the merits of Deripaska's delisting matter.

56.    Defendants' animus towards Deripaska was clearly demonstrated when it first designated him under E.O. 13662. In the press release announcing the designation, Secretary Mnuchin referred to Deripaska, by implication, as a "Russian oligarch . . . profit[ing] from [a] corrupt system." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). OFAC's press release also leveled at Deripaska false and defamatory allegations of illicit conduct that were completely untethered from the legal criteria for designation under E.O. 13662 that maligned Deripaska and generated public animus towards him. *Id*.

57.    OFAC has also provided clear indication that it has no intent to rescind Deripaska's designation under E.O. 13662 or remove him from the SDN List. For instance, OFAC published a Frequently Asked Question, stating that "the path for the United States to provide sanctions relief [to RUSAL] is through divestment and relinquishment of control of RUSAL by . . . Deripaska." U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 576 (May 22, 2018). OFAC conveniently elided the fact that RUSAL could also obtain sanctions relief through the rescission of Deripaska's designation and his removal from OFAC's SDN List, as RUSAL's designation was derivative of Deripaska's. OFAC made the same "error" when it

provided guidance as to how GAZ Group could achieve sanctions relief. U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 587 (May 22, 2018).

58.    In its press release announcing its intention to delist EN+, UC RUSAL plc, and EuroSibEnergo, OFAC referred to Deripaska as a "Russian oligarch" and stated that Deripaska "will remain on the SDN List" and that the agency "will continue to aggressively enforce its sanctions on Deripaska . . ." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist En+, Rusal, and EuroSibEnergo (Dec. 19, 2018).

59.    Further, OFAC's letter to Congress "stress[ed] that Deripaska will remain sanctioned and on OFAC's SDN List," despite the Terms of Removal Agreement with certain of his companies. Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Maj. Leader (Dec. 19, 2018). OFAC also repeated its promise to "continue to enforce its sanctions on Deripaska aggressively . . ." *Id*.

60.    Congress has also shown overt bias against Deripaska. Considering Congress exercises influence over any proposed delisting under E.O. 13662, Congressional animus towards Deripaska clearly evidences the Kafkaesque situation in which Deripaska is placed as a result of Defendants' unlawful action.

61.    Pursuant to Section 216 of the CAATSA, the President is to submit a report to Congress with respect to his intention to terminate sanctions under E.O. 13662. Upon receipt of this report, Congress is given a period in which to review the proposed termination of sanctions and to enact a joint resolution of disapproval, which would have the effect of barring the President from the lifting the sanctions. CAATSA, § 216.

62.     On January 17, 2019, 362 members of the House of Representatives voted in favor of H.J. Res. 30, which disapproved of the President's action terminating sanctions imposed with respect to EN+ Group, UC RUSAL plc, and EuroSibEnergo.

63.     During the limited debate prior to the vote, certain legislators demonstrated their overt bias towards Deripaska and used that bias as reason for voting in favor of the resolution of disapproval. For instance, Rep. Gerry Connolly signaled his strong opposition to "the President's unimaginable proposal to lift sanctions on three companies affiliated with a Russian gangster oligarch, Oleg Deripaska." 165 CONG. REC. 693 (2019) (statement of Rep. Connolly). Rep. Connolly further repeated OFAC's false and defamatory allegations of illicit conduct. *Id*.

64.     During the same floor debate, Rep. Maxine Waters referred to Deripaska as "the enemy" and "a criminal." 165 CONG. REC. 694 (2019) (statement of Rep. Waters). Rep. Waters also stated that she could not understand "why there is any elected official who would support delisting these companies and Deripaska." *Id*.

65.     On January 16, 2019, 57 members of the U.S. Senate voted in favor of cloture to proceed to a vote on a resolution of disapproval relating to the lifting of sanctions on EN+ Group, UC RUSAL plc, and EuroSibEnergo. The resolution of disapproval was only narrowly defeated, as the Senate required 60 votes on the motion for cloture to proceed to a vote. Following the vote, Sen. Charles Schumer—the Senate Minority Leader—expressed his "extreme[] disappointment" that Congress had failed "to stand up to a thug," a slanderous reference to Deripaska. Patricia Zengerle, Bid to Keep U.S. Sanctions on Russia's Rusal Fails in Senate, REUTERS (Jan. 16, 2019, 1:29 PM), https://www.reuters.com/article/us-usa-russia-sanctions/bid-to-keep-u-s-sanctions-on-russias-rusal-fails-in-senate-idUSKCN1PA2JB (last visited Sept. 24, 2019).

66.     On February 18, 2019, Sen. Charles Schumer tweeted the following: "How can Oleg Deripaska—a Russian oligarch who interferes in democracies in Europe & America—have the gall to show at Munich Security Conference? The conference talks about holding back Russian interference! EU friends: We urge imposing additional sanctions on Putin's cronies." Chuck Schumer     (@ChuckSchumer),     Twitter     (Feb.     18,     2019,     2:20     PM), https://twitter.com/SenSchumer/status/1097576721996488712 (last visited Sept. 24, 2019).

67.     Deripaska has not been designated for interfering in European or American elections, and election interference is not a basis for his designation under E.O. 13661 or E.O. 13662. Yet, the Senate minority leader—an individual who may wield influence over any proposed delisting of Deripaska in the future—believes that European authorities should sanction Deripaska for his purported involvement in election interference in Europe and the United States.

68.     These actions and statements provide clear indication that Defendants have no intention of removing Deripaska from the SDN List and rescinding his designation under E.O. 13662 and that—even if it were otherwise—Congress could seek to stop any proposed delisting of Deripaska. This persistent animus and bias towards Deripaska requires this Court's intervention.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13662 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

69.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

70.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

71.     Defendants' designation of Deripaska under E.O. 13662 and its findings and conclusions in support of this designation are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

## COUNT II

### DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13662 IS IN EXCESS OF STATUTORY JURISDICTION IN VIOLATION OF THE APA

72.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

73.     Courts are empowered to hold unlawful and set aside any agency action, findings, or conclusions "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

74.     Defendants' designation of Deripaska under E.O. 13662 was made in response to an undeclared national emergency. In doing so, Defendants violated their delegated authority under IEEPA to impose certain sanctions in response to a declared national emergency. Accordingly, Defendants acted in excess of statutory jurisdiction, authority, or limitations, or short of statutory right by designating Deripaska under E.O. 13662.

## COUNT III

### DEFENDANTS' FAILURE TO RENDER A TIMELY DECISION ON DERIPASKA'S DELISTING PETITION CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

75.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

76.     Agencies are required to conclude matters before it "within a reasonable time." 5 U.S.C. § 555(b). A reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

77.     Defendants have unreasonably delayed a decision on Deripaska's delisting petition with respect to his designation under E.O. 13662 in violation of the APA. Despite having clear evidence that Deripaska no longer meets the criteria for designation under E.O. 13662, OFAC has yet to issue a final agency determination with respect to Deripaska's delisting petition, which has been outstanding for more than 120 days. Defendants have provided no indication to Deripaska as to when a final decision may be forthcoming and have not sought any additional information from him with respect to his delisting petition.

78.     Defendants have unlawfully withheld the rescission of Deripaska's designation under E.O. 13662 in violation of the APA.

## COUNT IV

### DEFENDANTS' RECONSIDERATION PROCESS VIOLATES DERIPASKA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS

79.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

80.     Under the Fifth Amendment to the U.S. Constitution, Deripaska has a due process right to notice and a right to be heard.

81.     Defendants' administrative reconsideration process will not afford Deripaska relief. Defendants have continuously displayed their evident bias towards Deripaska and have no intention of removing him from the OFAC SDN List, regardless of the merits of his delisting

petition or any future petition he may put forward. Without a meaningful opportunity to respond to Defendants' actions, Defendants have violated Deripaska's Fifth Amendment due process right to be heard.

## RELIEF REQUESTED

Wherefore, Deripaska respectfully requests that this Court:

A.   Issue an order vacating Deripaska's designation under E.O. 13662;

B.   Order Defendants to rescind Deripaska's designation under E.O. 13662;

C.   Order Defendants to issue a decision with respect to Deripaska's delisting petition;

D.   Grant an award to Deripaska of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

E.   Any other and further relief as the Court may deem proper.

Dated:  November 5, 2019

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*ATTORNEY FOR PLAINTIFF
OLEG DERIPASKA*