# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OLEG DERIPASKA | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 19-0727 (APM) |
| v. | ) | |
| | ) | |
| STEVEN T. MNUCHIN, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

## **INTRODUCTION**

Defendants have engaged in a series of unlawful actions that underscore the degree to which Deripaska's designation under Executive Order ("E.O.") 13661 is designed to serve purposes entirely unrelated to the objectives of the legal authority under which Defendants purport to act. Instead of countenancing Defendants' conduct, this Court must ensure that Defendants act consistent with their legal mandates and provide reprieve to Deripaska for the harm sustained.

First, Defendants assembled an "oligarch's list" on the basis of a definition of the term "oligarch" that defied clear statutory command, the plain language and common usage of the term, and this Court's prior consideration of the term. Defendants then publicly identified Deripaska as an "oligarch" on the basis of this arbitrary usage of the term, directly causing significant personal and financial consequences to Deripaska and his international businesses.

Second, Defendants impermissibly exercised the legal authorities of E.O. 13661 to sanction Deripaska in express response to an undeclared national emergency—i.e., Russia's "worldwide malign activities." This rendered not just Deripaska's designation, but the entire April 6 action as an unlawful exercise of power under IEEPA, as IEEPA explicitly limits the President's authorities to respond to threats for which a national emergency has been declared.

Third, Defendants announced Deripaska's designation via a press release that wholly consisted of allegations untethered from the legal criteria for designation under E.O. 13661. Considering that OFAC treats its press releases as constituting notice to designated parties as to the reasons for their designation, Defendants' action here constituted a clear effort at misdirection, if not disinformation, for the purpose of creating public animus and bias towards Deripaska.

Fourth, when Deripaska sued Defendants for these unlawful acts, Defendants disclosed an unclassified administrative record that redacted almost all of the agency's findings regarding its bases for designating him. Indeed, eight of the nine agency findings in support of OFAC's determination that Deripaska meets the criteria for designation under E.O. 13661 were entirely redacted in the record provided to Deripaska and placed on this Court's docket.

Finally, the disclosed portions of the administrative record evidenced that the legal determination that Deripaska has acted for or on behalf of, directly or indirectly, a senior official of the government of the Russian Federation was unsupported by the agency's conclusions and its related findings. Defendants concluded from their findings that Deripaska "has acted in support of Russian President Vladimir Putin's projects," a qualitatively different conclusion than the legal determination that Deripaska has acted for or on behalf of President Putin himself.

Defendants have spurned their legal obligations and abused their discretion at every turn. Now, their opposition seeks to paper over the legal deficiencies endemic to their actions, including by betraying the content of the press release announcing the designation; ignoring the import of the words used in E.O. 13661's designation criterion and how they have been interpreted by Defendants in the past; and distorting and ignoring the relevant legal precedent that defines Defendants' obligations towards Deripaska. Defendants' arguments are unavailing, and the need for this Court's intervention is more apparent now than ever.

## ARGUMENT

### I.   DERIPASKA'S DESIGNATION UNDER E.O. 13661 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE APA

Defendants claim that OFAC lawfully exercised the authorities contained in IEEPA in designating Deripaska under E.O. 13661 and that the administrative record supports OFAC's legal

determination underlying that designation. Both arguments fail. OFAC impermissibly utilized an Executive order promulgated in response to a declared national emergency in order to respond to a new threat for which no national emergency had been declared. The plain language of OFAC's press release in support of the designation action, as well as successive agency statements, makes crystal clear that the agency acted in response to this undeclared national emergency. Moreover, OFAC's administrative record fails to provide support for its legal determination that Deripaska has acted for or on behalf of a senior Russian government official, as OFAC arbitrarily interpreted the phrase "act for or on behalf of" in a manner that defies its plain meaning and the ways in which OFAC has defined like terms in the past.

### A.  *Defendants Impermissibly Exercised Their Authority Under IEEPA*

Defendants argue that OFAC designated Deripaska under E.O. 13661 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Russian government and that E.O. 13661 was promulgated in response to a declared national emergency with respect to Russia's invasion of Ukraine. Def.'s Opp. at 4-5. For this reason, according to Defendants, Deripaska "was designated under an executive order based on a bona-fide Presidential emergency," and Deripaska's contention that he was designated in response to Russia's "worldwide malign activity" is "erroneous[]." *Id*.

But Deripaska merely recites OFAC's own press release announcing the designation, as well as successive agency statements regarding the April 6, 2018 designation action, to underscore that OFAC impermissibly utilized E.O. 13661 in response to an undeclared national emergency. Indeed, as Deripaska pointed out in his Cross-Motion, OFAC titled the press release announcing Deripaska's designation: "Treasury Designates Russian Oligarchs, Officials, and Entities *in Response to Worldwide Malign Activity*." Press Release, U.S. Dep't of Treasury, Treasury

3

Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018) (emphasis added). Deripaska further noted that the press release quoted the Treasury Secretary stating that the designation was made in response to "[t]he Russian government engag[ing] in a range of malign activity around the global, including continuing to occupy Crimea and instigate violence in eastern Ukraine, supplying the Assad regime with material and weaponry as they bomb their own civilians, attempting to subvert Western democracies, and malicious cyber activities." *Id*. (promising that "Russian oligarchs and elites who profit from this corrupt system will no longer be insulated from the consequences of their government's destabilizing activities."). Successive agency statements—including, for instance, a letter from OFAC's Director to Senate Majority Leader Mitchell McConnell—reiterated that the April 6, 2018 designation action "aggressively targeted Russian oligarchs and elites that further the Kremlin's global malign activities, including its attempts to subvert Western democracy, its support for the Assad regime, its malicious cyber activities, its occupation of Crimea, and its instigation of violence in Ukraine." Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Majority Leader (Dec. 19, 2018).

The clear implication of OFAC's language is that Defendants impermissibly utilized the sanctions authorities contained in E.O. 13661 in explicit response to an undeclared national emergency. Deripaska does not argue that E.O. 13661 itself is anything other than a lawfully-promulgated Executive order based on a *bona fide* national emergency, but rather that OFAC used its authorities in response to an entirely different threat than the one for which a national emergency had been declared. The sanctions authorities in E.O. 13661 can solely be used in response to Russia's "actions and policies . . . with respect to Ukraine." *See* E.O. 13661, Preamble. This requirement is one of the few statutory limitations imposed on the President's exercise of

authorities under IEEPA. *See* 50 U.S.C. § 1701 ("The authorities granted to the President by section 1702 of this title may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared . . . and may not be exercised for any other purpose."). If OFAC seeks to utilize the President's authorities under IEEPA in response to Russia's "worldwide malign activities," then IEEPA is clear: the President must first declare a new national emergency with respect to that threat. 50 U.S.C. § 1701(b). IEEPA does not permit the President or his delegees to marshal the authorities promulgated in response to a declared national emergency to respond to a new threat for which no national emergency has been lawfully declared.

Defendants attempt to obfuscate its clear misuse of E.O. 13661's sanctions authorities by arguing that the April 6, 2018 designation action was undertaken "pursuant to various [legal] authorities, all of which were examples of Russian malign activity in the world." Def.'s Memo. at 6. This argument is misleading. The sole legal authorities under which parties were designated in the April 6 action were E.O. 13661, E.O. 13662, and E.O. 13582. The first two legal authorities were promulgated in response to Russia's actions or policies with respect to Ukraine, while the latter authority was promulgated in response to the Syrian government's violence against the people of Syria. *See* E.O. 13661, Preamble; E.O. 13662, Preamble; E.O. 13582, Preamble. None of these legal authorities declared a national emergency with respect to Russia's "worldwide malign activities," and—even when aggregated—together do not comprise the range of "malign activities" cited by OFAC in its press release to which OFAC sought to respond through its designation of Deripaska. OFAC was clearly exceeding the scope of its authorities by utilizing the sanctions promulgated in response to a declared national emergency to respond to a new threat for which the President had not declared a lawful national emergency. For these reasons, OFAC's

designation of Deripaska constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA.

>    B.    *The Administrative Record Does Not Support OFAC's Determination that Deripaska Has Acted or Purported to Act for or on Behalf of a Senior Official of the Government of the Russian Federation*

Defendants claim that OFAC need not evidence that Deripaska has acted as an effective agent of Russian President Vladimir Putin in order to designate him under section 1(a)(ii)(C)(1) of E.O. 13661. Rather, they assert that they can merely show that Deripaska has acted in support of, or in the interest of, the Russian President to sustain its designation. Defendants' argument is in error. A holistic reading of the designation criterion at issue, as well as OFAC's past interpretation of like terms and its current usage, provides clear indication that the phrase "act for or on behalf of" a person is the functional equivalent of acting as a person's agent. Defendants' appeal to definition not only fails to contradict Deripaska's argument but provides it further support. Considering the plain meaning of "act for or on behalf of" and the deficient conclusion rendered by Defendants to support Deripaska's designation under E.O. 13661, Defendants have acted arbitrarily and capriciously in violation of the APA as the administrative record does not support OFAC's legal determination underlying Deripaska's designation.

>    i.    Section 1(a)(ii)(C)(1) of E.O. 13661 Requires a Finding that a Person Acted as the Agent of a Senior Russian Government Official

Defendants argue that a designation made under section 1(a)(ii)(C)(1) of E.O. 13661 "does not require OFAC to establish that Deripaska acted as Putin's agent" because a reasonable interpretation of the term "act for or on behalf of"— the operative term of the designation criterion under which Deripaska is designated—includes "actions carried out 'in the interest of' or 'for the benefit of' another." Def.'s Memo. at 8. Defendants further argue that OFAC's interpretation of

the term is reasonable considering that "[l]eaders like Putin are commonly understood to make their wishes clear and to allow others to take actions to benefit them without always providing explicit direction or control," a *post-hoc* rationalization of OFAC's interpretive move not found in the record before the Court. *Id*. at 11.

Defendants' argument is not only unavailing, it is self-defeating. First, Defendants turn to the dictionary. While acknowledging that the American Heritage Dictionary defines the idiom "on/in behalf of" as "as the agent of" in part, Defendants claim that the other definition—i.e., "for the benefit of" or "in the interest of"—shows the reasonableness of OFAC's interpretation, as those latter terms do not evidence an agency relationship. *Id*. at 9. Yet, Defendants conveniently overlook the "Usage Note" attached to the definition, which states—in pertinent part—that the "traditional rule" holds that "in behalf of" means "for the benefit of," while "on behalf of" means "as the agent of, on the part of." *See On/In Behalf Of*, The American Heritage Dictionary (Fifth online ed. 2019), *https://www.ahdictionary.com/word/search.html?q=on+behalf+of* (last visited Oct. 28, 2019). Considering that E.O. 13661's designation criterion requires a finding that Deripaska acted for or *on behalf of* a senior Russian government official, appeal to the American Heritage Dictionary does not do Defendants any favor.

Similarly, Defendants exclude the second definition provided for "behalf" in the Merriam-Webster Dictionary, which is "as a representative of." Merriam-Webster Dictionary (online ed. 2019), *https://merriam-webster.com/dictionary/behalf* (last visited Oct. 28, 2019). This second definition accords with the view that to act on behalf a person means to act as that person's agent. Neither of Defendants' definitional appeals provide support for Defendants' interpretation of the term.

Defendants next argue that a holistic reading of section 1(a)(ii)(C)(1) clearly shows that "OFAC was not required to establish the existence of an agent-principal relationship." Def.'s Memo. at 9. This is because, according to the Defendants, "[a]cting for or on behalf of a senior Russian official [] must mean something other than acting subject to the official's control" or else the designation criterion would contain mere surplusage. *Id*. But Defendants ignore a far more obvious explanation for section 1(a)(ii)(C)(1)'s authorization to designate persons "owned or controlled by" or "to have acted or purported to act for or on behalf of" a senior Russian government official. The first half of the designation criterion is meant to target entities (as individual persons cannot fairly said to be "owned" or "controlled"), while the latter half of the designation criterion is designed to target individuals. This reading is consistent with OFAC's practice. *See, e.g.*, Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, U.S. Government Fully Re-Imposes Sanctions on the Iranian Regime As Part of Unprecedented U.S. Economic Pressure Campaign (Nov. 5, 2018) (targeting only entities for being "owned or controlled by" designated parties, and targeting only individuals for "acting for or on behalf of" designated parties); Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Identifies Entities Owned or Controlled by the Government of Iran (Nov. 26, 2008). Indeed, a holistic reading of section 1(a)(ii)(C)(1) indicates that the two halves of the designation criterion—designed for distinct parties—are intended to be functional equivalents. In short, an entity owned or controlled by a designated person has the same quality of relationship as a person acting for or on behalf of a designated person, which is why both phrases are included in the same designation criterion. Thus, a holistic reading provides additional support for Deripaska.

Third, Defendants fail to rebut the simple fact that the sole occasion on which OFAC has had opportunity to define "agent" in its regulations, OFAC defined "agent" to mean any person

that is, or has been, *acting or purporting to act, directly or indirectly, on behalf of* a foreign terrorist organization. 31 C.F.R. § 597.301(a)(2) (emphasis added). Defendants argue that an "agent" under these regulations "is not the formal agent of the common law, but includes someone who simply acts for or on behalf of an FTO." Def.'s Memo. 10. But that claim assumes away the very question at issue—which is whether the phrase "to act for or on behalf of" is the functional equivalent of the agency relationship. OFAC's regulatory definition of "agent" indicates that the agency has previously interpreted the two terms to be functional equivalents.

Defendants next argue that this regulatory definition is not controlling as to E.O. 13661, as the two criteria are found in separate regulations. Def.'s Memo. at 10 n.4 (citing 31 C.F.R. § 591.101(a)). Yet, the very essence of arbitrary and capricious agency action is when an agency "departs from agency precedent without explanation." *Ramaprakash v. FAA*, 346 F.3d 1121, 1124 (D.C. Cir. 2003). When it comes to definitional issues, OFAC cannot so casually ignore the manner in which it has used the term "act for or on behalf of" in the past without "provid[ing] a reasoned analysis indicating that prior policies and standards are being deliberately changed." *Id*. at 1125. OFAC's failure to reason through, and provide fair notice of, its new interpretation is a clear abuse of the agency's discretion in violation of the APA.

> ii.  OFAC's Conclusion that Deripaska Has Acted in Support of Russian President Vladimir Putin's Projects Does Not Support a Determination that Deripaska Has Acted for or on Behalf of a Senior Russian Government Official

Defendants argue that OFAC "reasonably concluded" that Deripaska met the legal criteria for designation under E.O. 13661 based on its conclusion that "Deripaska has acted in support of

Russian President Vladimir Putin's projects."[1] Def.'s Memo. at 12. But if an agency relationship is central to a finding that a person has acted for or on behalf a senior Russian government official, then OFAC's conclusion is clearly deficient, as mere support to a Russian government official's "projects" does not provide the requisite evidence on which to sustain a designation under section 1(a)(ii)(C)(1). OFAC merely found that Deripaska has acted in support of Russian President Vladimir Putin's projects—not that he acted on President Putin's behalf with respect to any of the purported "projects." Nor does OFAC describe whether Deripaska's "support" was anything other than merely coincidental as Deripaska pursued his own commercial interests without regard for whether those interests happened to intersect with President Putin's purported "projects." It is thus clear that OFAC's reliance on this conclusion to support its determination that Deripaska satisfies the legal criteria for designation under E.O. 13661 constitutes agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA.

---

[1] Defendants also argue, in passing, that Deripaska has failed to "offer any extra-record evidence that casts doubt on" the evidence assembled by OFAC in the administrative record. However, as Defendants must be aware, "it is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information that did the agency when it made its decision," and extra-record evidence can only be considered in cases evidencing "gross procedural deficiencies." *Hill Dermaceuticals v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013). For this reason, as Defendants have themselves noted, "[i]n the context of an APA claim, [s]ummary judgment [] serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record . . ." ECF No. 9 at 13 (quoting *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014)). If Defendants now believe otherwise—i.e., that extra-record evidence is warranted in this case and that summary judgment is therefore inappropriate due to factual disputes between the parties—then Deripaska is fully prepared to submit such evidence disputing OFAC's allegations for this Court's consideration—evidence which may include, for instance, the fact-findings from Russian tribunals regarding the falsity of the allegations contained in *The Nation* article relied upon by Defendants. *See* Decision of the Arbitrazh (Commercial) Court for the Krasnodar Region dated 25 October 2019 in case №A32-43312/2019," *available at* http://kad.arbitr.ru/Card/ffaf7a72-154f-4bab-9a1b-cff2d916cffe (last accessed November 11, 2019).

II.     **DEFENDANTS HAVE VIOLATED DERIPASKA'S CONSTITUTIONAL DUE PROCESS RIGHTS BY FAILING TO PROVIDE HIM WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13661**

Defendants' opposition argues that Deripaska lacks the 'substantial connection' to the United States required to support a constitutional right to due process; and that—even if this Court finds otherwise—OFAC has provided all the notice that is due under the Fifth Amendment. Both arguments fail. First, Deripaska has set forth a series of allegations regarding his connections to the United States and the effect of OFAC's action against him, which clearly establish that he has a "substantial connection" to the United States bringing him within the orbit of the Due Process Clause's protections. Second, OFAC's notice has been obviously deficient, as almost all of the agency's findings in support of its determination that Deripaska meets the criteria for designation are redacted in the administrative record provided to Deripaska. No court has ever sustained an agency's provision of so little information to a designee regarding the reasons for its designation.

A.     *Deripaska Has Sufficiently Alleged Substantial Contacts to the United States to Assert a Fifth Amendment Due Process Right*

Defendants argue that Deripaska's Amended Complaint fails to allege the substantial connections to the United States required to support a constitutional due process claim, including, for instance, by "fail[ing] to adequately allege that he has any property or interests in property in this country." Def.'s Memo at 17. According to Defendants, Deripaska's claim "that he 'may' hold property in the United States is clearly deficient," as the Court is not permitted to assume that Deripaska holds such property as a matter of fact. *Id.* at 16. Moreover, Defendants argue that retention of U.S. counsel or lobbying firm does not establish a right to constitutional protections and that Deripaska's prior U.S. travel is also insufficient to establish that right. *Id.* at 17.

But Defendants isolate each of Deripaska's allegations regarding his connections to the United States so as to find each allegation, standing on its own, insufficient to show the "substantial connection" required for Deripaska to assert a constitutional due process right. This piecemeal approach to analyzing whether Deripaska can assert a Fifth Amendment right with respect to OFAC's blocking of his property is not supported by the case law. *See, e.g.*, *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 201 (D.C. Cir. 2001) (finding that the NCRI's "overt presence within the National Press Building in Washington, D.C." and its interest in a small U.S. bank account are sufficient to establish the "substantial connections" to the United States required to assert a constitutional due process right). Instead, this Court must review all of Deripaska's allegations regarding his connections to the United States in aggregate to determine whether those connections are "substantial" enough to merit constitutional protection.

Deripaska asserts that they clearly do. The complaint filed in this matter made colorable allegations that OFAC's designation action blocked all of Deripaska's property and interests in property within the United States—which is not just a rehearsal of the legal implication of OFAC's action but also a factual statement; barred him from travel to the United States—a place to which he has traveled many times before—and from accessing property there; and cut him off from his U.S. service providers, including by preventing him from retaining his U.S. legal counsel in a foreign court matter for which a Worldwide Freezing Order was summarily imposed on him. Taken together, these allegations provide the requisite nexus to the United States for Deripaska to invoke the protections of the Fifth Amendment's Due Process Clause, at least with respect to OFAC's blocking action. These allegations easily satisfy the standard set forth in *Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012), where the court found that the question as to whether a foreign

national held property in the United States appeared to serve as "the benchmark for satisfying the 'substantial connections' test" under the relevant case law.[2] *Id*. at 26.

Moreover, the D.C. Circuit has not identified the criteria by which to determine whether a foreign national outside the United States satisfies the "substantial connection" test when asserting constitutional rights with respect to OFAC blocking actions. *Kadi*, 42 F. Supp. at 25 ("Nor has the D.C. Circuit addressed whether such rights turn on the presence of property in the United States, or whether Kadi can raise certain constitutional claims, but not others."). In these circumstances, a holistic reading of a foreign national's alleged connections to the United States is most appropriate to determining whether those connections are substantial enough to warrant constitutional protection. Deripaska clearly meets this test.

> B.   *Defendants Have Clearly Violated Deripaska's Due Process Rights by Failing to Provide Adequate Notice as to the Reasons for His Designation Under E.O. 13661*

Defendants recast Deripaska's due process claim as an argument against OFAC's reliance on classified information to support a designation. *See* ECF No. 15 at 17 ("Deripaska's opposition argues that OFAC's reliance on classified information in the administrative record to support his designation under E.O. 13661 violates his rights to adequate post-deprivation notice under the Due Process Clause."). Neither Deripaska's complaint nor his opposition, however, set forth any argument suggesting that OFAC is barred from relying on classified evidence to support a

---

[2] The court in *Kadi* did not limit itself to the pleadings when determining whether Kadi could assert a constitutional due process right. *See Kadi*, 42 F. Supp. at 25 ("In reviewing Kadi's constitutional claims, the Court has consulted materials outside the pleadings, including the exhibits attached by both parties to their pleadings, as well as the administrative record.").

designation, and Defendants' claim otherwise reveals its own uneasiness with the obligations incumbent on OFAC when relying on classified information.

As Deripaska stated in his motion, "[t]he rule is clear: if OFAC uses classified information to support its decision to designate Deripaska, it must provide alternative means by which he has adequate notice as to the reasons for his designation and a meaningful opportunity to challenge the designation." ECF No. 10 ("Pl.'s Memo.") at 25. This rule finds avid support in this circuit. In reviewing the relevant case law, the D.C. Circuit found that "in [the] narrow category of cases" where courts have "countenanced" disclosure of only the unclassified portions of the administrative record, courts have required the government "to ensure a designee's notice and process via alternative means," including by authorizing "strictly necessary adaptations of ordinary administrative and judicial process." *Fares v. Smith*, 901 F.3d 315, 319, 324 (D.C. Cir. 2018).

The D.C. Circuit has also suggested what those "alternative means" may involve, including, for instance, the provision of "sufficiently specific 'unclassified summaries . . . [that] provide [plaintiffs] with the 'who,' 'what,' 'when' and 'where' of the allegations,'" *Fares*, 901 F.3d at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)). It has further stated that granting designee's cleared counsel the opportunity to review the full unredacted administrative record *in camera* may also provide procedural protections. *Fares*, 901 F.3d at 322-23. While Defendants are technically correct that unclassified summaries of classified information in the administrative record are not "required" by the Due Process Clause, Def.'s Memo. at 18, Defendants fail to acknowledge that what is required is that OFAC provide some alternative mechanism by which Deripaska may understand all of the reasons for his designation. Those mechanisms can include an unclassified statement of reasons; an unclassified summary of classified or otherwise privileged information; or allowing cleared counsel to review the full record.

Defendants have failed this requirement. Defendants themselves admit that the portion of OFAC's evidentiary memorandum identifying the agency's findings in support of its conclusion that Deripaska has acted in support of Russian President Vladimir Putin's projects "includes nine supporting paragraphs, eight of which were redacted because they are classified." Def.'s Mot. to Dismiss at 10, ECF No. 9. In doing so, Defendants concede that they have not provided any alternative mechanism by which Deripaska can understand eight of the nine reasons for his designation. Considering that these findings are marshalled in support of OFAC's determination that Deripaska meets the criteria for designation under E.O. 13661, the failure to inform Deripaska of the findings poses a clear and obvious notice problem under the Due Process Clause. This notice problem fatally inhibits Deripaska from having a meaningful opportunity to challenge his designation, as no court has ever found due process satisfied where so little information as to the reasons for a designation was provided to the designee.

Finally, Defendants incredibly contend that—because the unclassified portions of the administrative record provide a sufficient basis from which to conclude that Deripaska meets the criteria for designation under E.O. 13661—any further disclosure with respect to the classified portions of the administrative record is unmerited. Def.'s Memo. at 22. This position finds no support in the case law. Instead, the D.C. Circuit has made clear that "agency disclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . ." *Fares*, 901 F.3d 322 (D.C. Cir. 2018). In that context, partial disclosures could lead designees "to stumble towards a moving target," which would constitute procedural error. *Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015). Other circuits have found similarly, as evidenced by the Ninth Circuit's holding that OFAC's disclosure of one of three reasons for a designation constituted "incomplete" notice that entirely failed the requirements of due process. *Al Haramain*

*Islamic Found. v. U.S. Dep't of Treasury*, 686 F.3d 965, 985 (9th Cir. 2012). Whether those portions of the record disclosed to Deripaska would independently support a basis for designation under E.O. 13661 is irrelevant for purposes of this Court's due process analysis, which requires a determination as to whether the notice provides Deripaska with a meaningful opportunity to rebut all of OFAC's allegations. *See Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 209 (D.C. Cir. 2001) (holding that the government is required to afford designated parties "the opportunity to present . . . such evidence as those entities may be able to produce to rebut the administrative record."). Partial disclosures fail this test, for even if Deripaska were to rebut the sole allegation disclosed in the record, his failure to rebut the factual claims hidden by the redacted portions of the record "would leave Deripaska in a position where he had no opportunity to rebut agency findings that would continue to serve as a basis for his designation." Pl.'s Memo. at 24.

### III.   DEFENDANTS HAVE FAILED TO PROVIDE DERIPASKA WITH ADEQUATE NOTICE AS TO HIS DESIGNATION UNDER E.O. 13661 IN VIOLATION OF THE APA

Defendants repeat the error of their argument with respect to Deripaska's APA notice claim. Contending that Deripaska identifies no authority holding that the APA requires OFAC to provide an unclassified summary of classified or otherwise privileged information in the administrative record, Defendants argue that their APA obligations are limited to disclosure of the unclassified portions of the administrative record. They further argue those portions of the record "provide[] a sufficient statement of reasons to uphold Deripaska's designation." Def.'s Memo. at 23-24.

But here, too, the rule is clear: the APA requires that an agency set forth the reasons for its decision and that its failure to do so constitutes arbitrary and capricious agency action. *See Tourus Records v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001) (citing *Roelofs v. Sec. of the Air Force*, 628 F.2d 594, 599 (D.C. Cir. 1980)). As Deripaska has noted, the purpose of this requirement is to

"afford[] parties the chance to address any errors an agency may have made in making a decision, while also facilitating judicial review in the instance that the agency persists in its wrongful action." Pl.'s Memo. at 28. Defendants have clearly failed to meet this standard, having disclosed only one of nine of the agency's findings in support of its determination that Deripaska meets the criteria for designation under E.O. 13661. And, while an unclassified summary of classified or otherwise privileged information in the administrative record could plausibly fulfill OFAC's obligation to disclose the reasons for Deripaska's designation under E.O. 13661, Deripaska does not argue that this is the sole means by which OFAC could meet its due process obligations. Defendants provide no support for the proposition that disclosure of only the unclassified portions of the administrative record suffices for purposes of the APA where those unclassified portions reveal only one of nine—or approximately 11%—of the total findings in support of a designation.

## IV. DERIPASKA'S IDENTIFICATION ON THE SECTION 241 LIST CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE APA

### A. The Section 241 List is Subject to Judicial Review

Defendants argue that the adequacy of the Section 241 List is not subject to judicial review because "the D.C. Circuit has held that such informational reports are unreviewable and are 'committed to *congressional* discretion in measuring the fidelity of the Executive Branch actor to legislatively mandated requirements.'" Def.'s Memo. at 26. In doing so, Defendants continue to misread *Hodel*, ignoring the limited nature of the D.C. Circuit's opinion and its openness to reconsider the reviewability of "informational reports" should different factual circumstances arise.

As Deripaska previously noted, the D.C. Circuit expressly cabined its holding in *Hodel* to "the issue before [it]" and did not purport to answer the "broad, theoretical question whether an interbranch reporting requirement can ever be reviewable" where a provision of judicial review is absent. *Nat'l Resources Def. Council v. Hodel*, 865 F.2d 288, 319 n.33 (D.C. Cir. 1988). Based on

the particular facts of the case in *Hodel*, the D.C. Circuit held that Plaintiff's claim "[was] not susceptible of judicial review" for two distinct reasons: (1) because Congress "[was] not powerless to vindicate its interests or ensure Executive fidelity to Legislative directives," and (2) because of a lack of "judicially manageable standards by which to gauge the fidelity of the Secretary's response" to the demands of the underlying legislation. *Id*. at 319.

Because the factual circumstances of this case are fundamentally different from those present in *Hodel*, neither reason is applicable here. First, unlike in *Hodel*, Congress is not the victim of the Executive's flawed response to its statutory reporting requirement. Instead, Deripaska is the victim for all the reasons described in his complaint, including, for instance, by having his accounts terminated at foreign banks as a result of his inclusion on the Section 241 List. Moreover, considering the intense animus and bias towards Deripaska identified in the complaint, Congress can hardly be expected to vindicate Deripaska's interests and demand Defendants amend the Section 241 List to ensure that Treasury acts consistent with the clear statutory command of the legislation.

In addition, this Court clearly has "judicially manageable standards by which to gauge the fidelity of the Secretary's response," including the statutory commands identified in Section 241 of the CAATSA as to how the Secretary of the Treasury should assemble the list of oligarchs. Congress set forth a range of factors as to how the Secretary should determine a list of oligarchs for purposes of the Section 241 List, and this Court simply needs to determine whether the Section 241 List compiled by the Secretary is reasonably consistent with those factors, and this Court's ability to do so should not be questioned given the circumstances present in this matter.

### B.    The Section 241 List Constitutes Final Agency Action

Defendants reiterate their conclusory argument that the Section 241 List does not constitute "final agency action" for which Deripaska may state a claim under the APA, as the list does not determine rights or obligations and no legal consequences flow from it. Def.'s Memo. at 29. According to Defendants, the Section 241 List was only "informational" and did not inexorably lead to the imposition of sanctions, as evident by the fact that "less than ten percent of the persons identified as oligarchs [in the Section 241 List] were later designated" by OFAC. *Id*. at 30-31.

For the same reasons noted in Deripaska's motion, however, Defendants' argument fails. For agency action to be "final" for purposes of the APA, it must signal the "consummation" of a decision-making process undertaken by the agency and rights or obligations must have been determined by the action or legal consequences have flowed from it. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Courts scrutinizing whether an agency action is final must engage in "pragmatic" and "flexible" review, *Nat'l Ass'n of Home Builders v. U.S. Army Corps for Engineers*, 417 F.3d 1272, 1278 (D.C. Cir. 2005), finding an agency action to be "final" if it "'has a direct and immediate . . . effect on the day-to-day business' of the party challenging it." Id. (quoting *FTC v. Standard Oil Co.*, 449 U.S. 232, 239 (1980)).

Treasury's publication of the Section 241 List clearly consummated its decision-making process as the Secretary met his burden under CAATSA Section 241 to assemble a list of Russian oligarchs. The Section 241 List also had clear legal consequences for Deripaska, as he was formally and publicly identified as a Russian "oligarch" in an inter-branch report for the specific purpose of allowing Congress to consider "[t]he potential impacts of imposing secondary sanctions with respect to Russian oligarchs . . ." CAATSA, § 241. Later agency statements—detailed in

Deripaska's motion—further indicate that the list was designed to provide sanctions targeting information for Congress and the Executive. These legal consequences had "direct and immediate" effect for Deripaska, as several banks closed accounts of his and his companies immediately following publication of the Section 241 List due to reputational concerns and fears about the possible sanctions to follow. Accordingly, Defendants' publication of the Section 241 List meets the dual requirements as to what constitutes a "final agency action" for purposes of APA review.

## C. *Deripaska Has Standing to Challenge the Section 241 List*

Defendants argue that Deripaska lacks standing to challenge his inclusion on the Section 241 List. This argument is based on upon Defendants' allegation that Deripaska fails "to plausibly allege a non-speculative injury based on the actions of third parties," as the closure of his accounts at financial institutions following publication of the Section 241 List is only "speculative[ly]" related to the Section 241 List. Moreover, according to Defendants, Deripaska fails to show how a favorable ruling from the Court would redress the injury caused him by his inclusion on the Section 241 List, as he would remain designated regardless of any change of his status on the list.

Defendants' arguments are entirely spurious, as Deripaska has clearly met his burden for establishing standing to challenge his identification on the Section 241 List. Deripaska's Amended Complaint alleges that his identification as an oligarch led directly to the closure of certain of his bank accounts and those of his companies. Am. Comp. ¶ 28, ECF No. 7. These closures occurred because financial institutions were concerned of the reputational consequences of maintaining an account on behalf of a U.S.-designated "Russian oligarch," as well as U.S. officials' repeated promises to impose sanctions on persons on the Section 241 List. The closure of Deripaska's bank accounts constitutes an injury-in-fact directly traceable to Defendants' action. Defendants'

attempts to characterize Deripaska's allegations as "purely speculative" ignores the import of Defendants' actions on the business decisions of foreign banks and their assessment of risk.

Moreover, Defendants' claim that even if Deripaska's name were removed from the Section 241 List, his continued designation under E.O. 13661 and E.O. 13662 would prevent any redress from the injury caused is erroneous for two reasons. First, Defendants misconceive the redressability prong of the standing test. To satisfy this prong, Deripaska "must demonstrate that a 'substantial likelihood' [exists] that the relief requested will redress the injury claimed.'" *State ex Rel., Sullivan v. Lujan*, 969 F.2d 877, 881 (10th Cir. 1992) (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978)). And "[w]hen redress depends on the cooperation of a third party," the challenging party must show that the proposed relief will cause third parties to make choices that redress the injury. *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24-25 (D.C. Cir. 2000). Here, the removal of Deripaska's name from the Section 241 List would have the effect of relieving the concerns of foreign banks at which Deripaska maintains or formerly maintained accounts. This is a necessary condition for practical relief from the injuries caused by Defendants with respect to their designation actions and their identification of Deripaska on the Section 241 List for two reasons. First, it would demonstrate that Deripaska and those who deal with him are not a target of future sanctions designation, as the express purpose of the report is for consideration of "[t]he potential impacts of imposing secondary sanctions with respect to Russian oligarchs . . ." CAATSA, § 241. Second, it would mitigate any reputational damage those banks may suffer as a result of providing financial services to a party that is publicly identified as an oligarch—a characterization that carries an obvious negative connotation.

Second and relatedly, absent the removal of Deripaska's name from the Section 241 List, effective redress is an impossibility, whether Deripaska remains designated under E.O. 13661 and

E.O. 13662 or not. Deripaska's instant lawsuit challenges his designation under E.O. 13661, and

Deripaska has recently sought to bring litigation concerning his E.O. 13662 designation. To require

Deripaska to await the results of these proceedings before launching a challenge to his inclusion

on the Section 241 List would work an injustice on Deripaska's ability to seek redress for injuries

caused directly by Defendants' actions. Moreover, it would permit Defendants to launch the same

attack with respect to Deripaska's designation under E.O. 13661, arguing, for instance, that a

favorable ruling will not redress Deripaska's injury insofar as he remains on the Section 241 List

or designated under a separate sanctions authority. This circular attack would effectively prevent

Deripaska from being able to establish standing with respect to any of his pending matters, barring

him from being able to litigate and seek relief from Defendants' actions.

> D.    *Treasury's Section 241 List Constitutes Arbitrary and Capricious Agency Action in Violation of the APA*

Defendants argue that Deripaska's appeal to the "rule of the last antecedent" when

interpreting Section 241 of the CAATSA is irrelevant because "'canons of statutory constructions

are no more than rules of thumb.'" Def.'s Memo. at 33 (quoting *Connecticut Nat'l Bank v. Germain*,

503 U.S. 249, 253-54 (1992)). Instead of reliance on "timeworn textual canon[s]," Defendants

argue for a "plain reading" of Section 241 of the CAATSA, which—according to Defendants—

indicates that the Secretary was not required to consider "closeness to the Russian regime" when

assembling a list of oligarchs. But the statutory text invites no such "plain reading" other than

through the interpretive tools outlined by Deripaska in his motion. Further, Defendants' appeals to

unenacted legislative proposals only provide further evidence that Congress intended the Secretary

to consider both net worth and closeness to the Russian regime when assembling its list of oligarchs.

As Deripaska previously explained, Section 241's language "closeness to the Russian regime" and "net worth," properly considered, solely qualify the last antecedent—i.e., "oligarchs in the Russian Federation." Pl.'s Memo. at 31-33. Contrary to Defendants' implication otherwise, this rule of statutory construction—a "timeworn textual canon" in the Supreme Court's view— facilitates a plain reading of the statutory provision at issue. *See Lockhart v. United States*, 136 S. Ct. 958, 962-63. As a semantic canon of construction, the rule is consistent with—not opposed to—a plain meaning reading of the statute. Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, 2159-60 (2016) ("Semantic canons are generally designed to reflect the meaning that people, including Members of Congress, ordinarily intend to communicate with their choice of words."). In this instance, application of the rule of the last antecedent leads to a result in which the term "oligarch" is given its ordinary meaning, as found in everyday usage—a person whose close political connections to a specific government translates into extraordinary wealth. Accordingly, appeal to the rule produces a fair result, while Defendants' failure to apply the rule leads, alternatively, to usage inconsistent with everyday use.

Considering the clear statutory command, plain meaning and common usage, and this Court's prior consideration of the term, Defendants' use of the term "oligarch" when assembling the Section 241 List renders the list arbitrary and capricious agency action in violation of the APA.

## V. DEFENDANTS FAILED TO PROVIDE DERIPASKA EITHER ADEQUATE NOTICE OF OR A PROCESS BY WHICH TO CONTEST HIS IDENTIFICATION ON THE SECTION 241 LIST

Defendants argue that Deripaska lacks any "right to further notice of the grounds for his inclusion in the CAATSA Report or a procedure to challenge his inclusion, either pursuant to the APA or the Due Process Clause." Def.'s Memo. at 35. According to Defendants, Deripaska's APA claims fail because the Section 241 List does not constitute final agency action; its adequacy is not

subject to judicial review; and Deripaska lacks standing. Deripaska's constitutional claims, according to Defendants, likewise fail because Deripaska has not alleged "substantial connections" to the United States to merit constitutional protection; because Defendants' notice satisfied the notice requirement in any event; and because he fails to identify the deprivation of any cognizable liberty or property interest caused by his identification on the Section 241 List. Each of these arguments fails for reasons already identified.

Deripaska was identified on the Section 241 List as a "Russian oligarch" with no notice as to the evidence compiled by Treasury in support of its determination that he meets the criterion for inclusion on the list and with no procedure by which he could contest it. Defendants cast aside the question whether the APA countenances this failure to provide notice or a process to challenge the agency's action, likely due to the obvious conclusion: it does not. Instead, Defendants attack Deripaska's ability to bring the claim, arguing that the Section 241 List does not constitute "final agency action" and that its adequacy is not subject to judicial review. These claims fail, however. The Section 241 List constitutes final agency action; its adequacy is subject to judicial review; and Deripaska has standing to challenge his inclusion on the list. Further, the merits are clear: Defendants have abused their authority by failing to provide notice or a process by which Deripaska may learn of the reasons for his identification on the Section 241 List and meaningfully challenge it.

Defendants' argument with respect to Deripaska's constitutional claim fails for similar reasons. Deripaska's complaint contains specific factual allegations evidencing his "substantial connections" to the United States and meriting his assertion of a constitutional right to due process. In addition, Deripaska has fairly alleged direct harm to his liberty and property interests as a result of his identification on the Section 241 List, including the closure of his bank accounts and those

of his companies. While Defendants argue that Deripaska has been provided all the notice due under the Due Process Clause insofar as he has been told that he was included on the list because he is a Russian national worth more than $ 1 billion, Defendants have not provided findings or conclusions in support of that determination, nor the evidence used to reach that determination.

Tellingly, Defendants make no attempt to justify the lack of any process by which Deripaska may contest his inclusion on the Section 241 List, including through the administrative reconsideration procedures required under the APA. *See* 5 U.S.C. § 555(b). Absent a process to challenge his inclusion on the Section 241 List, Defendants are in stark violation of Deripaska's due process rights under the Due Process Clause and the APA.

## CONCLUSION

For the foregoing reasons, the Court should grant Deripaska's motion for summary judgment and enter judgment in favor of Deripaska on all claims.

Dated: November 11, 2019

Respectfully submitted,

/s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
FERRARI & ASSOCIATES, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

Attorney for Plaintiff
*Oleg Deripaska*