## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
)
**OLEG DERIPASKA** )
    2 Khutor Sokolsky, )
    Ust-Labinsky District, )
    Krasnodarsky Krai, Russian Federation )
) CIV. NO. 19-0727 (APM)
        *Plaintiff,* )
) **SECOND AMENDED COMPLAINT**
    v. )
)
**STEVEN T. MNUCHIN** ) **ECF**
**in his official capacity as** )
        **Secretary of the United States** )
        **Department of the Treasury** )
    1500 Pennsylvania Ave., NW )
    Washington, D.C. 20220 )
)
    and )
)
**THE UNITED STATES DEPARTMENT OF** )
**THE TREASURY** )
    1500 Pennsylvania Ave., NW )
    Washington, D.C. 20220 )
)
    and )
)
**ANDREA M. GACKI** )
**in her official capacity as** )
        **Director of the** )
        **United States Department of the Treasury** )
        **Office of Foreign Assets Control** )
    1500 Pennsylvania Avenue, NW )
    Freedman's Bank Building )
    Washington, D.C. 20220 )
)
    and )
)
**THE UNITED STATES DEPARTMENT** )
**OF THE TREASURY, OFFICE OF FOREIGN** )
**ASSETS CONTROL** )
    1500 Pennsylvania Avenue, NW )
    Freedman's Bank Building )

Washington, D.C. 20220     )
               )
       *Defendants.*    )
_____)

## SECOND AMENDED COMPLAINT

Plaintiff Oleg Deripaska ("Deripaska") brings this Second Amended Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury; its Secretary, Steven T. Mnuchin; the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"); and its Director, Andrea M. Gacki, in and support of his complaint alleges:

1. This case seeks the Court's intervention to enjoin Defendants from using the devastating power of U.S. economic sanctions without adhering to the bounds of their legal authority and in a manner inconsistent with their due process obligations to provide notice and a meaningful opportunity to be heard.

2. Deripaska is an internationally renowned businessman who founded Basic Element, one of Russia's largest industrial groups, and formerly led En+ Group plc ("En+") and UC Rusal plc ("Rusal"), the latter of which is the world's second-largest aluminum company. Deripaska is also a major charitable contributor in Russia, having established Volnoe Delo—a Russian charitable foundation that provides support to educational and scientific programs for children; cultural institutes; and regional healthcare programs.

3. Following the 2016 presidential elections in the United States, Deripaska became the subject of political infighting between U.S. political parties. During that time, Deripaska was falsely alleged to be involved in Russian election interference in the United States, and Deripaska's decade-old prior business dealings with former members of the Donald J. Trump 2016 Presidential Campaign were spun in an attempt to substantiate those fabricated allegations.

4.     The political response to these fabrications has been severe and misdirected, as Defendants have arbitrarily utilized their sanctions authorities against Deripaska and Congress has signaled its unwillingness to entertain any sanctions relief for him.

5.     This response has materialized in devastating ways for Deripaska. First, on January 29, 2018, Defendants released a report on senior foreign political figures and "oligarchs" in the Russian Federation. Deripaska's name was identified therein as a Russian "oligarch" because his net worth totaled—in Defendants' estimation—over $1 billion. Deripaska's "net worth" was the sole criterion by which Defendants determined that Deripaska qualified as an "oligarch" for purposes of the report required by Section 241 of the Countering America's Adversaries Through Sanctions Act ("CAATSA"). Second, following pushback from Congress, Secretary of the Treasury Steven T. Mnuchin promised that sanctions would soon follow publication of that report, which had commonly come to be referred to as an "oligarch's list." Donna Borak and Nicole Gaouette, Mnuchin Vows Additional Russia Sanctions Will Be Imposed in 'Near Future', CNN (last updated Jan. 30, 2018 4:13PM ET), https://www.cnn.com/2018/01/30/politics/mnuchin-russia-sanctions/index.html (last accessed April 13, 2020). Third, fulfilling Secretary Mnuchin's promise of new sanctions arising from the Section 241 Report, on April 6, 2018, OFAC designated Deripaska pursuant to Executive Order ("E.O.") 13661 and E.O. 13662.

6.     As a result of the designations, Deripaska was identified on the Specially Designated Nationals and Blocked Persons List ("SDN List") administered by OFAC and became the subject of U.S. economic sanctions.

7.     OFAC announced Deripaska's designation through a press release in which it made a series of allegations regarding Deripaska's conduct that were completely untethered from the legal criteria for designation under E.O. 13661 and E.O. 13662. The press release further trafficked

in false rumors and innuendo—most of which originate from decades-old defamatory attacks by Deripaska's former business rivals and competitors. OFAC's reliance on false and immaterial information highlighted the obvious pretext of its action, which was designed to placate those calling for tough action against Russia. It also provided no reasonable basis under which to determine that Deripaska met the criteria for designation under E.O. 13661 or E.O. 13662, thereby demonstrating that OFAC had overstepped the bounds of its legal authorities in order to achieve what it viewed as a politically expedient outcome. Moreover, any pretense of a presumption of innocence with respect to these slanderous allegations was cast aside, as OFAC wholesale relied on unsubstantiated rumors unsupported by any facts.

8.      In response to these actions, Deripaska filed an initial complaint in this lawsuit, ECF No. 1, alleging that Defendants' actions were unlawful under the APA and that Defendants failed to provide adequate notice of their actions to permit Deripaska a meaningful opportunity to challenge them through OFAC's traditional administrative delisting procedures.

9.      Following the filing of this initial complaint, Defendants provided Deripaska with a redacted copy of the evidentiary memorandum identifying the factual and legal bases for OFAC's actions under E.O. 13661 and E.O. 13662 and outlining the agency's reasoning and conclusions in support of those designations. Far from demonstrating the legality of their decision, however, OFAC's evidentiary memorandum underscored the inadequacy of OFAC's actions targeting Deripaska. Indeed, the disclosed record lacks substantial evidence supporting OFAC's action; produces conclusions that are unsupported by the purported facts or evidence cited in the record; relies on evidence from third-parties that OFAC has not independently verified nor corroborated; and evidences that OFAC's decision to designate Deripaska is disconnected from the legal bases authorizing a designation under E.O. 13661 or E.O. 13662. In sum, by presuming Deripaska to be

guilty of the false information contained in the record—or by failing to cite any facts in support of certain conclusions drawn from that record—OFAC's evidentiary memorandum supports Deripaska's cause in this litigation far more than it upholds OFAC's designation actions.

10.     In tandem with this litigation, Deripaska also initiated a request under OFAC's administrative delisting procedures with respect to his E.O. 13662 designation. Deripaska's request for delisting argued that OFAC lacked a sufficient factual basis for concluding that Deripaska meets the criteria for designation under E.O. 13662, and, in the alternative, that there had also been a fundamental change in circumstances negating OFAC's purported bases for that designation. Most notably, OFAC's determination that Deripaska meets the criteria for designation under E.O. 13662 was primarily based on Deripaska's ownership or control over En+ and EuroSibEnergo ("ESE"), both of which OFAC determined operated in Russia's energy sector. However, both En+ and ESE—which were designated under E.O. 13661 and E.O. 13662 for being owned or controlled by Deripaska—were removed from OFAC's SDN List following Deripaska's divestiture of his interests in, and the severance of his control over, those companies.

11.     OFAC denied Deripaska's reconsideration petition, finding his arguments to be unpersuasive and determining that he continues to operate in Russia's energy sector via his interests in En+ and ESE, despite the fact that OFAC has conclusively determined that he no longer owns or controls those entities. Again, as can be inferred from their processing of the petition, OFAC's decision appears to have been pre-determined, having already concluded that Deripaska was going to be found to meet the designation criteria of E.O. 13662 regardless of his arguments in support of delisting or his responses to OFAC's questions.

12.     During the processing of the E.O. 13662 delisting petition, Deripaska had continued to pursue litigation with respect to his E.O. 13661 designation as OFAC has failed to provide

Deripaska with sufficient notice of the conclusions and findings in support of its determination that he meets E.O. 13661's designation criteria. As Deripaska continued to lack an understanding of the reasons for his E.O. 13661 designation, any potential administrative delisting request could be denied on the basis of undisclosed findings and conclusions in support of the designation, even if Deripaska were to successfully rebut the findings disclosed to him thus far. These circumstances apply even following OFAC's recent disclosure of unclassified summaries, as the summaries allege conduct that is either historic, false, or both; are unsupported by any facts; and presume Deripaska to be guilty of conduct he did not engage in based on reports that have not been verified nor corroborated by OFAC.

13.     Likewise, Deripaska is unable to challenge his identification as an "oligarch" and his inclusion in the Section 241 Report. This is both because Defendants have failed to provide a process by which its action can be reconsidered or otherwise challenged and because Defendants have failed to provide notice as to the reasons for Defendants' identification of him in the report.

14.     For these reasons, and for those set forth below, the Court should find that Defendants have not acted in accordance with law and should compel Defendants to rescind Deripaska's designations under E.O. 13661 and E.O. 13662, as well as his identification in Defendants' Section 241 Report, or otherwise declare them unlawful and grant the relief requested.

## JURISDICTION AND VENUE

15.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, the Countering America's Adversaries Through Sanctions Act, P.L. 115-44, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

16.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

17.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

18.     Oleg Deripaska is and was at all times relevant to this complaint a citizen of Russia who has founded and owned a number of multinational corporations operating globally, including within the United States. Deripaska currently resides at 2 Khutor Sokolsky, Ust-Labinsky District, Krasnodarsky Krai, Russian Federation.

19.     Deripaska is an internationally recognized businessman who founded and led one of Russia's largest industrial groups, Basic Element, and formerly headed En+ and Rusal—the latter of which is the world's second-largest aluminum company.

20.     OFAC is a federal administrative agency of the United States Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220. The U.S. Department of the Treasury is responsible for maintaining the financial and economic security of the United States. The U.S. Department of the Treasury is also responsible for overseeing OFAC. OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 13661 and E.O. 13662 and regulating dealings with them under those authorities via 31 C.F.R. Part 501, the "Reporting, Procedures, and Penalties Regulations," and 31 C.F.R. Part 589, the "Ukraine Related Sanctions Regulations." OFAC was responsible for designating Deripaska pursuant to E.O. 13661 and E.O. 13662.

21.     Defendant Steven T. Mnuchin is the Secretary of the Treasury of the United States. Mr. Mnuchin was responsible for identifying Deripaska in the Section 241 Report. Mr. Mnuchin is sued in his official capacity.

22.     Defendant Andrea M. Gacki is the Director of OFAC. In this role, Ms. Gacki was responsible for designating Deripaska pursuant to E.O. 13661 and E.O. 13662 and for denying Deripaska's E.O. 13662 delisting request.

## FACTUAL ALLEGATIONS

### A.     CAATSA Section 241 Report

23.     On January 29, 2018, Deripaska was identified in the "Report to Congress Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation and Russian Parastatal Entities" ("Section 241 Report"). *See* Press Release, U.S. Dep't of Treasury, Treasury Releases CAATSA Reports, Including on Senior Foreign Political Figures and Oligarchs in the Russian Federation (Jan. 29, 2018).

24.     Section 241 of CAATSA required the Secretary of the Treasury to submit "a detailed report on . . . senior foreign political figures and oligarchs in the Russian Federation, including . . . identification of the most significant senior foreign political figures and oligarchs in the Russian Federation, as determined by their closeness to the Russian regime and their net worth." Section 241 of CAATSA further required the Secretary of the Treasury to assess the relationship between any identified individuals and President Vladimir Putin or other members of the Russian ruling elite.

25.     Section 241 of CAATSA also required the Secretary of the Treasury to provide a report on "[t]he potential impacts of imposing secondary sanctions with respect to Russian oligarchs, Russian state-owned enterprises, and Russian parastatal entities . . ."

26.     The Section 241 Report was to be submitted in unclassified form, although the Secretary of the Treasury was authorized to submit a classified annex of the report to appropriate congressional committees. The unclassified portion of the Section 241 Report was made public. *See* Exhibit A—Unclassified Section 241 Report. However, Section 241 of CAATSA indicated that the classified annex was intended to supplement—not supplant—the contents of the unclassified Section 241 Report, as it stated that the report "shall be submitted in unclassified form, but may contain a classified annex."

27.     The published Section 241 Report provides "a list of senior foreign political figures and oligarchs in the Russian Federation, as determined by their closeness to the Russian regime and their net worth." Exhibit A. According to the report, this list was compiled "based on objective criteria related to individuals' official position in the case of senior political figures, or a net worth of $1 billion or more for oligarchs." *Id*.

28.     Consistent with this approach, Appendix 2 of the Section 241 Report contains a list of oligarchs "who, according to reliable public sources, have an estimated net worth of $1 billion or more." Exhibit A. Deripaska's name is identified in Appendix 2 of the Section 241 Report.

29.     Secretary Mnuchin acted inconsistent with statutory requirements and with the plain meaning of the term "oligarch" when he created Appendix 2 of the Section 241 Report. A Russian person's "net worth" should not have served, and could not permissibly serve, as the sole determinative factor for determining whether a person should be considered an "oligarch" for purposes of Section 241 of CAATSA.

30.     No English-language definition of the term "oligarch" solely relies on a person's wealth or net worth. Traditionally, including by courts in this district, an "oligarch" is defined as an individual with close political connections to a particular government or regime who has amassed enormous wealth and political power through the wholesale transfer of prized state assets and backroom dealings with regime officials. *See e.g., OAO Alfa Bank v. Ctr. for Pub. Integrity*, 378 F. Supp. 2d 20, 23 (D.D.C. 2005). Members of Congress have also noted that "[we] can't just say because someone has a lot of money, that they are an oligarch, which then says they are evil in some way." *Corruption: Danger to Democracy in Europe and Eurasia: Hearing Before the H.R. Subcomm. on Eur., Eurasia, and Emerging Threats of the H. Comm. on Foreign Affairs*, 144th Cong. 37 (2016) (statement of Rep. Dana Rohrabacher, Chairman, H.R. Subcomm. on Eur., Eurasia, and Emerging Threats of the H. Comm. on Foreign Affairs).

31.     Public reporting indicates that the U.S. Department of the Treasury sourced the list of Russian oligarchs found in the Section 241 Report from the *Forbes* 2017 list of the World's Billionaires ("Forbes List"), as the Section 241 Report even carries over a typographical error that was initially contained in the Forbes List. Leonid Bershidsky, *The U.S. List of Russian Oligarchs Is a Disgrace*, BLOOMBERG, Jan. 30, 2018, https://www.bloomberg.com/opinion/articles/2018-01-30/the-u-s-list-of-russian-oligarchs-is-a-disgrace (last visited April 13, 2020).

32.     Members of Congress themselves have likewise called the Section 241 Report "an embarrassment, given that the list . . . was clearly copied from Forbes Magazine." Letter from Robert Menendez, Ranking Member of the Senate Foreign Relations Comm., to Rex Tillerson, Sec.'y of State, and Steven T. Mnuchin, Sec.'y of the Treasury (Feb. 28, 2018).

33.     The Forbes List did not make any reference to allegations concerning Deripaska's closeness to the Russian government nor did it suggest that he wields political influence in Russia. Exhibit B—Forbes List of World's Billionaires-Russia.

34.     Deripaska was provided no advance notice of his inclusion in the Section 241 Report, and Defendants did not provide him with any process or procedure by which he could have responded to the proposed inclusion of his name in the Section 241 Report. Defendants have also not provided Deripaska with any administrative process or procedure to challenge his inclusion in the Section 241 Report. Indeed, U.S. Treasury Department officials have told other persons identified in the Section 241 Report that there is no process or procedure for removal from the Section 241 Report. *See* Mem. in Supp. of Mot. for Prelim. Inj., *Gapontsev v. U.S. Dep't of Treasury*, No. 18-2826-RC (D.D.C. Feb. 15, 2019), ECF No. 12 at 12, 20.

35.     Deripaska also has not been provided access to a copy of the classified annex submitted alongside the Section 241 Report nor have Defendants made any attempt to apprise him of the contents of the classified annex, even in summary form. Moreover, Defendants have not provided Deripaska with the administrative record nor any other materials compiled in support of their determination that Deripaska should be included in the Section 241 Report.

36.     Immediately following his inclusion in the Section 241 Report and his public identification as a Russian "oligarch" by the United States government, several foreign financial institutions at which Deripaska's companies held accounts began the process of terminating those account relationships. For example, Hellenic Bank, a Cypriot financial institution, initiated termination of its account relationships with Deripaska's companies immediately after, and as a direct result of, his inclusion in the Section 241 Report.

**B.**     **Deripaska's Designation Under Executive Order 13661**

37.     On March 16, 2014, President Obama issued E.O. 13661, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine."

38.     E.O. 13661 was issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*., which permits the President to exercise economic powers with respect to an unusual and extraordinary threat to the national security, foreign policy, or economy of the United States upon declaration of a national emergency. 50 U.S.C. §§ 1701, 1702.

39.     In order to exercise his IEEPA authorities and issue E.O. 13661, the President declared a national emergency with respect to "the actions and policies of the Government of the Russian Federation with respect to Ukraine—including the recent deployment of Russian Federation military forces in the Crimea region of Ukraine." Exec. Order 13661, Preamble. The Preamble to E.O. 13661 states that these "actions and policies," which "undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets, . . . constitute an unusual and extraordinary threat to the national security and foreign policy [of the United States]." *Id.*

40.     Section 1 of E.O. 13661 permits the Secretary of the Treasury to designate persons determined, *inter alia*, to have acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation. Exec. Order 13661, § 1(a)(ii)(C)(1).

41.     On April 6, 2018, OFAC designated Deripaska under E.O. 13661 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign

Activity (April 6, 2018); U.S. Dep't of Treasury, Office of Foreign Assets Control, Notice of OFAC Actions, 83 FED. REG. 19138 (May 1, 2018).

42.     As a result of his designation, Deripaska's property and interests in property located within U.S. jurisdiction are blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with him. Deripaska is also barred from travel to the United States and from accessing any property that he may hold there. In addition, foreign persons may be subject to U.S. sanctions for engaging in any transactions or dealings with him.

43.     According to OFAC's press release announcing the designation, OFAC's action "follow[ed] the Department of the Treasury's issuance of the CAATSA Section 241 report in late January 2018." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). OFAC's press release further set forth baseless allegations of criminal behavior entirely unrelated to the legal criteria for designation under E.O. 13661 and the national emergency invoked by that Order. *Id.*

44.     Most, if not all, of OFAC's allegations originate from Deripaska's business rivals and competitors who have long promulgated false rumor and innuendo in an attempt to gain an advantage in lawsuits that they have brought against Deripaska. The majority of these allegations have also been raised before fact-finding tribunals elsewhere in the world and deemed to be without merit. Neither OFAC's press release nor its evidentiary memorandum in support of the designation account for foreign courts' or tribunals' treatment of these allegations.

C.     **OFAC's Disclosure of the E.O. 13661 Evidentiary Memorandum**

45.     On April 29, 2019, Defendants provided Deripaska with a redacted version of the evidentiary memorandum relied upon in designating him under E.O. 13661. This memorandum

outlined the factual and legal bases for OFAC's designation action and included exhibits of the information relied upon by OFAC in rendering its decision.

46.     Significant portions of the evidentiary memorandum were redacted in the version sent to Deripaska and later submitted on the public docket in this case. Admin. R. ("A.R."), ECF No. 6. The most significant redactions were made in respect of the factual bases for Deripaska's designation. Those bases are identified in the section of the evidentiary memorandum titled "Basis for Determination." Eight of the nine paragraphs contained in this section of the evidentiary memorandum are entirely redacted in the disclosed administrative record.

47.     In support of its determination that Deripaska has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, OFAC concluded that Deripaska "has acted in *support* of Russian President Vladimir Putin's [p]rojects." A.R. at 0011 (emphasis added). This conclusion, however, does not track OFAC's determination that Deripaska has acted or purported to act "for or on behalf of" Russian President Vladimir Putin, a senior official of the Government of the Russian Federation. *Id*.

48.     The sole unredacted portion of the evidentiary memorandum relating to the basis for Deripaska's designation under E.O. 13661 cites a decades-old news article from *The Nation* to support OFAC's conclusion that Deripaska "has acted in support of Russian President Vladimir Putin's projects." *Id*. at 0011.

49.     *The Nation* article states " . . . that Deripaska told one of his close associates that he bought an aluminum plant in Montenegro in 2005 because 'Russian President Vladimir Putin encouraged him to do it . . . [T]he Kremlin wanted an area of influence in the Mediterranean." *Id*. Neither the article nor OFAC's findings with respect to it explain how the purchase of the aluminum plant was considered a "project" of Russian President Putin. While the article alleges

that Deripaska told an unidentified "associate" that Russian President Putin encouraged him to purchase the aluminum plant, neither the article nor OFAC's finding explain how the aluminum plant was connected to Putin nor how Deripaska acted for or on behalf of Putin by purchasing the aluminum plant. Further, the article does not state whether the purchase was completed nor whether it was ongoing as of the time of the national emergency declared in E.O. 13661—some nine years later—and OFAC provides no additional or corroborating information in support of its finding arising from this article. OFAC also fails to provide any explanation for why it assesses *The Nation* article to be credible.

50.     OFAC's evidentiary memorandum also makes no attempt to identify how Deripaska's purported involvement in the purchase of an aluminum plant in Montenegro in 2005 is connected or otherwise relevant to the national emergency for which E.O. 13661 was issued or to Russia's "actions and policies" with respect to Ukraine. The evidentiary memorandum does not contain any conclusions, findings, or reasoning discussing or identifying how Deripaska's designation under E.O. 13661 is consistent with, and serves the underlying purpose of, E.O. 13661.

51.     All of the other factual bases for Deripaska's designation under E.O. 13661 are redacted in the evidentiary memorandum disclosed on the public docket. *Id.* at 0011-0012.

**D.     OFAC's Disclosure of Unclassified Summaries for E.O. 13661 Designation**

52.     On December 6, 2019, following briefing with respect to the first Amended Complaint filed in this matter, Defendants "agreed to endeavor to provide an unclassified summary of information in the administrative record that is classified." Exhibit C—January 22, 2020 OFAC Letter re: Unclassified Summaries.

53.     On January 22, 2020, Defendants provided Deripaska with "additional non-privileged and unclassified information regarding the basis for [Deripaska's] designations." *Id.*

According to Defendants, these unclassified summaries "complete[d] the releasable information contained in the administrative record." *Id*.

54.     OFAC's unclassified summaries relate solely to the basis for Deripaska's designation under E.O. 13661, as evidenced by the header of the document. *Id*. The unclassified summaries comprise six separate sentences, which are as follows:

- As of late January 2012, then Prime Minister Vladimir Putin had reportedly compelled Russian oligarchs to invest in projects associated with the 2014 Sochi Olympics; this included an $800 million investment by Oleg Deripaska.

- As of late January 2018, Deripaska was reported to have financed projects upon request of Vladimir Putin and senior Russian officials.

- Deripaska had reportedly once cancelled an IPO of his company, Gaz, to hide Russian President Vladimir Putin's money laundering through the company, as recently as September 2017.

- In December 2016, Deripaska was reportedly identified as one of the individuals holding assets and laundering funds on behalf of Russian President Vladimir Putin.

- In or before July 2011, Deripaska's business activity was reportedly used, on at least one occasion, as a cover to facilitate the transfer of funds for the personal use of then Russian Prime Minister Vladimir Putin.

- In late 2004, Deripaska reportedly acted on verbal instructions from President Vladimir Putin in a high-level bilateral meeting between Russian and Kyrgyz representatives.

55.     On February 9, 2020, Deripaska requested clarification from Defendants regarding these unclassified summaries. This request sought to clarify whether the unclassified summaries represented summaries for all of OFAC's findings with respect to its E.O. 13661 designation and whether, in those instances where no geographic location is identified in the summaries, the summaries are presumed to relate to conduct in, or otherwise involving, Ukraine. On February 13, 2020, Defendants' counsel responded by stating that the unclassified summaries "represent all of the information that OFAC has been authorized to release publicly at this time." Defendants' counsel also noted that OFAC was "not in a position to provide any additional information either about the unclassified summary itself or the contents of the underlying classified information."

56.     OFAC's unclassified summaries provide no indication as to how these unclassified summaries relate to the redacted portions of the evidentiary memorandum; whether they represent all redacted findings in the evidentiary memorandum's "Basis for Determination" section; or whether or how those findings relate to the national emergency declared in E.O. 13661.

57.     Each of the unclassified summaries "report" information regarding Deripaska's purported activities, indicating that OFAC relied on information that it did not itself gather and that it did not independently verify. There are no findings or summary of findings that provide additional or corroborating information in support of the allegations contained in the summaries, nor that assess the credibility or reliability of those allegations. Further, for those allegations occurring prior to the issuance of E.O. 13661, there are no indications that the purported conduct is ongoing or continuous in nature; instead, the summaries are written in the past tense suggesting that the alleged conduct has ceased.

58.     Neither OFAC's unclassified summaries nor the unredacted portions of the evidentiary memorandum indicate whether OFAC gathered, received, or reviewed any exculpatory

information regarding Deripaska's purported conduct and whether OFAC assessed that any such exculpatory information did not negate the reporting it had gathered from third-party sources.

59.     OFAC's unclassified summaries do not provide Deripaska with a means to contest his designation through the agency's administrative delisting procedures, as they appear to be incomplete and are insufficient in their level of detail to provide Deripaska a meaningful opportunity to factually rebut them.

### E.     Deripaska's Designation Under Executive Order 13662

60.     On March 20, 2014, President Obama issued E.O. 13662, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine."

61.     E.O. 13662 was also issued pursuant to IEEPA. To trigger IEEPA's authorities, the President made a finding that "the actions and policies of the Government of the Russian Federation . . . continue to undermine democratic processes and institutions in Ukraine; threaten its peace, security, stability, sovereignty, and territorial integrity; and contribute to the misappropriation of its assets." Exec. Order 13662, Preamble. These actions and policies of the Government of the Russian Federation "constitute[d] an unusual and extraordinary threat to the national security and foreign policy of the United States." *Id*.

62.     In response to this national emergency, E.O. 13662 authorized the Secretary of the Treasury to designate, *inter alia*, any person determined to operate in any sector of the Russian Federation economy identified by the Secretary of the Treasury. Exec. Order 13662, § 1(a)(i).

63.     The Secretary of the Treasury has determined that Russia's energy sector is a sector of the Russian Federation economy in which a person's operation therein exposes them to designation under E.O. 13662. *See* Press Release, U.S. Dep't of Treasury, Announcement of Treasury Sanctions on Entities Within the Financial Services and Energy Sectors of Russia,

Against Arms or Related Materiel Entities, and Those Undermining Ukraine's Sovereignty (July 16, 2014).

64.     On April 6, 2018, OFAC designated Deripaska under E.O. 13662 for "operating in the energy sector of the Russian Federation economy." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). By virtue of his designation, all property and interests in property within the United States or within the possession or control of a U.S. person, wherever located, in which Deripaska maintains an interest are blocked. U.S. persons are also prohibited from engaging in any transactions with Deripaska as a result of his designation.

65.     OFAC's April 6, 2018 press release announced Deripaska's designation under E.O. 13662. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). According to the press release, Deripaska "is being designated . . . pursuant to E.O. 13662 for operating in the energy sector of the Russian Federation economy." *Id*.

66.     OFAC's press release, however, provided no factual information regarding how Deripaska is alleged to operate in Russia's energy sector nor any explanation of OFAC's reasoning in support of its legal determination that he operates in that sector of the Russian economy. Instead, the press release trafficked in rumor and innuendo regarding Deripaska's purported conduct that had no connection to the legal basis for his designation under E.O. 13662. Among OFAC's defamatory allegations, the press release alleged that Deripaska "has been investigated for money laundering, and has been accused of threatening the lives of business rivals, illegally wiretapping a government official, and taking part in extortion and racketeering." *Id*. OFAC's press release further reported on "allegations that Deripaska bribed a government official, ordered the murder

of a businessman, and had links to a Russian organized crime group." *Id*. None of these allegations have any purported relationship to E.O. 13662's designation criteria—i.e., that Deripaska operates in the energy sector of the Russian Federation economy. Further, none of those allegations allege conduct that in any way connects, or even purports to connect, to the "actions and policies of the Government of the Russian Federation with respect to Ukraine."

67.     Again, OFAC's press release stated that the designation action was taken in response to the Russian government's "worldwide malign activity," and the press release itself was titled: "Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity." In the press release, Treasury Secretary Mnuchin states that the designation action was intended to show that "Russian oligarchs and elites . . . will no longer be insulated from the consequences of their government's destabilizing activities," including its "range of malign activity *around the globe*." *Id*. (emphasis added).

68.     Apart from its press release, OFAC stated that its April 6, 2018 designation action "aggressively targeted Russian oligarchs and elites that further the Kremlin's *global malign activities* . . ." Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Maj. Leader (Dec. 19, 2018) (emphasis added). These activities, according to OFAC, include the subversion of Western democracy; support to the Assad regime in Syria; malicious cyber activities; the occupation of Crimea; and the instigation of violence in Ukraine. *Id*. Indeed, certain of those categories of alleged conduct are not the subject of any national emergency declared by the President in any sanctions program.

69.     Specifically, and as relevant here, there is no declared national emergency with respect to Russia's "worldwide malign activity" or its "global malign activities." Instead, E.O. 13662—the authority under which Deripaska was designated for operating in the energy sector of

the Russian Federation economy—was issued solely in response to Russia's actions and policies with respect to Ukraine.

**F.      OFAC's Disclosure of the E.O. 13662 Designation Evidentiary Memorandum**

70.      As noted above, on April 29, 2019, OFAC provided Deripaska's counsel with an unclassified version of the administrative record, which contained the evidentiary memorandum underlying his E.O. 13662 designation. This evidentiary memorandum outlined the factual and legal bases for OFAC's E.O. 13662 designation action targeting Deripaska, as well as the exhibits attached in support of that memorandum's findings.

71.      Section III of the evidentiary memorandum is titled "Basis for Determination." A.R. at 0011-0012. This section identifies the legal and factual bases for OFAC's determination that Deripaska meets the criteria for designation under E.O. 13662. A sub-heading of Section III of the evidentiary memorandum states that "DERIPASKA operates in the energy sector of the Russian Federation economy," which appears to constitute the legal conclusion in support of OFAC's determination that Deripaska meets the criteria for designation under E.O. 13662. A.R. at 0012.

72.      In support of this conclusion, OFAC made the following findings, as evidenced by the contents of the evidentiary memorandum:

- According to Deripaska's own website, Deripaska is involved in several World Economic Forum projects, including ones on "New Energy Architecture" and the "Interaction between the Power Industry and Society."

- As part of Deripaska's work on the APEC Business Advisory Council, Deripaska focuses on multiple issues of energy efficiency and energy security. For instance, at a February 2012 meeting of the APEC Business Advisory Council, Deripaska's representative presented the North East

Asian Region Electrical System Ties Initiative, whose goal is to improve ties between the power grids of Eastern Siberia, Northern China, Japan, and South Korea through the creation of a transnational power grid in Northeast Asia.

- According to Deripaska's own website, Deripaska's key companies operate in multiple sectors of the economy, including the energy sector. EuroSibEnergo is the largest private power company in Russia and produces around 9% of Russia's total electricity generation. EuroSibEnergo is a part of the EN+ Group over which Deripaska maintains a majority ownership interest.

73. OFAC's determination that Deripaska operates in the energy sector of the Russian Federation economy is therefore based on (1) Deripaska's involvement in World Economic Forum projects related to energy and power; (2) Deripaska's work on the APEC Business Advisory Council, some of which is related to power grids; and (3) Deripaska's exercise of ownership or control with respect to ESE.

74. The defamatory allegations contained in OFAC's press release announcing Deripaska's designation cannot be found in this section of the evidentiary memorandum. Instead, these allegations are contained in a section of the evidentiary memorandum titled "Additional Information." A.R. at 0013. OFAC's evidentiary memorandum does not purport to show how these allegations are relevant to the bases for Deripaska's designation under E.O. 13662 nor how OFAC utilized these allegations in support of its determination that Deripaska meets the criteria for designation under E.O. 13662.

### G.    OFAC's Delisting of EN+ Group and ESE

75.    In the same designation action targeting Deripaska, OFAC also designated a number of companies for being owned or controlled by Deripaska, including En+, ESE, and Rusal. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). Each of these designated entities were subject to blocking sanctions and identified on OFAC's SDN List.

76.    Secretary Mnuchin stated that these companies were sanctioned "because of their ownership and control by a sanctioned Russian oligarch Oleg Deripaska, not for the conduct of the companies themselves." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist En+, Rusal, and EuroSibEnergo (Dec. 19, 2018).

77.    On December 19, 2018, OFAC entered into a Terms of Removal Agreement with En+, ESE, and Rusal. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist EN+, Rusal, and EuroSibEnergo (Dec. 19, 2018). Under this agreement, the companies agreed to take certain enumerated steps towards extinguishing Deripaska's ownership and control in En+, including, for instance, by limiting his voting share in En+ to no more than 35% and by reducing his ownership stake to 44.95%.

78.    In response to these measures, OFAC agreed to rescind the designations of En+, ESE, and Rusal under E.O. 13661 and E.O. 13662 and remove their names from its SDN List. According to OFAC's press release announcing the delisting of the companies, each of the entities "reduced [] Deripaska's direct and indirect shareholding stake in these companies and severed his control." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Delists En+, Rusal, and EuroSibEnergo (Jan. 27, 2019). For this reason, OFAC determined that each of

these companies no longer met the criteria for designation under E.O. 13662, as Deripaska no longer exercised ownership or control over them. *See*, *e.g.*, Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist En+, Rusal, and EuroSibEnergo (Dec. 19, 2018).

79.     On January 27, 2019, OFAC rescinded the designations of En+, ESE, and Rusal and removed their names from the SDN List.

## H.     OFAC's Denial of Deripaska's Delisting Petition

80.     On June 27, 2019, Deripaska filed a request challenging his continued designation under E.O. 13662 pursuant to OFAC's delisting procedures set forth at 31 C.F.R. § 501.807. This delisting request sought the rescission of Deripaska's E.O. 13662 designation. Admin. R. II ("A.R. II") at 0033-0063.

81.     OFAC acknowledged Deripaska's delisting petition via electronic mail correspondence dated June 28, 2019. OFAC assigned Deripaska's delisting request Case ID UKRAINE-EO13662-16174 and stated that the request was "under review" and that it was "likely" OFAC would seek additional information from Deripaska prior to making a final determination on Deripaska's E.O. 13662 designation. *Id*.

82.     Deripaska's delisting petition included information and arguments as to why he does not meet the criteria for designation under E.O. 13662, as well as why there has been a change in circumstances negating any purported prior basis for designation. Deripaska's delisting petition set forth the following arguments as to why OFAC should rescind his E.O. 13662 designation:

- Deripaska's alleged participation in international conferences related to energy and his purported proposal for a region-wide energy initiative—even if taken

as true—do not provide a reasoned basis by which to determine that Deripaska operates in the energy sector of the Russian Federation economy;

- Deripaska's purported ownership or control with respect to ESE does not provide a reasoned basis by which to determine that Deripaska operates in the energy sector of the Russian Federation economy, as ESE—by OFAC's own admission—is an "independent power company in Russia" and OFAC has never before interpreted the term "energy sector" to capture persons engaged solely in the production of electricity; and

- OFAC's determination that Deripaska operates in the energy sector of the Russian Federation economy is based, at least in part, on its related finding that Deripaska owns or controls ESE, a power company in Russia. However, by virtue of the Terms of Removal Agreement, OFAC determined that ESE is no longer owned or controlled by Deripaska or any companies over which Deripaska exercises ownership or control. Accordingly, there has been a change in circumstances negating the basis for designation under E.O. 13662 as Deripaska no longer exercises ownership or control over ESE, the entity through which Deripaska was alleged to operate in the energy sector of the Russian Federation economy.

For these reasons, as well as additional ones identified in his delisting request and in responses to OFAC's questionnaires, Deripaska argued that he had met his burden under OFAC's delisting procedures and that the rescission of his designation under E.O. 13662 was warranted.

83.    On November 5, 2019, Deripaska moved this Court for leave to file a supplemental complaint with respect to his E.O. 13662 designation. *See* Pl.'s Mot. for Leave to File Suppl.

Pleading and Mem. in Supp. Thereof, ECF No. 16 (Nov. 5, 2019). That supplemental complaint sought to allege that OFAC had yet to render a decision on Deripaska's delisting request; had not otherwise indicated when such a decision may have been forthcoming; and had not requested any additional, clarifying, or corroborating information from Deripaska as part of its review of the delisting petition. *Id.*

84.     On November 13, 2019, OFAC sent Deripaska a questionnaire with respect to his delisting request. A.R. II at 0064-0065. Shortly thereafter, on November 25, 2019, counsel for Defendants and for Deripaska, respectively, held a teleconference in which counsel for Defendants noted that OFAC would soon have a decision on the delisting but wanted to see if Deripaska intended to respond to the questionnaire as doing so could delay the decision. On December 6, 2019, Deripaska informed Defendants that he intended to respond to the questionnaire.

85.     On January 5, 2020, Deripaska filed a response to OFAC's questionnaire, which included objections to certain questions set forth by the agency. A.R. II at 0066-0075. Specifically, Deripaska argued that certain questions posed by OFAC were inconsistent with its delisting procedures, as they did not seek "additional, clarifying, or corroborating" information with respect to the arguments Deripaska put forth in his delisting petition. *Id.*

86.     Deripaska's response also highlighted to OFAC that he had not participated in domestic or international organizations or fora since his April 6, 2018, including by not participating at the World Economic Forum in 2018 nor 2019. A.R. II at 0071. It further noted that, although he remained Russia's representative to the APEC Business Advisory Council, he was not participating in their next event (which, at the time, was scheduled for February 2020); that his delegate would not be participating in panels related to the energy sector; and that his participation

on the APEC Business Advisory Council is with respect two working groups—"Regional Economic Integration" and "Sustainable Development." *Id.*

87.     On February 14, 2020, OFAC sent Deripaska a second questionnaire. In that questionnaire, OFAC stated that it "disagree[d] with the rationale for [Deripaska's] objections and considers [its] questions to be within the scope of his delisting petition and OFAC's reinvestigation into whether [Deripaska] still meets the criteria for designation."[1] OFAC requested that Deripaska respond to the four questions to which he had expressed his objection—one of which OFAC significantly "re-formulated."

88.     On February 21, 2020, Deripaska filed a response to OFAC's questionnaire. Deripaska re-asserted his objections to the questions posed by OFAC but provided certain additional responses, including that:

- Deripaska has no interests in Russia's "energy sector" as that latter term has been traditionally defined by OFAC in its administration of prior U.S. sanctions programs; and

- Any interests that Deripaska has had or maintains in entities associated with Russia's electric utility sector are solely through his interests in En+. However, by virtue of the Terms of Removal Agreement, OFAC has made a determination that Deripaska does not exercise ownership or control over En+. For this reason, there is no reasonable basis to determine that Deripaska operates in the "energy sector" of the Russian Federation economy through his interests in En+, as

---

[1] OFAC's questionnaire is identified as an exhibit to the administrative record disclosed to Deripaska in the exhibit list, but is missing as an exhibit in the disclosed record.

Deripaska does not exercise ownership or control with respect to that company by OFAC's own estimation.

A.R. II at 0076-0094.

89.     On March 6, 2020, OFAC denied Deripaska's delisting request. According to OFAC, "[a]fter carefully reviewing all available information . . . OFAC has determined that [Deripaska] ha[s] not put forth arguments or evidence establishing that an insufficient basis exists for [his designation] or that the circumstances resulting in the designation are no longer applicable." Exhibit D—OFAC's March 6, 2020 Denial Letter. Specifically, OFAC made the following findings in support of its denial decision:

- OFAC views Deripaska's participation in international conferences related to energy and his proposal for a region-wide energy initiative as "activity meeting the basis for designation under E.O. 13662." OFAC's finding was based on the "energy-related nature of [Deripaska's] participation in these conferences and the fact that he participated in these conferences while he owned En+ Group PLC, a Russian group of companies, and/or as a representative of the Russian state." OFAC also found that, "in the absence of [Deripaska's] participation in such conferences, his designation under E.O. 13662 is amply supported given that he continues to operate in the energy sector of the Russian Federation economy through his ownership stakes in En+ and JSC EuroSibEnergo . . ."

- OFAC stated that it "has never limited its interpretation of 'energy sector' as used in E.O. 13662" as to exclude electricity providers and suppliers and that "the plain language of 'energy sector' is broad enough to encompass the provision and generation of electricity."

- OFAC acknowledged that Deripaska "ha[d] terminated his majority ownership and control over ESE, but in the agency's view [Deripaska] nevertheless continues to operate in the energy sector of the Russian Federation economy through his 44.95 ownership stake in En+, and through his ownership in [EuroSibEnergo], which is 100% owned by En+."

OFAC stated that Deripaska's name would remain on the SDN List pursuant to E.O. 13662 and that the agency would release an unclassified version of the evidentiary memorandum underlying its denial decision. *Id.*

## I.     Disclosure of Evidentiary Record Underlying Denial Decision

90.     On March 26, 2020, Defendants issued a "releasable copy of the evidentiary memorandum underlying OFAC's decision to deny [Deripaska's] petition for reconsideration of his designation under E.O. 13662." A.R. II at 0001-0009.

91.     OFAC's evidentiary memorandum stated that its consideration of Deripaska's reconsideration request included reviewing "Deripaska's petition, his responses to the questionnaire, and the evidence available to OFAC . . ." A.R. II at 0002.

92.     OFAC's evidentiary memorandum states that the agency "considered" the arguments raised by Deripaska in his delisting request, but "[found] them unpersuasive" for the following reasons:

- OFAC has sufficient factual evidence to demonstrate that Deripaska operates in the energy sector of the Russian Federation economy, as (1) OFAC considers Deripaska's involvement in World Economic Forum projects to "constitut[e] operation in the energy sector of the Russian Federation due to the fact that these projects related to energy and that DERIPASKA participated in these

projects as part of his work in the En+ Group, which . . . operates in the Russian federation [sic] economy"; and (2) OFAC considers Deripaska's focus on energy efficiency and energy security on the APEC Business Advisory Council and his representatives' presentation on the North East Asian Regional Electrical Systems Ties Initiative "to be activities that constitute operation in the energy sector of the Russian Federation economy due to the fact that this activity relates to the energy sector and that Deripaska participated in these organizations as the appointee of the Russian Federation government and to represent a business sector of the Russian Federation economy." A.R. II 0004.

- OFAC considers the term "energy sector" as used in E.O. 13662 to be broad enough to include power generation, as the term "energy sector" was not specifically defined within E.O. 13662 or by the Secretary of the Treasury; OFAC has never before limited its interpretation of the term "energy sector" in the Russia/Ukraine context; and each OFAC sanctions program is different so that an interpretation in one program is not determinative of an interpretation in the Russia/Ukraine context. A.R. II at 0004-0005.

- OFAC considers that—despite the fact Deripaska's level of ownership in ESE via En+ has changed—Deripaska "still owns a sufficiently significant stake such that circumstances have not sufficiently changed to warrant removal." According to OFAC, "Deripaska's continued ownership interest in En+ and ESE as evidence of his continued operation in the energy sector of the Russian Federation economy." A.R. II at 0005.

- Deripaska "continues to operate in the energy sector of the Russian Federation economy through his ownership stakes of ESE and En+," as Deripaska "owns a 44.95 percent of En+, votes 35 percent of En+ shares, and appoints four out of 12 board members to the En+ board of directors" and both En+ and ESE are entities that operate in the energy sector of the Russian Federation economy. A.R. II at 0006-0007.

93.    The final paragraph of OFAC's evidentiary memorandum—ostensibly relaying the findings contained in a Deloitte report regarding En+—was entirely redacted in the version disclosed to Deripaska. A.R. at 0008-0009. OFAC has not provided an unclassified summary regarding its findings contained within this redacted paragraph and has not provided any alternative means by which Deripaska can understand the full reasons for OFAC's denial of his delisting petition, including those contained in the redacted paragraph.

94.    OFAC's evidentiary memorandum stated that "neither the term 'operating,' nor the term 'energy sector' are specifically defined [in E.O. 13662 or the Secretary of the Treasury's subsequent determination]." A.R. II at 0003.

95.    Further, the evidentiary memorandum does not provide any conclusions, findings, or evidence to address the fact that Deripaska argued he is not involved with the North East Asia Regional Electrical Systems Initiative, as that was proposed and led by an En+ representative. Instead, OFAC states that Deripaska's representative was involved in that initiative without citing any support or evidence for that finding. Nor does the evidentiary memorandum provide any conclusions, findings, or evidence that Deripaska has continued to participate in energy sector related conferences or fora since the time of his designation.

**J.      Harm to Deripaska**

96.      Defendants' unlawful actions have been personally, professionally, and financially devastating to Deripaska. Personally, Defendants' false and defamatory allegations have done immense damage to Deripaska's reputation, as was their clear intent. Professionally, Deripaska's designation under E.O. 13661 and E.O. 13662 have caused him to lose ownership and control over his companies—some of which are the largest companies in the world. Financially, Defendants' actions have caused Deripaska to lose more than three-quarters of his total wealth. These harms will continue unabated so long as Defendants persist in their unlawful actions.

i.      Legal Harm to Deripaska

97.      A legal consequence of Deripaska's designations under E.O. 13661 and E.O. 13662 is that all of Deripaska's property and interests in property within the United States or within the possession or control of U.S. persons are blocked, and U.S. persons are prohibited from engaging in any transactions or dealings with him. Deripaska is also barred entry from the United States.

98.      A further legal consequence of Deripaska's designations under E.O. 13661 and E.O. 13662 is that persons or entities that have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Deripaska are subject to U.S. sanctions. In addition, persons or entities that are owned or controlled by, or have acted or purported to act for or on behalf of, Deripaska are subject to U.S. sanctions. This renders Deripaska subject to an effective international boycott, as any person or entity dealing with him—directly or indirectly—may be subject to U.S. sanctions as a result of those dealings.

99.      Another legal consequence of Deripaska's designations under E.O. 13661 and E.O. 13662 is that any person that facilitates a significant transaction or transactions for or on behalf of Deripaska or his immediate family members is subject to U.S. sanctions. In addition, any foreign

financial institution that has knowingly facilitated a significant financial transaction on behalf of Deripaska is subject to U.S. sanctions.

100.    A legal consequence of Deripaska's identification on the Section 241 List is that Deripaska has been determined to be, and publicly named as, a Russian "oligarch" by the United States government. That identification is clearly intended to be defamatory in nature, aimed at causing reputational harm to Deripaska, and unfairly associating him with a corrupt elite.

101.    Defendants' actions have imposed a worldwide ban on transactions or dealings with Deripaska and many of his companies, rendering him and his business associations virtual pariahs among the international business community.

ii.    <u>Personal Harm to Deripaska</u>

102.    Deripaska has suffered deep personal harm from Defendants' unlawful actions. These actions have rendered him incapable of procuring basic goods or services abroad, including legal and financial services. For example, Deripaska has been unable to procure the legal services necessary to defend himself and his property abroad. In a recent action brought before an English court, Deripaska was unable to retain legal counsel to prevent the imposition of a Worldwide Freezing Order against him. His inability to do so was the direct result of Defendants' imposition of sanctions. Following his dual designations under E.O. 13661 and E.O. 13662, Deripaska's legal counsel in this matter—having a nexus to the United States—were prohibited from continuing with the legal representation absent license authorization from OFAC. Deripaska's legal counsel petitioned OFAC for such authorization, noting that legal representation was a basic right that is typically excluded from prohibition under U.S. sanctions regulations. OFAC, however, denied the application. Having lost his legal counsel in a pending matter, Deripaska contacted non-U.S. lawyers who lacked a nexus to the United States to represent him before the English court. Most

non-U.S. lawyers rejected the opportunity to represent Deripaska, citing concern over their potential exposure to U.S. sanctions under CAATSA. Even when Deripaska found legal representation, banks refused to process payments related to that representation—themselves fearing the potential imposition of U.S. sanctions for facilitating such payments. Defendants' unlawful actions thus left Deripaska without adequate legal counsel when an English court imposed a Worldwide Freezing Order against him.

103.    Deripaska has also been unable to secure legal counsel for his companies, as non-U.S. lawyers fear their potential exposure to U.S. sanctions arising from such representation. For example, foreign law firms that had previously provided corporate legal services to companies in which Deripaska maintains an ownership interest or otherwise exercises control have terminated their legal representation. Deripaska's lack of access to corporate counsel, coupled with the resignation of numerous directors and officers in his companies, has put the survival of these companies in peril.

104.    Deripaska has also found it difficult to receive or maintain banking services from foreign financial institutions, which fear their exposure to U.S. sanctions for engaging in any transactions or dealings with Deripaska or Deripaska-linked companies. Indeed, foreign banks have refused to extend their services to Deripaska's companies, which itself has rendered the companies at risk of imminent collapse.

### iii.    Reputational Harm to Deripaska

105.    Deripaska is an internationally renowned businessman who—through his efforts and ingenuity—has created some of the largest and most productive companies in the world. Deripaska is a regular invitee to the World Economic Forum and other global summits, as his expertise and experience on global economic issues is much sought-after. Indeed, prior to his

designations, Deripaska was also regularly invited to speak at D.C.-based think tanks and other forums regarding global developments.

106.    OFAC's press release was libelous in its reliance on rumor and innuendo. According to OFAC, Deripaska is a "Russian oligarch . . . profit[ing] from [a] corrupt system." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). Without any inclination towards verifying the claims of Deripaska's former business rivals, who advanced preposterous allegations in order to seek an advantage in litigation with Deripaska, OFAC repeated—and gave renewed life to—claims that Deripaska "has been accused of threatening the lives of business rivals, illegally wiretapping a government official, [] taking part in extortion and racketeering, . . . brib[ing] a government official, order[ing] the murder of a businessman, and ha[ving] links to a Russian organized crime group." *Id*.

107.    None of these libelous claims have any purported relation to the legal basis for Deripaska's designation. OFAC's own evidentiary memorandum in support of its determination that Deripaska meets the criteria for designation under E.O. 13661 and E.O. 13662 also does not purport to connect these allegations to the factual bases for its designation actions. Accordingly, OFAC's allegations appear entirely aimed at tarnishing Deripaska's name in the public eye and creating widespread public misperception regarding Deripaska's character; the source of his wealth; and the reasons for his business success, in order to obscure the actual basis underlying Deripaska's designations.

iv.    Economic Harm to Deripaska

108.    Because of Defendants' unlawful actions, Deripaska has lost approximately 81% of his net worth since April 6, 2018. His investments have collapsed; some of Deripaska's former

companies have separated themselves from him through irrevocable divestitures and the severance of his control; and those companies in which he maintains ownership and control are facing economic ruin, as banks refuse to extend them loans, suppliers terminate existing contracts, and counterparties cease any further dealings with them.

109.    Most notably, Defendants' unlawful actions have caused Deripaska to lose control over the companies on which he has built his wealth and reputational standing. OFAC itself admitted that "the objectives of [its] sanctions were to reduce Deripaska's ownership in and sever his control of [En+, UC RUSAL plc, and EuroSibEnergo]." Letter from Andrea M. Gacki, Director, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Maj. Leader (Dec. 19, 2018). OFAC achieved this objective when En+, Rusal, and ESE entered into a Terms of Removal Agreement that required Deripaska to forgo majority ownership over, and any control with respect to, his companies. Deripaska's remaining ownership interest in the companies is itself subject to sanctions, as Defendants retain the authority to target any person representing his interests with respect to those companies pursuant to E.O. 13661 and E.O. 13662. *Id*.

110.    The economic ruin caused by Defendants' unlawful actions continues unabated, as OFAC seeks Deripaska's divestiture from additional companies over which he is alleged to maintain an ownership interest, including GAZ Group. Indeed, OFAC's actions—requiring Deripaska to sell his interests in his companies at a fraction of their value and limiting his ability to receive the proceeds from those sales—combined with its apparent intent to maintain sanctions against Deripaska in perpetuity appear intended to punish Deripaska, not to compel any change in behavior.

v.      Harm and Loss in the United States

111.     Defendants' unlawful actions have also caused Deripaska economic harm and loss here in the United States. At the time of his designations, Deripaska maintained an interest in properties in the United States, including, for instance, an ownership interest in Basic Element, Inc., a company incorporated in Delaware, which acted as a representative office for Bazovy Element Ltd., a Russian limited liability company, also owned by Deripaska. Basic Element, Inc. maintained bank accounts and a property lease in the United States at the time of Deripaska's designation. This included company accounts at Wells Fargo. As a result of Deripaska's designation, however, Basic Element, Inc.'s bank accounts at Wells Fargo were blocked, and the company's registered agent ceased any activities with respect to Basic Element, Inc. and stopped communications with Bazovy Element, Ltd.

112.     Deripaska—at the time of his designation—also maintained a beneficial ownership interest in RUSAL America Corp., which had offices in 660 Madison Ave., New York, NY and was assigned the lease held by Basic Element, Inc. Following Deripaska's designations, RUSAL America Corp.—which was constructively blocked pursuant to OFAC's 50 Percent Rule—had accounts at JPMorgan Chase.

113.     In addition, shortly after Deripaska's designation, OFAC promulgated General License No. 14, which authorized maintenance and wind-down activities related to RUSAL America Corp. and required RUSAL America Corp. to submit reports to OFAC regarding transactions undertaken pursuant to the license authorization. Deripaska understands that RUSAL America Corp. filed reports to OFAC pursuant to General License No. 14 or its successor authorizations with respect to wind-down transactions, including those involving the bank

accounts at JPMorgan Chase. OFAC was thus made aware of Deripaska's extensive property interests in the United States through these reports.

### K.   Animus and Bias Towards Deripaska

114.   Defendants have demonstrated strong animus and bias towards Deripaska, including through Defendants' leveling of false and defamatory allegations that are designed to generate public antipathy towards Deripaska. This animus and bias provides clear indication that Defendants have no intention of removing Deripaska from the SDN List or otherwise reconsidering his identification in the Section 241 Report, regardless of the merits of doing so.

115.   OFAC's animus towards Deripaska was evident when it first designated him under E.O. 13661 and E.O. 13662. In the press release announcing the designation, Secretary Mnuchin referred to Deripaska as a "Russian oligarch . . . profit[ing] from [a] corrupt system." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity (April 6, 2018). OFAC's press release also repeated false and defamatory allegations of illicit conduct that were untethered from the "Basis for Determination" sections of the evidentiary memorandum prepared by OFAC in support of its designation of Deripaska under E.O. 13661 and E.O. 13662.

116.   OFAC has also provided clear indication that it does not intend on rescinding Deripaska's designation under E.O. 13661 or E.O. 13662 or removing him from the SDN List. OFAC published public guidance stating that "the path for the United States to provide sanctions relief [to RUSAL] is through divestment and relinquishment of control of RUSAL by . . . Deripaska." U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 576 (May 22, 2018). OFAC made no mention of the fact that Rusal could have also obtained sanctions relief through the rescission of Deripaska's own designations and the removal of his

name from the SDN List, as Rusal's designation was derivative of Deripaska's designation. OFAC elided—and continues to ignore—this same fact when in public guidance on how GAZ Group could achieve sanctions relief. U.S. Dep't of Treasury, Office of Foreign Assets Control, Frequently Asked Question # 587 (May 22, 2018). Its failure to note that Rusal and Gaz Group could achieve sanctions relief through the lifting of sanctions on Deripaska demonstrates that OFAC does not contemplate a scenario in which Deripaska's designations would be rescinded.

117.    OFAC has provided additional evidence of its intent to maintain Deripaska's designation regardless of the merits of doing so. In its press release announcing its intention to delist En+, Rusal, and ESE, OFAC referred to Deripaska as a "Russian oligarch" and stated that Deripaska "will remain on the SDN List." Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, OFAC Notifies Congress of Intent to Delist En+, Rusal, and EuroSibEnergo (Dec. 19, 2018). OFAC also noted that it "[would] continue to aggressively enforce its sanctions on Deripaska . . ." *Id*.

118.    OFAC's letter to Congress further "stress[ed] that Deripaska will remain sanctioned and on OFAC's SDN List," despite the Terms of Removal Agreement with certain of his companies. Letter from Andrea M. Gacki, Office of Foreign Assets Control, to Sen. Mitch McConnell, Sen. Maj. Leader (Dec. 19, 2018). OFAC also repeated its promise to "continue to enforce its sanctions on Deripaska aggressively . . ." *Id*.

119.    Defendants are not alone in evidencing animus and bias towards Deripaska. Congress has also shown overt bias against Deripaska—a troubling development considering that Congress may have some authority over any potential decision to delist Deripaska.

120.    Congress retains authority to veto certain decisions by OFAC to rescind designations under E.O. 13661 or E.O. 13662, including, potentially, Deripaska's designations.

Under Section 216 of the CAATSA, the President is required to submit a report to Congress with respect to his intention to terminate sanctions under E.O. 13661 or E.O. 13662. Upon receipt of any such report, Congress is provided a period in which to review the proposed termination of sanctions and to enact a joint resolution of disapproval, which would have the effect of barring the President from terminating the sanctions.

121.    On January 17, 2019, 362 members of the House of Representatives voted in favor of H.J. Res. 30, which disapproved of the President's action terminating sanctions imposed with respect to En+, Rusal, and ESE. During the Congressional debate prior to the vote, legislators demonstrated their overt bias towards Deripaska and used that bias as motivation for voting in favor of the resolution of disapproval.

122.    For example, Rep. Gerry Connolly signaled his strong opposition to "the President's unimaginable proposal to lift sanctions on three companies affiliated with a Russian gangster oligarch, Oleg Deripaska." 165 Cong. Rec. 693 (2019) (statement of Rep. Connolly). Rep. Connolly also repeated the false and defamatory allegations leveled by OFAC in its press release announcing Deripaska's designations. *Id*. During the same floor debate, Rep. Maxine Waters referred to Deripaska, variably, as "the enemy" and "a criminal." 165 Cong. Rec. 694 (2019) (statement of Rep. Waters). Rep. Waters stated that she could not understand "why there is any elected official who would support delisting these companies and Deripaska." *Id*.

123.    On January 16, 2019, 57 members of the U.S. Senate voted in favor of cloture to proceed to a vote on a resolution of disapproval relating to the lifting of sanctions on En+, Rusal, and ESE. The resolution of disapproval—which would have barred Defendants from lifting sanctions on those entities—was only narrowly defeated, as the Senate required 60 votes on the motion for cloture to proceed to a vote. Following the vote, Sen. Charles Schumer, the Senate

Minority Leader, expressed his "extreme[] disappointment" that Congress had failed "to stand up to a thug," a slanderous reference to Deripaska. Patricia Zengerle, Bid to Keep U.S. Sanctions on Russia's Rusal Fails in Senate, REUTERS (Jan. 16, 2019, 1:29 PM), https://www.reuters.com/article/us-usa-russia-sanctions/bid-to-keep-u-s-sanctions-on-russias-rusal-fails-in-senate-idUSKCN1PA2JB (last visited April 13, 2020).

124.    On February 18, 2019, Sen. Charles Schumer tweeted the following regarding Deripaska's attendance at the Munich Security Conference: "How can Oleg Deripaska—a Russian oligarch who interferes in democracies in Europe & America—have the gall to show at Munich Security Conference? The conference talks about holding back Russian interference! EU friends: We urge imposing additional sanctions on Putin's cronies." Chuck Schumer (@ChuckSchumer), Twitter (Feb. 18, 2019, 2:20 PM), https://twitter.com/SenSchumer/status/1097576721996488712 (last visited April 13, 2020). Notably, Deripaska has not been designated by OFAC for interfering in European or American elections, and election interference is not a legal basis under which to designate an individual pursuant to E.O. 13661 or E.O. 13662.

125.    These Congressional actions and statements provide clear indication that—even if Defendants were willing to terminate sanctions on Deripaska and remove his name from the SDN List—Congress would seek to stop the termination of sanctions. This persistent animus and bias from Defendants and the Congress towards Deripaska requires judicial intervention.

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13661 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

126.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

127.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

128.     Defendants' designation of Deripaska under E.O. 13661 and its findings and conclusions in support of this designation are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.

## COUNT II

### DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13661 IS IN EXCESS OF STATUTORY JURISDICTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

129.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

130.     Agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(C).

131.     Defendants' designation of Deripaska under E.O. 13661 and its findings and conclusions in support of this designation are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., as OFAC's designation action was undertaken pursuant to an undeclared national emergency with respect to Russia's "global malign activities."

**COUNT III**

DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13661 AND ITS FAILURE
TO ACCORD DERIPASKA SUFFICIENT NOTICE OF THE DESIGNATION VIOLATES
HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

132.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

133.    Under the Fifth Amendment to the U.S. Constitution, Deripaska has a right to adequate post-deprivation notice. Sufficient notice requires Defendants to provide Deripaska with the reasons for his designation so as to permit him a meaningful opportunity to respond.

134.    Defendants have not provided sufficient notice for their determination that Deripaska meets the criteria for designation under E.O. 13661—i.e., that Deripaska has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation. Defendants have redacted substantial portions of the evidentiary memorandum relating to this determination and have provided incomplete and insufficiently specific unclassified summaries of the reasons for the determination. Defendants have thus failed to provide Deripaska with adequate notice of the reasons for his designation and have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution.

**COUNT IV**

DEFENDANTS' FAILURE TO PROVIDE NOTICE OF THE BASIS FOR DERIPASKA'S
DEISGNATION UNDER E.O. 13661 VIOLATES THE ADMINISTRATIVE PROCEDURE
ACT

135.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

136.    Agency action, findings, and conclusions found to be not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

137.    Defendants' designation of Deripaska under E.O. 13661 and the determination that he meets E.O. 13661's designation criteria is not in accordance with law and without observance of procedure required by law because Defendants failed to provide Deripaska with adequate notice of the reasons for his designation in violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

## COUNT V

### DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13662 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

138.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

139.    Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

140.    Defendants' designation of Deripaska under E.O. 13662 and the findings and conclusions in support of that designation decision constitute arbitrary and capricious agency action in violation of the APA.

## COUNT VI

### DEFENDANTS' DENIAL OF DERIPASKA'S RECONSIDERATION REQUEST UNDER E.O. 13662 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

141.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

142.    Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

143.    Defendants' denial of Deripaska's reconsideration request under E.O. 13662 and the findings and conclusions in support of that denial decision constitutes arbitrary and capricious agency action in violation of the APA.

## COUNT VII

### DEFENDANTS' DESIGNATION OF DERIPASKA UNDER E.O. 13662 IS IN EXCESS OF STATUTORY JURISDICTION IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

144.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

145.    Agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(C).

146.    Defendants' designation of Deripaska under E.O. 13662 and its findings and conclusions in support of this designation are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., as OFAC's designation action was undertaken pursuant to an undeclared national emergency with respect to Russia's "global malign activities."

## COUNT VIII

### DEFENDANTS' DENIAL OF DERIPASKA'S DELISTING PETITION UNDER E.O. 13662 AND ITS FAILURE TO ACCORD DERIPASKA SUFFICIENT NOTICE OF THE DENIAL DECISION VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

147.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

148.    Under the Fifth Amendment to the U.S. Constitution, Deripaska has a right to notice of the reasons for the U.S. government's action against him. Sufficient notice requires Defendants to provide Deripaska with the reasons for its denial of his delisting petition so as to permit him a meaningful opportunity to respond to his designation in future petitions.

149.    Defendants have not provided sufficient notice for their determination that Deripaska continues to meet the criteria for designation under E.O. 13662—i.e., that Deripaska operates in the energy sector of the Russian Federation economy. Defendants have redacted portions of the evidentiary memorandum relating OFAC's determination, including those identifying findings in support of its denial decision, and have not provided alternative means by which Deripaska can understand the full reasons for OFAC's action. Defendants have thus failed to provide Deripaska with adequate notice of the reasons for its denial decision and have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution.

## COUNT IX

### DEFENDANTS' DENIAL OF DERIPASKA'S DELISTING PETITION UNDER E.O. 13662 AND ITS FAILURE TO ACCORD DERIPASKA SUFFICIENT NOTICE OF THE DENIAL DECISION VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

150.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

151.    Agency action, findings, and conclusions found to be not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

152.    Defendants' denial of Deripaska's delisting petition under E.O. 13662 and the determination that he continues to meet E.O. 13662's designation criteria is not in accordance with law and without observance of procedure required by law because Defendants failed to provide Deripaska with sufficient notice of the reasons for its denial decision in violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

## COUNT X

DEFENDANTS' INCLUSION OF DERIPASKA IN THE SECTION 241 REPORT VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

153.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

154.    Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

155.    Defendants' criteria for determining whether an individual is an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law because Defendants expressly failed to consider criteria required by CAATSA in identifying persons as "oligarchs"—i.e., that the individuals be identified according to both their closeness to the Russian regime and their net worth.

156.    Defendants' criteria for determining whether an individual is an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law or without observance of procedure required by law because Defendants adopted and applied a definition of the term "oligarch"—i.e., solely net worth—that betrays the common understanding of the term "oligarch"—i.e., an individual's net worth and political influence.

157.     Defendants' decision to include Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law because Defendants lacked a factual basis to conclude that Deripaska is an "oligarch" for purposes of Section 241 of CAATSA.

## COUNT XI

### DEFENDANTS' ACTION IDENTIFYING DERIPASKA IN THE SECTION 241 REPORT VIOLATES HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS

158.     Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

159.     Under the Fifth Amendment of the U.S. Constitution, Deripaska has a due process right to adequate post-deprivation notice. Due to the harms arising from his inclusion in the Section 241 Report, Defendants are required to provide Deripaska with sufficient notice as to the reasons for their action against him. This requires Defendants to provide Deripaska with access to the agency's findings and conclusions regarding his inclusion in the Section 241 Report so as to permit him a meaningful opportunity to respond.

160.     Defendants have not provided sufficient notice for their decision to identify Deripaska in the Section 241 Report and their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of CAATSA. Defendants have not disclosed the

reasons for their action and their findings and conclusions in support of that action, but have instead publicly rendered a conclusory finding that Deripaska is an "oligarch" in their Section 241 Report.

161.    Considering the significant harm caused by Defendants' identification of Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him with a full statement of reasons as to the basis for their action and their findings and conclusions in support of that action.

162.    Considering the significant harm caused by Defendants' identification of Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA, Defendants have acted in violation of Deripaska's due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him with an opportunity to challenge his inclusion in the Section 241 Report.

## COUNT XII

### DEFENDANTS' FAILURE TO PROVIDE DERIPASKA WITH SUFFICIENT NOTICE OF THE BASIS FOR THEIR INCLUSION OF DERIPASKA IN THE SECTION 241 REPORT VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

163.    Deripaska re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

164.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

165.    Defendants' decision to include Deripaska in the Section 241 Report and their determination that he meets the definition of an "oligarch" for purposes of Section 241 of CAATSA is not in accordance with law and without observance of procedure required by law because Defendants failed to provide Deripaska with sufficient notice of the reasons for that action in violation of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

## RELIEF REQUESTED

Wherefore, Deripaska respectfully requests that this Court:

A.    Issue an order vacating Deripaska's designation under E.O. 13661;

B.    Order Defendants to rescind Deripaska's designation under E.O. 13661;

C.    Declare Deripaska's designation under E.O. 13661 to be unlawful;

D.    Order Defendants to disclose the redacted portions of the evidentiary memorandum underlying Deripaska's designation under E.O. 13661 or otherwise provide sufficient alternative means by which Deripaska can be provided constitutionally adequate notice of the reasons for his designation under E.O. 13661;

E.    Order Defendants to produce sufficiently specific unclassified summaries of the classified or privileged portions of the evidentiary memorandum relating to the basis for Deripaska's designation under E.O. 13661;

F.    Order Defendants to retract any public statements attributing conduct to Deripaska that is unrelated to the bases for his designations and bar Defendants from making such public statements in the future absent lawful reason;

G.    Issue an order vacating Deripaska's designation under E.O. 13662;

H.    Order Defendants to rescind Deripaska's designation under E.O. 13662;

I.    Declare Deripaska's designation under E.O. 13662 to be unlawful;

J.      Order Defendants to retract public statements attributing conduct to Deripaska that is unrelated to the bases for his designation under E.O. 13662 and bar Defendants from making any such public statements in the future absent lawful reason;

K.      Order Defendants to rescind their determination that Deripaska meets the definition of an "oligarch" for purposes of Section 241 of the CAATSA and to remove his name from the Section 241 Report;

L.      Order Defendants to release any and all records underlying their decision to include Deripaska's name in the Section 241 Report;

M.      Grant an award to Deripaska of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

N.      Any other and further relief as the Court may deem proper.


Dated: April 16, 2020                                      Respectfully submitted,


                                                           /s/ Erich C. Ferrari
                                                           Erich C. Ferrari, Esq.
                                                           FERRARI & ASSOCIATES, P.C.
                                                           1455 Pennsylvania Avenue, NW
                                                           Suite 400
                                                           Washington, D.C. 20004
                                                           Telephone: (202) 280-6370
                                                           Fax: (877) 448-4885
                                                           Email: ferrari@falawpc.com
                                                           D.C. Bar No. 978253

                                                           ATTORNEY FOR PLAINTIFF
                                                           OLEG DERIPASKA

# EXHIBIT

# A

**UNCLASSIFIED**

**Report to Congress Pursuant to Section 241 of the
Countering America's Adversaries Through Sanctions Act of 2017
Regarding Senior Foreign Political Figures and Oligarchs in the Russian Federation
and
Russian Parastatal Entities**

**January 29, 2018**

Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 (CAATSA) requires the Secretary of the Treasury, in consultation with the Director of National Intelligence and the Secretary of State, to submit to the appropriate congressional committees 180 days after enactment a detailed report on senior political figures and oligarchs in the Russian Federation (Section 241(a)(1)) and on Russian parastatal entities (Section 241(a)(2)). Pursuant to Section 241(b), the report shall be submitted in an unclassified form but may have a classified annex. This is the unclassified portion of the report.

### Section 241(a)(1) – Senior Foreign Political Figures and Oligarchs in the Russian Federation

As required by Section 241(a)(1)(A) of CAATSA, the Department of the Treasury is providing in this unclassified report a list of senior foreign political figures and oligarchs in the Russian Federation, as determined by their closeness to the Russian regime and their net worth. For purposes of this unclassified portion of the report, this determination was made based on objective criteria related to individuals' official position in the case of senior political figures, or a net worth of $1 billion or more for oligarchs.

To determine the list of senior political figures, the Department of the Treasury considered the definition in CAATSA Section 241(c)(2), which incorporates by reference the definition of "senior foreign political figure" in section 1010.605, title 31 of the Code of Federal Regulations. For purposes of this unclassified portion of the report, such names consist of: i) senior members of the Russian Presidential Administration; ii) members of the Russian Cabinet, Cabinet-rank ministers, and heads of other major executive agencies; iii) other senior political leaders, including the leadership of the State Duma and Federation Council, other members of the Russian Security Council, and senior executives at state-owned enterprises. These individuals are listed in Appendix 1 of this report.

To determine the list of oligarchs, the Department of the Treasury enumerated those individuals who, according to reliable public sources, have an estimated net worth of $1 billion or more. Those individuals who meet this criterion are listed in Appendix 2 of this report.

The Department of the Treasury is also providing in a classified annex to this report additional information required pursuant to Section 241(a)(1). The classified annex may include individuals who are not included in Appendices 1 and 2 to this unclassified report, and such persons may hold a position below those included in the unclassified report or have a net worth below $1 billion.

**UNCLASSIFIED**

UNCLASSIFIED

This report has been prepared and provided exclusively in response to Section 241 of CAATSA. It is not a sanctions list, and the inclusion of individuals or entities in this report, its appendices, or its annex does not and in no way should be interpreted to impose sanctions on those individuals or entities. Inclusion in this report also does not constitute the determination by any agency that any of those individuals or entities meet the criteria for designation under any sanctions program. Moreover, the inclusion of individuals or entities in this report, its appendices, or its classified annexes does not, in and of itself, imply, give rise to, or create any other restrictions, prohibitions, or limitations on dealings with such persons by either U.S. or foreign persons. Neither does inclusion on the unclassified list indicate that the U.S. Government has information about the individual's involvement in malign activities. Named individuals and entities who are separately subject to sanctions pursuant to sanctions programs established in U.S. law are denoted with an asterisk (*).

## Section 241(a)(2) – Russian Parastatal Entities

CAATSA Section 241(a)(2)-(5) requires a report on Russian parastatal entities, including an assessment of their role in the economy of the Russian Federation; an overview of key U.S. economic sectors' exposure to Russian persons and entities; an analysis of the potential effects of imposing additional debt and equity restrictions on parastatal entities; and the possible impact of additional sanctions against oligarchs, senior political figures, and parastatals on the U.S. and Russian economies.

Russian parastatals have origins in the Soviet Union's command economy. After the dissolution of the Soviet Union, the Russian government conducted large-scale privatization of these entities; in the early 2000s, it began to renationalize large companies. The Russian government has responded to economic shocks, including the financial crisis in 2008 and the imposition of sanctions in 2014, by increasing its role in the economy and ownership of parastatals. As of 2016, Russian parastatals accounted for one-third of all jobs in Russia and 70 percent of Russia's GDP.

For purposes of this requirement, Russian parastatals are defined as companies in which state ownership is at least 25 percent and that had 2016 revenues of approximately $2 billion or more. A list of such parastatals and the required analysis specified in Section 241(a)(2)-(5) are included in the classified annex of this report.

UNCLASSIFIED

## Appendix A: List of Senior Political Figures

### Presidential Administration

| | | |
|---|---|---|
| 1. | Anton Vayno | Head, Presidential Administration |
| 2. | Aleksey Gromov* | First Deputy Head, Presidential Administration |
| 3. | Sergey Kiriyenko | First Deputy Head, Presidential Administration |
| 4. | Magomedsalam Magomedov | Deputy Head, Presidential Administration |
| 5. | Vladimir Ostrovenko | Deputy Head, Presidential Administration |
| 6. | Dmitriy Peskov | Deputy Head, Presidential Administration; Presidential Press Secretary |
| 7. | Vladislav Kitayev | Chief of Presidential Protocol |
| 8. | Andrey Belousov | Aide to the President |
| 9. | Larisa Brycheva | Aide to the President |
| 10. | Vladislav Surkov* | Aide to the President |
| 11. | Igor Levitin | Aide to the President |
| 12. | Vladimir Kozhin* | Aide to the President |
| 13. | Yuriy Ushakov | Aide to the President |
| 14. | Andrey Fursenko* | Aide to the President |
| 15. | Nikolay Tsukanov | Aide to the President |
| 16. | Konstantin Chuychenko | Aide to the President |
| 17. | Yevgeniy Shkolov | Aide to the President |
| 18. | Igor Shchegolev* | Aide to the President |
| 19. | Aleksandr Bedritskiy | Adviser to the President , Special Presidential Representative on Climate Issues |
| 20. | Sergey Glazyev* | Adviser to the President |
| 21. | Sergey Grigorov | Adviser to the President |
| 22. | German Klimenko | Adviser to the President |
| 23. | Anton Kobyakov | Adviser to the President |
| 24. | Aleksandra Levitskaya | Adviser to the President |
| 25. | Vladimir Tolstoy | Adviser to the President |
| 26. | Mikhail Fedotov | Adviser to the President, Chairman of the Presidential Council for Civil Society and Human Rights |
| 27. | Venyamin Yakovlev | Adviser to the President |
| 28. | Artur Muravyev | Presidential Envoy to the Federation Council |
| 29. | Garry Minkh | Presidential Envoy to the State Duma |
| 30. | Mikhail Krotov | Presidential Envoy to the Constitutional Court |
| 31. | Anna Kuznetsova | Presidential Commissioner for Children's Rights |
| 32. | Boris Titov | Presidential Commissioner for Entrepreneurs' Rights |
| 33. | Mikhail Babich | Plenipotentiary Representative to the Volga Federal District |

| | |
|---|---|
| 34. Aleksandr Beglov | Plenipotentiary Representative to the Northwestern Federal District |
| 35. Oleg Belaventsev* | Plenipotentiary Representative to the North Caucasus Federal District |
| 36. Aleksey Gordeyev | Plenipotentiary Representative to the Central Federal District |
| 37. Sergey Menyaylo* | Plenipotentiary Representative to the Siberian Federal District |
| 38. Yuriy Trutnev | Deputy Prime Minister – Plenipotentiary Representative to the Far Eastern Federal District |
| 39. Vladimir Ustinov | Plenipotentiary Representative to the Southern Federal District |
| 40. Igor Kholmanskikh | Plenipotentiary Representative to the Urals Federal District |
| 41. Aleksandr Manzhosin | Head, Foreign Policy Directorate |
| 42. Vladimir Chernov | Head, Directorate for Interregional and Cultural Ties to Foreign Countries |
| 43. Oleg Govorun | Head, Directorate for Social and Economic Relations with the Commonwealth of Independent States, Abkhazia, and South Ossetia |

### Cabinet of Ministers

| | |
|---|---|
| 44. Dmitriy Medvedev | Prime Minister |
| 45. Igor Shuvalov | First Deputy Prime Minister |
| 46. Sergey Prikhodko | Deputy Prime Minister and Head of the Government Apparatus |
| 47. Aleksandr Khloponin | Deputy Prime Minister |
| 48. Vitaliy Mutko | Deputy Prime Minister |
| 49. Arkadiy Dvorkovich | Deputy Prime Minister |
| 50. Olga Golodets | Deputy Prime Minister |
| 51. Dmitriy Kozak* | Deputy Prime Minister |
| 52. Dmitriy Rogozin* | Deputy Prime Minister |
| 53. Mikhail Abyzov | Minister for Liaison with Open Government |
| 54. Aleksandr Tkachev | Minister of Agriculture |
| 55. Vladimir Puchkov | Minister of Civil Defense, Emergencies, and Natural Disasters |
| 56. Nikolay Nikiforov | Minister of Communications and Mass Media |
| 57. Mikhail Men | Minister of Construction, Housing, and Public Utilities |
| 58. Vladimir Medinskiy | Minister of Culture |
| 59. Sergey Shoygu | Minister of Defense |
| 60. Maksim Oreshkin | Minister of Economic Development |

| 61. Olga Vasilyeva | Minister of Education and Science |
| 62. Aleksandr Novak | Minister of Energy |
| 63. Aleksandr Galushka | Minister of Far East Development |
| 64. Anton Siluanov | Minister of Finance |
| 65. Sergey Lavrov | Minister of Foreign Affairs |
| 66. Veronika Skvortsova | Minister of Health |
| 67. Denis Manturov | Minister of Industry and Trade |
| 68. Vladimir Kolokoltsev | Minister of Internal Affairs |
| 69. Aleksandr Konovalov | Minister of Justice |
| 70. Maksim Topilin | Minister of Labor and Social Protection |
| 71. Sergey Donskoy | Minister of Natural Resources and Ecology |
| 72. Lev Kuznetsov | Minister of North Caucasus Affairs |
| 73. Pavel Kolobkov | Minister of Sports |
| 74. Maksim Sokolov | Minister of Transportation |

**Other Senior Political Leaders**

| 75. Valentina Matviyenko* | Chairwoman, Federation Council |
| 76. Sergey Naryshkin* | Director, Foreign Intelligence Service (SVR) |
| 77. Vyacheslav Volodin* | Chairman, State Duma |
| 78. Sergey Ivanov* | Presidential Special Representative for the Environment, Ecology, and Transport |
| 79. Nikolay Patrushev | Secretary, Security Council |
| 80. Vladimir Bulavin | Head, Federal Customs Service |
| 81. Valeriy Gerasimov | First Deputy Minister of Defense and Chief of the General Staff |
| 82. Igor Korobov* | Chief, Main Intelligence Directorate General Staff (GRU), Ministry of Defense |
| 83. Rashid Nurgaliyev | Deputy Secretary, Security Council |
| 84. Georgiy Poltavchenko | Governor of Saint Petersburg |
| 85. Sergey Sobyanin | Mayor of Moscow |
| 86. Yuriy Chayka | Prosecutor General |
| 87. Aleksandr Bastrykin* | Head, Investigative Committee |
| 88. Viktor Zolotov | Director, Federal National Guard Service |
| 89. Dmitriy Kochnev | Director, Federal Protection Service |
| 90. Aleksandr Bortnikov | Director, Federal Security Service (FSB) |
| 91. Andrey Artizov | Head, Federal Archive Agency |
| 92. Yuriy Chikhanchin | Head, Financial Monitoring Federal Service |
| 93. Aleksandr Linets | Head, Presidential Main Directorate for Special Programs |
| 94. Aleksandr Kolpakov | Head, Presidential Property Management Directorate |

| 95. Valeriy Tikhonov | Head, State Courier Service |
| 96. Aleksey Miller | Chief Executive Officer, Gazprom |
| 97. Igor Sechin* | Chief Executive Officer, Rosneft |
| 98. German Gref | Chief Executive Officer, Sberbank |
| 99. Oleg Belozerov | General Director, Russian Railways |
| 100. Andrey Kostin | Chairman-Management Board, VTB |
| 101. Sergey Chemezov* | Chief Executive Officer, Rostec |
| 102. Oleg Budargin | Chief Executive Officer, Rosseti |
| 103. Boris Kovalchuk | Chief Executive Officer, Inter RAO |
| 104. Aleksey Likhachev | General Director, Rosatom |
| 105. Nikolay Tokarev | Chief Executive Officer, Transneft |
| 106. Andrey Akimov | Chief Executive Officer, Gazprombank |
| 107. Nail Maganov | General Director, Tatneft |
| 108. Vitaliy Savelyev | Chief Executive Officer, Aeroflot |
| 109. Andrey Shishkin | Chief Executive Officer, ANK Bashneft |
| 110. Yuriy Slyusar | Chief Executive Officer, United Aircraft Corporation |
| 111. Nikolay Shulginov | Chief Executive Officer, RusHydro |
| 112. Sergey Gorkov | Chief Executive Officer, Vneshekonombank |
| 113. Sergey Ivanov (Jr) | Chief Executive Officer, ALROSA |
| 114. Roman Dashkov | Chief Executive Officer, Sakhalin Energy |

## Appendix B: List of Oligarchs

1. Aleksandr Abramov
2. Roman Abramovich
3. Araz Agalarov
4. Farkhad Akhmedov
5. Vagit Alekperov
6. Igor Altushkin
7. Aleksey Ananyev
8. Dmitriy Ananyev
9. Vasiliy Anisimov
10. Roman Avdeyev
11. Petr Aven
12. Yelena Baturina
13. Aleksey Bogachev
14. Vladimir Bogdanov
15. Leonid Boguslavskiy
16. Andrey Bokarev
17. Oleg Boyko
18. Nikolay Buynov
19. Oleg Deripaska
20. Aleksandr Dzhaparidze
21. Leonid Fedun
22. Gleb Fetisov
23. Mikhail Fridman
24. Aleksandr Frolov
25. Filaret Galchev
26. Sergey Galitskiy
27. Valentin Gapontsev
28. Sergey Gordeyev
29. Andrey Guryev
30. Yuriy Gushchin
31. Mikhail Gutseriyev
32. Sait-Salam Gutseriyev
33. Zarakh Iliyev
34. Dmitriy Kamenshchik
35. Vyacheslav Kantor
36. Samvel Karapetyan
37. Yevgeniy Kasperskiy
38. Sergey Katsiyev
39. Suleyman Kerimov
40. Igor Kesayev
41. Danil Khachaturov
42. German Khan
43. Viktor Kharitonin
44. Aleksandr Klyachin
45. Petr Kondrashev

46. Andrey Kosogov
47. Yuriy Kovalchuk*
48. Andrey Kozitsyn
49. Aleksey Kuzmichev
50. Lev Kvetnoy
51. Vladimir Lisin
52. Anatoliy Lomakin
53. Ziyavudin Magomedov
54. Igor Makarov
55. Iskander Makhmudov
56. Aleksandr Mamut
57. Andrey Melnichenko
58. Leonid Mikhelson
59. Yuriy Milner
60. Boris Mints
61. Andrey Molchanov
62. Aleksey Mordashov
63. Vadim Moshkovich
64. Aleksandr Nesis
65. God Nisanov
66. Aleksandr Ponomarenko
67. Sergey Popov
68. Vladimir Potanin
69. Mikhail Prokhorov
70. Dmitriy Pumpyanskiy
71. Megdet Rakhimkulov
72. Andrey Rappoport
73. Viktor Rashnikov
74. Arkadiy Rotenberg*
75. Boris Rotenberg*
76. Dmitriy Rybolovlev
77. Ayrat Shaymiyev
78. Radik Shaymiyev
79. Kirill Shamalov
80. Yuriy Shefler
81. Albert Shigabutdinov
82. Mikhail Shishkhanov
83. Leonid Simanovskiy
84. Andrey Skoch
85. Aleksandr Skorobogatko
86. Rustem Sulteyev
87. Aleksandr Svetakov
88. Gennadiy Timchenko*
89. Oleg Tinkov
90. Roman Trotsenko
91. Alisher Usmanov

92. Viktor Vekselberg
93. Arkadiy Volozh
94. Vadim Yakunin
95. Vladimir Yevtushenkov
96. Gavril Yushvayev

# EXHIBIT

# B



# EXHIBIT

# C



**DEPARTMENT OF THE TREASURY**

WASHINGTON, D.C. 20220

Ferrari & Associates, P.C.
1455 Pennsylvania Ave., N.W.
Suite 400
Washington, DC 20004

JAN 2 2 2020

Re: Oleg Deripaska

Dear Mr. Ferrari:

As you are aware, on April 6, 2018, the Department of the Treasury's Office of Foreign Assets
Control (OFAC) designated Oleg Deripaska pursuant to Executive Order 13661 of March 16,
2014, Blocking Property of Additional Persons Contributing to the Situation in Ukraine, and
Executive Order 13662 of March 20, 2014, Blocking Property of Additional Persons
Contributing to the Situation in Ukraine. On June 20, 2019, you filed a lawsuit against OFAC in
the United States District Court for the District of Columbia (case no. 19-cv-727), alleging,
among other things, that OFAC had failed to provide notices of the bases for Mr. Deripaska's
designation.

On April 29, 2019, OFAC, through the Department of Justice (DOJ), provided a copy of the
administrative record regarding Mr. Deripaska, which contained redactions of classified or
otherwise protected or sensitive information. On December 6, 2019, OFAC, through DOJ,
agreed to endeavor to provide an unclassified summary of information in the administrative
record that is classified.

As such, please find enclosed additional non-privileged and unclassified information regarding
the basis for Mr. Deripaska's designations. This, coupled with our response dated April 29,
2019, completes the releasable information contained in the administrative record.

For the most direct response, please submit any follow up questions and correspondence to
OFAC via the following email address: OFAC.Reconsideration@treasury.gov, or to our attorney
at DOJ, Nicholas Cartier, at Nicholas.cartier@usdoj.gov.

You may also contact OFAC at the following mailing address:

U.S. Department of the Treasury
Office of Foreign Assets Control
ATTN: Office of Global Targeting
1500 Pennsylvania Ave., N.W.  (Freedman's Bank Building)
Washington, DC 20220

Sincerely,

Leila Baheri
Assistant Director
Global WMD, Middle East, Europe & Russia Division
Office of Global Targeting
Office of Foreign Assets Control

Enclosure

UKRAINE-EO13661-13321

(U) As of late January 2012, then Prime Minister Vladimir Putin had reportedly compelled Russian oligarchs to invest in projects associated with the 2014 Sochi Olympics; this included an $800 million investment by Oleg Deripaska.

(U) As of late January 2018, Deripaska was reported to have financed projects upon request of Vladimir Putin and senior Russian officials.

(U) Deripaska had reportedly once cancelled an IPO of his company, Gaz, to hide Russian President Vladimir Putin's money laundering through the company, as recently as September 2017.

(U) In December 2016, Deripaska was reportedly identified as one of the individuals holding assets and laundering funds on behalf of Russian President Vladimir Putin.

(U) In or before July 2011, Deripaska's business activity was reportedly used, on at least one occasion, as a cover to facilitate the transfer of funds for the personal use of then Russian Prime Minister Vladimir Putin.

(U) In late 2004, Deripaska reportedly acted on verbal instructions from President Vladimir Putin in a high-level bilateral meeting between Russian and Kyrgyz representatives.

# EXHIBIT

# D



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

UKRAINE-EO13662-16174

MAR 6 - 2020

Erich C. Ferrari
Ferrari & Associates, P.C.
1455 Pennsylvania Ave., N.W.
Suite 400
Washington, DC 20004

Dear Mr. Ferrari,

As you are aware, on April 6, 2018, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated your client, Oleg Deripaska, a Specially Designated National (SDN) pursuant to Executive Order (E.O.) 13661, for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, and E.O. 13662, for operating in the energy sector of the Russian Federation economy.

The Reporting, Procedures and Penalties Regulations, 31 C.F.R. Part 501, provide that designated persons may seek administrative reconsideration of their designation by submitting arguments or evidence that circumstances resulting in their designation no longer apply, or arguments or evidence that they believe establishes that an insufficient basis exists for the designation. Designated persons may also propose remedial steps, such as corporate reorganization, resignation from positions in a blocked entity, or similar steps that the person believes would negate the basis for designation.

In a letter dated June 27, 2019, you submitted a petition to reconsider your client's designation under E.O. 13662. After carefully reviewing all available information, including the evidence provided by you regarding your client's designation, as well as your responses to our questionnaires, other evidence available to OFAC, and all of the arguments raised in your written submissions, OFAC has determined that you have not put forth arguments or evidence establishing that an insufficient basis exists for your client's designation or that the circumstances resulting in the designation are no longer applicable.

First, you claim that Mr. Deripaska's designation is insufficient because his participation in international conferences related to energy and his proposal for a region-wide energy initiative do not evidence his operating in the energy sector of the Russian Federation economy. However, given the energy-related nature of Mr. Deripaska's participation in these conferences and the fact that he participated in these conferences while he owned En+ Group PLC, a Russian group of companies, and/or as a representative of the Russian state, OFAC views this activity as meeting the basis for designation under E.O. 13662.

1

Moreover, even in the absence of Mr. Deripaska's participation in such conferences, his designation under E.O. 13662 is amply supported given that he continues to operate in the energy sector of the Russian Federation economy through his ownership stakes in En+ and JSC Eurosibenergo (ESE), as described below.

Second, you claim that Mr. Deripaska's designation is legally insufficient because electricity providers and suppliers are not within the scope of the term "energy sector" as used in E.O. 13662. However, OFAC has never limited its interpretation of "energy sector" as used in E.O. 13662, (which provides the authority for Mr. Deripaska's designation at issue), and the plain language of "energy sector" is broad enough to encompass the provision and generation of electricity.

Finally, you claim that due to a change in circumstances since Mr. Deripaska's designation, a basis for Mr. Deripaska's designation under E.O. 13662 no longer exists. Specifically, you claim that because OFAC designated Mr. Deripaska for operating in the energy sector of the Russian Federation economy at least in part due to his past ownership and control of ESE, and that because Mr. Deripaska has now ceased to have control of ESE, there is no longer a basis under which to maintain Mr. Deripaska's designation under E.O. 13662.

OFAC is aware that Mr. Deripaska has terminated his majority ownership and control over ESE, but in the agency's view he nevertheless continues to operate in the energy sector of the Russian Federation economy through his 44.95 ownership stake in En+, and through his ownership in ESE, which is 100 percent owned by En+.

Consequently, your client's request is denied and his name will remain on OFAC's list of Specially Designated and Blocked Persons (SDN List) pursuant to E.O. 13662, in addition to E.O. 13661. A releasable copy of the evidentiary memorandum underlying this decision will be provided to you in the near future.

If, in the future, your client decides to pursue the reconsideration process again, he will need to submit a new request, and provide OFAC with new evidence, as well as any other information that OFAC may request in order to process the request. For expediency purposes, please direct all questions and correspondence to OFAC via the following email: OFAC.Reconsideration@treasury.gov. Your client may also write OFAC at the following address:

U.S. Department of the Treasury
Office of Foreign Assets Control
ATTN:  Office of Global Targeting
1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
Washington, DC 20220

Thank you for your cooperation.

Sincerely,

Andrea Gacki
Director
Office of Foreign Assets Control