**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

OLEG DERIPASKA,

             Plaintiff,

      v.

STEVEN T. MNUCHIN, Secretary of the
UNITED STATES DEPARTMENT OF
THE TREASURY, ANDREA M. GACKI,
DIRECTOR OF THE OFFICE OF
FOREIGN ASSESTS CONTROL,

           Defendants.

Civil Action No. 19-cv-00727 (APM)

<u>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO
SUPPLEMENT THE ADMINISTRATIVE RECORD**</u>

### TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

LEGAL STANDARD ..........................................................................................................6

ARGUMENT .......................................................................................................................7

I.      There Is No Basis for Inclusion of "Implementation Records" Related to the Terms
        of Removal in the Administrative Record Because Plaintiff Has Not Overcome the
        Presumption of Regularity. ......................................................................................8

II.     There is No Basis for Inclusion of the Vekselberg/Renova Group Memorandum in
        the Administrative Record Because Plaintiff Has Not Overcome the Presumption of
        Regularity.................................................................................................................11

III.    Plaintiff Has Not Overcome the Presumption of Regularity to Show that the
        Administrative Records for the Designations or Delisting Request Are Inadequate...........13

        CONCLUSION ......................................................................................................................15

## <u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Anglers Conservation Network v. Pritzker*, Civ. A.,
　No. 13-1761 (GK), 2014 WL 12776056 (D.D.C. Apr. 28, 2014) ...............................10

*Animal Legal Def. Fund v. Vilsack*,
　110 F. Supp. 3d 157 (D.D.C. 2015) ...............................................................................9

*Bahman Grp. v. Gacki*,
　No. 19-CV-2022 (RDM), 2020 WL 4346912 (D.D.C. July 29, 2020)................................6, 9, 12

*Bimini Superfast Operations LLC v. Winkowski*,
　994 F. Supp. 2d 103 (D.D.C. 2014) ...............................................................................1

*Calloway v. Harvey*,
　590 F. Supp. 2d 29 (D.D.C. 2008) .................................................................................6

*Camp v. Pitts*,
　411 U.S. 138 (1973)..........................................................................................................6

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
　401 U.S. 402 (1971), *abrogated on other grounds by*,
　*Califano v. Sanders*, 430 U.S. 99 (1977) .....................................................................6

*City of Dania Beach v. FAA*,
　628 F.3d 581 (D.C. Cir. 2010) .......................................................................................6

*Conservation Force v. Salazar*,
　No. 1:10-CV-1262 BJR, 2012 WL 11947683 (D.D.C. Feb. 6, 2012) .........................9

*CTS Corp. v. EPA*,
　759 F.3d 52 (D.C. Cir. 2014) .........................................................................................6

*Esch v. Yeutter*,
　876 F.2d 976 (D.C. Cir. 1989) .....................................................................................6, 7

*Gen. Elec. Co. v. Jackson*,
　595 F. Supp. 2d 8 (D.D.C. 2009), *aff'd*, 610 F.3d 110 (D.C. Cir. 2010) ...................12

*Hill Dermaceuticals, Inc. v. FDA*,
　709 F.3d 44 (D.C. Cir. 2013) .........................................................................................6

*IMS, P.C. v. Alvarez*,
　129 F.3d 618 (D.C. Cir. 1997) .......................................................................................6

*James Madison Ltd. by Hecht v. Ludwig*,
　82 F.3d 1085 (D.C. Cir. 1996) .....................................................................................12

*Marcum v. Salazar,*
   751 F. Supp. 2d 74 (D.D.C. 2010) ................................................................7, 10, 13

*Maritel, Inc. v. Collins,*
   422 F. Supp. 2d 188 (D.D.C. 2006) ..............................................................................7

*Midcoast Fishermen's Ass'n v. Gutierrez,*
   592 F. Supp. 2d 40 (D.D.C. 2008) ...............................................................................9

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs,*
   448 F. Supp. 2d 1 (D.D.C. 2006) .................................................................................7

*Public Citizen v. Heckler,*
   653 F. Supp. 1229 (D.D.C. 1986) ................................................................................7

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
   324 F.3d 726 (D.C. Cir. 2003) .....................................................................................5

*Silver State Land, LLC v. Beaudreau,*
   59 F. Supp. 3d 158 (D.D.C. 2014) ...............................................................................9

*The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior,*
   667 F. Supp. 2d 111 (D.D.C. 2009) ...........................................................................12

*Theodore Roosevelt Conservation P'ship v. Salazar,*
   616 F.3d 497 (D.C. Cir. 2010) .................................................................................6, 7

*Tindal v. McHugh.,*
   945 F. Supp. 2d 111 (D.D.C. 2013) ...............................................................6, 7, 8, 14

*WildEarth Guardians v. Salazar,*
   670 F. Supp. 2d 1 (D.D.C. 2009) ...............................................................................12

*Wilmina Shipping AS v. DHS,* Civ. A. No. 11-2184 (ABJ),
   2013 WL 12340838 (D.D.C. Sept. 4, 2013) ..............................................................10

## STATUTES

5 U.S.C. § 706 .................................................................................................................6

Countering America's Adversaries Through Sanctions Act,
   Pub. L. No. 115-44, 131 Stat. 886 (2017) ....................................................................1

## REGULATIONS

Notice of OFAC Sanctions Actions,
   83 Fed. Reg. 19138 (2018) ...........................................................................................2

**INTRODUCTION**

This case arises out of the President's decision to declare an emergency and impose sanctions on Russia in response to the illegal Russian invasion of Ukraine.  In 2018, the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC") imposed sanctions on Plaintiff Oleg Deripaska, a Russian billionaire, pursuant to two different executive orders.  OFAC designated him under Executive Order No. 13661, for acting on behalf of Vladimir Putin, and under Executive Order No. 13662, for operating in the energy sector of the Russian economy.  Plaintiff was also named in a Treasury report provided to Congress that was mandated by Section 241 of the Countering America's Adversaries Through Sanctions Act ("CAATSA"), Pub. L. No. 115-44, 131 Stat. 886 (2017), which identified Plaintiff as an oligarch in the Russian Federation.  Plaintiff's Second Amended Complaint challenges the designations under E.O. 13661 and E.O. 13662, the denial of his request for reconsideration, and the inclusion of his name in the CAATSA report.

Dispositive cross motions are pending, and the agency has properly certified the administrative record.  Plaintiff now seeks to "supplement" the administrative record for the reconsideration, arguing that the agency must have considered two categories of information that appear nowhere in the administrative record.  But Plaintiff fails to substantiate his wholly speculative hypothesis that either (a) all documents related to the Terms of Removal, or (b) all documents related to the designation of Vekselberg, had any bearing on OFAC's designations of Deripaska.  Accordingly, Plaintiff falls well short of the well-established threshold for overcoming the "strong presumption" of regularity that attaches to OFAC's certification of the relevant administrative record.  *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014) (citation omitted).  Insofar as Plaintiff contends that OFAC *should have* considered this information to be relevant to the reconsideration proceedings, he was free to submit such information to OFAC during its reconsideration, and he could have advanced this argument in the course of merits briefing based on the current administrative record.  But these arguments do not

1

provide a basis to supplement the record after the fact. Finally, Plaintiff's general speculation that the administrative records for the designations and reconsideration must exclude relevant information is wholly inadequate to justify supplementation of the record.

## FACTUAL AND PROCEDURAL BACKGROUND

**Original Designations.** The factual and procedural background is set forth in greater detail in the Defendants' Motion to Dismiss or for Summary Judgment. *See* ECF No. 27-1, at 4-13. On April 6, 2018, OFAC designated Plaintiff pursuant to section 1(a)(ii)(C)(1) of E.O. 13661 for "having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation," and pursuant to section 1(a)(i) of E.O. 13662 "for operating in the energy sector of the Russian Federation economy." Notice of OFAC Sanctions Actions, 83 Fed. Reg. 19138 (2018). OFAC's justification for designating Plaintiff under both Executive Orders are set forth in evidentiary memoranda, with supporting exhibits, portions of which are classified. With respect to Plaintiff's 13661 designation, OFAC's memorandum concludes that "Deripaska has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation." DERIPASKA_0008. Under the heading "Deripaska Has Acted in Support of Russian President Vladimir Putin's Projects," the memorandum includes nine supporting paragraphs, eight of which were redacted because they are classified. *Id*. at 0008-09. The unclassified paragraph summarizes information from an article in *The Nation* about Deripaska's actions on behalf of Putin. OFAC's memorandum also sets forth the grounds for Plaintiff's designation under EO 13662, specifically, the agency's conclusion that Plaintiff "Operates in the Energy Sector of the Russian Federation Economy." *Id*. at 0009-11. This portion of the memorandum is unclassified and explains in detail the basis for OFAC's determination. *Id*. The memorandum states that, "[a]ccording to Deripaska's web site, as of January 31, 2018, Deripaska's key companies operate in multiple sectors of the [Russian] economy, to include the energy sector." *Id*. at 0010. One of these companies, EuroSibEnergo

("ESE"), "is the largest private power company in Russia, and produces around 9 percent of Russia's total electricity generation."  *Id.*[1]

**First Set of Cross-Motions.**  On March 15, 2019, Plaintiff filed this lawsuit.  Compl. ¶ 1, ECF No. 1.  Following Defendants' submission of the administrative record for these designations, *see* ECF No. 6-1, Plaintiff filed an Amended Complaint, challenging only his designation pursuant to E.O. 13661 for having acted or purporting to act, directly or indirectly, on behalf of Russian President Vladimir Putin as well as his inclusion in the CAATSA Report.  *See generally*, Am. Compl., ECF No. 7.  The parties then filed cross-motions for summary judgment on the claims raised in the Amended Complaint.  *See* ECF Nos. 9, 11.  Subsequent to the parties' briefing on their first set of cross-motions, Defendants provided Plaintiff with an unclassified summary of the classified portions of the administrative record underlying his designations pursuant to E.O. 13661.  Joint Status Report at 1, ECF No. 22.

**Reconsideration.**  Plaintiff also sought administrative reconsideration from OFAC of his designation pursuant to EO 13662.  *Id.* at 1-2; DERIPASKA_0190-220.  In March 2020, OFAC denied Plaintiff's reconsideration request, providing Plaintiff with a twelve-page, largely unclassified evidentiary memorandum explaining the reasons for its denial.  *See* SAC ¶¶ 11, 90; DERIPASKA_0158-69.[2]  As with OFAC's evidentiary memorandum supporting Plaintiff's 13661 designation and his original designation under EO 13662, the evidentiary memorandum explaining

---

[1] Prior to these designations, on January 29, 2018, Treasury provided a report to Congress required by Section 241 of CAATSA, which identified Plaintiff as one of a number of oligarchs in the Russian Federation. CAATSA Report, Appendix B; Second Am. Compl. ("SAC") ¶ 5, ECF No. 26.  Plaintiff has also challenged this report, but that challenge is not the subject of this motion.

[2] Defendants previously consented to Plaintiff's motion to delay filing of the joint appendix in this matter under Local Rule 7(n) until after the motion to supplement is decided, and the Court so ordered. *See* ECF No. 37.  Realizing that certain excerpts from the administrative record (including the evidentiary memoranda underlying the designation and the denial of reconsideration) may be helpful to the Court's consideration of Defendants' Opposition to the Motion to Supplement, Defendants have attached those excerpts hereto as Exhibit A.  This is not all of the pages that would be in a joint appendix, and Defendants anticipate that, at the ordered time, the parties will comply with Local Rule 7(n) and the Court order to identify portions of the administrative record in a joint appendix.

the denial of Plaintiff's reconsideration request relies on supporting exhibits, some of which are classified. *See* DERIPASKA_0167-69 (listing exhibits). OFAC concluded that that Plaintiff operates in the energy sector of the Russian Federation economy, pointing to (i) his participation in World Economic Forum projects as part of Plaintiff's work with En+ Group; (ii) his focus on energy efficiency and energy security on the Asia-Pacific Economic Cooperation ("APEC") Business Advisory Council; and (iii) the presentation of one of Plaintiff's representatives on the North East Asian Regional Electrical System Ties Initiative ("NEAREST") at a meeting of the APEC Business Advisory Council in 2012. *See* DERIPASKA_0160-61. Additionally, OFAC concluded that Plaintiff's continued ownership stakes in En+ Group and ESE demonstrated his continued operations in the Russian Federation energy sector. *Id*. OFAC specifically rejected Plaintiff's claim that electricity producers and suppliers are not within the scope of "energy sector" as that phrase pertains to U.S. sanctions programs. *Id*. at 0161-62. And OFAC assessed and considered evidence presented by Plaintiff of a change in circumstances since the time of his original designation, namely, the fact that he is no longer a majority shareholder in, and does not exercise control over, either En+ Group or ESE. *Id*. at 0163. OFAC's unclassified, nonprivileged evidentiary memorandum contains a lengthy explanation of why the agency assesses Plaintiff's significant minority stake in the companies, both of which operate in the energy sector of the Russian Federation economy, as justifying Plaintiff's continued designation under EO 13662. *Id*. at 0163-65.

**Second Amended Complaint and Cross-Motions.** On April 16, 2020, Plaintiff filed a Second Amended Complaint containing twelve claims that raise challenges to his designation pursuant to EO 13661, his designation pursuant to EO 13662, the denial of his reconsideration request, and his inclusion in the list of oligarchs in Treasury's CAATSA Report provided to Congress. *See* ECF No. 26. On May 15, 2020, Defendants again moved for summary judgment and filed the certified index of the administrative record. ECF No. 27, 28. The declaration accompanying the index certifies "that the documents described in the attached index constitute a

true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered in connection with OFAC's decision to designate plaintiff Oleg Deripaska under Executive Order 13661, as well as OFAC's decision to deny his petition seeking delisting under Executive Order 13662." *See* 2ⁿᵈ Declaration of Leila Baheri, ECF No. 28-1, ¶ 4.[3]  The parties have now completed briefing of cross-motions.

**Motion to Supplement.**  Plaintiff filed the present motion to "supplement" the administrative record for the reconsideration proceeding with inclusion of (1) the "evidentiary memorandum underlying OFAC's decision to designate Viktor Vekselberg and/or Renova Group under E.O. 13662 or any documents and materials related to the reasons for those designations"; and (2) "documents and materials related to the implementation of the Terms of Removal Agreement, dated December 19, 2018, entered between OFAC and En+ Group plc, UC RUSAL plc, and JSC EuroSibEnergo," including "reports provided by the respective parties to the agreement to OFAC with respect to their implementation of the Terms of Removal Agreement" and "any internal assessments by OFAC with respect to the parties' implementation of the Terms of Removal Agreement." *See* Pl.'s Proposed Order, ECF No. 36-2.  He also seeks supplementation of the designation and reconsideration records based on his conclusion that the evidentiary memoranda failed to include other relevant information in the agency's possession, and generally seeks supplementation of the record with respect to all documents considered with respect to the designations or the reconsideration request. *See* Mem. of P.&A. in Supp. of Pl.'s Mot. to Suppl. the Admin. R., at 13-16, ECF No. 36-1 ("Pl.'s Mot."); ECF No. 36-2.

---

[3] As explained in Defendants' Motion for Summary Judgment, direct review of the agency's E.O. 13662 designation is unwarranted. *See* Defs.' MSJ at 20-21.  OFAC's 2020 petition denial (which kept Plaintiff's designation in place and responded to his reconsideration request) superseded the agency's April 2018 designation and reaffirmed that Plaintiff continues to meet the criteria for that EO 13662 designation. *See* DERIPASKA_0159-60.  Accordingly, only review of the March 2020 delisting petition is warranted in this case.  *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (noting that an agency action is "final" for purposes of the APA if, among other things, it is "definitive" and "marks the consummation of the agency's decision-making process").

**LEGAL STANDARD**

Judicial review of the lawfulness of an agency's decision under 5 U.S.C. § 706 must be "based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (noting that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997); *see also Bahman Grp. v. Gacki*, No. 19-CV-2022 (RDM), 2020 WL 4346912, at *2 (D.D.C. July 29, 2020); *Tindal v. McHugh.* 945 F. Supp. 2d 111, 123 (D.D.C. 2013). The D.C. Circuit has recognized narrow exceptions in which supplementation of an administrative record may be appropriate: "(1) if the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,' (2) if background information was needed 'to determine whether the agency considered all the relevant factors,' or (3) if the 'agency failed to explain administrative action so as to frustrate judicial review.'" *Id.* (quoting *City of Dania Beach v. FAA,* 628 F.3d 581, 590 (D.C. Cir. 2010); *see also Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.") (citation omitted). The common thread that runs through these exceptions is "the assessment that 'resort to extra-record information is *necessary* to enable judicial review to become effective.'" *Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008) (emphasis added and alterations omitted) (quoting *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)). Accordingly, courts should not permit plaintiffs to introduce extra-record evidence except in the face of "gross procedural deficiencies—such as where the administrative record itself is so deficient as to

preclude effective review." *Hill Dermaceuticals, Inc. v. FDA* 709 F.3d 44, 47 (D.C. Cir. 2013); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (same).

An "agency enjoys a presumption that it properly designated the administrative record absent clear evidence to the contrary." *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006). "To overcome that presumption, 'a plaintiff must put forth concrete evidence that the documents it seeks to "add" to the record were actually before the decisionmakers.'" *Tindal*, 945 F. Supp. 2d at 123 (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). The plaintiff "must identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record." *Marcum*, 751 F. Supp. 2d at 78 (quoting *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)). To show that information was withheld from the record, a plaintiff must have concrete evidence that the documents at issue (1) were known to the agency at the time it made its decision, (2) "are directly related to the decision," and (3) "are adverse to the agency's position." *Public Citizen v. Heckler,* 653 F. Supp. 1229, 1237 (D.D.C. 1986). The principle that review is confined to the administrative record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," *Esch,* 876 F.2d at 991, and consideration of extra record evidence "is the exception, not the rule." *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514.

## **ARGUMENT**

Plaintiff wholly fails to overcome the presumption that the administrative record is properly certified here. There is no evidence that the decisionmaker considered additional documents that appear nowhere in the information presented to or considered by the decisionmaker. The designation of the record is proper.

I.      **There Is No Basis for Inclusion of "Implementation Records" Related to the Terms of Removal in the Administrative Record Because Plaintiff Has Not Overcome the Presumption of Regularity.**

Plaintiff argues that certain documents related to the implementation of the "Terms of Removal" (or "TOR"), a separate agreement between OFAC and En+, ESE and UC RUSAL should be included in the administrative record for the delisting request. Pl.'s Mot. at 9-13.  Some documents related to the TOR are in the administrative record.  The TOR reduced Deripaska's ownership share in these companies and limited his ability to control the companies as a condition of the companies' delisting; it also required the companies to submit certain certifications and other reports to OFAC.  DERIPASKA_163-65.  Plaintiff therefore argued before the agency that the TOR constituted a change in circumstances such that Deripaska was no longer operating in the energy sector, and Plaintiff submitted some documents related to the TOR as part of his delisting request.  Pl.'s Mot. at 2 (citing administrative record for information about the TOR); DERIPASKA_163-65.  Deripaska was not a party to the TOR as an individual, and the Terms of Removal did not provide for Deripaska's delisting, only the delisting of the companies.[4] DERIPASKA_212-20.  As set forth above, OFAC found several bases for Plaintiff's continued operation in the energy sector, and also specifically rejected the argument that the Terms of Removal mandated his removal as well.  OFAC re-examined and explained its basis for concluding that Plaintiff's ownership level in ESE via EN+ Group was still sufficiently significant to warrant his designation.  *Id.* at 0163-65.

Plaintiff now demands that all of the reporting by these companies under the TOR, as well as any internal assessments about their compliance, be included in this administrative record for Deripaska's request for reconsideration.  Plaintiff is correct that OFAC possesses some reporting by the parties to the TOR.  Pl.'s Mot. at 10-11.  Not all such documents, however, were considered

---

[4] Plaintiff states, without citation, that he entered into a deed letter with En+, as En+ was required to do under the TOR, "with the understanding that his E.O. 13662 designation would be rescinded." Pl.'s Mot. at 2.  No such representation was ever made to Plaintiff, and he cites nothing in support of this assertion.

by the decisionmaker.  *See* 2nd Baheri Decl. ¶ 5.  Any documents not actually before the decisionmaker are not part of the record.  *See Tindal*, 945 F. Supp. 2d at 123.  Plaintiff did not submit these documents to OFAC in connection with his reconsideration request, nor request that these materials be consulted.  *See* 2nd Baheri Decl. ¶ 5.  Plaintiff has made no showing that the record for this wholly separate action is incomplete on this point, much less made the strong showing necessary to overcome the presumption of regularity.

Plaintiff asserts that these documents nonetheless have "obvious relevance" and should have been considered.  Pl.'s Mot. at 10.  As an initial matter, this is not an appropriate basis for supplementation of the record.  As a court in this district recently opined in a similar case, "arguments regarding what documents an agency *should have* considered is not the proper subject for a motion to supplement the record;" rather, a plaintiff may "argue in its merits brief that the agency's failure to consider materials that were in its possession renders the agency's decision arbitrary or capricious for purposes of the [APA]."  *Bahman Grp.*, 2020 WL 4346912, at *4.  As cogently explained in another matter:

> Limiting the record to what the agency considered does not impede the prosecution of plaintiffs' complaint about the agency's action: it advances it.  Plaintiffs' argument—that the agency should have considered more [than it did]—must be based on the existing record for the argument is that failing to consider more [than it did] rendered the agency's conclusion arbitrary and capricious.  The validity of that argument rises and falls on what the agency considered with plaintiffs' pointing out why that limited consideration was illogical and unreasonable.

*Conservation Force v. Salazar*, No. 1:10-CV-1262 BJR, 2012 WL 11947683, at *5 (D.D.C. Feb. 6, 2012) (quoting *Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 46 (D.D.C. 2008)); *see also, e.g., Silver State Land, LLC v. Beaudreau*, 59 F. Supp. 3d 158, 166 (D.D.C. 2014) ("the issue of what the [agency] *should have* considered may ultimately bear on whether the agency action at issue was arbitrary and capricious [and] that is a merits argument that is wholly irrelevant to what the agency actually *did* consider during the time period at issue.") (citation omitted); *Animal Legal Def. Fund v. Vilsack*, 110 F. Supp. 3d 157, 161 (D.D.C. 2015) (rejecting

argument that agency should have but did not consider information proposed for supplementation).  In short, Plaintiff could have made an argument at the merits stage that the agency should have considered these documents.  He did not do so, and cannot belatedly raise the argument styled as a "motion to supplement."

Plaintiff is also, however, quite wrong to suggest that the agency should have considered this entire category of information.  Plaintiff did not request its consideration by OFAC, despite being quite aware of the TOR, and should not be permitted to bypass the administrative process to insist that it be considered now.  The listings and delistings of En+ and ESE are separate, discrete agency actions, and the existence of a document pertaining to one action does not necessarily mean that it belongs in the administrative record for another agency action.  *See, e.g., Wilmina Shipping AS v. DHS,* Civ. A. No. 11-2184 (ABJ), 2013 WL 12340838, at *3 (D.D.C. Sept. 4, 2013) ("the fact that records exist in an agency's files alone is not enough to warrant supplementation. The agency must have considered the omitted records in making their decision."); *Marcum*, 751 F. Supp. 2d at 78 ("A plaintiff cannot merely assert, however, that materials were relevant or were before an agency when it made its decision."); *cf. Anglers Conservation Network v. Pritzker*, Civ. A. No. 13-1761 (GK), 2014 WL 12776056, at *2 (D.D.C. Apr. 28, 2014) (notwithstanding that proposed supplemental claims "relate[d] to the same general subject matter," where they "challenge[d] two discrete decisions," they required "two separate administrative records, each of which must be compiled and evaluated separately").  In short, the existence of information about a different agency action in OFAC's files does not show that the record was improperly designated, nor does it overcome the presumption of good faith and regularity.

Moreover, no part of OFAC's decision to deny Plaintiff's delisting request turned on whether the parties to the TOR were in compliance.  Indeed, the evidentiary, on its face, appears to assume the parties are complying with the TOR.  Instead, OFAC concluded that, regardless of compliance with the TOR, Deripaska's continued substantial minority stake alone showed

continued operation in the energy sector, and that a majority stake was not a prerequisite to show that he is operating in the energy sector.  DERIPASKA_163-65.  There is no statutory, regulatory, or logical reason to consider all such unrelated reports in response to Plaintiff's reconsideration request.  Because the compliance of the parties to the TOR was not at issue in Plaintiff's reconsideration request, the requested information is not conceivably part of the administrative record.  And other than Plaintiff's bare assertion that the documents must be relevant, Plaintiff does not explain how or why they should have been considered.  In short, Plaintiff has made no showing that the record improperly excluded this information.

II.     **There is No Basis for Inclusion of the Vekselberg/Renova Group Memorandum in the Administrative Record Because Plaintiff Has Not Overcome the Presumption of Regularity.**

Plaintiff argues that a passing reference to Viktor Vekselberg in the denial of the delisting request requires supplementation of the administrative record with the full evidentiary memorandum and exhibits underlying Vekselberg's separate designation.  Pl.'s Mot. at 12-13. This separate designation arose in the context of Plaintiff's argument that Deripaska's investment in power generation is not "operating in the energy sector."  OFAC substantively rejected the argument that "electricity" is not "energy", noting its broad discretion in this area and explaining that "in no other program . . . has OFAC defined the term 'energy sector' to exclude power generation or electricity production."  *See* DERIPASKA_0162.  OFAC also noted as one example that it has designated "at least one other individual for operating in the energy sector of the Russian Federation economy for power generation activities" – Viktor Vekselberg.  One exhibit cited in the evidentiary denying Plaintiff's reconsideration request connects Vekselberg specifically to "power generation," explaining that he is the founder and chairman of Renova Group, which manages assets in the energy sector among others, and that two Renova executives were arrested "for bribing officials connected to a power generation project in Russia." DERIPASKA_415-16.  In short, it is plain from the information in the record that Vekselberg was designated in part because of Renova's involvement in power generation.

Plaintiff supposes that the agency must possess additional information about Vekselberg's involvement in "power generation" and must have considered it in connection with his delisting request. Pl.'s Mot. at 12-13. Presumably, OFAC does indeed possess a more detailed memorandum in connection with Vekselberg's designation, but that memorandum was not considered in connection with Deripaska's reconsideration request, and Plaintiff has presented no evidence to the contrary. Rather, all information considered by the decisionmaker directly or indirectly is included in the administrative record already. *See* 2nd Baheri Decl. ¶ 5. The passing reference to the Vekselberg designation was a single example, tangential to OFAC's broader (and obvious) conclusion that "power generation" is part of the "energy sector." It did not and should not prompt a full revisiting of the Vekselberg designation.

And this is consistent with conclusions that documents not actually before the decisionmaker are properly excluded from the record. *See, e.g., James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996) (finding that agency properly excluded various documents that it obtained through a bank seizure during the time it was making the decision under review but that such documents were not "considered" by the decisionmaker even though agency examiners might have seen them); *Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8, 18 (D.D.C. 2009) ("irrelevant documents *should* be excluded from the record—the record should only include documents that the agency 'directly or indirectly considered.'"), *aff'd*, 610 F.3d 110 (D.C. Cir. 2010). Even references to documents in the administrative record do not automatically show that the documents were "before" the deciding agency. *See, e.g.*, *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009) (finding that the mere mention of a document in the record does not "indicate consideration of [its] contents"); *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009) (finding that references to a biological opinion in the record do "not prove that it was before the agency when it made its decision").

Again, if Plaintiff wished to argue that the evidence before the decisionmaker was inadequate to support OFAC's conclusion that Vekselberg was involved in power generation, he

was entitled to do so as part of the merits briefing, but the alleged inadequacy of that information is not a basis to supplement the record. *See Bahman Grp*., 2020 WL 4346912, at *4. Again, this argument seems like belated discovery of an argument Plaintiff wishes he had made in the summary judgment briefing. His argument that "OFAC must necessarily have relied on extra-record materials to support its contention that Vekselberg was designated under E.O. 13662 for his involvement in power generation activities in the Russian economy," Pl.'s Mot. at 12, is bare speculation, and does not suffice to show that the record was improperly designated. *See Marcum*, 751 F. Supp. 2d at 78.

III.    **Plaintiff Has Not Overcome the Presumption of Regularity to Show that the Administrative Records for the Designations or Delisting Request Are Inadequate.**

Having failed to identify any specific information that was improperly excluded from the record, Plaintiff argues without evidence that the agency generally "excluded relevant information from the administrative record that was before OFAC or otherwise within the agency's possession;" Plaintiff makes the same argument with respect to both the administrative record for the designations and the record for the denial of the reconsideration request. Pl.'s Mot. at 13-16. In support of this speculation, Plaintiff complains that the record consists entirely of the evidentiary memoranda and related exhibits, which are intended to recommend the end result; according to Plaintiff, however, the agency is "conflating" the evidentiary memorandum with the administrative record, which serve, in Plaintiff's mind, distinct purposes.

This is incorrect. As is evident on the face of the evidentiary memoranda, these memoranda collect the material information and analyze it for the benefit of the decisionmaker, including exculpatory or countervailing information. In a designation or delisting proceeding, therefore, an evidentiary memorandum generally serves at OFAC as the record of information considered by the decisionmaker. Here, the record for the designations accordingly includes the final decision in the form of the blocking memorandum, as well as the evidentiary and all supporting exhibits; this is the information that went to the decisionmaker. *See* 2nd Baheri Decl. &

Index.[5]  Unlike the designation, for which no advance notice is required, the request for

reconsideration involved the Plaintiff himself; accordingly, the record for the denial also consists

of the evidentiary memorandum and all exhibits, and this memorandum includes all of Plaintiff's

submissions, affirmatively showing that OFAC considered this material in the course of the

reconsideration proceeding.  *Id.*  The inclusion of such arguably adverse material demonstrates

that OFAC does include adverse material in its evidentiary memoranda.  It is accordingly just not

true that the evidentiary memoranda do "not appear to serve as a compilation of all the documents

and materials reviewed or considered by" the agency decisionmaker.  Pl.'s Mot. at 14.  Rather, as

set forth in the Baheri Declaration certifying the administrative record, the agency properly

designated the administrative records to include all information considered directly or indirectly

by the decisionmaker with respect to these agency actions.  *See* 2nd Baheri Decl. ¶ 4.[6]  In the

absence of any countervailing evidence whatsoever, this is conclusive of the scope of the record.

In a footnote devoid of citation, Plaintiff asserts that "there are a bevy of open-source court

documents, media reports, and other material that cast substantial doubt on the allegations relied

on by OFAC" and that therefore "there are no reasonable grounds for the Court to accept that

OFAC considered, or otherwise had before it, only materials that supported its determination and

was otherwise completely oblivious."  Pl.'s Mot. at 14 n.1.  Plaintiff does not specify anything in

this unidentified "bevy" of material, and never submitted any information to OFAC that could

---

[5] The evidentiary memorandum for the designation explicitly considers arguably exculpatory information, such as the FARA filing of the Endeavor Group, which provides legal advice to Plaintiff and asserted that he was not an agent of a foreign power.  *See* DERIPASKA_008n.2.  Even in the wholly non-adversarial designation proceeding, therefore, it is plain that OFAC considered material, arguably exculpatory information in its possession and placed it before the decisionmaker.

[6] As set forth above in note 3, the original record for the E.O. 13662 designation has been superseded by the denial of the request for reconsideration, which encompasses additional information.  If the Court disagrees, that record was also properly certified (in connection with the first round of dispositive motion briefing) for the same reasons.  The accompanying declaration certified that "the documents described in the attached index constitute a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered in connection with OFAC's decision to designate plaintiff Oleg Deripaska."  *See* 1st Decl. of Leila Baheri, ECF No. 5-1, ¶ 4.

"cast substantial doubt" on OFAC's conclusions.  Such vague grumbling is wholly inadequate to show "bad faith" or that OFAC "deliberately or negligently" excluded information adverse to its decision.  *See* Legal Standard, *supra* at pp. 6-7.  Plaintiff has pointed to no concrete evidence that the record was improperly designated.  *See Tindal*, 945 F. Supp. 2d at 123.  And in any event, Plaintiff has had the opportunity in the summary judgment briefing to show that OFAC failed to consider relevant factor or otherwise acted arbitrarily and capriciously in violation of the APA.  Plaintiff's speculation about OFAC's administrative process is not a basis for supplementation of the record, which the agency has properly certified.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiff's Motion to Supplement the Administrative Record.

Dated:  August 20, 2020                     Respectfully Submitted,

                                            ETHAN P. DAVIS
                                            Acting Assistant Attorney General

                                            DIANE KELLEHER
                                            Assistant Director, Federal Programs Branch

                                            */s/Amy E. Powell*
                                            AMY E. POWELL
                                            Trial Attorney, Federal Programs Branch
                                            Civil Division, Department of Justice
                                            c/o U.S. Attorney's Office
                                            150 Fayetteville St., Suite 2100
                                            Raleigh, NC 2760
                                            Phone: 919-856-4013
                                            Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

OLEG DERIPASKA,

              Plaintiff,

      v.

STEVEN T. MNUCHIN, Secretary of the
UNITED STATES DEPARTMENT OF
THE TREASURY, ANDREA M. GACKI,
DIRECTOR OF THE OFFICE OF
FOREIGN ASSESTS CONTROL,

              Defendants.

Civil Action No. 19-cv-00727 (APM)

<u>**EXHIBIT A**</u>

<u>**EXCERPTS FROM THE ADMINISTRATIVE RECORD**</u>



TOP SECRET

THE DEPUTY SECRETARY OF THE TREASURY
WASHINGTON

**Case No. UKRAINE-EO13661-13321**

## EVIDENTIARY MEMORANDUM

(U) MEMORANDUM FOR: JOHN E. SMITH     for TES 4.5.2018
                    DIRECTOR
                    OFFICE OF FOREIGN ASSETS CONTROL

(U) THROUGH:        GREGORY T. GATJANIS     GG
                    ASSOCIATE DIRECTOR
                    OFFICE OF GLOBAL TARGETING

                    TODD C. CONKLIN
                    DEPUTY ASSOCIATE DIRECTOR
                    OFFICE OF GLOBAL TARGETING

                    LEILA M. BAHERI
                    ASSISTANT DIRECTOR
                    GLOBAL WMD, MID-EAST EURASIA DIVISION

                    ACTING SECTION CHIEF
                    GLOBAL WMD, MID-EAST EURASIA DIVISION
                    RUSSIA-UKRAINE/SYRIA SECTION

(U) FROM:
                    GLOBAL WMD, MID-EAST EURASIA DIVISION
                    RUSSIA-UKRAINE/SYRIA SECTION

(U) SUBJECT:        **OLEG VLADIMIROVICH DERIPASKA:** Designation
                    Pursuant to Executive Order 13661 of March 16, 2014, "Blocking
                    Property of Additional Persons Contributing to the Situation in
                    Ukraine" and Executive Order 13662 of March 20, 2014,
                    "Blocking Property of Additional Persons Contributing to the
                    Situation in Ukraine"

## (U) I. INTRODUCTION

(U) On March 16, 2014, the President issued Executive Order 13661, "Blocking Property of
Additional Persons Contributing to the Situation in Ukraine," ("E.O. 13661"). [Exhibit 1]

TOP SECRET

1

DERIPASKA_0006

(U) E.O. 13661 blocks the property and interests in property of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to meet one or more of the criteria in E.O. 13661. [Exhibit 1]

(U) On March 20, 2014, the President issued Executive Order 13662, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine," ("E.O. 13662").

(U) E.O. 13662 blocks the property and interests in property of any person determined by the Secretary of the Treasury, in consultation with the Secretary of State, to meet one or more of the criteria in E.O. 13662. [Exhibit 2, p. 1]

(U//FOUO) On July 16, 2014, the Secretary of the Treasury, in consultation with the Secretary of State, determined that section 1(a)(i) of E.O. 13662 shall apply to the energy sector of the Russian Federation economy. [Exhibit 3, p. 1]

(U) Information presented in this memorandum and accompanying exhibits provides reason to believe that **OLEG VLADIMIROVICH DERIPASKA**, has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, [Exhibit 1, p. 1] and operates in the energy sector of the Russian Federation economy [Exhibit 2, p. 1] and therefore should be added to the list of Specially Designated Nationals and Blocked Persons.[1]

## (U) II. IDENTIFYING INFORMATION

- (U) **OLEG VLADIMIROVICH DERIPASKA** [Exhibit 4, p. 5]
- (U) D.O.B.: January 2, 1968 [Exhibit 4, p. 4]
- (U) P.O.B.: Dzerzhinsk, Nizhny Novgorod Region, Russia [Exhibit 5, p. 1]
- (U) Address: Moscow, Russia [Exhibit 6, p. 1]
- (U) alt. Address: 64 Severnaya Street, Oktyabrsky, Khutor, Ust-Labinsky District, Krasnodar Territory, Russia 352332 [Exhibit 29, p. 1]
- (U) alt. Address: 5, Belgrave Square, Belgravia, London, SW1X 8PH, United Kingdom [Exhibit 7, p. 2] [Exhibit 8, p. 1]
- (U) Gender: Male [Exhibit 6, p. 1]
- (U) Citizenship: Russia [Exhibit 6, p. 1]
- (U) alt. Citizenship: Cyprus [Exhibit 12, pp. 1 and 2]

---

[1] (U) The name of the proposed target will appear in BOLD CAPITAL letters. Throughout this memorandum, an asterisk (*) following a name in ALL CAPS denotes an individual or entity whose property and interests in property have been blocked.

2

DERIPASKA_0007

TOP SECRET//

## (U) III. BASIS FOR DETERMINATION

### (U) OLEG VLADIMIROVICH DERIPASKA (DERIPASKA)

*(U) DERIPASKA has acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation*[2]

(S//NF) DERIPASKA Has Acted in Support of Russian President Vladimir Putin's Projects



[Exhibit 14, p. 2]

[Exhibit 15, pp. 2 and 3]

[Exhibit 16, p. 2]

(U) *The Nation* reported on October 1, 2008, that DERIPASKA told one of his closest associates that he bought an aluminum plant in Montenegro in 2005 "because Putin encouraged him to do it. ...the Kremlin wanted an area of influence in the Mediterranean." [Exhibit 22, p. 5]

---

[2] (S//NF) Investigator Comment: The Endeavor Group, which provided legal advice to DERIPASKA on issues regarding his U.S. visa, asserted in its May 2009 Foreign Agents Registration Act ("FARA") filing of lobbying on his behalf that DERIPASKA was not supervised, owned, directed, controlled, financed, or subsidized by a foreign government, foreign political party or other foreign principal. [Exhibit 13, pp. 1-3] However, OFAC assesses that DERIPASKA has acted on behalf of senior Russian officials, such as President Vladimir Putin, as demonstrated by the information in this evidentiary memorandum.

[Exhibit 14, p. 1]

(U) [Exhibit 15, p. 2]

[Exhibit 15, pp. 2-3]

[Exhibit 16, p. 1]

3

TOP SECRET//



[Exhibit 23, pp. 1-2]

[Exhibit 18, p. 2]

[Exhibit 19, p. 2]

[Exhibit 20, p. 3]

*(U) DERIPASKA Operates in the Energy Sector of the Russian Federation Economy*

(U) According to **DERIPASKA's** web site, accessed on March 22, 2018, **DERIPASKA** is involved in several World Economic Forum projects including ones on "New Energy Architecture" and the "Interaction between the Power Industry and Society." As part of his work



[7] (U) [Exhibit 18, p. 2]
(S//NF) Investigator Comment: Gaz is actually a **DERIPASKA** business that manufactures commercial vehicles. [Exhibit 25, p. 2]
[9] (U) [Exhibit 19, p. 2]
[10] (U) [Exhibit 20, p. 2]
[11] (U) On July 29, 2014, pursuant to E.O. 13662, OFAC imposed sanctions against VTB BANK*, prohibiting U.S. persons from providing new financing and limiting their access to U.S. capital markets. [Exhibit 21, p. 1]

4

DERIPASKA_0009

-TOP SECRET//

on the APEC Business Advisory Council, **DERIPASKA** focuses on multiple issues including energy efficiency and energy security. At a February 2012 meeting of the Council, **DERIPASKA's** representative presented the North East Asian Region Electrical System Ties Initiative (NEAREST), whose goal is to improve ties between the power grids of Eastern Siberia, Northern and North Eastern China, Japan, and South Korea through the creation of a transnational power grid in Northeast Asia. [Exhibit 24, pp. 1 and 3]

(U) According to **DERIPASKA's** web site, as of January 31, 2018, **DERIPASKA's** key companies operate in multiple sectors of the economy, to include the energy sector. EuroSibEnergo is the largest private power company in Russia, and produces around 9 percent of Russia's total electricity generation. [Exhibit 25, pp. 1 and 5]

(U) According to a November 3, 2017 prospectus of an offering, En+ Group[12] was initially established to hold certain aluminum and alumina assets acquired by **DERIPASKA**. It eventually evolved to become "a leading international vertically integrated aluminum and power producer" with core assets located in Russia. All power assets owned by companies related to **DERIPASKA** were combined under EuroSibEnergo plc, a Cypriot intermediary holding subsidiary of EN+ Group. As of the date of the prospectus, EN+ Group[13] owned 100 percent of EuroSibEnergo plc which in turn owned 100 percent of JSC EuroSibEnergo in Russia. [Exhibit 26, pp. 7, 9, 20, and 25]  According to EuroSibEnergo's web site, as of February 12, 2018, EuroSibEnergo, a part of EN+ Group, is the largest independent power company in Russia, operating power plants across Russia, and one of the largest hydropower generation companies in the world. EuroSibEnergo produces around 9 percent of Russia's total electricity volume and is Siberia's largest power producer. [Exhibit 27, pp. 1 and 2]

(U) **Additional Information**

(S//NF) Pursuant to Section 241 of the Countering America's Adversaries Through Sanctions Act of 2017 (CAATSA), the U.S. Department of the Treasury submitted a report to Congress, dated January 29, 2018, that identifies senior foreign political figures and oligarchs in the Russian Federation.

[Exhibit 28, pp. 1, 2, and 6]

---

[12] (U) The prospectus states that after the offering is completed and an option in it is fully exercised, **DERIPASKA's** holding in EN+ Group would be 65.2% upon admission to the London Stock Exchange. [Exhibit 26, p. 4]

[13] (U) Investigator Comment: Although identified on page 9 of Exhibit 26 as EN+ Group Limited, OFAC assesses this to be EN+ Group plc based on its consistent usage throughout the exhibit while EN+ Group Limited is only used the single time.

-TOP SECRET//

DERIPASKA_0010

**TOP SECRET//**

(U) In a declaration filed with the Supreme Court of the State of New York County of New York on June 9, 2016, **DERIPASKA** stated that, "I have a diplomatic passport from Russia, and on occasion I have represented the Russian government in countries outside Russia." [Exhibit 17, p. 4]

(U) On October 28, 2008, the *Financial Times* reported that **DERIPASKA** had previously told the newspaper that he would give up his company RUSAL if the Russian government asked him to, noting, "I don't separate myself from the state. I have no other interests." [Exhibit 11, p. 5]

(U) On July 10, 2012, *The Telegraph* reported that an Uzbek businessman, Djalol Khaidarov, told U.S., Israeli, and Russian prosecutors that **DERIPASKA** was involved in bribing a governor in Siberia to secure the takeover of an aluminum plant. Khaidarov also claimed that **DERIPASKA** was a member of an organized crime group and ordered the murder of a businessman in 1995. [Exhibit 9, p. 1] The previous day, July 9, *The Times* reported that in testimony to a German court, Khaidarov[14], claimed **DERIPASKA** had links to a Russian organized crime group, stating that, "one could certainly say he [**DERIPASKA**] knew about the murders and operating methods [of the Russian mafia]." The judge in the case said that even though he implicated himself in criminality Khaidarov's testimony was credible, adding that "there were no indications of ostentatious grudge-settling." [Exhibit 10, pp. 1 and 2]

(U) *The Nation* reported on October 1, 2008 that **DERIPASKA** has been investigated for money-laundering in Germany as well as accused of threatening the lives of two rivals in the aluminum industry in the United States and illegally wiretapping an Israeli official. These along with other accusations of involvement in extortion and racketeering resulted in **DERIPASKA** being denied a visa to enter the United States, with only a brief lapse, since 1998. [Exhibit 22, pp. 6, 7, and 9]

---

[14] (U) Investigator Comment: Although spelled in this exhibit as "Dschalol Hajdarov," "Djalol Khaidarov" will be used throughout this memorandum for consistency.

**TOP SECRET//**

6

-TOP SECRET//⬛⬛⬛⬛⬛⬛⬛

## (U) LIST OF EXHIBITS

(U) Exhibit 1: Executive Order 13661 of March 16, 2014, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine," 79 Fed. Reg. 15535 (March 19, 2014). (U)

(U) Exhibit 2: Executive Order 13662 of March 20, 2014, "Blocking Property of Additional Persons Contributing to the Situation in Ukraine," 79 Fed. Reg. 16169 (March 24, 2014). (U)

(U) Exhibit 3: U.S. Department of the Treasury, "Determination Pursuant to Section 1(a)(i) of Executive Order 13662," July 16, 2014. (U//FOUO)

(U) Exhibit 4: *Bloomberg*, "Bloomberg Billionaires Index #179 Oleg Deripaska," available at www.bloomberg.com/billionaires/profiles/oleg-deripaska/, accessed January 31, 2018. (U)

(U) Exhibit 5: Web site of Oleg Deripaska, Family, available at www.deripaska.com/about/biography/, accessed January 31, 2018. (U)

(U) Exhibit 6: *Forbes*, Oleg Deripaska, available at www.forbes.com/profile/oleg-deripaska/, accessed January 31, 2018. (U)

(U) Exhibit 7: *The Guardian*, "Mega-Rich Homes Tour Puts Spotlight on London's Oligarchs," Luke Harding, February 4, 2016, available at www.the guardian.com/uk-news/2016/feb/04/mega-rich-homes-tour-london-oligarchs-russia-alexei-navalny-putin. (U)

(U) Exhibit 8: Google.com, 5 Belgrave Square London, available at www.google.com/maps/, accessed February 28, 2018. (U)

(U) Exhibit 9: *The Telegraph*, "Oligarch Linked to Politicians 'Ordered Murder of Banker,'" Sam Marsden, July 10, 2012, available at www.telegraph.co.uk/finance/financial-crime/9387913/Oligarch-linked-to-politicians-ordered-murder-of-banker.html. (U)

(U) Exhibit 10: *The Times*, "Billionaire 'With Mafia Links Spied on Rivals,'" Roger Boyes and Alex Spence, July 9, 2012, available at www.thetimes.co.uk/article/billionaire-with-mafia-links-spied-on-rivals-5bgt5k5brb6. (U)

(U) Exhibit 11: *Financial Times*, "Close to the Wind: Russia's Oligarchs," Catherine Belton, October 24, 2008, available at www.ft.com/content/d96aa8ac-a1f9-11dd-a32f-000077b07658. (U)

(U) Exhibit 12: OCCRP, "Russian Billionaire Linked to Trump, Manafort Has New Cyprus Passport," Sara Farolfi and Stelios Orphanides, March 5, 2018,

7

-TOP SECRET//⬛⬛⬛⬛⬛⬛⬛

DERIPASKA_0012

TOP SECRET//

available at: www.occrp.org/en/goldforvisas/russian-billionaire-linked-to-trump-manafort-has-new-cyprus-passport. (U)

(U) Exhibit 13:   U.S. Department of Justice, Foreign Agents Registration Act Filing – Endeavor Group, May 8, 2009. (U)

(U) Exhibit 14:

(U) Exhibit 15:                                                        (S//NF)

(U) Exhibit 16:

(U) Exhibit 17:   Declaration of Oleg Deripaska in Opposition to Gliklad's Motion for Summary Judgement and in Support of Deripaska's Cross Motion, *Alexander Gliklad v. Oleg Deripaska*, 652641/2015 (Supreme Court of the State of New York County of New York), filed on June 9, 2016. (U)

(U) Exhibit 18:                                                        (S//NF)

(U) Exhibit 19:                                                        (S//NF)

(U) Exhibit 20:                                                        (S//NF)

(U) Exhibit 21:   U.S. Department of the Treasury web site, Press Release, "Announcement of Additional Treasury Sanctions on Russian Financial Institutions and on a Defense Technology Entity," July 29, 2014, available at www.treasury. gov/press-center/press-releases/Pages/jl2590.aspx. (U)

(U) Exhibit 22:   *The Nation*, "McCain's Kremlin Ties," Mark Ames and Ari Berman, October 1, 2008, available at www.thenation.com/artticle/mccains-kremlin-ties/. (U)

(U) Exhibit 23:

(U) Exhibit 24:   Web site of Oleg Deripaska, Initiatives, available at www.deripaska. com/business/, accessed March 22, 2018. (U)

(U) Exhibit 25:   Web site of Oleg Deripaska, Business, available at www.deripaska. com/business/, accessed January 31, 2018. (U)

(U) Exhibit 26:   EN+ Group, "Prospectus," November 3, 2017, available at www.enplus. ru/content/dam/enplus/corporate/investors/regulatory-news/enplus-group-prospectus.pdf. (U)

(U) Exhibit 27:   Web site of EuroSibEnergo, www.eurosib.ru/en/, accessed February 12,

8

DERIPASKA_0013

TOP SECRET//

2018. (U)

(U) Exhibit 28:



(S//NF)

(U) Exhibit 29:    Complaint - Oleg V. Deripaska v. The Associated Press, 1:17-cv-00913, May 5, 2017 (DC). (U)

DERIPASKA_0014



UNCLASSIFIED//FOUO

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

## (U) EVIDENTIARY MEMORANDUM

(U) Case ID: UKRAINE-EO13662-16174

(U) MEMORANDUM FOR:    Andrea Gacki  AMG  3.5.2020
Director
Office of Foreign Assets Control

(U) THROUGH:    Gregory T. Gatjanis
Associate Director
Office of Global Targeting

Ripley Quinby
Acting Deputy Associate Director
Office of Global Targeting

Leila M. Baheri
Assistant Director
Global WMD, Mid-East Eurasia Division

Section Chief
Global WMD, Mid-East Eurasia Division

(U) FROM:    ▮▮▮▮
Sanctions Investigator
Global WMD, Mid-East Eurasia Division

(U) SUBJECT:    Recommendation to Deny **OLEG VLADIMIROVICH DERIPASKA**'s Petition Seeking Delisting Pursuant to Executive Order 13662.

## I.   (U) INTRODUCTION

(U) This memorandum recommends denial of **OLEG VLADIMIROVICH DERIPASKA's** (**DERIPASKA**) petition seeking removal of his designation pursuant to Section 1(a)(i) of Executive Order (E.O.) 13662 for operating in the energy sector of the Russian Federation Economy.

1

UNCLASSIFIED//FOUO

DERIPASKA_0158

UNCLASSIFIED//~~FOUO~~

## II.    (U) **BACKGROUND**

(U) On April 6, 2018, **DERIPASKA** was designated pursuant to Section 1(a)(ii)(C)(1) of E.O. 13661 for acting or purporting to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation. Also on April 6, 2018, **DERIPASKA** was designated pursuant to Section 1(a)(i) of E.O. 13662 for operating in the energy sector of the Russian Federation Economy. [Exhibit 25, p. 1]

(U) **DERIPASKA**'s name appears on the Specially Designated Nationals and Blocked Persons List ("SDN List") as follows:

> (U) DERIPASKA, Oleg Vladimirovich, Moscow, Russia; 64 Severnaya Street, Oktyabrsky, Khutor, Ust-Labinsky District, Krasnodar Territory 352332, Russia; 5 Belgrave Square, Belgravia, London SW1X 8PH, United Kingdom; DOB ████; POB Dzerzhinsk, Nizhny Novgorod Region, Russia; citizen Russia; alt citizen Cyprus; Gender Male (individual) [UKRAINE-EO13661] [UKRAINE-EO13662]. [Exhibit 25, p. 1]

(U) On March 15, 2019, **DERIPASKA** sued the Office of Foreign Assets Control (OFAC) in the U.S. District Court for the District of Columbia, challenging his designations pursuant to both E.O. 13661 and E.O. 13662 under the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment. *Deripaska v. Mnuchin*, No. 19-cv-727 (D.D.C.).

(U) On June 20, 2019, **DERIPASKA** amended his complaint to drop his claims relating to his designation pursuant to E.O. 13662. In his amended complaint, he noted that he would seek to challenge his E.O. 13662 designation through OFAC's administrative petition process. [Exhibit 19]

(U) On June 27, 2019, **DERIPASKA** submitted a petition for administrative reconsideration to OFAC, arguing that he did not meet the criteria for designation under E.O. 13662 and seeking rescission of his designation under E.O. 13662. [Exhibit 3]

(U) On November 13, 2019, OFAC sent **DERIPASKA** a questionnaire requesting additional information in order for OFAC to evaluate **DERIPASKA**'s delisting petition. [Exhibit 4] On January 6, 2020, **DERIPASKA**, through his counsel, responded to the questionnaire, and stated objections to four of the five questions without answering them. [Exhibit 5] On February 14, 2020, OFAC sent a follow up to the questionnaire to **DERIPASKA**, repeating three of the four unanswered questions and providing a modified version of the fourth question. [Exhibit 6] On February 21, 2020, **DERIPASKA**, through his counsel, responded to the follow up questionnaire, by reasserting his objections and refusing to answer the questions. [Exhibit 7]

(U) Having considered **DERIPASKA**'s petition, his responses to the questionnaires, and the evidence available to OFAC, OFAC not only finds **DERIPASKA**'s petition unpersuasive, but also finds that there is reason to believe that **DERIPASKA** continues to meet the criteria for designation set forth in section 1(a)(i) of E.O. 13662 because he continues to operate in the energy sector of the Russian Federation economy. Accordingly, **DERIPASKA**'s petition for

2

DERIPASKA_0159

UNCLASSIFIED//FOUO

reconsideration of his designation pursuant to E.O. 13662 should be denied and he should remain listed on OFAC's SDN List pursuant to E.O. 13662.

## III. (U) BASIS FOR DENIAL

(U) In his request for administrative reconsideration, **DERIPASKA** argued that he should be delisted pursuant to E.O. 13662 because: a) the basis of **DERIPASKA**'s designation under E.O. 13662 was both factually and legally insufficient; and b) there has been a change in circumstances. [Exhibit 3, pp. 8-12] OFAC has considered these arguments, but finds them unpersuasive, for the reasons below.

A. (U) OFAC has sufficient factual evidence to demonstrate that **DERIPASKA** operates in the energy sector of the Russian Federation economy.

(U) In his June 27, 2019 request for administrative reconsideration, **DERIPASKA** claims his designation pursuant to E.O. 13662 is factually insufficient because, he argues, his alleged participation in international conferences related to energy and his purported proposal for a region-wide energy initiative do not evidence his operating in the energy sector of the Russian Federation. [Exhibit 3, p. 8] Specifically, according to **DERIPASKA**, the following does not evidence his operating in the energy sector of the Russian Federation:

- (U) **DERIPASKA**'s involvement in World Economic Forum projects related to energy. [Exhibit 3, p. 8]
- (U) **DERIPASKA**'s focuses on multiple issue including energy efficiency and energy security in his position on the APEC Business Advisory council. [Exhibit 3, p. 9]
- (U) The presentation by a representative of **DERIPASKA** at the February 2012 meeting of the APEC Business Advisory Council proposing a regional initiative for the creation of a transnational power grid. [Exhibit 3, p. 9]

(U) According to Section 1(a) of E.O. 13662, all property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person (including any foreign branch) of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in: any person determined by the Secretary of the Treasury, in consultation with the Secretary of State: (i) to operate in such sectors of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State, such as financial services, energy, metals and mining, engineering, and defense and related materiel. [Exhibit 1, p. 2]

(U) On July 16, 2014, the Secretary of the Treasury, in consultation with the Secretary of State, determined that section 1(a) of E.O. 13662 shall apply to the energy sector of the Russian Federation Economy. [Exhibit 12, p. 4] On April 6, 2018, **DERIPASKA** was designated for operating in the energy sector of the Russian Federation economy. In E.O. 13662 and the Secretary of the Treasury's subsequent determination, neither the term "operating," nor the term "energy sector" are specifically defined.

3

UNCLASSIFIED//FOUO

UNCLASSIFIED//~~FOUO~~

(U) OFAC views **DERIPASKA's** involvement in World Economic Forum projects, including projects on "New Energy Architecture" and the "Interaction between the Power Industry and Society," [Exhibit 22, p. 1] as constituting operation in the energy sector of the Russian Federation due to the fact that these projects relate to energy and that **DERIPASKA** participated in these projects as part of his work in the En+ Group, which, as a Russian diversified power and metals group of companies, operates in the Russian federation economy.

(U) OFAC also considers **DERIPASKA's** focus on energy efficiency and energy security on the APEC Business Advisory Council, and the presentation of **DERIPASKA's** representative on the North East Asian Region Electrical System Ties Initiative (NEAREST)—whose goal is to improve the power grids of Eastern Siberia, Northern and North Eastern China, Japan, and South Korea through the creation of a transnational power grid in Northeast Asia—at a meeting of the APEC Business Advisory Council in 2012, to be activities that constitute operation in the energy sector of the Russian Federation economy due to the fact that this activity relates to the energy sector and that **DERIPASKA** participated in these organizations as the appointee of the Russian Federation government and to represent a business sector of the Russian Federation economy. For example, according to a November 10, 2017 post on the website of the Russian Federation in the Kingdom of Thailand, the Russian Federation was represented on the APEC Business Advisory Council by **DERIPASKA** and two other individuals. The website states that the representatives were appointed by the respective head of state and government of each APEC country. [Exhibit 20, p. 1] According to the website of APEC Business Advisory Council, APEC members are appointed by their respective economic leader and represent a broad range of business sectors including micro, small, and medium enterprises. [Exhibit 21, p. 1][1]

(U) Finally, even in the absence of this evidence, **DERIPASKA** nevertheless continues to operate in the energy sector of the Russian Federation economy through his ownership stakes in En+ Group PLC (En+) and JSC Eurosibenergo (ESE), as discussed below.

  B. (U) The term "energy sector" as used in E.O. 13662 is broad enough to include power generation.

(U) Second, in his request for administrative reconsideration, **DERIPASKA** claims that electricity producers and suppliers are not within scope of the term "energy sector" in the context of U.S. sanctions. [Exhibit 3, p. 9] Specifically, according to **DERIPASKA**, an "energy" sector of a foreign economy cannot include private electricity production or power generation for the following reasons:

---

[1] According to **DERIPASKA's** January 6, 2020 response to OFAC's November 13, 2019 questionnaire, **DERIPASKA** has not participated in the World Economic Forum in either 2018 or 2019. Furthermore, while **DERIPASKA** remained the Russian economy's representative to the APEC Business Advisory Council, he did not intend to participate in the next event of the APEC Business Advisory council, scheduled for February 2020. **DERIPASKA** would provide a delegate to the event, but his delegate would not participate in panels related to the energy sector. Finally, **DERIPASKA** states that he has nothing further to do with the North East Asian Region Electrical System Ties Initiative. [Exhibit 5, p. 6]

UNCLASSIFIED//FOUO

- (U) OFAC has not previously defined or interpreted sanctionable activity involving an "an energy sector" of a foreign economy to include private electricity production or supply, including in the Russia/Ukraine and North Korea contexts. [Exhibit 3, pp. 9, 11]
- (U) While Congress has not defined the "energy sector of the Russian Federation," it nevertheless has intended those U.S. sanctions to be limited to oil-related activity and not to include activities occurring in the power sector. [Exhibit 3, p. 10]
- (U) OFAC has provided its interpretation of "energy sector" in the Iran sanctions program as recently as August 2018, when it reiterated its interpretation that "energy sector" sanctions are limited to activities involving oil and gas. [Exhibit 3, p. 11]

(U) **DERIPASKA**'s designation at issue in this petition was made pursuant to the authority of E.O. 13662. The term "energy sector" was not specifically defined within E.O. 13662 or the Secretary of the Treasury's determination, and the nature of the activity that would qualify **DERIPASKA** for operating in the energy sector is not limited to oil and gas activity as **DERIPASKA** suggests. Further, OFAC has never limited its interpretation of the term "energy sector" in the Russia/Ukraine context.

(U) Although **DERIPASKA** points to use of the term "energy sector" in other OFAC-administered programs, each OFAC program is different, and an interpretation in one program is not determinative of an interpretation in other programs. Indeed, the Ukraine Related Sanctions Regulations, which implement E.O. 13662, among others, explicitly states that "[d]iffering foreign policy and national security circumstances may result in differing interpretations of similar language among the parts of this chapter." 31 C.F.R. 598.101. In Iran, for example, OFAC's interpretation of the term "energy sector" is informed by a complex framework of statutes and implementing executive orders. And in no other program—including Russia/Ukraine or North Korea—has OFAC defined the term "energy sector" to exclude power generation or electricity production, both of which can be encompassed by the term "energy sector." For example, OFAC has designated at least one other individual for operating in the energy sector of the Russian Federation economy for power generation activities.[2]

(U) Finally, the petitioner's argument relating to congressional intent of the scope of the term Russian energy sector as used in the Countering America's Adversaries Through Sanctions Act of 2017 (CAATSA) is similarly unpersuasive, as **DERIPASKA** is designated under E.O. 13662, an Executive Order issued by the President under the authority of the International Emergency Economic Powers Act (IEEPA). IEEPA authorizes the President to impose economic sanctions to address unusual or extraordinary threats to the U.S. economy, national security, or foreign policy. E.O. 13662 was issued by the President pursuant to IEEPA in 2014 to address and expand the scope of the national emergency declared in prior executive orders relating to Russian aggression towards Ukraine, including its annexation of Crimea. The Secretary of the Treasury also determined that Section 1(a)(i) of E.O. 13662 applied to the energy sector" in 2014. Neither E.O. 13662, the Secretary's determination, or the implementing Ukraine Related Sanctions

---

[2] On April 6, 2018, Viktor Vekselberg was designated for operating in the energy sector of the Russian Federation economy pursuant to E.O. 13662. As noted in the press release accompanying the action, Vekselberg was the founder and Chairman of the Board of Directors of the Renova Group. [Exhibit 25, p.2] [Exhibit 26, pp. 3-4]

5

UNCLASSIFIED // FOUO

Regulations, 31 C.F.R. Part 589 define "energy sector" to be so limited as to only include oil and gas activity. And CAATSA was not passed until 2017, three years after E.O. 13662 was issued. OFAC's interpretation of the term "energy sector" to include power generation or electricity production is reasonable, and furthers the objectives of E.O. 13662 in addressing the national emergency related to Russia's aggression towards Ukraine.[3]

C. (U) Although **DERIPASKA**'s level of ownership in ESE via En+ has changed, he still owns a sufficiently significant stake such that circumstances have not sufficiently changed to warrant removal.

(U) Third, **DERIPASKA** claims that since his designation there has been a change in circumstances that negates the basis for his designation under E.O. 13662. [Exhibit 3, pp. 12-13] According to **DERIPASKA**, OFAC designated **DERIPASKA** in part due to the allegation that **DERIPASKA** operated in the energy sector of the Russian Federation through his past ownership and control of ESE. However, the Terms of Removal (TOR)[4] agreement negotiated among OFAC, En+, UC Rusal PLC (Rusal), and ESE related to the delisting of those three entities terminated **DERIPASKA**'s majority ownership in and control over En+ and expressly premised ESE's removal from the SDN List on its continued independence from **DERIPASKA**'s control. According to **DERIPASKA**, because he no longer exercises control over ESE, OFAC no longer has a lawful basis under which to maintain **DERIPASKA**'s designation under E.O.13662. According to **DERIPASKA**, the central basis for his designation under that authority—*i.e.*, ESE's involvement in the production and supply of electricity in the Russian Federation—has been negated by the cessation of his control over ESE. [Exhibit 3, pp. 12-13]

(U) While **DERIPASKA** has terminated his majority ownership and control over En+, he still maintains a 44.95 percent ownership interest in En+, which in turn, maintains a 100 percent ownership interest in ESE. Given that En+ and ESE operate in the energy sector of the Russian Federation economy, OFAC views **DERIPASKA**'s continued ownership interest in En+ and ESE as evidence of his continued operation in the energy sector of the Russian Federation economy.

D. (U) **DERIPASKA** continues to operate in the energy sector of the Russian Federation economy through his ownership stakes of ESE and En+.

   a. (U) **DERIPASKA** owns 44.95 percent of En+, votes 35 percent of En+ shares, and appoints four of 12 board members to the En+ board of directors.

(U) According to En+'s "Notes to the separate interim condensed financial information for the nine months ended 30 September 2019," as of September 30, 2019, **DERIPASKA** beneficially

---

[3] **DERIPASKA** refused to answer questions posed by OFAC during the delisting process in part due to his objection that his power generation holdings were not relevant to the question of whether he operates in the energy sector. [Exhibits 5, 7] For the reasons discussed above, the term "energy sector" is not explicitly defined in the Russia/Ukraine context, and OFAC has interpreted it to include power generation and electricity production.

[4] The Terms of Removal (TOR) is a December 19, 2018 agreement among En+ Group PLC, US Rusal, and OFAC on the terms of removal of En+ Group PLC, UC Rusal PLC, and JSC Eurosibenergo from the SDN List, conditioned upon agreement and adherence by the above-mentioned parties to certain conditions. [Exhibit 3, Annex B]

controls and exercises voting rights in respect of 35 percent of the voting shares of the company and cannot exceed his shareholding over 44.95 percent of the shares of the company. [Exhibit 2, p. 11]

(U) According to **DERIPASKA**'s February 21, 2020 'Response to OFAC's February 14, 2020 questionnaire,' **DERIPASKA** continues to act in a manner consistent with the TOR (which called for **DERIPASKA** to reduce his shareholding in En+ from approximately 70 percent to 44.95 percent, to vote no more than 35 percent of En+ shares, and to appoint no more than four of 12 board members to the En+ board of directors [Exhibit 3, Annex B, pp. 1-2]). [Exhibit 7, p. 4] **DERIPASKA** also confirmed in his February 21, 2020 response that he continues to hold a 44.95 percent stake in En+, continues to vote 35 percent of his En+ shares, and appoint four of 12 board members to the En+ board of directors, as specified in the TOR. [Exhibit 7, pp. 3 - 4]

(U) According to a January 28, 2019 TASS article, **DERIPASKA** has reduced his stake in En+ Group to 44.95 percent in accordance with U.S. requirements as part of efforts to remove sanctions from En+, the company said in a statement. **DERIPASKA**'s stake was earlier estimated at approximately 70 percent. [Exhibit 18, p. 2]

> b. **DERIPASKA** continues to operate in the energy sector of the Russian Federation economy through his ownership stake in ESE, held through En+.

(U) According to an Orbis[5] report, as of December 2017, En+ is the controlling shareholder of ESE, with an ownership stake of 100 percent. [Exhibit 14, p. 8]

(U) According to a November 3, 2017 prospectus of an offering by En+ and Basic Element, an En+ shareholder, En+ owned 100 percent of Eurosibenergo plc, which in turn owned 100 percent of ESE. [Exhibit 24, pp. 1, 9] According to En+'s "Notes to the separate interim condensed financial information for the nine months ended 30 September 2019," uploaded to the En+ website on November 14, 2019, En+ Holding Ltd is the new name of Eurosibenergo plc. [Exhibit 2, pp. 1, 14]

(U) According to the En+ 2018 Sustainability Report, uploaded to the En+ website on September 18, 2019, En+'s Power Segment is represented by ESE. [Exhibit 15, pp. 1, 27] Additionally, according to the En+ 2018 Sustainability Report, ESE is a 100 percent owned subsidiary of En+, managing its power assets. [Exhibit 15, p. 29]

(U) According to ESE's website "About Us" page, ESE is a part of the Russian industrial group En+[6]. [Exhibit 10, p. 1] The website states that ESE is a major private Russian power company, and one of the country's top green energy leaders. The website states that ESE manages power plants with a total installed capacity of 19.7 GW and produces eight percent of all of Russia's electricity. According to the website, 15 GW of ESE's capacity is attributed to large Russian hydro power plants; the website also states that in December 2015, ESE commissioned the

---

[5] (U) According to its website, Orbis is a resource for company data that has information on more than 360 million companies across the globe. [Exhibit 23, p.1]

[6] (U) OFAC assesses that the "industrial group En+" is the same as En+ Group PLC because according to Orbis, En+ Group PLC is the global ultimate owner of JSC Eurosibenergo. [Exhibit 14, p. 1]

UNCLASSIFIED//~~FOUO~~

Abakan Solar Power Plant in the Republic of Khakassia. Additionally, the website identifies ESE as possessing the most extensive experience in Russia in private energy assets management. [Exhibit 10, pp. 1-2]

> c. (U) **DERIPASKA** continues to operate in the energy sector of the Russian Federation economy through his ownership stake in En+.

(U) According to **DERIPASKA**'s February 21, 2020 'Response to OFAC's February 14, 2020 questionnaire', En+ is an electric utility company. [Exhibit 7, p. 3]

(U) According to En+'s homepage, En+ is engaged in three areas: Low Carbon Aluminum, Renewable Energy, and Sustainable Growth. [Exhibit 16, p. 1] According to the En+ website associated with the "Renewable Energy" area, the power segment of En+ is one of the largest independent power companies in Russia in terms of installed power capacity and the largest independent hydropower generator globally. The website also states that En+'s power generation assets are located in the east Siberian and Volga regions, and the company is engaged in all major areas of the Russian power industry: electricity and heat generation; electricity, capacity, and heat sales; heat distribution; retail energy trading and supply; engineering services; and electricity distribution and transmission. [Exhibit 17, p. 1]

(U) According to a November 8, 2019 article from the World Renewable Energy Association (WoREA)[7], citing a report done by Energy Intelligence that identified the world's most efficient power producers, the power segment of En+, described as a leading internationally vertically integrated aluminum and power producer, achieved the highest position of all Russian renewable energy companies in Energy Intelligence's 2019 Green Utilities report. [Exhibit 8, pp. 1-2]

(U) According to a November 23, 2019 Bloomberg article, Bitriver is the largest data center in the former Soviet Union and has clients from all over the world, including the United States, Japan, and China, most of whom mine bitcoins. The company rents a building near the Bratsk aluminum plant. The world's single largest aluminum smelter was built by the USSR in the 1960s along with the nearby hydropower plant as energy is the largest cost in aluminum smelting. Billionaire **DERIPASKA**'s team came up with the idea of building the data center in Bratsk about five years prior to the article's publication. According to the article, En+ and its unit Rusal own the Bratsk hydropower (and aluminum) plants, and En+ supplies up to 100 megawatts of power to Bitriver per year as a way to diversify its client base and sell excess energy. [Exhibit 11, pp. 1–2]

(U//~~FOUO~~)



[Exhibit 13, p. 22]

---

[7] (U) According to its website, WoREA is a global trade association for the renewables industry. [Exhibit 9, p. 1]
[8] (U//~~FOUO~~) The Deloitte report covered the period April 6, 2018 to March 18, 2019. [Exhibit 13, p. 16].

8

UNCLASSIFIED//FOUO

[Exhibit 13, p .22]
[Exhibit 13, p. 31]

9

DERIPASKA_0166

UNCLASSIFIED//~~FOUO~~

## (U) LIST OF EXHIBITS

(U) Exhibit 1:     Executive Order 13662 of March 20, 2014, "Blocking Property of
                   Additional Persons Contributing to the Situation in Ukraine," 79 Fed. Reg.
                   16169 (March 24, 2014). (U)

(U) Exhibit 2:     Website of En+, "Separate interim condensed financial information for the
                   nine months ended 30 September 2019," uploaded on November 14, 2019
                   available at https://www.enplusgroup.com/en.investors/results-and-
                   disclosure/. (U)

(U) Exhibit 3:     Ferrari & Associates, "Request for Administrative Reconsideration," June
                   27, 2019. (U)

(U) Exhibit 4:     Office of Foreign Assets Control, "Questionnaire," November 13, 2019.
                   (U)

(U) Exhibit 5:     Ferrari & Associates, "Response to OFAC's November 13, 2019
                   Questionnaire," January 5, 2020 (sent January 6, 2020). (U)

(U) Exhibit 6:     Office of Foreign Assets Control, "Follow Up Questionnaire", February
                   14, 2020. (U)

(U) Exhibit 7:     Ferrari & Associates, "Response to OFAC's February 14, 2020
                   Questionnaire," February 21, 2020. (U)

(U) Exhibit 8:     World of Renewables Website, "En+ Group is Highest Ranked Russian
                   Renewable Energy Company in 2019 Green Utilities Global Report,"
                   November 8, 2019, available at "https://worldof renewables.com/en-
                   group-is-highest-ranked-russian-renewable-energy-company-in-2019-
                   green-utilities-global-report/, accessed on February 24, 2020. (U)

(U) Exhibit 9:     World of Renewables Website, "About Us," available at https://worldof
                   renewables.com/about-us/, accessed on February 24, 2020. (U)

(U) Exhibit 10:    Eurosibenergo Website, "About Eurosibenergo," available at
                   http://pomplo.ru/en/about/, accessed on February 18, 2020. (U)

(U) Exhibit 11:    Bloomberg, "Russia's Largest Bitcoin Mine Turns Water into Cash,"
                   November 23, 2019, available at
                   https://www.bloomberg.com/news/features/2019-11-24/seo-inside-russia-
                   s-largest-bitcoin-mine, accessed on February 24, 2020. (U)

(U) Exhibit 12:    "Sanctions Actions Pursuant to Executive Orders 13660, 13661 and
                   13662," 79 Fed. Reg.63021 (October 21, 2014). (U)

10

DERIPASKA_0167

UNCLASSIFIED//FOUO

| (U) Exhibit 13: | Deloitte, "En+ Group plc: Report of Actual Findings," June 3, 2019. (U//FOUO) |
|---|---|
| (U) Exhibit 14: | Orbis, " JSC Eurosibenergo," December 2017, accessed on February 21, 2020. (U) |
| (U) Exhibit 15: | En+ Group website, " En+ Group Sustainability Report 2018," September 18, 2019, available at https://www.enplusgroup.com/en/investors /results-and-disclosure/, accessed on February 25, 2020. (U) |
| (U) Exhibit 16: | En+ Group website, available at https://www.enplusgroup.com/en/investors /res, accessed on February 18, 2020. (U) |
| (U) Exhibit 17: | En+ Group website, "Power Segment," available at https://www.enplusgroup.com/en/explore-enplus/power-segment/, accessed on February 18, 2020. (U) |
| (U) Exhibit 18: | TASS, "Deripaska reduces stake in En+ to 44.95%," January 28, 2019, available at https://tass.com/economy/1042031, accessed on February 26, 2020. (U) |
| (U) Exhibit 19: | *Deripaska v. Mnuchin*, No. 19-cv-727, United States District Court for the District of Columbia, "Amended Complaint," ECF No. 7, filed June 20, 2019. (U) |
| (U) Exhibit 20: | Embassy of the Russian Federation in the Kingdom of Thailand, "Meeting with members of APEC Business Advisory Council," November 10, 2017, available at https://thailand.mid.ru/en/key-issues/3286-meeting-with-members-of-apec-business-advisory-council, accessed on February 28, 2020. (U) |
| (U) Exhibit 21: | APEC, "APEC Business Advisory Council," available at https://www.apec.org/Groups/Other-Groups/APEC-Business-Advisory-Council, accessed on February 28, 2020. (U) |
| (U) Exhibit 22: | Website of Oleg Deripaska, Initiatives, available at www.deripaska.com/business, accessed on March 22, 2018. (U) |
| (U) Exhibit 23: | Website of Orbis, Overview, available at https://www.bvdinfo.com/en-gb/our-products/data/international/orbis, accessed on March 1, 2020. (U) |
| (U) Exhibit 24: | Excerpts of En+ Group, "Prospectus," November 3, 2017, available at www.enplus.ru/content/dam/enplus/corporate/investors/regulatory-news/enplus-group-prospectus.pdf. (U) |

11

DERIPASKA_0168

UNCLASSIFIED//~~FOUO~~

(U) Exhibit 25:    Notice of OFAC Sanctions Actions, 83 Fed. Reg. 19138 (May 1, 2018). (U)

(U) Exhibit 26:    U.S. Department of the Treasury Press Release, "Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity, April 6, 2018, available at https://home.treasury.gov/news/press-releases/sm0338. (U)

12

DERIPASKA_0169

# U.S. DEPARTMENT OF THE TREASURY

## Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity

April 6, 2018

WASHINGTON – The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC), in consultation with the Department of State, today designated seven Russian oligarchs and 12 companies they own or control, 17 senior Russian government officials, and a state-owned Russian weapons trading company and its subsidiary, a Russian bank.

"The Russian government operates for the disproportionate benefit of oligarchs and government elites," said Treasury Secretary Steven T. Mnuchin. "The Russian government engages in a range of malign activity around the globe, including continuing to occupy Crimea and instigate violence in eastern Ukraine, supplying the Assad regime with material and weaponry as they bomb their own civilians, attempting to subvert Western democracies, and malicious cyber activities. Russian oligarchs and elites who profit from this corrupt system will no longer be insulated from the consequences of their government's destabilizing activities."

Today's actions are pursuant to authority provided under Executive Order (E.O.) 13661 and E.O. 13662, authorities codified by the Countering America's Adversaries Through Sanctions Act (CAATSA), as well as E.O. 13582. These actions follow the Department of the Treasury's issuance of the CAATSA Section 241 report in late January 2018. In the Section 241 report, Treasury identified senior Russian government officials and oligarchs. Today's action targets a number of the individuals listed in the Section 241 report, including those who benefit from the Putin regime and play a key role in advancing Russia's malign activities.

DERIPASKA_0413

Concurrent with this action, OFAC is issuing two general licenses to minimize immediate disruptions to U.S. persons, partners, and allies. For details, see General Licenses General Licenses 12    and General Licenses 13    , as well as related FAQs.

All assets subject to U.S. jurisdiction of the designated individuals and entities, and of any other entities blocked by operation of law as a result of their ownership by a sanctioned party, are frozen, and U.S. persons are generally prohibited from dealings with them. Additionally, non-U.S. persons could face sanctions for knowingly facilitating significant transactions for or on behalf of the individuals or entities blocked today.

## DESIGNATED RUSSIAN OLIGARCHS

Vladimir Bogdanov is being designated for operating in the energy sector of the Russian Federation economy. Bogdanov is the Director General and Vice Chairman of the Board of Directors of Surgutneftegaz, a vertically integrated oil company operating in Russia. OFAC imposed sectoral sanctions on Surgutneftegaz pursuant to Directive 4 issued under E.O. 13662 in September 2014.

Oleg Deripaska is being designated pursuant to E.O. 13661 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, as well as pursuant to E.O. 13662 for operating in the energy sector of the Russian Federation economy. Deripaska has said that he does not separate himself from the Russian state. He has also acknowledged possessing a Russian diplomatic passport, and claims to have represented the Russian government in other countries. Deripaska has been investigated for money laundering, and has been accused of threatening the lives of business rivals, illegally wiretapping a government official, and taking part in extortion and racketeering. There are also allegations that Deripaska bribed a government official, ordered the murder of a businessman, and had links to a Russian organized crime group.

Suleiman Kerimov is being designated for being an official of the Government of the Russian Federation. Kerimov is a member of the Russian Federation Council. On November 20, 2017, Kerimov was detained in France and held for two days. He is

DERIPASKA_0414

alleged to have brought hundreds of millions of euros into France – transporting as much as 20 million euros at a time in suitcases, in addition to conducting more conventional funds transfers – without reporting the money to French tax authorities. Kerimov allegedly launders the funds through the purchase of villas. Kerimov was also accused of failing to pay 400 million euros in taxes related to villas.

Igor Rotenberg is being designated for operating in the energy sector of the Russian Federation economy. Rotenberg acquired significant assets from his father, Arkady Rotenberg, after OFAC designated the latter in March 2014. Specifically Arkady Rotenberg sold Igor Rotenberg 79 percent of the Russian oil and gas drilling company Gazprom Burenie. Igor Rotenberg's uncle, Boris Rotenberg, owns 16 percent of the company. Like his brother Arkady Rotenberg, Boris Rotenberg was designated in March 2014.

Kirill Shamalov is being designated for operating in the energy sector of the Russian Federation economy. Shamalov married Putin's daughter Katerina Tikhonova in February 2013 and his fortunes drastically improved following the marriage; within 18 months, he acquired a large portion of shares of Sibur, a Russia-based company involved in oil and gas exploration, production, processing, and refining. A year later, he was able to borrow more than one $1 billion through a loan from Gazprombank, a state-owned entity subject to sectoral sanctions pursuant to E.O. 13662. That same year, long-time Putin associate Gennady Timchenko, who is himself designated pursuant to E.O. 13661, sold an additional 17 percent of Sibur's shares to Shamalov. Shortly thereafter, Kirill Shamalov joined the ranks of the billionaire elite around Putin.

Andrei Skoch is being designated for being an official of the Government of the Russian Federation. Skoch is a deputy of the Russian Federation's State Duma. Skoch has longstanding ties to Russian organized criminal groups, including time spent leading one such enterprise.

Viktor Vekselberg is being designated for operating in the energy sector of the Russian Federation economy. Vekselberg is the founder and Chairman of the Board of Directors of the Renova Group. The Renova Group is comprised of asset management companies and investment funds that own and manage assets in several sectors of

the Russian economy, including energy. In 2016, Russian prosecutors raided Renova's offices and arrested two associates of Vekselberg, including the company's chief managing director and another top executive, for bribing officials connected to a power generation project in Russia.

## DESIGNATED OLIGARCH-OWNED COMPANIES

In addition to sanctioning the individuals listed above, OFAC today designated 12 companies that constitute some of the most prominent among the entities that are owned or controlled by the individuals designated today. This list of 12 companies owned or controlled by the sanctioned oligarchs should not be viewed as exhaustive, and the regulated community remains responsible for compliance with OFAC's 50 percent rule.

B-Finance Ltd., based in the British Virgin Islands, is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska.

Basic Element Limited is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska. Basic Element Limited is based in Jersey and is the private investment and management company for Deripaska's various business interests.

EN+ Group is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska, B-Finance Ltd., and Basic Element Limited. EN+ Group is located in Jersey and is a leading international vertically integrated aluminum and power producer.

EuroSibEnergo is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska and EN+ Group. EuroSibEnergo is one of the largest independent power companies in Russia, operating power plants across Russia and producing around nine percent of Russia's total electricity.

United Company RUSAL PLC is being designated for being owned or controlled by, directly or indirectly, EN+ Group. United Company RUSAL PLC is based in Jersey and is one of the world's largest aluminum producers, responsible for seven percent of global aluminum production.

DERIPASKA_0416

Exhibit 26

Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide ...   Page 5 of 8

Russian Machines is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska and Basic Element Limited. Russian Machines was established to manage the machinery assets of Basic Element Limited.

GAZ Group is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska and Russian Machines. GAZ Group is Russia's leading manufacturer of commercial vehicles.

Agroholding Kuban, located in Russia, is being designated for being owned or controlled by, directly or indirectly, Oleg Deripaska and Basic Element Limited.

Gazprom Burenie, OOO is being designated for being owned or controlled by Igor Rotenberg. Gazprom Burenie, OOO provides oil and gas exploration services in Russia.

NPV Engineering Open Joint Stock Company is being designated for being owned or controlled by Igor Rotenberg. NPV Engineering Open Joint Stock Company provides management and consulting services in Russia.

Ladoga Menedzhment, OOO is being designated for being owned or controlled by Kirill Shamalov. Ladoga Menedzhment, OOO is located in Russia and engaged in deposit banking.

Renova Group is being designated for being owned or controlled by Viktor Vekselberg. Renova Group, based in Russia, is comprised of investment funds and management companies operating in the energy sector, among others, in Russia's economy.

## DESIGNATED RUSSIAN STATE-OWNED FIRMS

Russia has contributed to the instability of the Government of Syria through the sales and transfer of Russian-origin military equipment in support of Assad's regime, enabling Assad to continue carrying out attacks against Syrian citizens. These attacks have included chemical weapons attacks, which claimed the lives of hundreds of Syrian citizens.

Rosoboroneksport is a state-owned Russian weapons trading company with longstanding and ongoing ties to the Government of Syria, with billions of dollars' worth of weapons sales over more than a decade. Rosoboroneksport is being designated under E.O. 13582 for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the Government of Syria.

The Russian Financial Corporation Bank (RFC Bank) is being designated for being owned by Rosoboroneksport. RFC Bank incorporated in Moscow, Russia and its operations include deposit banking activities.

## DESIGNATED RUSSIAN GOVERNMENT OFFICIALS

Andrey Akimov is the Chairman of the Management Board of state-owned Gazprombank. Akimov is being designated pursuant E.O. 13661 for being an official of the Government of the Russian Federation.

Mikhail Fradkov is the President of the Russian Institute for Strategic Studies (RISS), a major research and analytical center established by the President of the Russian Federation, which provides information support to the Presidential Administration, Federation Council, State Duma, and Security Council. Fradkov is being designated pursuant E.O. 13661 for being an official of the Government of the Russian Federation.

Sergey Fursenko is a member of the board of directors of Gazprom Neft, a subsidiary of state-owned Gazprom. Fursenko is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Oleg Govorun is the Head of the Presidential Directorate for Social and Economic Cooperation with the Commonwealth of Independent States Member Countries. Govorun is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Alexey Dyumin is the Governor of the Tula region of Russia. He previously headed the Special Operations Forces, which played a key role in Russia's purported annexation of Crimea. Dyumin is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

DERIPASKA_0418

Vladimir Kolokoltsev is the Minister of Internal Affairs and General Police of the Russian Federation. Kolokoltsev is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Konstantin Kosachev is the Chairperson of the Council of the Federation Committee on Foreign Affairs. Kosachev is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Andrey Kostin is the President, Chairman of the Management Board, and Member of the Supervisory Council of state-owned VTB Bank. Kostin is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Alexey Miller is the Chairman of the Management Committee and Deputy Chairman of the Board of Directors of state-owned company Gazprom. Miller is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Nikolai Patrushev is Secretary of the Russian Federation Security Council. Patrushev is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Vladislav Reznik is a member of the Russian State Duma. Reznik is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Evgeniy Shkolov is an Aide to the President of the Russian Federation. Shkolov is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Alexander Torshin is the State Secretary – Deputy Governor of the Central Bank of the Russian Federation. Torshin is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Vladimir Ustinov is the Plenipotentiary Envoy to Russia's Southern Federal District. Ustinov is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Timur Valiulin is the head of the General Administration for Combatting Extremism within Russia's Ministry of Interior. Valiulin is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Alexander Zharov is the head of Roskomnadzor (the Federal Service for the Supervision of Communications, Information Technology, and Mass Media). Zharov is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Viktor Zolotov is the Director of the Federal Service of National Guard Troops and Commander of the National Guard Troops of the Russian Federation. Zolotov is being designated pursuant to E.O. 13661 for being an official of the Government of the Russian Federation.

Additional information on the individuals and entities listed today.

####

DERIPASKA_0420

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OLEG DERIPASKA,

    Plaintiff,

  v.

STEVEN T. MNUCHIN, Secretary of the
UNITED STATES DEPARTMENT OF
THE TREASURY, ANDREA M. GACKI,
DIRECTOR OF THE OFFICE OF
FOREIGN ASSESTS CONTROL,

    Defendants.

Civil Action No. 19-cv-00727 (APM)

## [PROPOSED] ORDER

Upon due consideration of the Plaintiff's Motion to Supplement the Administrative

Record and the submissions of the parties, it is hereby DENIED.  The parties are directed to

complete the submission of the Joint Appendix in one week.

**SO ORDERED.**

Date: _____     _____

              HON. AMIT P. MEHTA
              United States District Judge