# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OLEG DERIPASKA | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 19-0727 (APM) |
| v. | ) | |
| | ) | |
| STEVEN T. MNUCHIN, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   Supplementation of the Administrative Record with Documents Related to the Terms of Removal Agreement Is Appropriate Because the Documents Were Before the Decisionmaker and Were Relevant to OFAC's Decision . . . . . . . . . . . . . . . 4

II.   Supplementation of the Administrative Record with Documents Related to Viktor Vekselberg's Designation Is Appropriate Because the Documents Were Before the Decisionmaker and Were Relevant to OFAC's Decision . . . . . . . . . . . . . . . . . . 11

III.   Deripaska Has Made a Showing that the Administrative Record May Not Be Complete and Limited Discovery is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7 (D.D.C. 2001) . . . . . 18, 19, 20

*Anglers Conservation Network v. Pritzker*,

    *Civ. A. No. 13-1761 (GK), 2014 WL 12776056, at \*2 (D.D.C. Apr. 28, 2014)* . . . . . 16, 17

*Bahman Grp. v. Gacki*, No. 19-cv-2022 (RDM) (D.D.C. July 29, 2020) . . . . . . . . . . . . . . . . . . 1

*Bar MK Ranches v. Yuetter*, 994 F.2d 735 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103 (D.D.C. 2014) . . . . . . 6, 13

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . . . . . 1

*City of Dania Beach v. FAA*, 628 F.3d 581 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 14

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8 (D.D.C 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*IMS, P.C. v. Alvarez*, 129 F.3d 618 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . 14

*Marcum v. Salazar*, 751 F. Supp. 2d 74 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 10, 13

*Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,

    448 F. Supp. 2d 1 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287 (D.C. Cir. 1984) . . . . . . . . . . . . . . 18

*The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*,

    667 F. Supp. 2d 111 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Tindal v. McHugh*, 945 F. Supp. 2d 111 (D.D.C. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . 14, 15

*Wilmina Shipping AS v. DHS*,

    Civ. A. No. 11-2181 (ABJ), 2013 WL 12340838 (D.D.C. Sept. 4, 2013) . . . . . . . . . . 8, 16

**STATUTES**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## INTRODUCTION

In order for judicial review of OFAC's actions to be effective, the Court must have before it all materials and information that were before OFAC at the time it made the decisions under review. *See Bahman Grp. v. Gacki*, No. 19-cv-2022 (RDM), at *3 (D.D.C. July 29, 2020) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). The exclusion of these materials or information from the administrative record—and from the Court's purview— threatens to "frustrate judicial review" by allowing OFAC to exclude information that may be adverse to its ultimate decisions. *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010). This risks nullifying the protections of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, afforded to persons aggrieved by agency action to seek judicial review and redress for agency wrongs.

In the instant matter, Plaintiff Oleg Deripaska first requests that this Court order Defendants to supplement the administrative record with two sets of documents. First, he requests that the administrative record be supplemented with materials and information relating to the December 19, 2018 Terms of Removal Agreement ("TOR") entered between the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and En+ Group plc ("En+"), JC EuroSibEnergo ("ESE"), and UC RUSAL plc ("Rusal"). These include what Defendants refer to as "implementation records" (or compliance reports) mandated by the TOR. Second, Deripaska requests supplementation of the administrative record with the evidentiary memorandum and any related documents with respect to OFAC's decision to designate Viktor Vekselberg pursuant to Executive Order ("E.O.") 13662 for operating in Russia's energy sector.

These documents were before the relevant decisionmaker and were clearly relevant to OFAC's decision to deny Deripaska's delisting petition. Further, given that OFAC makes

representations based on the content of these documents in the evidentiary memorandum prepared in support of that denial action, these documents were clearly "considered," directly or indirectly, by OFAC when rendering its decision on Deripaska's delisting petition. For these reasons, supplementation of the administrative record with the requested records is not only appropriate, but is also necessary to ensure effective judicial review of OFAC's actions.

Indeed, in the absence of the requested records, the Court will be effectively stymied from assessing the representations made by OFAC regarding the records. For instance, OFAC claims that Vekselberg was designated for operating in Russia's energy sector due to his involvement in power generation activities to argue that Deripaska's designation for the same was not unprecedented but consistent with OFAC's prior interpretation of the term 'energy sector,' as used in E.O. 13662. *See* Admin. R. ("AR") at 0162. Because OFAC does not provide the underlying documents on which it bases this claim—including, for example, the evidentiary memorandum underlying Vekselberg's designation—the Court is barred from assessing whether OFAC's claim supported by the evidence in the agency's possession. If the Court allows OFAC to exclude the documents requested for supplementation, it is effectively forced to credit OFAC's claim without undertaking any meaningful review of the agency's finding in this respect. That is a serious danger not just to the Court's ability to undertake effective review of OFAC's actions, but also Deripaska's ability to understand the reasons for those actions and to rebut them.

Deripaska also requests that this Court order limited discovery to ensure that the administrative record before it is complete. As Deripaska has argued, OFAC has erroneously conflated the evidentiary memorandum used by the agency to recommend a given action as the administrative record underlying that action. This results in a sharply circumscribed record that— clearly in the case of the record underlying OFAC's decision to designate Deripaska under E.O.

13661 and E.O. 13662—contains only information and documents that provide support for OFAC's ultimate decision. OFAC's substitution of the evidentiary memorandum for the administrative record has important consequences not just for Deripaska's ability to understand the relevant agency action but also for this Court's ability to properly assess the lawfulness of that action. Indeed, if a document whose express purpose is to "recommend" an action can lawfully substitute for the complete administrative record underlying that action, then OFAC will be able to successfully exclude materials and information adverse to that decision unless it itself decided to include them in the memorandum.

Defendants contest Deripaska's request to supplement the administrative record, arguing that the administrative record was properly certified to the Court and that the absence of relevant information from the record is the sole fault of Deripaska. This is because, OFAC argues, that Deripaska as either purportedly failed to present the information to OFAC as part of the agency proceeding or failed to challenge the inadequacies of the administrative record at the merits stage. Defs. Mem. in Opp. to Pl.'s Mot. to Supplement the Admin. R., ECF No. 40 ("Defs. Opp.") at 9, 10. Although fully admitting that OFAC had possession of and access to the requested documents, in Defendants' view, supplementation is not appropriate because OFAC did not "consider" the documents either when designating Deripaska or when denying his E.O. 13662 delisting petition. *Id*. at 8-9. Because only information and documents "considered" by the agency are appropriate for supplementation, Defendants argue, Deripaska's request must fail. *Id*.

Defendants' arguments, however, are unavailing for the reasons explained below. This is not the traditional case where plaintiff argues that the agency may *possibly* have possession of relevant information to the agency proceeding but has excluded that information from the certified administrative record. Instead, OFAC clearly (and admittedly) had possession of the requested

documents; such possession was ultimately held by the same decisionmaker and their subordinates; and the documents held clear and obvious relevance to OFAC's decision in Deripaska's delisting matter. Moreover, the current administrative record contains assessments and representations by OFAC regarding certain subject matter that indicates that OFAC has, at the very least, indirectly considered the documents. Under these unique circumstances, which can be found in no other case where supplementation of the record has been denied, Deripaska has satisfied his burden and supplementation is entirely appropriate.

## ARGUMENT

I.   **SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD WITH DOCUMENTS RELATED TO THE TERMS OF REMOVAL AGREEMENT IS APPROPRIATE BECAUSE THE DOCUMENTS WERE BEFORE THE DECISIONMAKER AND WERE RELEVANT TO OFAC'S DECISION**

Defendants first argue that the Court should deny Deripaska's motion to supplement the administrative record with documents relating to the TOR and the relevant parties' compliance with it, as Deripaska has failed to overcome the presumption of regularity afforded to OFAC's designation of the administrative record. Defs. Opp. at 8. According to Defendants, while Deripaska "is correct that OFAC possesses some reporting by the parties to the TOR," "[n]ot all such documents . . . were considered by the decisionmaker."[1] *Id*. at 8-9. In Defendants' view, because Deripaska "did not submit these documents to OFAC in connection with his reconsideration request[] nor request that these materials be consulted," the requested documents were not "actually before the decisionmaker" and thus do not properly constitute part of the record

---

[1] Defendant's statement that "not all" of these documents were considered constitutes a tacit admission by Defendants that OFAC considered at least certain of the requested documents—none of which are included in the administrative record. It certainly begs the question as to what documents "were considered by the decisionmaker" relating to reporting by the parties to the TOR and for what reason and on what basis such documents have not been included in the administrative record designated in this case.

in this matter. *Id.* at 9. In addition, Defendants question the relevance of the requested documents, refuting Deripaska's purported claim that these documents should have been considered by OFAC when adjudicating his delisting petition. Defendants argue, for instance, that "no part of OFAC's decision to deny [Deripaska's] delisting request turned on whether the parties to the TOR were in compliance," as "the compliance of the parties to the TOR was not at issue in [Deripaska's] reconsideration request." *Id.* at 11. For these reasons, according to Defendants, Deripaska has failed to show that the administrative record "improperly exclude[s] this information." *Id.*

Defendants, however, fail to comprehend Deripaska's argument; misapprehend the relevant case law; and ignore the plain import of their own admission that OFAC held possession of the requested documents, which—it turns out—were necessarily before the same decisionmaker as that deciding Deripaska's delisting matter.[2] Because the requested records were—in any meaningful sense—*before* the relevant decisionmaker and were clearly relevant to OFAC's decision on Deripaska's delisting petition, supplementation of the administrative record is appropriate.

As Deripaska rehearsed in his prior memorandum, Pl.'s Mem. in Support of Mot. to Supplement the Admin. R. ("Pl.'s Mot."), ECF No. 36 at 6-8, courts "base their review of an agency's actions on the materials that were before the agency at the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). While agencies are presumed to have properly designated the administrative record, *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196

---

[2] OFAC's Director was the decisionmaker in the agency proceeding relating to OFAC's denial of Deripaska's E.O. 13662 delisting petition, and it is the Director's signature that provides OFAC's assent to the TOR and the proposed delisting of the parties to that agreement. Admin. R. ("AR") 0158, 0220. It is clear that not only did OFAC possess the requested documents, but those documents were before the same decisionmaker.

(D.D.C. 2006), that presumption can be overcome where a party sets forth "concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). This involves not the *mere assertion* that the documents requested for supplementation "were relevant or were before an agency when it made its decision," *Id.*, but rather the identification of "reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2005). Agencies must include materials considered, directly or indirectly, when reaching its decision and "may not exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014).

As an initial matter, Defendants appear to imply that the documents that Deripaska seeks for supplementation of the administrative record constitute "extra-record evidence." *See, e.g.*, Defs. Opp. at 6 (noting "courts should not permit plaintiffs to introduce extra-record evidence except in the face of 'gross procedural deficiencies' . . ."). This, however, is not the case. There are distinct legal doctrines for information or documents that a plaintiff believes have been "deliberately or negligently excluded" from the administrative record by an agency, *City of Dania Beach*, 628 F.3d at 590, and for information or documents that are "necessary to enable judicial review" but are not properly considered part of the record before the agency. *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989). Deripaska does not seek to add "extra-record evidence" into the administrative record; he only seeks to add materials that were before the relevant decisionmaker and that are appropriate for designation in the administrative record.

Deripaska's request for inclusion of documents relating to the TOR—including reports filed by the respective parties to that agreement regarding their compliance with its conditions—is a case in point. According to Deripaska, OFAC failed to include "documents and materials that are clearly in its possession regarding En+ and ESE's continued independence from Deripaska's control or the circumscribed manner in which Deripaska is able to harness any remaining ownership interests." Pl.'s Mot. at 10. This failure merits supplementation because (1) OFAC has "deliberately or negligently excluded documents that may have been adverse to its decision," and/or (2) "background information [is] needed 'to determine whether [OFAC] considered all the relevant factors." *Tindal v. McHugh*, 945 F. Supp. 2d 111, 123 (D.D.C. 2013) (quoting *City of Dania Beach*, 628 F.3d at 590).

Defendants argue that the requested documents were not excluded from the administrative record because such documents are not properly part of the record. Defs. Opp. at 8-9. According to Defendants, the requested documents were not considered by the decisionmaker, and "[a]ny documents not actually before the decisionmaker are not part of the record." *Id*. Defendants however admit that OFAC "possesses some reporting by the parties to the TOR"—i.e., the requested documents—and do not substantively contest the relevance of this reporting to Deripaska's delisting matter. *Id*. at 9 (arguing only that OFAC "appears to assume the parties are complying with the TOR."). Moreover, it is not just that OFAC possesses some of the requested documents, but rather that the documents were held by the same decisionmakers adjudicating Deripaska's delisting petition. Indeed, as evident from the first page of OFAC's evidentiary memorandum in support of its denial of Deripaska's delisting petition, that evidentiary memorandum passed "through" the Associate Director and the Acting Deputy Associate Director at the Office of Global Targeting within OFAC. AR 0158. Not incidentally, all of the requested

documents relating to the TOR and the parties' compliance thereto are likewise in the possession of the Office of Global Targeting, as the TOR mandates the parties to direct all reporting submissions to that office. *See, e.g.*, AR 0215 (requiring that En+ "direct all submissions made pursuant to [the] provision to OFAC's Office of Global Targeting."). Because the parties to the TOR and Deripaska were designated under the same sanctions program (Russia/Ukraine), the TOR parties' compliance reports would have been directed to the same division in the Office of Global Targeting that denied Deripaska's delisting petition. Accordingly, the requested documents were not merely in OFAC's possession, but were also in the possession of the same office, division, and personnel within the agency. All or nearly all of the relevant decisionmakers were thus aware of the existence of the requested documents and were necessarily intimate with their contents considering OFAC's administration of the TOR parties' compliance to that agreement.

It is these facts that distinguish the instant case from the case law cited by Defendants. It is not that the requested records "exist in an agency's files alone" that warrants supplementation of the administrative record, *Wilmina Shipping AS v. DHS*, Civ. A. No. 11-2181 (ABJ), 2013 WL 12340838, at *3 (D.D.C. Sept. 4, 2013), but rather that the requested records were in the possession of the same decisionmakers that adjudicated Deripaska's delisting petition and these decisionmakers were intimately familiar with their contents. Further, Deripaska is not "merely assert[ing] . . . that the materials were relevant or were before an agency when it made its decision," *Marcum*, 751 F. Supp. 2d at 78, but rather that Defendants have admitted to possessing the requested records and to consulting some of those records in deciding Deripaska's delisting petition. Defs. Opp. at 8-9 ("Plaintiff is correct that OFAC possesses some reporting by the parties to the TOR. *Not all such documents*, however, were considered by the decisionmaker.") (emphasis added). These facts render this matter unique to the case law.

Moreover, Defendants misapprehend the core reasons for the relevance of the requested documents to adjudication of Deripaska's delisting petition. Defs. Opp. at 10-11 (stating that "OFAC concluded that, regardless of compliance with the TOR, Deripaska's continued substantial minority stake alone showed continued operation in the energy sector . . ."). For, as Deripaska has explained, the TOR's compliance reports provide context for, and clarity regarding, the scope of Deripaska's remaining ownership interests in En+ and ESE. Pl.'s Mot. at 10-11. For instance, under the TOR, the General Director of ESE is required to provide a monthly certification "that he or she is not acting for or on behalf of Deripaska or any other [SDN] and that control over the actions, policies, and personnel decisions of ESE rests with the General Director of ESE and En+." AR 0216. These monthly certifications have obvious relevance to the question of Deripaska's interest in, and involvement with, ESE and are valuable for the Court when assessing OFAC's finding that Deripaska's remaining passive ownership stake in En+ provides adequate grounds to determine that he operates in Russia's energy sector.

Further, the Defendants' reliance on *Marcum v. Salazar* is equally misguided. In Marcum, the court denied the plaintiffs' request to supplement the administrative record with court filings and related materials to a case that was previously before the court. *Marcum v. Salazar*, 751 F. Supp. 2d 74, 79 (D.D.C. 2010). The Defendants rely on this case for the notion that "[a] plaintiff cannot merely assert…that materials were relevant or were before an agency when it made its decision." Defs. Opp. at 10. But, in *Marcum*, the agency's decisionmaker responsible for denying the plaintiffs' permit application stated in a sworn declaration that the agency "neither directly nor indirectly considered any of the . . . materials identified by plaintiffs." *Marcum*, 751 F. Supp. 2d. at 80. Additionally, the court explained that the plaintiff can supplement the record by identifying

"reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id*. at 78.

The case here is not like *Marcum* because, from the outset, there is no sworn declaration from OFAC that the documents Deripaska seeks to supplement the record with were not considered directly or indirectly. Indeed, the facts in this case suggest the opposite: that the material was considered by OFAC and directly inform OFAC as to Deripaska's purported involvement (or lack of) with those entities which, in turn, was directly relevant to OFAC's evaluation of Deripaska's 13662 delisting petition. Further, unlike in *Marcum* where the agency had a sworn declaration stating it did not consider the documents the plaintiffs sought to supplement the record with, here we do not have such a statement. indeed, to the contrary, Defendants have noted "not all" such documents were considered. Defs. Opp. at 8-9. Accordingly, the grounds for supplementation that Deripaska has identified are surely not speculative or unreasonable.

Here, then, Defendants admit that OFAC possesses the requested documents; Defendants intimate that OFAC may have consulted some of these documents when adjudicating Deripaska's delisting petition; the requested documents were in the possession of the same decisionmaker that decided Deripaska's delisting petition; and the requested documents have an immediate and obvious relevance to the question of whether Deripaska continued to meet the criteria for designation under E.O. 13662. These exceptional circumstances merit supplementation of the administrative record, and requiring Deripaska to provide more creates an impossible standard that has the practical effect of freeing agencies from the burden of submitting to the court's review information adverse to its ultimate decision.

## II.   SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD WITH DOCUMENTS RELATED TO VIKTOR VEKSELBERG'S DESIGNATION IS APPROPRIATE BECAUSE THE DOCUMENTS WERE BEFORE THE DECISIONMAKER AND WERE RELEVANT TO OFAC'S DECISION

Defendants argue that Deripaska has no basis to seek inclusion of documents related to Viktor Vekselberg or Renova Group's designations under E.O. 13662, as Deripaska has failed to overcome the presumption of regularity granted to OFAC's compilation and certification of the administrative record in this case. Defs. Opp. at 11. According to Defendants, the current record fully explains that Vekselberg "was designated *in part* because of Renova's involvement in power generation."[3] *Id*. at 11-12 (emphasis added). Further, Defendants note that while OFAC "does indeed possess a more detailed memorandum in connection with Vekselberg's designation," the agency did not "consider[]" that memorandum when reviewing Deripaska's delisting request. *Id*. For these reasons, according to Defendants, "all information considered by the decisionmaker directly or indirectly is included in the administrative record already," and supplementation of the administrative record with the requested documents is not appropriate. *Id.* at 12-13.

Defendants' argument, however, is unconvincing. Again, OFAC has admitted that the documents were in its possession; these documents were clearly relevant to the proceeding at issue; and OFAC, at least indirectly, necessarily relied on the contents of these documents to render its finding that Vekselberg was designated for operating in Russia's energy sector for his involvement in power generation activities.

---

[3] Defendants use of the term "in part" is instructive, as nowhere in the certified administrative record does OFAC claim that Vekselberg's power generation activities constituted only a part of the factual basis for his designation under E.O. 13662. Clearly, Defendants continue to rely on documents that are inaccessible to both Deripaska and the Court, as those documents have not been included in the certified administrative record.

Defendants first claim that "it is plain from the information in the record that Vekselberg was designated in part because of Renova's involvement in power generation," arguing that an "exhibit cited in the evidentiary denying [Deripaska's] reconsideration request connects Vekselberg specifically to 'power generation' . . ." Defs. Opp. at 11. This, however, is not the explanation offered by OFAC itself in the evidentiary memorandum. Indeed, that memorandum states only that "OFAC has designated at least one other individual for operating in the energy sector of the Russian Federation economy for power generation activities." AR 0162. OFAC elaborates on this point in a related footnote, stating that "Vekselberg was designated for operating in the energy sector of the Russian Federation economy pursuant to E.O. 13662" and that "[a]s noted in the press release accompanying the action, Vekselberg was the founder and Chairman of the Board of Directors of the Renova Group." *Id*. Contrary to Defendants' argument otherwise, OFAC does not explain its determination that Vekselberg was designated "for operating in the energy sector of the Russian Federation economy for power generation activities" on the basis of the information contained in the press release. That press release, as evident from the footnote, is used as supporting evidence for OFAC's claim that Vekselberg "was the founder and Chairman of the Board of Directors of the Renova Group." *Id*. It is not used by OFAC to detail the evidentiary basis upon which it found that Vekselberg was designated under E.O. 13662 for his involvement in power generation activities.

Given the absence of an explanation by OFAC as to the grounds upon which it bases its argument, the Court has no meaningful way of assessing OFAC's conclusion that persons other than Deripaska have been designated for operating in Russia's energy sector on the basis of their involvement in power generation activities. Indeed, OFAC has made a claim regarding other designation actions—but only cites the Vekselberg's designation—all the while withholding from

the Court the documents on which it relied in making this claim. This is contrary to the rule that the Court should have "neither more nor less than what was before the agency at the time it made its decision." *Marcum*, 751 F. Supp. at 78 (citing *IMS, P.C.*, 129 F.3d at 623); *see also Bimini Superfast Operations LLC*, 994 F. Supp. 2d at 105 ("Courts in this Circuit have 'interpreted the 'whole record' to include 'all documents and materials that the agency 'directly or indirectly considered' . . . [and nothing] more nor less.'").

Defendants further contend that—while "OFAC does indeed possess a more detailed memorandum in connection with Vekselberg's designation"—this memorandum "was not considered in connection with Deripaska's reconsideration request, and [Deripaska] has presented no evidence to the contrary." Defs. Opp. at 12. It is difficult to understand, though, how the information in Vekselberg's evidentiary memorandum was not relied upon—either directly or indirectly—to render OFAC's finding that Vekselberg was designated "for operating in the energy sector of the Russian Federation economy for power generation activities." AR 0162. Defendants appear keen on exhausting the word "considered" of all meaning, arguing that the requested documents were not "*considered* by the decisionmaker directly or indirectly," even if otherwise *before* it. Defs. Opp. at 12 (emphasis added). In Defendants' view, it is not enough for an agency to possess the requested documents; for those documents to be clearly relevant to the proceeding at issue; and for the agency to have made representations regarding the substance of those documents in support of their ultimate decision in the proceeding. Instead, Defendants argue that the requested documents must have been "considered" by the agency, instilling the term with an elusiveness not supported by the case law but—if adopted—would allow agencies to exclude information adverse to its ultimate decision on the basis that it did not "consider" the information.

Defendants' appeal to case law in support of this theory is unavailing, as the facts of this case are substantively distinct from those cited by Defendants. Unlike in *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996), where the D.C. Circuit held that supplementation of the administrative record with bank files reviewed by examiners was unnecessary because the record "included detailed memoranda describing the examiners' findings and recommendations," OFAC has provided only the bare assertion that it "has designated at least one other individual for operating in the energy sector of the Russian Federation economy for power generation activities." AR 0162. This bare assertion, devoid of explanation or background material, poses a significant risk of "frustrat[ing] judicial review." *Tindal v. McHugh*, 945 F. Supp. 2d 111, 123 (D.D.C. 2013) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)).

Meanwhile, Defendants' invocation of *Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8 (D.D.C 2009) for the proposition that "irrelevant documents *should* be excluded from the record" is itself irrelevant. This is because the plaintiff in *Gen. Elec. Co.* argued that the agency's "practice of excluding irrelevant and pre-decisional deliberative documents from the administrative record result[ed] in a skewed record." *Id*. at 18. That's not Deripaska's argument, and indeed is contrary to his argument. Deripaska is arguing that those documents requested for supplementation were not merely before the relevant decisionmaker but were clearly relevant to the proceeding at issue, as OFAC made representations regarding the content of Vekselberg's evidentiary memorandum without including that memorandum in the administrative record.

Defendants also argue that "references to documents in the administrative record do not automatically show that the documents were 'before' the deciding agency," citing to *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1 (D.D.C. 2009) and *The Cape Hatteras Access Pres. All.*

*v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009). Defs. Opp. at 12. Setting aside the fact that Defendants admit that the requested documents were in OFAC's possession, the case law invoked by Defendants remains distinct from the facts presented in the instant case. In *WildEarth Guardians*, the court found that because a cited document mentions a petition, there were not grounds for the inclusion of the petition in the record, particularly where it is clear that the agency procured information regarding the petition from the cited document and not from the petition. *WildEarth Guardians*, 670 F. Supp. 2d at 8-9. There is nothing analogous to the facts present in the instant case, as OFAC has not identified the grounds for its finding that Vekselberg was designated for operating in Russia's energy sector because of his involvement in power generation activities. Had OFAC had cited to its press release for the proposition that Vekselberg was designated for operating in Russia's energy sector for his involvement in power generation activities and that document provided the information and findings contained in the evidentiary memorandum regarding Vekselberg's power generation activities, then it could be reasonably believed that OFAC solely relied on the press release in rendering its finding. However, there is nothing akin to such a hypothetical in this case.

Similarly, *The Cape Hatteras Access Pres. All.* decision has no obvious relevance to this instant matter, as Deripaska is not arguing that Vekselberg's evidentiary memorandum should be included in the administrative record because other documents in the current record make reference to it. *The Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 114. Instead, Deripaska only contends that the information contained in Vekselberg's evidentiary memorandum was necessarily considered by, or otherwise before, OFAC when it determined that Vekselberg had been designated for operating in Russia's energy sector through his involvement in power generation activities.

15

Defendants' reliance on *Wilmina Shipping AS* is misplaced for another reason. That case involved a requested supplementation of the record with an email describing an agency's procedure for how an action is taken, and the consequences for taking such action, rather than the substantive reasoning for the agency's action itself. *Id*. at *5. Therefore, because the email did not pertain to the agency's action, but rather the procedure for taking that action, the plaintiffs did not present "'concrete evidence' that the documents they seek [to supplement] were actually before and considered by the decision makers." *Id*.

Those are not the circumstances present in the instant matter. Here the materials Deripaska seeks to supplement the administrative record with have a direct bearing on OFAC's decision-making process. These documents do not describe, for example, OFAC's procedures for taking an action or the consequences for taking such action, but rather directly inform OFAC of necessary information needed to designate Deripaska. For instance, OFAC justified its explanation that it has never limited its interpretation of the term 'energy sector' in the Russia/Ukraine context by citing to the designation of Vekselberg. OFAC, however, must have used extra record material to make this assertion because the sources it cited to—the Federal Register notice and its press release announcing Vekselberg's designation—do not support OFAC's assertion that Vekselberg was designated for "operating in the energy sector of the Russian Federation economy for power generation activities." Defs. Opp. at 10. Thus, unlike in the facts presented in *Wilmina Shipping AS* it is clear that the omitted documents that OFAC relied on directly informed its decision making and were not inconsequential procedural statements.

Finally, *Anglers Conservation Network v. Pritzker* likewise does not support Defendants' notion that the documents Deripaska seeks to supplement the record with should not be included. Notably, in *Anglers Conservation Network* the court considered the plaintiffs' motion to

supplement the complaint, not the administrative record, which was examined under a different standard. *Anglers Conservation Network v. Pritzker*, Civ. A. No. 13-1761 (GK), 2014 WL 12776056 (D.D.C. Apr. 28, 2014). Nonetheless, Defendants' reliance case misses a critical aspect of the court's reasoning. The court denied the plaintiffs' motion mainly because "permitting supplementation will create few, if any, efficiencies and is very likely to cause confusion by blurring the lines between two discrete decision-making processes undertaken by separate entities." *Id*. at *2.

Here, not only is the standard different for the motion presently before this Court, but also the information Deripaska seeks to supplement the record with is information compiled by the same entity, OFAC, and it relates to overlapping decision-making processes. For example, as previously mentioned, OFAC must have considered its interpretation of "energy sector" as it related to Viktor Vekselberg's designation in its arguments that Deripaska operates in the "energy sector." These are not distinct actions taken by two different agencies. Further, under OFAC's logic, each action supports the other: OFAC's determination of what constitutes operating in the energy sector is informed by previous actions OFAC has taken—although both designation actions were undertaken simultaneously. Therefore, because the information Deripaska seeks to supplement the record with was before the same agency and directly overlaps in relevance to other OFAC actions, *Anglers Conservation Network* is inapposite.

### III.   DERIPASKA HAS MADE A SHOWING THAT THE ADMINISTRATIVE RECORD MAY NOT BE COMPLETE AND LIMITED DISCOVERY IS APPROPRIATE

Defendants argue that Deripaska has also failed to establish that the administrative records underlying his designations and the denial of his delisting petition are inadequate or have been improperly designated. Defs. Opp. at 13, 15. In response to Deripaska's contention that OFAC has

conflated the evidentiary memoranda for the designation and delisting actions with the administrative records underlying those actions, Defendants argue, without citation or support, that, "[i]n a designation or delisting proceeding, [] an evidentiary memorandum generally serves at OFAC as the record of information considered by the decisionmaker." *Id*. at 14. Further, Defendants argue that it is "just not true that the evidentiary memoranda do 'not appear to serve as a compilation of all the documents and materials reviewed or considered by' the agency decisionmaker." *Id*. In Defendants' view, OFAC's certification of the administrative record "is conclusive of the scope of the record . . . [i]n the absence of any countervailing evidence whatsoever." *Id*.

Defendants' argument is erroneous. The rule in this Circuit is clear: while agencies are presumed to have "properly designated the [a]dministrative [r]ecord," *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993), that presumption can be overcome where plaintiff "provide[s] good reason to believe that discovery will uncover evidence relevant to the Court's decision to look beyond the record." *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). Under this rule, Deripaska must "make a significant showing . . . that [he] will find material in the agency's possession indicative of bad faith or an incomplete record." *Id*.; *see also San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1327 (D.C. Cir. 1984) ("[S]upplementation might be required if petitioners made a prima facie showing that the agency excluded from the record evidence adverse to its position . . .").

Deripaska has provided "good reason" to believe that the administrative record designated as such in this matter is incomplete. Pl.'s Mot. at 13-15. A complete administrative record, as established in the D.C. Circuit, necessarily constitutes "all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision."

*Amfac Resorts, L.L.C.*, 143 F. Supp. 2d at 12. That includes all documents and materials not just before the decisionmaker—in this case, OFAC's Director—but also subordinates to the decisionmaker if the decisionmaker "base[s] [his or her] decision on the[ir] work and recommendations . . ." *Id.*

In this case, OFAC personnel conducted an apparent investigation into Deripaska that resulted in their recommendation to the decisionmaker that Deripaska be designated under E.O. 13661 and E.O. 13662 and that his petition for delisting be denied. AR 0006, 0158. That recommendation came in the form of two separate evidentiary memoranda—one for the designation actions and one for the delisting denial—which outlined the factual and legal basis for their belief that Deripaska met the criteria for designation under the relevant Executive orders or that his petition for delisting should be denied. AR 0006-0014, 0158-0169. Indeed, these memoranda and their attached exhibits serve the purpose of establishing for the agency decisionmaker the basis for their reasonable belief that Deripaska meets the criteria for designation under E.O. 13661 and E.O. 13662 and/or does not merit delisting from OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"). AR 0007, 0158.

Defendants contend that the evidentiary memorandum "generally serves at OFAC as the record of information considered by the decisionmaker." Defs. Opp. at 13. But this is inadequate for at least two distinct reasons. First, nowhere in the evidentiary memoranda does OFAC state that the memoranda serve this alleged purpose. Instead, OFAC states only that the evidentiary memoranda contain the grounds for OFAC's reasonable belief that Deripaska meets the criteria for designation or that Deripaska's delisting petition should be denied. AR 0007, 0158. Second, even if OFAC had styled the evidentiary memorandum to serve as the "record of information considered by the decisionmaker," the evidentiary memorandum would still remain insufficient

19

for the purpose of a "complete" administrative record. This is because a complete record should include not just "information considered by the decisionmaker," but also all materials and documents reviewed by the decisionmaker's subordinates where the agency decisionmaker "base[s] [his or her] decision on the work and recommendations of subordinates." *Amfac Resorts, L.L.C.*, 143 F. Supp. 2d at 12. To the extent that the evidentiary memorandum serves "as the record of information considered by the decisionmaker," its conflation with a properly-designated administrative record is inappropriate if information and documents are being reviewed by agency personnel but are not included for submission as part of the recommendation to the decisionmaker.

In any case, the lonely inclusion of the evidentiary memoranda and their related exhibits into the administrative record underlying both OFAC's designation of Deripaska and its denial of his delisting petition; the limited purpose served by OFAC's evidentiary memoranda; and the failure to include materials and information reviewed by, directly or indirectly, OFAC personnel involved in the recommendation of a given action to the decisionmaker constitutes *prima facie* evidence that the administrative record has been improperly designated and is incomplete. Accordingly, this Court should allow for limited discovery to determine whether the administrative record has been properly designated and—if not—mandate Defendants to supplement the record with any excluded documents that were before OFAC when undertaking the relevant actions relating to Deripaska.

## CONCLUSION

For the foregoing reasons, Deripaska respectfully requests that the Court grant Deripaska's motion to supplement the administrative record and require Defendants to produce the requested documents, as well as any other relevant documents and information improperly excluded from the administrative record.

Dated: August 27, 2020                    Respectfully submitted,

                                          /s/ Erich C. Ferrari
                                          Erich C. Ferrari, Esq.
                                          Ferrari & Associates
                                          1455 Pennsylvania Avenue, NW
                                          Suite 400
                                          Washington, D.C. 20004
                                          Telephone: (202) 280-6370
                                          Fax: (877) 448-4885
                                          Email: ferrari@falawpc.com
                                          D.C. Bar No. 978253

                                          *ATTORNEY FOR PLAINTIFF*
                                          *OLEG DERIPASKA*