UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLEG DERIPASKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-cv-00727 (APM) |
| ) | |
| STEVEN T. MNUCHIN et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Before the court is Plaintiff Oleg Deripaska's motion to supplement the administrative record. Deripaska argues that the Office of Foreign Assets Control, a branch of the U.S. Department of the Treasury, improperly certified an incomplete administrative record. For the reasons that follow, the court finds that Deripaska has not demonstrated that his requests for supplementation meet any of the circumstances in which supplementation is permissible and therefore denies his motion.

**II.    BACKGROUND**

The court reserves a fulsome recitation of the facts for its decision on the parties' ripe dispositive motions and recounts here only the facts necessary to decide Deripaska's motion to supplement.

**A.     Factual Background**

This action arises from the decision of the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") to designate Oleg Deripaska, a Russian businessman, for sanctions pursuant to Executive Order Nos. 13661 and 13662. *See* Second Am. Compl.,

ECF No. 26, ¶¶ 2, 5, 13.  On April 6, 2018, OFAC added Deripaska to the Specially Designated Nationals and Blocked Persons List, thereby blocking his "property and interests in property subject to U.S. jurisdiction" and prohibiting U.S. persons "generally . . . from engaging in transactions" with him.  Notice of OFAC Sanctions Actions, 83 Fed. Reg. 19,138-01, 19,138 (May 1, 2018).  Deripaska was designated under Executive Order No. 13661, subsection 1(a)(ii)(C)(1), "for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation."  *Id.*  He was also designated under Executive Order No. 13662, subsection 1(a)(i), "for operating in the energy sector of the Russian Federation economy."  *Id.*

At the same time that OFAC designated Deripaska for sanctions, it also designated two entities that were "owned or controlled" by him, En+ Group PLC ("En+") and JSC Eurosibenergo ("ESE"), and a third entity, United Company Rusal PLC ("Rusal"), that was "owned or controlled" by En+.  *See id.* at 19,139–40.  Thereafter, on December 19, 2018, En+, ESE, and Rusal entered a Terms of Removal Agreement with OFAC that paved the way for the agency to de-list En+, ESE, and Rusal.  Defs.' Mem. in Opp'n to Pl.'s Mot. to Suppl. the Administrative R., ECF No. 40 [hereinafter Defs.' Br.], Ex. A, Excerpts from the Administrative R., ECF No. 40-1 [hereinafter Record Excerpts], at 16 & n.4.[1]  Pursuant to the Terms of Removal Agreement, the "three entities terminated **DERIPASKA**'s majority ownership in and control over En+," *id.* at 16, which in turn owned and controlled ESE and Rusal, 83 Fed. Reg. at 19,140.  Following the agreement, Deripaska reduced his stake in En+ to 44.95 percent and agreed to vote no more than 35 percent of En+'s shares and appoint no more than four of twelve board members to En+'s board of directors.  Record Excerpts at 17.

---

[1] Pincites to the Record Excerpts refer to PDF pagination.

On June 27, 2019, after reducing his ownership stake in En+, Deripaska petitioned OFAC for administrative reconsideration of his individual designation under Executive Order No. 13662, which related to his purported operation in the Russian energy sector. *Id.* at 12. Deripaska argued that his designation was improper because (1) OFAC lacked evidence that he was operating in the Russian energy sector and erroneously construed power-generation activities as part of the energy sector and (2) his divestiture of his majority ownership interest in En+ pursuant to the Terms of Removal Agreement meant that he no longer "operate[d]" in the energy sector. *Id.* at 13–16. On March 6, 2020, OFAC denied Deripaska's delisting petition on the basis that he continued to operate in the Russian energy sector. *See* Pl.'s Mot. to Suppl. the Administrative R., ECF No. 36, Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. to Suppl. the Administrative R., ECF No. 36-1 [hereinafter Pl.'s Br.], at 4; Defs.' Br. at 3.

**B.     Procedural Background**

The parties have since filed dispositive motions. Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 27, and Deripaska filed a Cross-Motion for Summary Judgment, ECF No. 31. Before briefing on either motion was complete, Deripaska filed the instant Motion to Supplement the Administrative Record, ECF No. 36. Given the pending motion to supplement, the court granted the parties an extension of time to file a Joint Appendix containing relevant excerpts of the record until after it decides this motion. *See* Minute Order, Aug. 3, 2020. Both parties agree that the present record consists exclusively of OFAC's final decisions as to Deripaska, the evidentiary memoranda related to its final decisions designating Deripaska under Executive Order No. 13661 and denying his delisting petition under Executive Order No. 13662, and the supporting exhibits cited in those memoranda. *See* Pl.'s Br. at 3–4; Defs.' Br. at 13; *see also* Notice of Filing of Certification & Index of Administrative R.,

ECF No. 28, Certification of Administrative R., ECF No. 28-1 [hereinafter Baheri Decl.], ¶ 4 (certifying the administrative record).

## III. LEGAL STANDARD

In deciding a motion to supplement, the court is cognizant that its review of agency action under the Administrative Procedure Act is confined to "only those documents that were before the agency" at the time the agency made its decision. *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015). The court will "not allow parties to supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (internal quotation marks omitted). The D.C. Circuit has recognized three such unusual circumstances that permit a court to order supplementation:

> (1) The agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* (cleaned up).

## IV. DISCUSSION

Deripaska argues that the administrative record in this case is incomplete because it does not include three categories of evidence. *First*, he argues that the record should "include all documents and materials regarding the December 19, 2018 Terms of Removal Agreement entered between OFAC and En+ and ESE and the respective parties' implementation of that agreement."[2] Pl.'s Br. at 9. He contends that this evidence is relevant to OFAC's conclusion that he continues

---

[2] Although not mentioned in this quotation from Deripaska's brief, Rusal was also a party to the Terms of Removal Agreement. Record Excerpts at 16 n.4.

to operate in the Russian energy sector. *See id.* at 9–10. *Second*, Deripaska asserts that the record should include materials related to OFAC's designation under Executive Order No. 13662 of Viktor Vekselberg, the founder and Chairman of the Board of Directors of the Renova Group; he suggests that these materials would include the "evidentiary memorandum" underlying that decision and "its related exhibits." *Id.* at 12. Deripaska argues that these documents are necessary because OFAC compared his circumstances to those of Vekselberg, whom OFAC had found to be operating in Russia's energy sector due to his "involvement in power generation activities in the Russian economy." *Id.* *Third*, Deripaska maintains that the record should include additional information beyond OFAC's evidentiary memoranda relating to his designations. *See id.* at 13–16. Although Deripaska does not specifically identify the additional documents he seeks, he suggests that the evidentiary memoranda by definition cannot constitute the entire administrative record because such memoranda merely "recommend[] the designation" and "provide[] the findings and evidence underlying that recommendation." *See id.* In Deripaska's view, an evidentiary memorandum is intended exclusively to support the agency's decision and therefore necessarily excludes any information adverse to the agency's decision. *See id.*

The court first considers whether an exception to the general rule against supplementation applies and then considers whether Deripaska has submitted concrete evidence that suggests OFAC considered the documents he identifies.

### A.   Exceptions Justifying Departure from the General Rule

Deripaska variably argues that all three exceptions justifying departure from the general rule against supplementation apply here. The court takes each exception in turn.

### *1.   Deliberate or Negligent Exclusion of Adverse Documents*

Deripaska makes two claims regarding the first exception, which counsels that supplementation is appropriate if "[t]he agency deliberately or negligently excluded documents that may have been adverse to its decision." *Am. Wildlands*, 530 F.3d at 1002 (alteration omitted) (internal quotation marks omitted). First, Deripaska claims that OFAC "deliberately or negligently excluded documents that may have been adverse to its decision" when it failed to include in the record documents related to the implementation of the Terms of Removal Agreement. Pl.'s Reply Mem. in Supp. of Mot. to Suppl. the Administrative R., ECF No. 41 [hereinafter Pl.'s Reply Br.], at 7. Second, the court construes Deripaska's general request to supplement the record with additional documents beyond the evidentiary memoranda as a claim that OFAC deliberately or negligently excluded adverse documents. *See* Pl.'s Br. at 13–15 (arguing OFAC's "evidentiary memorandum does not appear to serve as a compilation of all the documents and materials reviewed or considered by, or otherwise before, the agency and its decision-makers when making the decision to designate an individual or entity"); *id.* at 14 n.1 (arguing that OFAC's representation that "OFAC only reviewed materials that supported its ultimate determinations and that any information adverse to those determinations was not in their possession" was "false and unsubstantiated"); Pl.'s Reply Br. at 17–20.

A plaintiff bears a heavy burden to show that the agency deliberately or negligently excluded documents that were adverse to its decision. "Meeting this exception requires a strong showing of agency bad faith," and the D.C. Circuit has held that "conclusory statements . . . fall far short of that high threshold." *Dist. Hosp. Partners, L.P.*, 786 F.3d at 56 (alteration omitted) (internal quotation marks omitted); *see also Kent County v. U.S. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (finding EPA acted negligently when it relied on a memorandum from an

6

unrelated program to substantiate its decision but did not examine regional files directly related to the program at issue).

Deripaska's requests for supplementation do not come close to establishing that OFAC acted in bad faith.  In requesting documents regarding the implementation of the Terms of Removal Agreement, Deripaska conclusorily alleges that OFAC deliberately or negligently omitted documents from the record, *see* Pl.'s Reply Br. at 7–8, but he does not identify any evidence of agency bad faith.  Likewise, with respect to Deripaska's request for documents beyond OFAC's evidentiary memoranda, Deripaska provides no evidence of misconduct and instead relies entirely on his disagreement with OFAC's conclusion that the evidentiary memoranda constitute the administrative record.  *See, e.g.*, Pl.'s Br. at 14 (arguing OFAC improperly "conflat[ed] the evidentiary memorandum with the administrative record").

After identifying no evidence of bad faith in his opening brief, Deripaska attempts to make a case for agency negligence for the first time in his reply.  He argues that the evidentiary memoranda may serve as the record of information considered by OFAC's ultimate decisionmaker, but the decisionmaker's subordinates must have reviewed more information than was presented to the ultimate decisionmaker.  Pl.'s Reply Br. at 19–20.  Despite his burden, Deripaska offers no evidence that subordinates had other information before them.  Yet even if the court were to infer that OFAC was negligent in excluding documents purportedly reviewed by subordinates at OFAC, Deripaska's request for implementation documents would still fail under this first exception because he has not offered evidence that the requested documents "may have been adverse" to OFAC's decision.  *See City of Dania Beach v. FAA*, 628 F.3d 581, 590–91 (D.C. Cir. 2010).

First, as to Deripaska's request for discovery beyond the evidentiary memoranda, Deripaska appears to merely assume that the information would be adverse to the agency's decision because the evidentiary memoranda, in his view, contain only supporting information. *See* Pl.'s Br. at 15–16 (arguing an evidentiary memorandum is offered to "support" a recommendation but a full administrative record goes beyond such supporting documents). But Deripaska provides no factual basis from which the court could conclude that documents adverse to OFAC's decision exist. *See City of Dania Beach*, 628 F.3d at 591 (rejecting "generalized" contention that documents would undermine agency's position as insufficient to support supplementation). Because the court cannot find from Deripaska's conclusory statements that additional records will produce evidence opposing the agency's decision, his request must fail.

Second, Deripaska's argument that documents related to implementing the Terms of Removal Agreement should be included in the administrative record similarly fails to explain whether these documents would contradict OFAC's decisions concerning him. His arguments instead focus on the documents' alleged relevance to OFAC's decisions as to him and the fact that OFAC had the documents in its possession. *See, e.g.*, Pl.'s Br. at 9–11 ("These materials have obvious bearing on the question of whether OFAC could reasonably find Deripaska's remaining interests in En+ constitute his operation in Russia's energy sector."). Such generalized assertions of relevancy and possession fall short.

Nor is there any indication that the implementation documents Deripaska seeks to add would be adverse to OFAC's decision. Deripaska points to two examples of implementation documents that he claims should be included in the administrative record: (1) monthly certifications indicating that the General Director of ESE "is not acting for or on behalf of Deripaska" and maintains control over the company, *see id.* at 10, and (2) documents related to

En+'s operations and control structure, *see id.* at 11.  As is apparent from Deripaska's descriptions, these documents relate to his control of En+ and ESE.  But OFAC did not base its denial of Deripaska's de-listing petition on his *control* over En+ and ESE.  Instead, OFAC based its decision on Deripaska's continued ownership interests:  The agency found that Deripaska, while "act[ing] in a manner consistent with the [Terms of Removal Agreement]," nonetheless held "a 44.95 percent stake in En+, continue[d] to vote 35 percent of his En+ shares, and appoint[ed] four of 12 board members to the En+ board of directors."  Record Excerpts at 17.  This "*continued ownership interest* in En+ and ESE," OFAC concluded, was "evidence of [Deripaska's] continued operation in the energy sector of the Russian Federation economy." *Id.* at 16 (emphasis added).  Deripaska does not argue that the implementation documents would reveal he lacks any ownership interest in En+ and ESE or that he holds a smaller ownership interest than was reported to OFAC.  In fact, Deripaska certified his ownership interests in response to a questionnaire from OFAC.  *See id.* at 17.  Accordingly, Deripaska has not presented evidence that the implementation documents might be adverse to OFAC's decision.  The court therefore rejects his request to supplement the record under this first exception.

        2.      *Background Information*

Deripaska also claims that documents relating to the implementation of the Terms of Removal Agreement should be added to the record because they constitute "background information" that is necessary "to determine whether OFAC considered all the relevant factors." Pl.'s Reply Br. at 7 (alteration omitted) (internal quotation marks omitted).  Deripaska's request to supplement, however, cannot reasonably be construed as a request for background information.  As interpreted by the D.C. Circuit, there is a distinction between collecting background information regarding whether the agency considered all relevant factors and testing the merits of

9

the agency's decision. As the Circuit has explained, background information "can never . . . examine the propriety of the decision itself." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 286 (D.C. Cir. 1981).[3]

The information that Deripaska seeks is not background information and instead would, as Deripaska's arguments suggest, bear on the propriety of OFAC's decision. Deripaska argues, for example, that the implementation documents he seeks "have obvious bearing on the question of whether OFAC *could reasonably find* that Deripaska's remaining interests in En+ constitute his operation in Russia's energy sector." Pl.'s Br. at 11 (emphasis added). He claims that this evidence will "provide context for, and clarity regarding, the scope of Deripaska's remaining ownership interest," but in the same breath he suggests that the compliance information is valuable for "assessing OFAC's finding that Deripaska's remaining passive ownership stake in En+ provides *adequate grounds* to determine that he operates in Russia's energy sector." Pl.'s Reply Br. at 9 (emphasis added). Deripaska's own arguments make it clear that he seeks such evidence not to determine if OFAC considered whether a passive ownership stake constituted operation in the energy sector, but to challenge the soundness of OFAC's conclusion that a passive ownership stake did constitute operation in the energy sector. Because Deripaska is not seeking background information, the court finds that this second exception does not justify supplementing the record.

---

[3] The case law in this Circuit does not appear to have maintained a clean distinction between this second exception, which permits supplementation with background information, and the third exception, which permits supplementation where judicial review would otherwise be frustrated. For example, in *James Madison Ltd.*, the Circuit cited to *Environmental Defense Fund* to substantiate its decision that the plaintiff had not "shown that the district court needed to supplement the record with 'background information.'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996). But the portion of *Environmental Defense Fund* to which the court cited discussed the "'explanation' exception"—that is, the exception that "occurs where there was such a failure to explain administrative action as to frustrate effective judicial review." 657 F.2d at 285 (internal quotation marks omitted). Because the appeals court has referred to certain aspects of the two exceptions interchangeably and because both exceptions look to whether the court has enough information before it to review the agency's decision, the court finds that the Circuit's pronouncements on background information—even if related to the context of the exception related to effective judicial review—are relevant to Deripaska's claims.

### 3. *Frustration of Effective Judicial Review*

Lastly, Deripaska argues that the current administrative record frustrates judicial review. Specifically, he maintains that (1) OFAC's failure to consider documents related to the implementation of the Terms of Removal Agreement has "limited the information available to the Court to assess the permissibility of the agency's challenged action," Pl.'s Br. at 11; and (2) OFAC's failure to include documents and materials related to the agency's designation of Vekselberg deprives the court of "a proper basis under which to assess the merits of OFAC's claim regarding" the similarity between Vekselberg's designation and Deripaska's designation," *id.* at 13; *see also* Pl.'s Reply Br. at 12.

The Supreme Court's decision in *Camp v. Pitts*, 411 U.S. 138 (1973), forecloses Deripaska's arguments here. In *Camp*, the Supreme Court noted that, if "there was such failure to explain administrative action as to frustrate effective judicial review," it could be appropriate "to obtain from the agency . . . such additional explanation for the reasons for the agency decision as may prove necessary." *Id.* at 142–43. But the Court caveated that, where the record contains a "contemporaneous explanation of the agency decision"—even a "curt" one—the action must "stand or fall on the propriety of the finding." *Id.* at 143. "If that finding is not sustainable on the administrative record made, then the [agency's] decision must be vacated and the matter remanded . . . for further consideration." *Id.* The D.C. Circuit has similarly held that records "contain[ing] detailed contemporaneous reports from" the decisionmaker that "explain[] how and why they reached their conclusions" prohibit supplementation under this exception. *See James Madison Ltd.*, 82 F.3d at 1095; *see also Dist. Hosp. Partners, L.P.*, 786 F.3d at 55 (holding that "[t]he Secretary did not frustrate judicial review by saying too little" where a "rulemaking explained at length how" she reached her decision).

11

Here, the evidentiary memoranda that comprise the administrative record—portions of which Defendants provided to the court—robustly describe the basis for the agency's decisions. For example, the evidentiary memorandum denying Deripaska's de-listing petition contains a nearly seven-page section titled "Basis for Denial." *See* Record Excerpts at 13–19. That excerpt also provides citations for OFAC's conclusion that Vekselberg was designated as operating in Russia's energy sector for power-generation activities. *Id.* at 15 & n.2. The evidentiary memorandum on OFAC's original decision to block Deripaska likewise contains four pages explaining the basis for OFAC's decision. *Id.* at 4–7. As this record makes evident, OFAC has provided the basis for its decision, and whether the administrative record is substantial enough to support the agency's decision is a question properly reserved for a resolution of the merits of this case. *See Bahman Grp. v. Gacki*, No. 19-cv-2022 (RDM), 2020 WL 4346912, at *4 (D.D.C. July 29, 2020) ("[A]rguments regarding what documents an agency *should have* considered [are] not the proper subject for a motion to supplement the record.").

\*   \*   \*

Accordingly, because Deripaska's requests do not fall under any of the three recognized exceptions for supplementation of the administrative record, the court denies Deripaska's motion to supplement. *See City of Dania Beach*, 628 F.3d at 590 (denying request where none of the exceptions were met).

### B. Concrete Evidence the Agency Considered the Requested Documents

Even if Deripaska could establish that an exception to the general rule against supplementation applies, the court would still deny his motion to supplement because Deripaska has failed to present concrete evidence that OFAC considered the documents he seeks to add to the record.

"[A]n agency is entitled to a strong presumption of regularity[] that it properly designated the administrative record." *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). "To rebut the presumption of regularity, the party seeking supplementation must put forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (internal quotation marks omitted). For a document to be "before" an agency, the agency must have "directly or indirectly considered" the document when reaching its decision. *Bimini Superfast Ops. LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014) (cleaned up); *see also Pac. Shores Subdivision*, 448 F. Supp. 2d at 4 ("[T]he administrative record should not include materials that were not considered by agency decisionmakers." (internal quotation marks omitted)).

In this case, the agency has supplied a sworn affidavit from Leila Baheri, an official at OFAC, who attests that the certified administrative record consists of "the non-privileged documents that were directly or indirectly considered in connection with OFAC's decision to designate plaintiff Oleg Deripaska under Executive Order 13661, as well as OFAC's decision to deny his petition seeking delisting under Executive Order 13662." Baheri Decl. ¶ 4. Baheri's Declaration is entitled to a "strong presumption" of regularity, *see Pac. Shores Subdivision*, 448 F. Supp. 2d at 5, and Plaintiff has failed to offer concrete evidence to overcome it.

First, as to documents regarding the implementation of the Terms of Removal Agreement, Deripaska argues that such documents are relevant and were in OFAC's possession, but he does not provide any evidence that the agency actually considered the documents in denying his delisting petition. *See* Pl.'s Br. at 9–11. Deripaska's argument centers on the fact that OFAC undoubtedly *received* documents related to the Terms of Removal Agreement. For example, he

contends that "[t]he plain text of the [Terms of Removal Agreement] indicates that OFAC *has received* documents and information from the respective parties to the agreement regarding their compliance with its terms." *Id.* at 10 (emphasis added).  But, beyond the documents' purported relevance to the dispute and their receipt by the agency, Deripaska provides no showing that OFAC considered, reviewed, referred to, or cited any documents it received in those proceedings.  His request therefore must fail.  *See Bahman*, 2020 WL 4346912, at *3 (concluding that agency letter acknowledging records was insufficient to show that "OFAC considered [the] records").

Second, Deripaska argues he is entitled to the evidentiary memoranda regarding OFAC's designation of Vekselberg and the Renova Group.  Pl.'s Br. at 12–13.  In the evidentiary memorandum denying Deripaska's delisting petition, OFAC noted that Vekselberg, like Deripaska, had been designated as operating in the energy sector for working in power generation.  Record Excerpts at 15 n.2.  Deripaska argues that "[n]either of the[] exhibits" OFAC cites for its conclusion "that Vekselberg was designated for operating in the energy sector of the Russian Federation economy for power generation activities" actually supports OFAC's decision, and therefore "OFAC must necessarily have relied on extra-record materials to support its contention." Pl.'s Br. at 12 (internal quotation marks omitted).

But the evidentiary memorandum on Deripaska's delisting petition demonstrates that Deripaska's true bone of contention is with the adequacy of the support OFAC cited for its decision.  OFAC cited two sources—the Federal Register and a press release about Vekselberg's designation—as support for its conclusion that Vekselberg operated in power generation and was therefore operating in the energy sector.  *See* Record Excerpts at 15 & n.2.  The press release in particular notes that Vekselberg was "the founder and Chairman of the Board of Directors of the Renova Group" and that the Renova Group had been investigated "for bribing officials connected

14

to a power generation project in Russia." *Id.* at 25–26.  Given that OFAC's citations connect Vekselberg and the Renova Group, Deripaska's assertion that the exhibits do not "support OFAC's determination," Pl.'s Br. at 12, is inaccurate.  To the extent that Deripaska argues OFAC's supporting evidence is insufficient to support reasoned decisionmaking, such a challenge necessarily implicates the merits and is "not the proper subject for a motion to supplement the record." *Bahman*, 2020 WL 4346912, at *4.  Deripaska's request to supplement the record with materials related to Vekselberg and the Renova Group therefore fails.

Third, Deripaska seeks documents beyond OFAC's evidentiary memoranda on his designation and delisting petition on the basis that the memoranda "serve[] to recommend a designation and offer support for that recommendation" and therefore do not contain "any information adverse to [the agency's] determinations." Pl.'s Br. at 14 & n.1.  But without concrete evidence that the agency considered materials other than the evidentiary memoranda, Deripaska's ambiguous accusation that OFAC has pruned the record of materials that contradict its decision cannot justify supplementation.  Despite Deripaska's urging to the contrary, "[a]n agency does not 'skew' the administrative record when it does not include agency documents that were not used in making its decision," *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010), and Deripaska has not met his burden to offer concrete evidence that OFAC considered the missing documents in making its decision.  There is therefore no basis for the court to order supplementation of the record.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the court denies Plaintiff's Motion to Supplement the Administrative Record, ECF No. 36. The parties shall file a Joint Appendix containing relevant excerpts of the administrative record on or before January 12, 2021.

Dated: December 29, 2020

Amit P. Mehta
United States District Court Judge